Iɴ ᴛʜᴇ

# 𝕌𝕟𝕚𝕥𝕖𝕕 𝕊𝕥𝕒𝕥𝕖𝕤 ℂ𝕠𝕦𝕣𝕥 𝕠𝕗 𝔸𝕡𝕡𝕖𝕒𝕝𝕤

## Fᴏʀ ᴛʜᴇ Sᴇᴠᴇɴᴛʜ Cɪʀᴄᴜɪᴛ

_____

*No. 15-3770*

_____

UNITED STATES OF AMERICA,
Plaintiff-Appellee

v.

JARED S. FOGLE,
Defendant-Appellant

On Appeal From the Judgment in A Criminal Case
in the United States District Court,
Southern District of Indiana, Indianapolis Division
The Honorable Tanya Walton Pratt, Judge
District Court Action No. 1:15-cr-00159-TWP-MJD-1

_____

**BRIEF AND REQUIRED SHORT APPENDIX
OF DEFENDANT-APPELLANT JARED S. FOGLE**

_____

Ronald E. Elberger, #6675-49
  [*Counsel of Record*]
Bᴏsᴇ McKɪɴɴᴇʏ & Eᴠᴀɴs LLP
111 Monument Circle, Suite 2700
Indianapolis, IN  46204
(317) 684-5195
(317) 223-0195 (FAX)
relberger@boselaw.com


***Attorneys for Defendant-Appellant
Jared S. Fogle***

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No:  15-3770
Short Caption:  <u>U.S.A. v. Jared S. Fogle</u>

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

      Jared S. Fogle

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

      Bose McKinney & Evans LLP
      Loeb & Loeb, LLP (District Court only)

(3) If the party or amicus is a corporation:

      (i) Identify all its parent corporations, if any;

          N/A

      (ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

          N/A

Attorney's Signature:  *s/Ronald E. Elberger*          Date:  January 13, 2016

Attorney's Printed Name:____Ronald E. Elberger_____

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes <u>X</u>  No ___**

Address:  111 Monument Circle, Suite 2700, Indianapolis, Indiana 46204
Phone Number:  317-684-5195          Fax Number:  317-223-0195
E-Mail Address:  relberger@boselaw.com

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT ................................................... ii

TABLE OF AUTHORITIES ............................................................................ v

JURISDICTIONAL STATEMENT ..................................................................... 1

STATEMENT OF THE ISSUE ......................................................................... 1

STATEMENT OF THE CASE.......................................................................... 1

STATEMENT OF FACTS .............................................................................. 2

    Count I: Facts ...................................................................................... 3

    Count II: Facts..................................................................................... 5

    The Sentencing Hearing ....................................................................... 7

    Count I: Additional Facts....................................................................... 7

    Count II: Additional Facts ..................................................................... 8

    History and characteristics of Fogle......................................................... 9

    Medical diagnosis and treatment ........................................................... 10

    Positive impact and commitment to others' well-being.................................. 11

    Fogle's role as a father and family member ............................................... 12

    The need to reflect the seriousness of the offense, to promote respect for
        the law, and to provide just punishment for the offense .......................... 12

    The need to afford adequate deterrence to criminal conduct ........................... 12

    The need to protect the public from further crimes of the defendant.............. 13

    The payment of restitution to all victims identified ..................................... 14

    The sentence imposed by the District Court............................................... 14

SUMMARY OF THE ARGUMENT ................................................................... 14

ARGUMENT ............................................................................................ 16

I.  The District Court's Above-Guidelines Sentence Is Procedurally Flawed in
    That It is Based on Erroneous Facts ......................................................... 16

    A.   The standards of review .................................................................. 17

    B.   The District Court's sentence is based on facts that would not form
         the basis for any criminal charge in this case...................................... 18

(1)    Fogle did not plead guilty to the production of child pornography, and the District Court did not adequately explain that Fogle was not sentenced for it .......................................... 19

(2)    The District Court's sentence is erroneously grounded in acts that Fogle "didn't do" and in Fogle's "fantasies," neither of which should form the bases for any criminal sentence, let alone an above-Guidelines sentence that also exceeds the Government's agreed sentence ..................................................................... 21

(3)    The District Court's sentence is erroneously based on Fogle collecting and viewing pornography of children as young as six years old................................................................................. 23

II. The District Court's Above-Guidelines Sentence Is Substantively Unreasonable............................................................................................ 25

    A.    The same reasoning that demonstrates procedural error by the District Court also demonstrates the substantive unreasonableness of the sentence .................................................................... 26

    B.    The District Court abused its discretion in sentencing Fogle for a period that exceeds the Guidelines, as well as one that exceeds the Government's agreed sentence .................................................... 27

        (1)    Fogle's history and characteristics do not warrant an above-Guidelines sentence and, in fact, support a deviation in the opposite direction ............................................................... 27

        (2)    The District Court erroneously relied upon facts already underlying the sentence to also justify an above-Guidelines sentence .......................................................................... 28

        (3)    The remainder of the District Court's reasoning for giving Fogle an above-Guidelines sentence does not establish an adequate statement of its reasons for imposing such a sentence........................ 30

CONCLUSION................................................................................................ 32

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(A)(7) ..................... 35

CERTIFICATE OF SERVICE ................................................................................. 36

# TABLE OF AUTHORITIES

**Page**

## CASES

Blakely v. Washington,
  542 U.S. 296 (2004) ...................................................................... 19, 24

Stanley v. Georgia,
  394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969) ............................................ 23

United States v. Biddle,
  2014 U.S. Dist. LEXIS 143733 (N.D. Ind. Oct. 9, 2014) ...................................... 30

United States v. Bradley,
  675 F.3d 1021 (7th Cir. 2012) ................................. 22, 26, 28, 29, 30, 32

United States v. Carter,
  538 F.3d 784 (7th Cir.2008) .................................. 17, 18, 25, 26

United States v. Castro–Juarez,
  425 F.3d 430 (7th Cir.2005) ...................................................................... 26

United States v. Corner,
  598 F.3d 411 (7th Cir.2010) (en banc) .................................................. 26

United States v. Edwards,
  115 F.3d 1322 (7th Cir. 1997) .................................................................. 17

United States v. Higdon,
  531 F.3d 561 (7th Cir. 2008) ...................................................................... 26

United States v. McIntyre,
  531 F.3d 481 (7th Cir.2008) ...................................................................... 26

United States v. Omole,
  523 F.3d 691 (7th Cir.2008) .......................................................... 18, 32

United States v. Roberson,
  474 F.3d 432 (7th Cir.2007) .......................................................... 28, 32

United States v. Scott,
  555 F.3d 605 (7th Cir. 2009) ........................... 17, 18, 21, 23, 25, 26, 27, 30

United States v. Valle,
  807 F.3d 508 (2d Cir. 2015)......................................................... 23, 29

United States v. Wachowiak,
  496 F.3d 744 (7th Cir.2007) .................................................................. 18

## STATUTES

18 U.S.C. §2252(a)(2) ....................................................................... 1, 2, 30

18 U.S.C. §2423(b) ....................................................................... 1, 2, 22, 29

18 U.S.C. §2423(c) ................................................................................... 2

18 U.S.C. §2423(e) ................................................................................... 1

18 U.S.C. §3231 ....................................................................................... 1

18 U.S.C. §3553(a) ........................................ 17, 22, 26, 27, 28, 29, 30, 32

18 U.S.C. §3742(a) ................................................................................... 1

18 U.S.C. §3742(c) ................................................................................... 1

Ind. Code §3542-4-3 ................................................................................ 9

N.Y. PENAL Law §130.05(3)(a)
(Consol. 2015) ...................................................................................... 9

## RULES

Fed. R. App. P. 32(a)(7)........................................................................ 35

## CONSTITUTIONAL PROVISIONS

United States Constitution,
Fifth Amendment ............................................................................... 17

United States Constitution,
Sixth Amendment............................................................................ 17, 19

## JURISDICTIONAL STATEMENT

Jurisdiction in the United States Court of Appeals for the Seventh Circuit is based on 18 U.S.C. §3742(a) and (c).  This is an appeal from the 188-month above-Guidelines sentence imposed by the Judgment in A Criminal Case entered on December 1, 2015 (SA at p. 2; Dkt. 78, pp.728-729), by the United States District Court for the Southern District of Indiana, Indianapolis Division, following Fogle's plea and adjudication of guilty to 18 U.S.C. §2252(a)(2) Conspiracy to Distribute/Receive Child Pornography and Distribution/Receipt of Child Pornography, and to 18 U.S.C. §§ 2423(b) and (e) Traveling and Attempting to Travel in interstate Commerce to Engage in Illicit Sexual Conduct with a Minor.  A timely Notice of Appeal was filed on December 14, 2015 (Dkt. #82).  The District Court's jurisdiction was based on 18 U.S.C. §3231.

## STATEMENT OF THE ISSUE

I.     Whether the District Court's above-Guidelines 188-month sentence imposed on Fogle – a sentence greater by three years than that which the Government agreed to accept – is procedurally flawed in that it is based on erroneous facts?

II.     Whether Fogle's above-Guidelines 188-month sentence is substantively flawed in that it does not adequately justify or explain the sentence?

## STATEMENT OF THE CASE

On August 19, 2015, the United States filed its Information in the United States District Court for the Southern District of Indiana, Indianapolis Division. (App. 9-20.)  On the same date the parties filed their Petition to Enter Plea of Guilty

and Plea Agreement, (App. 21-47), at which time a Waiver of Indictment was filed. (App. 48.)

On October 8, 2015, the confidential sealed Presentence Investigation Report (Dkt. #36) was filed.

On November 12, 2015, the United States filed its Government's Sentencing Memorandum (App. 49-69) and Fogle filed his Sentencing Memorandum. (App. 70-169.) Thereafter on November 13, 2015, Fogle filed his Sentencing Letters. (App. 170-187.) On November 17, 2015, Fogle filed his Supplement to Defendant's Sentencing Memorandum. (App. 188-200.) On October 23, 2015, the Probation Officer, Stephanie J. Ivie, filed her confidential sealed Supplemental Addendum to the Presentence Investigation Report. (Dkt. #41 at pp. 23-25.)

On November 19, 2015, the District Court held a Sentencing Hearing (Tr. 1-195) and issued its Entry for November 19, 2015. (App. 201-203.) On December 1, 2015, the Judgment in a Criminal Case was entered. (SA 1-6; App. 204-209.)

## STATEMENT OF FACTS

Fogle pled guilty to one count of conspiracy to distribute/receive child pornography and distribution/receipt of child pornography in violation of 18 U.S.C. §2252(a)(2), and a second count of traveling in interstate commerce to engage in illicit sexual conduct with minors in violation of 18 U.S.C. §§2423(b) and (c). (App. 21-23.) As part of Fogle's plea agreement, the parties stipulated and agreed to certain facts that established the basis for Fogle's guilty plea. (App. 33-37.) In light of these facts, the parties stipulated that the Government would not ask for a sentence

greater than 151 months of imprisonment, while Fogle would not seek a sentence below 60 months of imprisonment. (App. 26.)

## Count I: Facts

As to Count I, conspiracy to distribute/receive child pornography, on multiple occasions between in or about 2011 and in or about April 2015, Fogle received visual depictions of numerous minors engaging in sexually explicit conduct from an individual named Russell Taylor. (App. 33.) Fogle knew that the minors depicted in these images or videos were under the age of 18 years; knew Taylor's familial relationship or association with such minors, including in many instances, their actual names; and in some cases, Fogle had met the minors during social events in Indiana. (App. 34)

Fogle and Taylor discussed among themselves the fact that Taylor between March 2011 and January 30, 2015, was secretly producing sexually explicit images and videos of minors in Taylor's then current and former residence. Fogle chose to benefit from such production by obtaining access to a significant amount of such material over the relevant time period. If Fogle had promptly reported to authorities what he knew of these activities, then the sexually explicit material involving later victims would not have been produced. However, Fogle did not obtain access to all of the material Taylor produced. (App. 34 at ¶ 33)

None of the minors in the images or videos were aware that they were being filmed. *Id.* Rather, the images or videos were produced by Taylor using multiple hidden cameras set up in Taylor's residences. Taylor also obtained and provided Fogle

with child pornography obtained through Internet sources which may be classified as commercial material produced by other persons. The unidentified victims in these images and videos were as young as approximately six years of age. During the investigation, the child pornography was recovered during a search of Taylor's Indianapolis residence, where it was found in Taylor's computer equipment, storage devices, cameras and other media analyzed by the Cybercrime Section of the Indiana State Police. (App. 34)

The images and videos found in a search of Taylor's residences included a lascivious exhibition of the genitals or pubic area of the relevant minor, while some material also included other sexually explicit conduct depending upon the minor involved. (App. 35 at ¶ 35) Fogle's one isolated distribution and his receipt of images or videos was accomplished using a means or facility of interstate or foreign commerce, and in or affecting interstate or foreign commerce, by any means including by computer. (App. 35 at ¶ 36)  On one occasion, Fogle displayed the child pornography to another adult person who was his girlfriend, while they were alone in a hotel room. Fogle did not distribute the material online (Dkt. #41 at p. 5 at ¶11). On multiple occasions, Fogle obtained access to the images or videos by viewing them on a computer provided by Taylor. He also received some images and videos through text messages and one time, through a thumb drive. The visual depictions were produced by Taylor using camera equipment, computers, cell phones, and storage media. Taylor's production of the visual depictions involved the use of a minor engaging in sexually explicit conduct and the visual depictions were of a minor engaged in sexually

explicit conduct. Fogle knew that at least one of the minors in such visual depiction was a minor and knew that the visual depiction was of such minor engaged in sexually explicit conduct. (App. 35).

## Count II: Facts

As for Count 2, traveling in interstate commerce to engage in illicit sexual conduct with minors, the parties agreed that between in or about 2010 and in or about February 2013, Fogle traveled from Indiana to New York City in order to engage in commercial sexual activity with minors under the age of 18 years, including Minor Victims 13 and 14. Fogle repeatedly asked Minor Victim 13 and several other persons to provide him with access to minors as young as 14 years-old for purposes of commercial sex acts with him. (App. 35-36).

Fogle engaged in sexual intercourse with Minor Victim 13 in exchange for money. This occurred at the Plaza Hotel in New York City on or about November 4, 2012 when she was then 17 years of age. In or about January 2013, Fogle engaged in sexual intercourse with Minor Victim 13 in exchange for money. This occurred at the Ritz Carlton Hotel in New York City when she was then 17 years of age. In an interview with the investigating agents, Minor Victim 13 reported that, before November 2012, Fogle had engaged in commercial sex acts with her on three occasions in New York City when she was approximately 16 years of age. (App. 36).

The meetings between Fogle and Minor Victim 13 were arranged through text messages and Internet communications which provided explicit details in each instance. Records of these activities were found in text messages, travel records, imag-

es, and hotel records obtained through the investigation, including the search of Fogle's residence. (App. 36).

During the investigation, Minor Victim 13 identified Fogle as being the person engaging in the activities during an interview by the investigation agents. Her cellular phone was also found to contain Fogle's contact information and relevant communications. She indicated that she had discussed her true age with Fogle during their meetings and that he then knew that she was a minor. In addition, at various times, Fogle asked her to provide him with access to other underage minors for purposes of commercial sexual activity.  However, such referrals that led to other commercial sexual activity never occurred. (App. 36-37).

In an interview with the investigating agents, Minor Victim 13 stated that Fogle had also engaged in sexual intercourse with Minor Victim 14 in exchange for an amount of U.S. Currency. This occurred at a hotel in New York City when Minor Victim 14 was then approximately 16 years of age. (App 37 at ¶ 47).

During the investigation, the Government obtained information and audio recordings from witnesses in Florida, Georgia, and Washington State showing that Fogle had repeatedly discussed with them his interest in engaging in commercial sex acts with minors or stated that he has done so in the past. (App. 37 at ¶ 48). The recordings were produced beginning in or about 2007 and continuing thereafter. (Id.) During the investigation, the Government obtained information from text messages and other documents in Fogle's cellular phones that he repeatedly discussed with numerous prostitutes in other places, including Richmond, Virginia; Kansas

6

City, Missouri; and Las Vegas, Nevada, his interest in paying them a finder's fee to provide him with access to minors for commercial sex acts. (App. 37 at ¶ 49). He did this only after engaging in commercial sex acts with these prostitutes, knowing that they were not police officers. (Id.) No such referrals to minors for commercial sex acts occurred as a result of those inquiries.

### The Sentencing Hearing

In the Presentence Investigation Report ("PSR"), [Dkt.#41], as well as in briefing prior to, (App. 49-169), and in statements made during the sentencing hearing itself held on November 19, 2015, (Tr. 1-195), the District Court Judge was presented with additional facts that ultimately formed the basis for her sentence. Fogle is not aware of any factual dispute with the Government regarding those facts which were presented to the District Court in written or spoken form.

### Count I: Additional Facts

Fogle never engaged in any sexual conduct whatsoever with any of the minor victims whom Taylor recorded. (App. 80). Fogle also played no role in producing any of the images or videos Taylor recorded. Moreover, other than briefly showing certain of these images and videos on one isolated occasion to an adult woman with whom Fogle was then involved in a personal, romantic relationship, in the privacy of a locked hotel room, Fogle never shared any of these images or videos with anyone else. (App. 80). Indeed, Fogle discarded the thumb drive Taylor gave him that contained these images and videos shortly after Fogle displayed them on the one occasion. (App. 80); (PSR, [Dkt.#41] at 8).

Additionally, while Taylor secretly recorded twelve victims, Fogle did not obtain access to all of the material that Taylor produced. (App. 80). Specifically, Fogle did not receive images or videos of at least four of these twelve Minor Victims. Further, Fogle does not recall receiving and does not believe that he ever received images or videos of two additional Minor Victims that Taylor recorded. (App. 80). Fogle only recalls receiving one video Taylor produced in which a Minor Victim was engaged in any other form of "sexually explicit conduct" as originally defined in the Information. (App. 81).

Fogle also received child pornography from Taylor that Taylor obtained through Internet sources, which is classified as commercial material produced by other persons. (App. 81). Unlike the material Taylor produced, this material included unidentified victims as young as six years old engaged in sexually explicit conduct. (App. 81). However, Fogle never requested material of this kind from Taylor. (App. 81). Moreover, like the images and videos Taylor produced, Fogle only briefly shared certain of these images and videos on the single isolated occasion described above, and destroyed them shortly thereafter. (App. 81).

## Count II: Additional Facts

Fogle traveled in interstate commerce to engage in sex acts with minors for money; (App. 81), having arranged these encounters after seeing commercial advertisements on the internet related to Victim 13 offering sex acts for money. (App. 82). Fogle did not find these individuals by trolling chat rooms, or by lying about both his age and intentions. (App. 82). Additionally, although the individuals with

8

whom Fogle engaged in sexual intercourse for money were minors, these individuals were sixteen and seventeen years old.[1] (App. 82). And while Fogle did ask Victim 13, as well as several other people, to provide him with access to minors as young as 14 years old for purposes of commercial sex acts with him, (App. 35-36, 81), Fogle did not actually engage in any sex acts of any kind, commercial or otherwise, with anyone below the age of sixteen. (App. 82).

The Government obtained information and audio recordings from witnesses in several states showing that Fogle repeatedly discussed with them his interest in engaging in commercial sex acts with minors, or stated that he has done so in the past. (App. 37 ¶48); (App. 82.) However, these conversations occurred between Fogle and individuals with whom Fogle was, at the time the conversations took place, involved in personal, sexual relationships, which he believed were consensual, intimate conversations. (App. 82-83). The "past" sex acts Fogle described during these conversations never took place. (App. 83). Instead, Fogle made these comments during the course of what he thought were consensual, "fantasy" discussions between Fogle and these adult sexual partners. (App. 83).

### History and Characteristics of Fogle

In addition to reviewing stipulated facts supporting his guilty plea, the District Court Judge also read and heard about additional evidence of Fogle's history

---

[1] These individuals were within the age of consent in New York both where the acts occurred, see, N.Y. PENAL Law §130.05(3)(a) (Consol. 2015) (17 yrs old), and in Fogle's home State of Indiana. See Ind. Code §3542-4-3 (16 yrs old).

and characteristics, including his medical diagnosis and treatment, to add context to his conduct before deciding Fogle's sentence. (App. 83-88).

### Medical Diagnosis and Treatment

In addition to taking responsibility for his conduct, (App. 84); (Tr. 151-155), Fogle knew he had a problem and needed help. (App. 84). He sought the assistance of Dr. John Bradford, an internationally renowned forensic psychiatrist. (App. 84, 188-195); (Tr. 51-87). Dr. Bradford spent two days with Fogle, subjecting him to a number of tests and examinations to assess Fogle's mental condition and chart out an appropriate treatment plan for any condition from which Dr. Bradford concluded Fogle is suffering. (App. 84). Dr. Bradford also sent Fogle to Dr. Robert P. Granacher, a forensic psychiatrist and neuropsychiatric expert, to perform a neuropsychiatric evaluation. (App. 84).

As Dr. Bradford discussed at Fogle's sentencing hearing, Fogle suffers from hypersexuality and alcohol abuse/dependence. (PSR, [Dkt.#41] at 23-24); (Tr. 67); (App. 84). Dr. Bradford also identified weak evidence of erotic preference of a heterosexual pedophilia/hebephilia. (PSR, [Dkt.#41] at 23-24); (Tr. 67); (App. 84). According to Dr. Bradford, Fogle's conditions, if addressed properly, are very treatable. (PSR, [Dkt.#41] at 24).

Fogle acknowledged that he has serious medical issues that need to be addressed and he has been and will continue to be focused on getting healthy. (App. 84); (Tr. 151-155.) Indeed, while Fogle waited for feedback from Dr. Bradford, he voluntarily began the process of trying to get healthy. (App. 85); Specifically, he

attended weekly individual counseling sessions with Dr. Camille Sexton-Villalta, and weekly addiction counseling with Christopher Countryman, a licensed clinical social worker. (App. 85). In addition, Fogle attended Sex Addicts Anonymous meetings twice per week in Indianapolis. (App. 85). As a letter from Mr. Countryman establishes, Fogle took this treatment very seriously. (App. 173).

Additionally, shortly after Dr. Bradford evaluated Fogle, with the District Court's permission, Dr. Bradford helped arrange for Fogle to voluntarily undergo an intensive four-week outpatient-treatment program to address his medical issues under the care of Dr. Rick May. (App. 85, 188, 198-200); (PSR, [Dkt.#41] at 24). As Dr. May explained at Fogle's sentencing hearing, (Tr. 71), Fogle demonstrated his commitment to the program and showed that he was responsive to treatment. (App. 85).

### Positive impact and commitment to others' well-being

Fogle asked the District Court to consider the positive impact he has had on many lives and his demonstrated commitment to others' well-being. (App. 85-86). After suffering the physical, mental, and emotional distress that can come with being morbidly obese, Fogle spent countless hours over the last eighteen years speaking with people around the world about his struggles to get healthy. (App. 85).  Fogle sought to use his status as a public figure to inspire others and motivate them to take control of their health. (App. 85). As of result of these efforts, Fogle received feedback from literally thousands of people from all parts of the world thanking him for helping them focus on their health and well-being. (App. 85-86); (Tr. 179, 188).

11

### Fogle's role as a father and family member

Along with getting healthy, a top priority for Fogle was and is trying to earn back the trust of his family. (App. 86); (Tr. 153-154). Although his family members are understandably upset with Fogle, they all, including, as the PSR notes, Fogle's wife, believe Fogle has been a good father to his children. (PSR, [Dkt.#41] at 12). Fogle wants nothing more than to continue to be a positive influence in the lives of his children and he is willing to do whatever it takes to do so. (App. 86); (Tr. 153-154).

### The need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense

In formulating a sentence that reflected the seriousness of the offense, promotes respect for the law, and one constituting "just punishment," Fogle asked the District Court to consider the PSR's observation regarding the uniquely severe consequences that Fogle has already faced and will continue to face for the rest of his life:

> The defendant has suffered collateral consequences greater than that of a "typical" defendant facing sentencing for similar offenses. In addition to the loss of his income and marriage, he has lost his community reputation and anonymity of the details of the offense. He is a public figure known worldwide. Regardless of the Bureau of Prisons facility to which he is designated, he will be recognized, and the details of his offenses will be known. Thus, the time served in prison may be more stressful than that of other inmates whose identities and offenses details are not known to others.

(PSR, [Dkt. # 41] at 22).

### The need to afford adequate deterrence to criminal conduct

Fogle acknowledged an awareness and responsibility for the harm he has caused and that he will be painfully aware of it for the rest of his life. (App. 87,

172-187). Fogle also reinforced his focus on getting healthy and trying to repair the damage he has done. (App. 87); (Tr. 151-155). As Fogle contended, in terms of general deterrence, the country, indeed the world, has witnessed Fogle's very public humiliation, so that anyone with a television or access to the internet has witnessed and will continue to witness Fogle lose everything he has worked for over the last eighteen years and become a convicted felon and inmate in federal prison. (App. 87). Thus, anyone considering engaging in similar conduct, who otherwise has the medical and mental wherewithal to resist such behavior, will clearly be deterred from doing so by seeing that Fogle has destroyed his own life, subjecting himself to public humiliation. (App. 87).

### The need to protect the public from further crimes of the defendant

As Fogle explained to the District Court, he is experiencing and fully appreciates the painful consequences of his conduct. (App. 88). And he will continue to do so. These experiences will serve as more than enough motivation for Fogle to never commit such crimes again. (App. 88). More importantly, Fogle is committed to doing everything he can to ensure that he never commits such crimes in the future. As demonstrated to the District Court, Fogle has been pursuing the appropriate medical treatment to put himself in a position to succeed. (App. 88); (Tr.  71); (PSR, [Dkt.#41] at 23-24). And as the District Court also heard at the sentencing hearing, Fogle is a prime candidate for successful treatment which he has been pursuing with total commitment demonstrating that he is, in fact, treatable. (Tr. 69-71; 151-155); (App. 88).

### The payment of restitution to all victims identified

Fogle voluntarily provided each of the fourteen victims noted in the Information and Plea Agreement with restitution of $100,000, totaling $1,400,000. (App. 92, 208). Fogle provided financial assistance to all fourteen victims despite the fact that he did not receive images of at least four and he believes as many as six of the twelve victims Taylor secretly recorded. (App. 92). In doing so, Fogle hoped that this financial assistance demonstrated both his genuine remorse, as well as his sincere commitment to helping these victims work through this difficult time and move forward to live happy and productive lives. (App. 92). Fogle also hoped that these voluntary steps would be taken into account when determining his sentence, which he asked to be set at 60 months. (App. 92).

### The sentence imposed by the District Court

The District Court ordered Fogle imprisoned for a total of 188 months or about 15-and-a-half years, (App. 205), which is an above-Guidelines sentence (135 to 160 months, see Tr. 49), and also one greater than the 151-month maximum sentence agreed to by the Government. (App. 26.)  In addition to his 188-month sentence, Fogle was ordered to pay $1,400,000.00 in restitution, as well as a $175,000.00 fine, plus Fogle paid $50,000.00 "in lieu of forfeiture of personal property and $200 assessment." (App. 208-209.) Fogle is currently incarcerated at FCI Englewood pursuant to this order. (App. 205.)

### SUMMARY OF THE ARGUMENT

This Court should reverse and remand for resentencing for both procedural and substantive errors, finding that the District Court's sentence is procedurally

flawed in three (3) respects. First, Fogle did not plead guilty to the production of child pornography, and the District Court did not adequately explain that Fogle was not sentenced for it in the context of a record that aptly demonstrates she was influenced by the relationship between Fogle and Taylor, the producer of the child pornography at issue in this case. Second, the District Court's enhanced sentence is erroneously grounded in acts that Fogle "didn't do" and in Fogle's "fantasies," neither of which should have formed the bases for this above-Guidelines sentence that also exceeds the Government's agreed sentence. And third, the District Court's enhanced sentence is erroneously based on Fogle collecting and viewing pornography of children as young as six years old.

As for substantive error, this Court should reverse and remand for resentencing because the District Court did not provide an adequate explanation of its above-Guidelines sentence. Specifically, the District Court's discussion of Fogle's history and characteristics is puzzling in that it supports a downward deviation, not an upward deviation. Further, the District's recitation of the fact that Fogle committed a "sex act" as a basis to issue an above-Guidelines sentence is flawed because this fact was already used as an initial basis for a 2-level sentencing enhancement on Count II. Another factor noted by the District Court was that the "distribution" element of Count I is based upon a *single* act of distributing child pornography. Again, this supports a downward deviation from the Guidelines, not an upward deviation. (Tr. 180.) Another factor the District Court relied upon to enhance Fogle's sentence was the Government's position as it concerned the expert witnesses who

testified at the sentencing hearing concerning Fogle's diagnosis of hypersexuality and pedophilia, and whether Fogle would respond well to medication and treatment. But the Government's *plea agreement* was based upon a consideration of the opinions of these expert witnesses, so it could not support a sentence that *added* over three years to that *agreed* sentence. The District Court also seemingly punished Fogle for seeking treatment following his arrest, but this makes no sense. Finally, the District Court rejected the probation officer's recommendation for a downward variance based upon Fogle's notoriety and the additional stress that he will endure based upon that notoriety, likening Fogle to Jerry Sandusky, a convicted serial child molester. This does not promote the perception of fair sentencing. This Court should find that the District Court abused its discretion in imposing an above-Guidelines unreasonable sentence on Fogle.

## ARGUMENT

### I. The District Court's Above-Guidelines Sentence Is Procedurally Flawed in That It is Based on Erroneous Facts

This is an appeal of an unreasonable criminal sentence that suffers from both procedural and substantive infirmities: one which exceeds not only the range established by the Sentencing Guidelines but one that also inexplicably exceeds the maximum sentence agreed to by the United States Attorney and his senior litigation counsel. This Court should reverse the District Court's judgment, remand for resentencing, and reestablish trust and notions of fairness in the plea bargaining system.

## A.    The standards of review

The procedural rights of a defendant under the Fifth and Sixth Amendments of the Constitution are reviewed de novo by this Court. See United States v. Edwards, 115 F.3d 1322, 1325 (7th Cir. 1997) (questions of law are reviewed de novo).

This Court reviews sentences imposed for federal crimes in two parts. See United States v. Scott, 555 F.3d 605, 608 (7th Cir. 2009). First, the sentence is evaluated for procedural error. Id. This includes "failing to consider the [section] 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." Id. The sentence is then examined for substantive reasonableness under an abuse of discretion standard. Id.

If this Court determines that the district court's sentencing decision is "procedurally sound," United States v. Carter, 538 F.3d 784, 789 (7th Cir.2008), this Court turns to the second step in the analysis: "consider[ing] the substantive reasonableness of the sentence," id., which (again) is reviewed under an abuse of discretion standard. See Scott, 555 F.3d 608.

Although this Court's "task on reasonableness review is limited." United States v. Wachowiak, 496 F.3d 744, 754 (7th Cir.2007), it still must consider the sentencing court's explanation of its reasons for imposing a particular sentence. See Scott, 555 F.3d at 608. While that explanation need not be exhaustive, it must be adequate "to allow for meaningful appellate review and to promote the perception of fair sentencing." United States v. Omole, 523 F.3d 691, 697 (7th Cir.2008) (internal quotations omitted). If the sentence imposed is outside the Guidelines range, "the

district court must provide a justification that explains and supports the magnitude of the variance." <u>Scott</u>, 555 F.3d at 608.

### B. The District Court's sentence is based on facts that would not form the basis for any criminal charge in this case

During the sentencing hearing, the District Court determined and announced a recommended sentencing range for Fogle pursuant to the United States Sentencing Guidelines ("Guidelines") that was from "135 to 160 months' imprisonment for Counts 1 and 2 of the information." (Tr. 49.) Later during the hearing, the Government explained its reasoning to the District Court for its recommended sentence:

> What we're recommending here is 151 months and lifetime supervised release. The reason why is straightforward. That's right in the middle of the advisory range. We think this range was correctly calculated. We think it accounts for the criminality we can *actually prove*. It's not holding him accountable for things we *think he didn't do or fantasies*, but it is a fair resolution to two serious crimes brought together in the sentencing of one individual. And that's the best we can do for those victims.

(Tr. 171) (emphases added).

The rationale offered by the Government for its recommended sentence was moored in two important principles. First, the Government understood that it was limited by what it could "actually prove." <u>Id.</u> Second, and relatedly, Fogle could not be held accountable for things "he didn't do" or for "fantasies" he may have had. <u>Id.</u> This reasoning is consistent with core constitutional protections afforded to Fogle.

A judge may punish only the specific offense that has been established. <u>See</u> <u>Blakely v. Washington</u>, 542 U.S. 296, 302-303 (2004) (sentencing court could not punish a greater crime of acting with deliberate cruelty based on judicial findings

alone). When a sentencing court breaches the confines of the specific established offense, the court violates the Sixth Amendment. <u>See id.</u>

> **(1)** **Fogle did not plead guilty to the production of child pornography, and the District Court did not adequately explain that Fogle was not sentenced for it**

During the sentencing hearing, there were various discussions, some initiated by the District Court judge, which centered on Fogle's relationship with Russell Taylor, (Tr. 86, 123-125, 128-129, 132), who <u>alone</u> was responsible for producing some of the child pornography at issue in this case. (Tr. 132). For example, at one point, the District Court judge asked Dr. Bradford, who was discussing recidivism studies, if he had "done any studies … with people who conspire with the producer to obtain" the child pornography?" (Tr. 86.) Dr. Bradford responded that he had not done any such studies, but that it is not necessarily a "rare thing" for this type of activity to occur and that it does happen. (Tr. 86-87.)  Later during the hearing – in the context of a discussion about nationwide judicial criticism of the Guidelines as they concern child pornography dealing with non-production offenses – the District Court judge asked this question of Fogle's attorney: "What about when there's a conspiracy … with the producer?" (Tr. 123.)  Fogle's attorney responded and clarified that "this is not a conspiracy to produce" case, there was no assertion by the Government that Fogle had "any active role whatsoever in the production" and "they haven't charged him with production." (Tr. 124.)  Discussion about "production" continued later on in the hearing, (Tr. 128-129), with Fogle's attorneys noting that any "passivity" Fogle may have demonstrated towards Taylor's production of

child pornography was very "different than [an] active role and production," which was not the case with Fogle. (Tr. 132.)

Notwithstanding these pointed discussions that occurred during the sentencing hearing, there is no explanation or clarification given by the judge that Fogle's above-Guidelines, above-Government-agreed sentence was not somehow moored in a production-based offense. (Tr. 172-195.) This is especially troubling given the District Court's stated unfamiliarity with how to address the Fogle-Taylor relationship, (Tr. 86, ll. 21-22), and the Government's position that its agreed sentencing range was intended to hold Fogle accountable "for the criminality we can actually prove." (Tr. 171.)

Furthermore, the District Court judge acknowledged that she was essentially holding Fogle accountable for Taylor's production-based offenses, reasoning that "Mr. Fogle knew that his friend and associate was secretly producing child pornography in his current and former residences in Indianapolis, and he failed to report Mr. Taylor's conduct to authorities." According to the District Court, "if Mr. Fogle had promptly reported what he knew of Taylor's activities, Taylor would have been caught and the child pornography involving later victims, including the nine-year-old, would not have been produced." (Tr. 181.) The District Court even discounted Fogle's $1.4 Million in restitution payments based on an apparent belief that Fogle had conspired to distribute pornography with Taylor. (Tr. 188: "The Court recognizes that he has paid $1.4 million in restitution, even for victims who he says he did not view pornography of, but I'm sure he made that agreement because of the con-

spiracy.").[2] Accordingly, this amounts to reversible procedural error for selecting a sentence based on clearly erroneous facts of a production-related offense and also failing to adequately explain the chosen sentence was not based on the same facts. See Scott, 555 F.3d at 608.

> (2)    **The District Court's sentence is erroneously grounded in acts that Fogle "didn't do" and in Fogle's "fantasies," neither of which should form the bases for any criminal sentence, let alone an above-Guidelines sentence that also exceeds the Government's agreed sentence**

Another issue recognized and accounted for by the Government in its negotiated plea agreement with Fogle's attorneys was that it could not hold Fogle accountable for things "he didn't do" or for "fantasies" he may have had. (Tr. 171.) But that appears to be precisely what the District Court did in fashioning Fogle's sentence. (Tr. 178-183.)

Immediately after announcing that "[u]pon consideration of the 3553(a) factors, the Court has determined that the guideline range does not sufficiently account for the scope of the defendant's criminal conduct," (Tr. 178), the District Court judge explained: "This defendant is obsessed with child pornography and having sex with minors. He fantasized about in it telephone conversations. He frequently expressed his desire to have sexual relations with children. He acted on it when he

---

[2] Practically speaking, Fogle could not have conspired to "distribute and receive" child pornography that he did not view and thus did not know about, (Tr. 133), so it would only make sense for the sentencing judge to be discussing restitution payments for what she believed to be a general "conspiracy" to *produce* child pornography between Taylor and Fogle.

sought out and traveled to have sex with minors.[3]" (Tr. 178.)    Later, the District

Court judge also noted that Fogle "repeatedly asked Victim Number 13 to arrange

for him to participate in commercial sex acts with children as young as 14 years

old." (Tr. 182.) The District Court judge continued,

> [Fogle] sought to use these prostituted minors [that he paid for sex] to find other children with whom he could have sexual contact and continually communicated with the prostituted minors in his attempts to find even younger children for sex. He specified that he wanted children ages 14 and 15. In exhibits 1, 2, 3, and 4, that were admitted into evidence at this hearing, in explicit language, the defendant repeatedly sought out boys and girls and indicated, "The younger the better."

(Tr. 182-183.)    Additionally, in support of her stated belief that the "level of perver-

sion and lawlessness exhibited by Mr. Fogle is extreme," (Tr. 186), the District

Court repeatedly focused on Fogle's discussions with third parties about his interest

and sexual attraction to minors, (Tr. 186-187), including those "as young as eight

years old." (Tr. 187.)

Notwithstanding any fantasies Fogle may have had, or his discussions with

third parties concerning possible sexual contact with children younger than the

prostituted minors, these events never ultimately culminated in *any* chargeable

criminal activity. As the Second Circuit recently recognized,

---

[3] He did seek out and travel to have sex with minors, but that is the basis for charging, and Fogle pleading guilty to, Count II. That is **not** a basis for reasoning that "the guideline range does not sufficiently account for the scope of the defendant's criminal conduct." (Tr. 178, ll. 18-19.)  As this Court noted in reversing a sentence for the same type of conduct, "The problem with this rationale is that it provides little more than what is implicit in the instant offense. 18 U.S.C. §2423(b) proscribes interstate travel with intent to engage in sexual conduct with a minor." United States v. Bradley, 675 F.3d 1021, 1025 (7th Cir. 2012).

> We are loath to give the government the power to punish us for our thoughts and not our actions. <u>Stanley v. Georgia</u>, 394 U.S. 557, 565, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). That includes the power to criminalize an individual's expression of sexual fantasies, no matter how perverse or disturbing. Fantasizing about committing a crime, even a crime of violence against a real person whom you know, is not a crime.

<u>United States v. Valle</u>, 807 F.3d 508, 511 (2d Cir. 2015).

Accordingly, the District Court' sentence amounts to reversible procedural error in that it is based on clearly erroneous facts of Fogle's fantasies and requests to third parties which were ultimately never acted upon by Fogle. <u>See</u> <u>Scott</u>, 555 F.3d at 608; <u>accord</u> (Tr. 178, 182-183.)  In fashioning its plea agreement with Fogle's attorneys, the Government understood that Fogle could not be held accountable for things "he didn't do" or for "fantasies" he may have had. (Tr. 171.) Notwithstanding this explanation by the Government, the District Court's sentence is undeniably moored in conduct for which Fogle was not (and could not) be charged and which should not have formed any basis for any criminal sentence, <u>see</u> <u>Blakely</u>, 542 U.S. at 302-303 (sentencing court can only properly punish the specific offense established), let alone a sentence that exceeds the Guideline range and the Government's plea agreement.

### (3)     The District Court's sentence is erroneously based on Fogle collecting and viewing pornography of children as young as six years old

In explaining her above-Guidelines sentence, the District Judge was persuaded by the fact Fogle viewed not only Taylor's "homemade child pornography" but that Fogle also "collected child pornography through the internet," some of it including "unidentified victims … as young as six years old." (Tr. 181.)  This is fac-

tually incorrect and it mattered a great deal to the District Court's sentencing decision because it was an initial basis for a 2-level sentencing enhancement, (Tr. 47), and then the Court also used it to justify an above-Guidelines sentence.

The judge is referencing a thumb drive that Taylor gave to Fogle, which contained images of children as young as six-years-old but which Fogle did not affirmatively "collect" by himself from the internet nor solicit from Taylor. The Government generally contended that Fogle viewed the thumb drive and "distributed" it in an isolated private showing to <u>one</u> person, (Tr. 157-158), but that does not amount to a contention that Fogle actively sought, collected, and distributed images of six-year-olds. (Tr. 129-130.) Additionally, one of Taylor's victims was a nine-year-old, but the Government acknowledged that Fogle "didn't know" about that victim. (Tr. 158.) So while the Government might have been making its case for the initial 2-level enhancement, (Tr. 47, 157-158), it certainly was not contending – in fact, could not contend (<u>see</u> <u>supra</u> n.3) – that Fogle should be punished above the Guidelines for seeking and viewing child pornography containing "unidentified victims … as young as six years old." (Tr. 181.)  The District Court's finding in this regard is factually incorrect and amounts to reversible procedural error. <u>See</u> <u>Scott</u>, 555 F.3d at 608.

In sum, this Court should find that the District Court's sentence is procedurally flawed in three (3) respects. First, Fogle did not plead guilty to the production of child pornography, and the District Court did not adequately explain that Fogle was not sentenced for it in the context of a record that aptly demonstrates she was influenced by the relationship between Fogle and Taylor, the producer of the child

pornography at issue in this case.  Second, the District Court's enhanced sentence is erroneously grounded in acts that Fogle "didn't do" and in Fogle's "fantasies," neither of which should have formed the bases for this above-Guidelines sentence that also exceeds the Government's agreed sentence. And third, the District Court's enhanced sentence is erroneously based on Fogle collecting and viewing pornography of children as young as six years old.  This Court should reverse and remand for re-sentencing based on these procedural errors.

## II.    The District Court's Above-Guidelines Sentence Is Substantively Unreasonable

As stated above, if this Court determines that the district court's sentencing decision is "procedurally sound," Carter, 538 F.3d at 789, this Court turns to the second step in the analysis: "consider[ing] the substantive reasonableness of the sentence," id., which is reviewed under an abuse of discretion standard. See Scott, 555 F.3d 608.

This Court "will uphold an above-guidelines sentence so long as the district court offered an adequate statement of its reasons, consistent with 18 U.S.C. §3553(a), for imposing such a sentence." United States v. Bradley, 675 F.3d 1021, 1024-25 (7th Cir. 2012) (citing United States v. McIntyre, 531 F.3d 481, 483 (7th Cir.2008) in turn citing United States v. Castro–Juarez, 425 F.3d 430, 436 (7th Cir.2005)). This Court has recognized that "district judges are at liberty to reject any Guideline on policy grounds," but we have stressed that "they must act reasonably when using that power." United States v. Corner, 598 F.3d 411, 415 (7th Cir.2010) (en banc) (emphasis in original). In acting reasonably, "[a]s a matter of

prudence, ... in recognition of the Commission's knowledge, experience, and staff resources, an individual judge should think long and hard before substituting his personal penal philosophy for that of the Commission." <u>Higdon</u>, 531 F.3d at 562. A sentencing judge must give "respectful consideration to the judgment embodied in the guidelines range that he computes." <u>Id.</u>

A.      **The same reasoning that demonstrates procedural error by the District Court also demonstrates the substantive unreasonableness of the sentence**

As stated above in Part I., the District Court's sentence is procedurally flawed in three (3) respects as it concerns an above-Guidelines sentence based on **(i)** Fogle's supposed role in the production of child pornography, **(ii)** his supposed wrongdoing based on acts he never committed and fantasies he confessed to having, and **(iii)** a faulty belief that Fogle actively collected and viewed pornography of children under the age of 12, and as young as six years old. <u>See</u> <u>Scott</u>, 555 F.3d at 608. To the extent that this Court considers those to be substantive errors (as opposed to procedural errors), Fogle restates and incorporates those arguments as bases for establishing the District Court's abuse of discretion in its substantive sentencing. That said, there are additional bases for setting aside the District Court's above-Guidelines sentence for having abused her discretion.

**B.    The District Court abused its discretion in sentencing Fogle for a period that exceeds the Guidelines, as well as one that exceeds the Government's agreed sentence**

**(1)    Fogle's history and characteristics do not warrant an above-Guidelines sentence and, in fact, support a deviation in the opposite direction**

In explaining its above-Guidelines sentence in light of the Section 3553(a) factors, the District Court began by discussing Fogle's history and characteristics, (Tr. 179-180), noting that he was raised well by his parents and that he also "had the determination and willpower to overcome a weight problem." (Tr. 179.) Of course, this is what led to Fogle's well-known role as Subway's national spokesman. (Id.); (PSR, [Dkt.#41] at 11-12).  As a result, he achieved fame and fortune and during this period he was outwardly "loving, caring and generous" to others as demonstrated by letters submitted by his family and friends, (App. 172, 176, 179, 183-185), at a time when he was also encouraging school children to follow a "healthy diet" and to "exercise." (Tr. 179, App. 180-181.) The District Court recognized all of this, while also knowing that Fogle had no history of criminal activity. (Tr. 49, l. 5.)  Yet, the District Court seemingly punished Fogle on account of his upbringing and the good things he did during his period as Subway's spokesman.[4]

According to the District Court, during this same period Fogle "was living a double life and, for many of those years, engaged in a web of deception and depravity."  (Tr. 179.) The District Court then abruptly announced, "The seriousness of

---

[4] Later in her sentencing statement, the District Court judge stated that she was giving Fogle "credit for the positive impact he may have had on others when speaking regarding diet and exercise and healthy lifestyle."  (Tr. 188, ll.11-13.) At no point does she explain how this "credit" figured into her above-Guidelines sentence.

these offenses cannot be overstated." (Tr. 179-180.)  Later, the District Court also implied that Fogle's proper upbringing was a factor in her finding that Fogle's case was not similar to one presented by Fogle for a comparative sentence. (Tr. 186.)  In other words, Fogle's proper upbringing, combined with years of doing good deeds, while also being "loving, caring and generous" to others, was viewed by the District Court as a basis to enhance Fogle's sentence above the Guidelines and ignore his comparative sentence argument. (Tr. 179-180, 186.)  The District Court's discussion of Fogle's "history and characteristics" is "puzzling" and not the type of "aggravating individualized findings" that adequately explain or justify an above-Guidelines sentence. Bradley, 675 F.3d at 1028; cf. United States v. Roberson, 474 F.3d 432, 435-36 (7th Cir. 2007) (finding below-guidelines sentence unreasonable where, among other errors, discussion of the §3553(a) factors were more likely to push the defendant's sentence upward as opposed to downward).

### (2)  The District Court erroneously relied upon facts already underlying the sentence to also justify an above-Guidelines sentence

As noted above in Section I.B(2), the District Court reasoned in fashioning Fogle's sentence that "[u]pon consideration of the 3553(a) factors, the Court has determined that the guideline range does not sufficiently account for the scope of the defendant's criminal conduct." (Tr. 178.) According to the District Court, "This defendant is obsessed with child pornography and having sex with minors. He fantasized about it in telephone conversations. He frequently expressed his desire to have sexual relations with children. He acted on it when he sought out and traveled to have sex with minors." (Tr. 178.)  Notwithstanding the fact that Fogle's fantasies

and expressions of desire cannot support an above-Guidelines sentence, see Valle, 807 F.3d at 511, neither can the fact that Fogle acted on those desires and "sought out and traveled to have sex with minors." (Tr. 178.)

Again, see supra fn. 3, Fogle admitted to seeking out and traveling to have sex with minors, which was the basis for pleading guilty to Count II. (App. 23, 35-38.) Accordingly, that cannot also reasonably serve as a basis for holding "the guideline range does not sufficiently account for the scope of the defendant's criminal conduct." (Tr. 178, ll, 18-19.)  As this Court noted in reversing a sentence for the same type of conduct, "The problem with this rationale is that it provides little more than what is implicit in the instant offense. 18 U.S.C. §2423(b) proscribes interstate travel with intent to engage in sexual conduct with a minor." Bradley, 675 F.3d at 1025. Similar to what occurred in Bradley, the District Court here had also increased Fogle's base offense level by two points for the commission of a "sex act," (Tr. 47, 48), so "what the court seemed to rely upon for the sentence it imposed was already factored into the properly calculated guidelines range." Bradley, 675 F.3d at 1026.  But there is more.

The two-level enhancement Fogle received for the use of a computer was also already factored into the definition of the Count I crime, 18 U.S.C. §2252(a)(2), and the number assigned to it as a base offense level of 22.  (Tr. 15, 47 lines 1-10; App. 14-15; Dkt. #41 at p.9)  As such, the District Court should not have used it as a basis to justify her above-Guidelines sentence. (Tr. 17, lines 12-21; pp. 34, 47 lines 1-10) Moreover, Fogle's use of his cellular telephone and a laptop computer like a slide

projector to view the material he received from Taylor lies in stark contrast with computer use that serves to proliferate or profit from child pornography. Fogle did not commercially distribute child pornography, traffic child pornography, or participate in online child pornography communities. Yet his advisory guidelines range received the same increase as those individuals "who most exploit the technology and increase the market for child pornography." United States v. Biddle, 2014 U.S. Dist. LEXIS 143733 at *19-20 (N.D. Ind. Oct. 9, 2014). Fogle should have been differentiated from such individuals. This is another example of the District Court not providing "a justification that explains and supports" an above-Guidelines sentence. Scott, 555 F.3d at 608.

### (3) The remainder of the District Court's reasoning for giving Fogle an above-Guidelines sentence does not establish an adequate statement of its reasons for imposing such a sentence

As previously stated, this Court "will uphold an above-guidelines sentence so long as the district court offered an adequate statement of its reasons, consistent with 18 U.S.C. § 3553(a), for imposing such a sentence." Bradley, 675 F.3d at 1021. Here, the District Court's statement falls short of this standard.

So far, this brief addressed the District Court's puzzling discussion of Fogle's history and characteristics – as well as its recitation of the base charging facts for both counts – as both being inadequate bases to justify an above-Guidelines sentence. There are additional problems with the District Court's reasoning.

As noted by the District Court, the "distribution" element of Count I is based upon a single act of distributing child pornography. (Tr. 180.) One single act. And

that one instance technically supported a "distribution" charge because Fogle did show it to someone, but that was one individual with whom Fogle was then involved with romantically and it occurred in the confines of a locked hotel room. (Tr. 132-133.)  As Fogle's counsel noted, "There's distribution and then there's distribution." (Tr. 133, ll. 9-10.) That is not a fact that would reasonably support an enhanced sentence.

Another factor relied upon to enhance Fogle's sentence was the position of the "government" as it concerned the expert witnesses who testified at the sentencing hearing concerning Fogle's diagnosis of hypersexuality and pedophilia, and whether Fogle would respond well to medication and treatment, (Tr. 184), so as to be not "likely to reoffend." (Id.) But the Government's plea agreement – for a 151-month maximum sentence – was based upon a consideration of the opinions of these expert witnesses. For the District Court to "agree with the Government" is not a reasonable basis to impose an above-Guidelines sentence of 188 months, (Tr. 184, l.11), especially when the District Court stated her belief that Fogle would need treatment "for up to ten years," (Tr. 185, l.8), which is only 120 months.

As for Fogle seeking treatment following his arrest, and the fact that he is currently taking medication to reduce his sexual urges, the District Court initially applauded these acts (Tr. 184, ll.22-23), but then seemingly punished Fogle for not doing them earlier. (Tr. 184-185.) As was the case with the District Court's discussion of Fogle's "history and characteristics," this type of rationalization is "puzzling" and not the type of "aggravating individualized findings" that adequately explain or

justify an above-Guidelines sentence. <u>Bradley</u>, 675 F.3d at 1028; <u>cf.</u> <u>Roberson</u>, 474 F.3d at 435-36 Cir.2007) (finding below-guidelines sentence unreasonable where, among other errors, discussion of the §3553(a) factors were more likely to push the defendant's sentence upward as opposed to downward).

Finally, the District Court judge rejected the probation officer's recommendation for a downward variance based upon Fogle's notoriety and the additional stress that he will endure based upon that notoriety, (Tr. 188), noting the curious case of Jerry Sandusky. (<u>Id.</u>) Fogle is not aware of any meaningful correlation between his case, involving a renowned national spokesperson who pleaded guilty to the charges at issue in this case, and an assistant college football coach, who was convicted by a jury as a serial child abuser and molester. This is a prototypical example of a sentencing explanation that does not adequately "allow for meaningful appellate review" and which also does not "promote the perception of fair sentencing." <u>Omole</u>, 523 F.3d at 697.

In sum, this Court should find that the District Court abused its discretion in imposing an unreasonable above-Guidelines sentence on Fogle.

<u>CONCLUSION</u>

Fogle acknowledges that he has committed inexcusable acts for which he takes full responsibility and is genuinely remorseful. (Tr. 151-155); (App. 92). Moreover, no one can seriously doubt his commitment to getting well and never again committing these same types of acts. Even in the District Court's view, Fogle

will not likely reoffend after receiving treatment for 120 months. The question is then: why sentence him to more than five years beyond that?

Prior to the sentencing hearing, the Government knew everything the District Court knew and still agreed to a below-Guidelines sentence that adequately reflected the severity of the crimes to which Fogle pleaded and one which also accounted for what the Government could "actually prove." (Tr. 171.) The Government also understood that Fogle could not be held accountable for things "he didn't do" or for "fantasies" he may have had. (Id.) The Government knew that Fogle had not molested or abused any small children, and while the ages of the sexual prostitutes were "minors" under the federal sentencing statute, these individuals were not young children but individuals near the age of majority under the laws of both New York and Indiana.

The Government knew all of this and struck a deal with Fogle to enter into a plea agreement – and agree to a sentence that would adequately punish him for the crimes he committed – while also giving him adequate time to get well, so that he could try to put his life back together and work towards reestablishing a relationship with his two small children. And by all accounts, Fogle has been a good father to his children and wants nothing more than to be a positive influence in their lives. Notwithstanding the deal struck by Fogle and the Government, Fogle will now spend three more years away from his children than the Government thought appropriate on this record. This result is procedurally and substantively flawed and unreasonable. The District Court's ruling also undermines the notions of trust and fairness

33

that undergird our delicate system of plea bargaining. This Court should reverse and

remand for resentencing with appropriate instructions to the District Court.

Respectfully submitted,

*s/Ronald E. Elberger*

Ronald E. Elberger, #6675-49
 [*Counsel of Record*]
BOSE MCKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN  46204
(317) 684-5195
(317) 223-0195 (FAX)
relberger@boselaw.com

*Attorneys for Defendant-Appellant*
*Jared S. Fogle*

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(A)(7)

The undersigned furnishes the following in compliance with Fed. R. App. P. 32(a)(7):

I hereby certify that this Brief conforms to the rules contained in Fed. R. App. P. 32(a)(7) for a brief produced with a proportionally spaced font, specifically in this case, Century style font in 12 point type. The length of this Brief is 9,282 words. This word count was calculated by Microsoft® Office Word 2010 and according to the Fed. App. P. 32(a)(7) does not include the Cover, Table of Contents, Table of Authorities, Signature Block, Certificate of Service and this Certificate of Compliance with Fed. App. P. 32(a)(7). This word count does include any headings, footings, and quotations but does not include embedded images.

I affirm under the penalties for perjury that the foregoing statements are true and correct as calculated by the word count of the word processor used to prepare this petition.


Dated: February 19, 2016

*s/Ronald E. Elberger*
Ronald E. Elberger

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed electronically on February 19, 2016.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system:

> Steven D. DeBrota
> Steve.debrota@usdoj.gov

<i>s/Ronald E. Elberger</i>

Ronald E. Elberger

BOSE McKINNEY& EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
317/684-5195
317/223-0195 fax
relberger@boselaw.com

2921914.v3.dt1

36

CIRCUIT RULE 30(d) STATEMENT
THAT ALL REQUIRED MATERIALS ARE IN SHORT APPENDIX

Pursuant to Seventh Circuit Rule 30(d), undersigned counsel for Defendant-Appellant, Jared S. Fogle, certifies that all the materials required by Seventh Circuit Rule 30(a) and Seventh Circuit Rule 30(b) are included in this Appendix. Such Appendix consists of:

| Document Title | Docket Entry (DE) # | Short Appendix (SA) Page |
|---|---|---|
| Judgment in a Criminal Case (December 1, 2015) | DE 78 | SA 001 – 006 |
| Excerpt from Transcript of Hearing on Change of Plea and Sentencing held November 19, 2015 [Tr. 151 – 155] | DE 76 | SA 007 – 014 |
| Excerpt from Transcript of Hearing on Change of Plea and Sentencing held November 19, 2015 [Tr. 172 – 195] | DE 76 | SA 015 – 039 |

s/ Ronald E. Elberger
Ronald E. Elberger

BOSE MCKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
(317) 684-5195 / Fax: (317) 223-0195
relberger@boselaw.com

2921453

AO 245B    (Rev. 09/13) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

Southern   District of   Indiana

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
| v. | ) | |
| | ) | Case Number:   1:15CR00159-001 |
| JARED S. FOGLE | ) | USM Number:   12919-028 |
| | ) | Jeremy Margolis, Andrew R. DeVooght, and |
| | ) | Ronald E. Elberger |
| | | Defendant's Attorney |

## THE DEFENDANT:

☒ pleaded guilty to count(s)  1 and 2

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☐ was found guilty on count(s)
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 2252(a)(2) | Conspiracy to Distribute/Receive Child Pornography and Distribution/Receipt of Child Pornography | 4/29/2015 | 1 |
| 18 U.S.C. §§ 2423(b) and (e) | Traveling and Attempting to Travel in Interstate Commerce to Engage in Illicit Sexual Conduct with a Minor | 1/11/2013 | 2 |

The defendant is sentenced as provided in pages 2 through ___5___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

11/19/2015
Date of Imposition of Judgment

_Tanya Walton Pratt_

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

12/1/2015
Date

A CERTIFIED TRUE COPY
Laura A. Briggs, Clerk
U.S. District Court
Southern District of Indiana

By _____
Deputy Clerk

SA 001

AO 245B    (Rev. 09/13) Judgment in Criminal Case
        Sheet 2 — Imprisonment

| | Judgment — Page 2 of 5 |
|---|---|

DEFENDANT:       JARED S. FOGLE
CASE NUMBER:     1:15CR00159-001

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a
total term of:      188 months
188 mos. on each of Cts. 1 and 2, to be served concurrently

☒ The court makes the following recommendations to the Bureau of Prisons:
The Court strongly recommends that the defendant be designated to a facility in Littleton, Colorado, where he can participate
in sex offender treatment, as well as RDAP to address alcohol abuse.

☒ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

☐ at _____ ☐ a.m. ☐ p.m. on _____ .

☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐ before 2 p.m. on _____ .

☐ as notified by the United States Marshal.

☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

                                                        UNITED STATES MARSHAL

                                            By _____
                                                    DEPUTY UNITED STATES MARSHAL

**SA 002**

AO 245B　　(Rev. 09/13) Judgment in a Criminal Case
　　　　　　Sheet 3 — Supervised Release

Judgment—Page ___3___ of ___5___

DEFENDANT:　　　JARED S. FOGLE
CASE NUMBER:　　1:15CR00159-001

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of : Life
　　　　　　Life on each of Cts. 1 and 2, to be served concurrently

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter.

☒　The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. *(Check, if applicable.)*

☒　The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check, if applicable.)*

☒　The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check, if applicable.)*

☒　The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16913, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. *(Check, if applicable.)*

☐　The defendant shall participate in an approved program for domestic violence. *(Check, if applicable.)*

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the conditions listed below:

## CONDITIONS OF SUPERVISION

1.　　The defendant must report to the probation office In the district to which he is released within 72 hours of release from the custody of the Bureau of Prisons.

2.　　The defendant shall not leave the judicial district without the permission of the court or probation officer.

3.　　The defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer.

4.　　The defendant shall answer all inquiries by the probation officer and follow the instructions of the probation officer.

5.　　The defendant shall notify the probation officer prior to any change in residence or employer.

6.　　The defendant shall permit a probation officer to visit him at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer.

7.　　The defendant shall not meet, communicate, or otherwise interact with a person whom the defendant knows to be engaged, or planning to be engaged, in criminal activity, or whom the defendant knows to have been convicted of a felony, unless granted permission to do so by the probation officer.

8.　　The defendant shall notify the probation officer within 72 hours of being arrested or having any official law enforcement contact.

9.　　As directed by the probation officer, the defendant shall notify third parties of the nature of the defendant's offense conduct and conviction and shall permit the probation officer to make such notifications and confirm the defendant's compliance with such notification.

AO 245B    (Rev. 09/13) Judgment in a Criminal Case
Sheet 4 — Supervised Release

Judgment—Page ___3.01___ of ___5___

DEFENDANT:      JARED S. FOGLE
CASE NUMBER:    1:15CR00159-001

10.   The defendant shall submit to the search of his person, vehicle, office/business, residence and property, including computer systems and Internet-enabled devices, whenever the probation officer has a reasonable suspicion that a violation of a condition of supervision or other unlawful conduct may have occurred or be underway involving the defendant. Other law enforcement may assist as necessary. The defendant shall submit to the seizure of any contraband that is found, and should forewarn other occupants or users that the property may be subject to being searched.

11.   The defendant shall consent, at the direction of the probation officer, to having installed on his computer(s), telephones, electronic devices, and any hardware or software, systems to monitor his use of these items. Monitoring will occur on a random and/or regular basis. The defendant will warn other occupants of the existence of the monitoring hardware or software placed on his computer(s), phones and electronic devices. To promote the effectiveness of this monitoring, the defendant shall disclose in advance of its use all cellular phones, electronic devices, computers, and any hardware to the probation officer and may not access or use any undisclosed equipment. The defendant is responsible for the costs associated with the monitoring program.

12.   The defendant shall participate in a program of treatment for sexual disorders, including periodic polygraph examinations, as directed by the probation officer. The Court authorizes the release of the presentence report and available psychological records to the treatment provider, as approved by the probation officer. The defendant shall pay a portion of the costs in accordance with his ability to pay.

13.   The defendant shall not possess any obscene material, child pornography, child erotica or nude images of minors. Any such material found in the defendant's possession shall be considered contraband and may be confiscated by the probation officer.

14.   The defendant shall not have any unsupervised meetings, non-incidental communications, activities, or visits with any minor child, unless approved by the Court or person having custody of the minor child. Supervised contact with a minor child must be approved in advance by the probation officer. In determining whether to approve such activities involving members of the defendant's family, the probation officer shall determine if the defendant has notified the persons having custody of any such minors about his conviction in this case and the fact that he is under supervision. If this notification has been made, and if the person having custody consents to these activities, then this condition is not intended to prevent approval of the activity. This condition excludes his biological children, if contact is agreed to by their mother.

15.   The defendant shall not be employed in any position or participate as a volunteer in any activity that involves unsupervised meetings, non-incidental communications, activities, or visits with minors except as disclosed to the probation officer and approved by the Court.

16.   The defendant shall pay any outstanding location monitoring fees that were accrued while on pretrial supervision.

Upon a finding of a violation of probation or supervised release, I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the condition of supervision.

These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

(Signed)

_____      _____
Defendant                             Date

_____      _____
U.S. Probation Officer/Designated Witness    Date

SA 004

AO 245B   (Rev. 09/13) Judgment in a Criminal Case
          Sheet 5 — Criminal Monetary Penalties

|  |  | Judgment — Page | 4 | of | 5 |

DEFENDANT:       JARED S. FOGLE
CASE NUMBER:     1:15CR00159-001

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | Assessment | Fine | Restitution |
|---|---|---|---|
| **TOTALS** | $ 200.00 | $ 175,000.00 | $ 1,400,000.00 |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☒ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Victim 1 |  | $100,000.00 |  |
| Victim 2 |  | $100,000.00 |  |
| Victim 3 |  | $100,000.00 |  |
| Victim 4 |  | $100,000.00 |  |
| Victim 5 |  | $100,000.00 |  |
| Victim 6 |  | $100,000.00 |  |
| Victim 7 |  | $100,000.00 |  |
| Victim 8 |  | $100,000.00 |  |
| Victim 9 |  | $100,000.00 |  |
| Victim 10 |  | $100,000.00 |  |
| Victim 11 |  | $100,000.00 |  |
| Victim 12 |  | $100,000.00 |  |
| Victim 13 |  | $100,000.00 |  |
| Victim 14 |  | $100,000.00 |  |

| **TOTALS** | $ _____ | $ 1,400,000.00 |

☒ Restitution amount ordered pursuant to plea agreement   $ 1,400,000.00

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☒ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

   ☒ the interest requirement is waived for the   ☒ fine   ☒ restitution.

   ☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

SA 005

AO 245B    (Rev. 09/13) Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

| | Judgment — Page | 5 | of | 5 |

DEFENDANT:      JARED S. FOGLE
CASE NUMBER:    1:15CR00159-001

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A  ☐ Lump sum payment of _____ due immediately, balance due

       ☐ not later than _____ , or
       ☐ in accordance    ☐ C    ☐ D    ☐ E, or    ☐ G below; or

B  ☒ Payment to begin immediately (may be combined with    ☐ C,    ☐ D, or    ☒ G below); or

C  ☐ Payment in equal_____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
       _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D  ☐ Payment in equal_____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
       _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
       term of supervision; or

E  ☐ Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
       imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☐ If this case involves other defendants, each may be held jointly and severally liable for payment of all or part of the
       restitution ordered herein and the Court may order such payment in the future. The victims' recovery is limited to the
       amount of loss, and the defendant's liability for restitution ceases if and when the victims receive full restitution.

G  ☒ Special instructions regarding the payment of criminal monetary penalties:

       Restitution has been paid in full to the government, $1,200,000.00 has been distributed to 12 victims.  The remaining
       $200,000.00 has been put on deposit with the Clerk of Court who is awaiting further information from the US Attorney's
       Office.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is
due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons'
Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

     Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount,
     and corresponding payee, if appropriate.

| Defendant Name | Case Number | Joint & Several Amount |
|---|---|---|

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s): _____

☒ The defendant shall forfeit the defendant's interest in the following property to the United States:
     $50,000.00 (in lieu of forfeiture of personal property)

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal,
(5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

**SA 006**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Cause No. |
| Plaintiff, | ) 1:15-CR-0159-TWP-MJD |
| | ) Indianapolis, Indiana |
| vs. | ) **November 19, 2015** |
| | ) 9:01 a.m. |
| JARED S. FOGLE (01), | ) |
| | ) |
| Defendant. | ) |

**Before the Honorable**
**TANYA WALTON PRATT**

OFFICIAL REPORTER'S TRANSCRIPT OF
CHANGE OF PLEA AND SENTENCING

**For Plaintiff:**          Steven D. DeBrota, Esq.
                         Assistant U.S. Attorney
                         United States Attorney's Office
                         Suite 2100
                         10 West Market Street
                         Indianapolis, IN  46204

**For Defendant:**          Jeremy Margolis, Esq.
                         Andrew Richard DeVooght, Esq.
                         Loeb & Loeb, LLP
                         Suite 2300
                         321 North Clark Street
                         Chicago, IL  60654

                         Ronald E. Elberger, Esq.
                         Bose, McKinney & Evans, LLP
                         Suite 2700
                         111 Monument Circle
                         Indianapolis, IN  46204

Court Reporter:          David W. Moxley, RMR, CRR, CMRS
                         United States District Court
                         46 East Ohio Street, Room 340
                         Indianapolis, Indiana  46204

PROCEEDINGS TAKEN BY MACHINE SHORTHAND
TRANSCRIPT CREATED BY COMPUTER-AIDED TRANSCRIPTION

# I N D E X

**DEFENDANT'S WITNESSES:**                                    **PAGE**

JOHN M.W. BRADFORD, M.D.

Direct Examination by Mr. DeVooght ............51
Cross-examination by Mr. DeBrota ..............72

RICK L. MAY, Psy.D.

Direct Examination by Mr. Margolis ............88
Cross-examination by Mr. DeBrota .............100

**GOVERNMENT'S WITNESS:**                                    **PAGE**

DARIN ODIER

Direct Examination by Mr. DeBrota ............103

# I N D E X   O F   E X H I B I T S

**GOVERNMENT'S EXHIBITS:**                                   **PAGE**

1 ..........................................103
2 ..........................................103
3 ..........................................103
4 ..........................................103

\* \* \*

151

1   order as best he can.

2          He will never -- he will never, ever be able to

3   fully make amends and turn this around.  We know that.  But he

4   will go to prison and he will try to get well, and he will do

5   his level best for the rest of his life to continue to make

6   those amends.  And for that, Your Honor, I ask you to give him

7   the due and appropriate consideration and fashion a sentence

8   that is just, that allows him to get well as quickly as he

9   can.  Thank you, Your Honor.

10          THE COURT:  Thank you, Counsel.

11          Are you okay, David?

12          Mr. DeBrota -- oh, I'm sorry.  Mr. Fogle, did you

13   want to make a statement?

14          THE DEFENDANT:  Yes, ma'am.

15          THE COURT:  Come on up to the lecturn.

16          THE DEFENDANT:  Where do I even try to begin, Your

17   Honor?  For most of my adult life, I have been in the

18   spotlight, trying to be a positive role model for others, that

19   they, too, could become healthier and live a better and more

20   rewarding life.  Most people think that that all changed

21   upside down after my home was raided by law enforcement, and

22   even more so when I pleaded guilty to these charges related to

23   my horrible conduct that I sit here in front of you to answer

24   to.

25          But I feel this actually changed much longer ago.

152

1  Somewhere along the line, I went from being raised with good

2  solid morals and values to living the life of deception, lies,

3  and complete self-centeredness. My life had completely

4  spiraled out of control on so many levels. I had become

5  dependent on alcohol, pornography, and prostitutes. The

6  victims that I have harmed as a result of my decisions will

7  carry a huge burden for them the rest of their lives.

8         At the time, I truly did not think through what I

9  was doing, nor did I understand the consequences of my

10 actions. In the past month, during my treatment with Dr. Rick

11 May, I have learned much about my horrible actions and also

12 inactions. Every time an underage minor is viewed, they

13 continue to get re-victimized. This can lead to depression,

14 anxiety, inability to trust others, and potentially even lead

15 to suicidal thoughts.

16        I have also learned so much about the underage

17 minors with whom I have paid to have sex with. At the time, I

18 felt that, because I was paying them, that it was somehow

19 okay. Well, it wasn't okay whatsoever. Not only is it

20 illegal, of course, but these minors are engaging in

21 activities for specific reasons. Many come from broken

22 families, were victims of abuse or worse, were forced into the

23 sex trade by pimps. These thoughts never crossed my mind when

24 I engaged with them.

25        My actions allowed them to be further victimized,

1    and for that I will be forever remorseful.  Not a day will go

2    by that I don't think about them and what I did to take away

3    and impact their lives.  I truly hope that the restitution can

4    positively play -- can positively play some role in changing

5    the course of their lives, although I am painfully aware that

6    I have taken things from them that can never be fully

7    remedied.

8            The members of my family are also victims of my

9    reprehensible acts.  I absolutely devastated my wife.  She has

10   and will have to continue to endure what I did for years to

11   come, long after our divorce is final.  She is now going to be

12   forced to be a single mother, which is something that I truly

13   never intended to happen.  My young son and daughter, although

14   too young to understand what I have done, will have to live

15   with this terrible burden of my actions.

16           THE COURT:  You gave your wife almost $7 million,

17   though, so she will be okay.  You may continue.

18           THE DEFENDANT:  All of this because I chose to act

19   in a completely inappropriate and irresponsible manner.  I

20   love my children so very much, and not being able to see them

21   grow up makes my heart absolutely sink.  I will someday -- I

22   will someday have to explain to them what I did, and that will

23   be one of the hardest conversations of my life.  They didn't

24   deserve to be brought into any of this.

25           I owe a huge apology to the people who supported me

154

1   and my positive messages these past 15 years.  You believed
2   me -- you believed in me and what I stood for.  I truly regret
3   that I've hurt you, that I've hurt so many of you.  It gave me
4   such a wonderful feeling to be a positive role model for
5   healthy eating and lifestyle change in my former life.

6            I want to get myself healthy and still try to help
7   others, although I realize that I can never change my
8   deplorable past choices.  I so regret that I let so many of
9   you down.  And that is my intent, to learn from this
10  experience so that I never, ever do these things again.

11           Your Honor, I wish that I had been able to realize
12  these problems that I had years ago, I truly do.  I could have
13  addressed them in a positive, appropriate way before I
14  violated these victims.  I take full and absolute
15  responsibility for what I have done and, more importantly, the
16  harm that I have caused the victims and their families.

17           My intent, both during incarceration and upon
18  release from prison, is somehow to continue to help people in
19  a productive way, whether it's helping inmates further their
20  education or helping other sex offenders change their lives
21  for the better, or even educating mental health workers about
22  deviant sexual behavior, I want to make a positive impact.
23  Your Honor, I want to redeem my life, I want to become a good,
24  decent person, and even better father, and to truly help
25  others.  Thank you.

155

1          THE COURT:  Thank you, Mr. Fogle.

2          All right.  Mr. DeBrota, the court reporter is okay.

3          They're asking for -- to get to 60 months, I would

4    have to go down eight levels on the guidelines.  What do you

5    think, Mr. DeBrota?

6          MR. DeBROTA:  To get to 60 months, you would have to

7    be at a total offense level of -- you would have to be at

8    least 25, down from 31.

9          MR. DeVOOGHT:  33.

10          THE COURT:  33.

11          MR. DeBROTA:  So, mathematically, I think that's

12    correct, mathematically.

13          THE COURT:  About eight levels?

14          MR. DeBROTA:  Yeah, that's eight levels.

15          May it please the Court, two things first.  We filed

16    a sentencing memo that very carefully laid out a detailed

17    factual chronology of what we think Mr. Fogle did for well

18    over a five-year period of time, accounting for the

19    information from persons 1, 2, 3, and 4, and you've also heard

20    today information relating to 5, 6, and 7, and then more

21    elaboration of what happened with Minor Victim 13.  I know

22    the Court likes to see pleadings like this ahead of time.  The

23    defense filed an extensive one, as well, so I'm not going to

24    belabor what I've already argued carefully in writing.

25          But we described how these are fundamentally two

**SA 014**

* * *

172

1  This is half the story, but just the first half of the story,

2  Your Honor.  Thank you.

3          THE COURT:  Okay.  Thank you.

4          All right.  My court reporter needs five minutes.

5  We'll take a five-minute break and then the Court will

6  pronounce its sentence.

7          THE COURTROOM DEPUTY:  All rise.

8          (Recess at 12:58, until 1:09.)

9          THE COURT:  We are back on the record.

10          And, Mr. Fogle, would you and your counsel come up

11  to the lectern?

12          (Counsel and defendant approach the podium.)

13          THE COURT:  And did you have any rebuttal, very

14  brief rebuttal?

15          MR. MARGOLIS:  No.  No, Your Honor.

16          THE COURT:  Okay.  All right.  The Court is prepared

17  to state what the sentence in this case will be.  And,

18  Counsel, you will each have a final opportunity to state any

19  legal objections before sentence is finally imposed.

20          Pursuant to the Sentencing Reform Act of 1984, it is

21  the judgment of the Court that the defendant, Jared S. Fogle,

22  is hereby committed to the custody of the Bureau of Prisons,

23  to be imprisoned for a term of 188 months on each of Counts 1

24  and 2, to be served concurrently.  This sentence is a variance

25  based on the history and characteristics of the defendant, as

**SA 016**

173

1  well as the nature and circumstances of the offense.

2         The defendant shall immediately pay restitution, if

3  he has not already, in the amount of $100,000 to each victim,

4  1 through 14, for a total of $1,400,000.

5         The defendant shall pay to the United States a fine

6  of $175,000.  The Court finds that the defendant does not have

7  the ability to pay interest and waives the interest

8  requirement.  The defendant shall notify his probation officer

9  of any material change in economic circumstances that might

10 affect his ability to pay the fine.

11        In lieu of forfeiture of property, the defendant

12 shall pay to the United States $50,000.

13        Supervised release is required by statute.  Based on

14 the serious nature of the offense and to assist the

15 defendant's reintegration into society upon release from

16 imprisonment, the Court is imposing a lifetime of supervised

17 release for each of Counts 1 and 2 to be served concurrently.

18        While on supervised release, the defendant shall not

19 commit another federal, state, or local crime; shall not

20 possess a firearm, ammunition, destructive device, or any

21 other dangerous weapon; shall cooperate with the collection of

22 a DNA sample; shall refrain from any unlawful use of a

23 controlled substance; and shall comply with the requirements

24 of the Sex Offender Registration and Notification Act as

25 directed by his probation officer.

174

1    The defendant is suspended from drug testing

2 mandated by the Crime Control Act of 1994 based on the Court's

3 determination that the defendant poses no risk of future

4 substance abuse.

5    Further, the defendant shall comply with the

6 conditions of supervised release.  And I'll go ahead and read

7 them into the record.  The defendant must report to his

8 probation officer in the district to which he is released

9 within 72 hours of release from the custody of the Bureau of

10 Prisons.  This condition is imposed as an administrative

11 requirement of supervision.

12    He shall not leave the judicial district without the

13 permission of the Court or his probation officer.  And he

14 shall report to his probation officer in a manner and

15 frequency directed by the Court or probation officer.  He

16 shall answer all inquiries by the probation officer and follow

17 the instructions of the probation officer.  All of these

18 conditions are imposed as administrative requirements of

19 supervision.

20    The defendant shall notify his probation officer of

21 any change of residence or employer.  This condition is to

22 assist the probation officer in monitoring the defendant and

23 for protection of the community.

24    The defendant shall permit his probation officer to

25 visit him at home or elsewhere based upon -- and shall permit

175

1   confiscation of any contraband observed in plain view.  This
2   condition is to assist his probation officer in the protection
3   of the community.

4          The defendant shall not meet or communicate or
5   otherwise interact with a person to whom the defendant knows
6   to be engaged or planning to be engaged in criminal activity
7   or whom the defendant knows to have been convicted of a felony
8   unless granted permission to do so by the probation officer.
9   This does not include family members.  The Court is imposing
10  this condition to reduce the risk of recidivism and provide
11  for the public safety.

12         The defendant shall notify his probation officer
13  within 72 hours of being arrested or having any official law
14  enforcement contact.  This condition is imposed to assist his
15  probation officer in monitoring the defendant and protection
16  of the community.

17         As directed by the probation officer and as
18  contained in his plea agreement, the defendant shall notify
19  third parties of the nature of his conviction and confirm his
20  compliance with the notification requirements.  He shall
21  submit to the search of his person, vehicle, office/business,
22  and residence, including computer systems and Internet-enabled
23  devices whenever the probation officer has a reasonable
24  suspicion that a violation of the conditions of supervision or
25  other unlawful conduct may have occurred or be underway

176

1  involving the defendant.  Other law enforcement may assist as
2  necessary.
3           The defendant shall submit to the seizure of any
4  contraband that is found and should forewarn other occupants
5  or users that the property may be subject to search.  The
6  Court is imposing these conditions due to the nature of the
7  instant offense, and this will allow the probation officer to
8  monitor the defendant's compliance with his supervised
9  release.
10          The defendant shall consent, at the direction of his
11 probation officer, to having installed on his computer the
12 hardware and software monitoring as stated in the plea
13 agreement.  He shall participate in a program of treatment for
14 sexual disorders, including periodic polygraph examinations as
15 directed by his probation officer and as stated in the plea
16 agreement.
17          He shall not possess any obscene material, child
18 pornography, or erotica, or nude images of minors as stated in
19 his plea agreement; and shall not have any unsupervised
20 nonincidental communication, activities, or visits with any
21 minor children unless approved by the Court or approved by the
22 person having custody of that child, as stated in the plea
23 agreement.  And the Court noted for the record earlier that
24 this would not include the defendant's biological children.
25          The defendant shall not be employed in any position

**SA 020**

1   or participate as a volunteer in any activity that involves

2   unsupervised meetings, nonincidental communication,

3   activities, or visits with minors except as disclosed to his

4   probation officer.   The Court is imposing this condition to

5   ensure the safety of the community given the nature of these

6   offenses.

7        And if there are any outstanding location monitoring

8   fees that were accrued while on pretrial supervision, the

9   defendant is to pay those fees.   The Court is imposing this

10  condition to ensure that all outstanding fees are paid.

11       The Court is -- the defendant is further ordered to

12  pay the special assessment of $200.   Payment of the fine and

13  special assessment are due immediately and are to be made

14  directly to the Clerk, United States District Court for the

15  Southern District of Indiana.

16       The sentence that the Court intends to impose is a

17  one-level upward variance from the applicable guideline range

18  based on the 3553(a) factors.   In particular, the Court has

19  considered the perverse nature and circumstances of the

20  offenses.   The Court has considered the defendant's lack of

21  criminal convictions, his characteristics, the need for the

22  sentence to reflect the very seriousness of this offense, to

23  promote respect for the law, to provide just punishment, and

24  to provide adequate deterrence to criminal conduct of this

25  nature by others who might try to do similar things, as well

178

1   as provide the defendant with time for adequate treatment.

2        Jared Fogle is a 38-year-old gentleman before the

3   Court for sentencing for conspiring with his business

4   associate, Russell Taylor, to distribute and receive child

5   pornography and for traveling in interstate commerce to engage

6   in illicit sexual conduct with minors.

7        To begin, the Court is mindful that a sentence

8   should be sufficient, but not greater than necessary, to

9   accomplish the goals of sentencing.  Federal judges do not

10  sentence based on emotions or public sentiment or the judge's

11  personal beliefs or philosophies.  Instead, the Court must

12  impose a sentence viewed in the context of the policy goals

13  and empirical data of the United States Sentencing Commission

14  as determined by the advisory sentencing guidelines.  The

15  Court, however, is not bound by the guidelines, because they

16  are advisory in nature.

17       Upon consideration of the 3553(a) factors, the Court

18  has determined that the guideline range does not sufficiently

19  account for the scope of the defendant's criminal conduct, and

20  this case warrants an above-guideline sentence.

21       This defendant was obsessed with child pornography

22  and having sex with minors.  He fantasized about it in

23  telephone conversations.  He frequently expressed his desire

24  to have sexual relations with children.  He acted on it when

25  he sought out and traveled to have sex with minors.

1       The Court is to consider the history and
2  characteristics of the defendant.  Mr. Fogle seemingly had it
3  all.  Unlike many offenders, Mr. Fogle never experienced any
4  form of abuse or neglect, and he himself was never a victim of
5  child molest.  Rather, he was very privileged.  His father was
6  a prominent and is a prominent physician; his mother a
7  teacher, who later stayed at home to raise her children.  His
8  parents instilled appropriate morals and values in all of
9  their children, including this defendant.

10      The defendant had the determination and willpower to
11 overcome a weight problem.  As a junior in college, he lost an
12 incredible amount of weight while eating at a Subway
13 restaurant.  And when the restaurant became aware of his
14 story, it reached out to him and he became their spokesman.
15 What a gift to have such a professional windfall fall into
16 your lap.

17      During the times when he committed these crimes,
18 Defendant had a wife, he had two children, he had countless
19 opportunities to travel the world, and a net worth in the
20 millions of dollars.  According to letters from the
21 defendant's family and friends, he appeared to be loving,
22 caring, and generous.  He frequently spoke to school children
23 to encourage healthy diet and exercise.  But Mr. Fogle was
24 living a double life and, for many of those years, engaged in
25 a web of deception and depravity.  The seriousness of these

180

1 | offenses cannot be overstated.

2 | With respect to the distribution and receipt of
3 | child pornography, the conspiracy, these offenses are not
4 | victimless crimes inasmuch as the images involve sexual abuse
5 | of real children.  The receipt and distribution of this
6 | material perpetrates a great deal of harm to the victims who
7 | are forever haunted with the fact that their images have been
8 | visualized and sometimes traded over the Internet and through
9 | the two people in this conspiracy.

10 | Again, unlike many child pornographers, Mr. Fogle
11 | admits that Victims 1 through 12 were boys and girls who were
12 | secretly videotaped by his employee, Mr. Taylor.  This
13 | defendant conspired with Mr. Taylor to receive and, on one
14 | occasion, distribute the homemade child pornography.

15 | Some of the depictions the two shared were of
16 | children exposing their genitals and others were of these
17 | children engaging in sexually explicit conduct.  This
18 | victimization occurred for nearly four years, from March 2011
19 | until January 2015.  On multiple occasions over this time
20 | period, Mr. Fogle received the child pornography of these
21 | children.

22 | And what is most alarming to the Court is that
23 | Mr. Fogle knew many of these children, he knew their names, he
24 | knew that some were relatives of Mr. Taylor.  And he accepted
25 | the opportunity to associate with these children during social

1  events.

2        The use of computer storage media in this case was

3  significant.  Mr. Fogle knew that his friend and associate was

4  secretly producing child pornography in his current and former

5  residences in Indianapolis, and he failed to report

6  Mr. Taylor's conduct to authorities.  Instead, over a period

7  of four years, he chose to benefit from the production by

8  obtaining and accessing a significant amount of the material.

9        As the government has argued, if Mr. Fogle had

10  promptly reported what he knew of Taylor's activities, Taylor

11  would have been caught and the child pornography involving

12  later victims, including the nine-year-old, would not have

13  been produced.

14        In addition to the homemade child pornography,

15  Mr. Fogle also collected child pornography through the

16  Internet.  The unidentified victims depicted in this

17  pornography were as young as six years old.  This pornography

18  was found on Mr. Fogle's computers, his storage devices, thumb

19  drives, cameras.  And at least two images of child pornography

20  were in text messages from Taylor, were found on Mr. Fogle's

21  cell phone.  The defendant's collection of material included

22  hundreds of videos and photographs, which account for over 600

23  images.

24        Child pornographers often argue that they are only

25  curious or they were fanaticizing and would never actually

182

1  harm a minor or a child, and that is not true here.  Fogle

2  acted on his attraction to children.  He engaged in Internet

3  social networking, such as Craigslist, and traveled in

4  interstate commerce for the purpose of engaging in commercial

5  sexual activity with minor children.

6          Between 2010 and 2013, he traveled from Indiana to

7  New York City to have sex with minors, including Victims

8  Number 13 and Number 14.  The defendant repeatedly asked

9  Victim Number 13 to arrange for him to participate in

10  commercial sex acts with children as young as 14 years old.

11  Mr. Fogle used his wealth and fame to entice and impress these

12  victims.

13          We heard today that he spent over $12,000 a year on

14  prostitutes.  He took Victim Number 13 to the Plaza Hotel in

15  New York City for sex acts, and on at least three occasions

16  when she was 16 years old; and engaged in illicit sex acts

17  with Victim Number 14 when she was 16 years old.

18          He went to great lengths to engage in commercial sex

19  acts with underage minors.  He bought and offered plane

20  tickets.  He reserved and paid for the hotel rooms, made

21  arrangements for the commercial sex acts, and engaged in

22  commercial sex acts with minors, and solicited a digital image

23  of a minor engaged in sexually explicit conduct from one of

24  the prostituted minors.

25          He sought to use these prostituted minors to find

1   other children with whom he could have sexual contact and

2   continually communicated with the prostituted minors in his

3   attempts to find even younger children for sex.  He specified

4   that he wanted children ages 14 and 15.  In Exhibits 1, 2, 3,

5   and 4, that were admitted into evidence at this hearing, in

6   explicit language, the defendant repeatedly sought out boys

7   and girls and indicated, "The younger the better."

8           While Mr. Fogle did not introduce these girls to

9   prostitution, he continued their victimization in this

10  underground world.  We learned today from the government that

11  these children were victims of a violent sex trafficking pimp.

12  Children involved in prostitution is a form of commercial

13  sexual exploitation, and these children are often victims of

14  sex trafficking, and that's exactly what occurred in this

15  case.

16          Under the federal law, the prostitution of children

17  is considered a form of human trafficking.  Sex trafficking is

18  a lucrative industry where criminals traffic children just as

19  they would traffic drugs and other illegal substances.  That

20  Mr. Fogle fostered this form of abuse for several years with

21  minor children is a serious crime, and that Mr. Fogle states

22  that he did not even realize the implications of his actions

23  is very alarming.

24          Child sex crimes are among the most egregious and

25  despicable of societal and criminal offenses, and Congress has

184

1  called for serious punishment for persons who knowingly

2  victimize children.  The Court finds no reason to depart or

3  vary downward from the guidelines as Defendant's counsel have

4  requested.

5          The Court has heard testimony from the defendant

6  that he has a diagnosis of hypersexuality and mild pedophilia,

7  and the experts hired by defendants have stated that he

8  will -- they believe he will respond well, and he has been

9  responding well, to medication and treatment, and they don't

10  believe he's likely to reoffend.

11          But I agree with the government.  The doctor based

12  his opinion on Mr. Fogle saying that his interest was with

13  children 16 and 17 years old.  Mr. Fogle did not tell -- or

14  maybe the doctor didn't listen to the tapes to realize that

15  the defendant has stated that the younger, the better.  He

16  repeatedly sought out these 14- and 15-year-old girls.  He

17  admits, the doctor does, that the visual stimulation tests

18  show that the defendant was more attracted to younger children

19  than to the teenagers.  And, importantly, in this country,

20  there's no such thing as mild -- being a mild pedophile.

21  That's not a diagnosis accepted in the DSM.

22          It is admirable that Mr. Fogle sought treatment

23  following his arrest, and, to his credit, he's taking

24  medication to reduce his sexual urges.  But the Court notes

25  that this defendant had the means to obtain treatment since

1   the onset of his deviant sexual behaviors, and he did not seek

2   treatment until after he was arrested.  And he did not seek

3   treatment years ago, he did not seek treatment following the

4   arrest of his co-conspirator, Mr. Taylor, in April of 2015.

5   Rather, he first sought treatment upon advice of counsel

6   following his arrest in September of 2015.  Dr. May indicated

7   that this defendant, as most sex offenders, needs treatment

8   for up to ten years, and the Court agrees.

9        One of the goals of sentencing is to provide an

10  offender with correctional training through treatment and to

11  assist him in abstaining from new criminal behavior.  Due to

12  the nature of the offense and this defendant's acts relating

13  to child pornography and traveling to engage in sex with

14  minors, it is necessary that he participate in sex offender

15  treatment while in prison to assist in the development of

16  internal controls to his deviant sexual impulses, thoughts,

17  and behaviors.  The Court, as counsel have requested, will

18  recommend that the Bureau of Prisons designate a facility

19  where Mr. Fogle can continue treatment.

20       The Court considers the 3553(a) factors to avoid

21  unwarranted sentencing disparities.  With respect to the

22  alleged disparity and the sentences of defendants in Exhibits

23  A and B, the circumstances of those defendants is very

24  different.  This is A and B that you had in your sentencing

25  memorandum.

1    Defendant A, I think that might have been

2  Mr. Horner, was a binding plea agreement, which the Court

3  accepted, in part, because this defendant had been raised by a

4  mentally ill mother, a physically abusive father.  He had been

5  molested beginning when he was seven years old.  He was

6  charged only with the possession, and his collection was less

7  than 100 images.

8    The defendant in Exhibit B was also sentenced solely

9  and charged only with possession.  He did not distribute or

10  receive or conspire to distribute and receive child

11  pornography.  He did not travel in interstate commerce to

12  engage in elicit sexual conduct with minors.  And, notably,

13  neither Biddle nor Dittiway traveled in interstate commerce or

14  socialized with their victims of their child pornography.

15    The Court next considers the need to protect the

16  public from further crimes of the defendant and to afford

17  adequate deterrence to others who might commit these same

18  types of offenses.  The level of perversion and lawlessness

19  exhibited by Mr. Fogle is extreme.  As early as 2007,

20  witnesses from Florida, Georgia, and Washington state have

21  proffered that Fogle repeatedly discussed his interest in

22  engaging in commercial sex acts with minors.  This was four

23  years before he began receiving pornography from Mr. Taylor.

24    He discussed with adult prostitutes in Virginia,

25  Missouri, and Nevada his interest in paying them a finder's

187

fee to provide him with access to minors for commercial sex acts.  He stated that he was sexually attracted to children as young as eight years old, and he did this only after engaging in illegal commercial sex acts with these women to ensure that they were not police officers, because, other than the prostitutes in Las Vegas, Nevada, prostitution is still illegal in this country.  The defendant admits to paying for commercial sex with adults on hundreds of occasions.

The conduct that Mr. Fogle has engaged in has been taken very seriously by Congress.  And the Court believes it should impose a substantial term of imprisonment, not only to provide just punishment, but to adequately deter others from committing similar acts.

The Court has considered the relevant factors presented by the defendant and given them appropriate weight. The Court rejects Defendant's arguments that the guideline range for distribution or receipt of child pornography is overstated when viewed in the context of this case and the policy goals of the Sentencing Commission.

The Court recognizes Mr. Fogle's remorse and believes that it's genuine.  And the defendant's offense level was reduced by three levels for his acceptance of responsibility and saving the victims from having to testify at a trial.

The defendant appears to be sincere in his quest for

1   treatment.  And I agree and believe that he is painfully

2   aware -- he is now painfully aware of the harm that he's

3   caused his victims.  The Court recognizes that he has paid

4   $1.4 million in restitution, even for victims who he says he

5   did not view pornography of, but I'm sure he made that

6   agreement because of the conspiracy.  But this restitution is

7   the appropriate thing to do, especially considering the fact

8   that Mr. Fogle, at the time he committed these offenses, was a

9   multimillionaire, and he clearly has the means to easily pay

10  restitution to his victims.

11        The Court also gives Defendant credit for the

12  positive impact he may have had on others when speaking

13  regarding diet and exercise and healthy lifestyle.

14        With all due respect to the probation officer, the

15  Court rejects that it should vary downward because he is

16  famous and his notoriety may make it extra stressful when he

17  is in prison.  This defendant's celebrity cuts both ways.  He

18  will likely get special protection when he goes to the Bureau

19  of Prisons.  It is because of his fame and notoriety that he

20  was able to perpetrate some aspects of these crimes.

21  Additionally, other celebrity criminals in this district were

22  not awarded downward variances for this reason, and other sex

23  offenders.  One that comes to mind is Jerry Sandusky, who was

24  never awarded a mitigated sentence for the extra hardships

25  that surround their celebrity.

1    The Court considers the defense argument regarding
2    the character of the child pornography that this defendant
3    possessed contemporaneously with his conviction.  Some of it
4    was of nude children exposing their genitals, and not all of
5    it involved lascivious sex acts.  However, what aggravates the
6    character of the pornography is that this defendant actually
7    knew the children in the homemade pornography.  The youngest
8    victim -- even though he didn't view this.  But because he
9    didn't report Mr. Taylor, a nine-year-old was -- produced
10   homemade pornography.  The oldest was about 16.  Mr. Fogle
11   knew their names, he actually socialized with them at
12   charitable events -- I'm sorry, at social events, and had the
13   opportunity to engage in a more explicit form of fantasy.
14       The guidelines do not account for the number of
15   victims, they do not account for the effect on the victims.
16   One of the victims sent a letter to the Court, and the Court
17   is going to keep this very neutral.  This is from this
18   victim's mother.  "My daughter has been impacted so hard
19   throughout all of this.  She can hardly function and live
20   normally as of late, and it is only getting worse.  The stress
21   and mental state finally took its toll on her and she was
22   contemplating suicide.  She now lives on sleep medication,
23   anxiety medication, and depression medication at the age of
24   now 16.  None of the victims or their families will ever be
25   the same.  This has changed their lives forever.  I could have

1  lost my daughter a couple of weeks ago if she would have went

2  forward with her suicide thoughts and put it in action from

3  the personal turmoil that she now lives daily."

4          The length of time that this went on is also not

5  accounted for in the guidelines.  As the Court stated earlier,

6  Mr. Fogle's perversion began in 2007, way before he met

7  Mr. Taylor in 2011, and went on until 2015, the time that he

8  was arrested and his home was raided.

9          The advisory guideline calls for a sentence of

10  between 135 and 168 months.  The government has agreed to

11  recommend a sentence no greater than 151 months.  Considering

12  the 3553(a) factors set forth in this hearing, a one-level

13  upward variance sentence in the range of 154 to 188 months is

14  appropriate, and a sentence of 188 months, which is only 20

15  months above the advisory guideline range, the Court finds to

16  be reasonable in this case.

17          A fine of $175,000, which is within the advisory

18  guideline range, is ordered.  While Mr. Fogle has agreed to

19  pay restitution to the identified victims of this offense,

20  there are still unidentified victims in the images of

21  commercial child pornography that he received from Mr. Taylor.

22  Criminal fine payments are deposited in a fund which aids

23  crime victims throughout the United States, including victims

24  of sexual offenses.  This fine is ordered to benefit victims

25  of current and future crimes.  Additionally, the imposition of

1    this fine may allow the defendant to participate in prison

2    industries.

3           Supervised release is required by statute.  Based on

4    the serious nature of the offense and to assist this

5    defendant's reentry into society, the Court is going -- has

6    ordered the lifetime supervision.

7           In addition to the mandatory conditions required by

8    statute, the Court has indicated the other conditions of

9    supervision.  And, defense counsel, do you have any objection

10   to any of the conditions of supervised release?

11          MR. MARGOLIS:  No, Your Honor.

12          THE COURT:  Do you, Mr. DeBrota?

13          MR. DeBROTA:  No.  And we would waive any further

14   elaboration of that into the record.  I think you've

15   adequately supplied a basis as part of the overall comments.

16          THE COURT:  Do you agree?

17          MR. MARGOLIS:  Yes, Your Honor.

18          THE COURT:  Thank you.  All right.  Counsel, those

19   are the reasons the Court intends to impose the stated

20   sentence.  Government, do you know of any reason, other than

21   those already argued, why sentence should not be imposed as

22   stated?

23          MR. DeBROTA:  I do not, Your Honor.

24          THE COURT:  And, defense, do you know of any

25   reasons, other than those already stated --

192

1            MR. MARGOLIS:  No, Your Honor.

2            THE COURT:  -- other than you're disappointed, that

3   sentence should not be imposed as stated?

4            MR. MARGOLIS:  No, Your Honor.

5            THE COURT:  The Court now orders the sentence

6   imposed on the defendant, Jared Fogle, as stated.

7            Mr. Fogle, you have a right to appeal your

8   conviction if you believe your guilty plea was somehow

9   unlawful or involuntary or if there's some other fundamental

10  defect in the proceedings that was not waived by your guilty

11  plea.  You also have a right to appeal your sentence if you

12  believe it is contrary to law.

13           With few exceptions, any notice of appeal must be

14  filed within 14 days after written judgment is entered in your

15  case.  If you cannot afford the filing fee or cannot afford to

16  pay a lawyer to appeal for you, a lawyer would be appointed to

17  represent you in the appeal.

18           Now, you can either -- if you intend to appeal, you

19  can either tell me now, and the clerk of court will prepare a

20  notice of appeal for you immediately; or you can tell your

21  lawyers within the next 14 days, and they will make sure they

22  get the appropriate paperwork filed.  Do you understand your

23  appellate rights?

24           THE DEFENDANT:  Yes, ma'am.

25           THE COURT:  And do you want to discuss that with

SA 036

193

1    your lawyers before you make a notice?

2            THE DEFENDANT:  Yes.

3            THE COURT:  Okay.  And for the record, he said,

4    "Yes."

5            Are there any other matters to take up for the

6    government?

7            MR. DeBROTA:  No, Your Honor.

8            THE COURT:  Any other matters for the defense?

9            MR. MARGOLIS:  Yes, Your Honor, if I might.  I know

10   the Court said it's going to recommend that Mr. Fogle receive

11   sex offender treatment during his prison time, and we thank

12   you for that.  We would ask you, also, to recommend that he

13   receive -- get into the RDAP program, because we think that's

14   appropriate, as well, not for drugs, but obviously for alcohol

15   abuse.

16           And we very much request, and I hope you will abide

17   by this, to recommend the institution of Littleton, Colorado,

18   because we have been told by people who know that that has the

19   best sex offender program in the system.  And I'm told by some

20   folks if you put in the words, "strongly recommend," that

21   might have an additional impact with the designating folks

22   over at the BOP.

23           THE COURT:  All right.  You have no objection to

24   either of those recommendations, do you, Mr. DeBrota?

25           MR. DeBROTA:  No, Your Honor.  We do want him

1  remanded in custody, but where the BOP puts him in their

2  recommendations, I would defer to that combination on that

3  point.

4         THE COURT:  All right.  The Court is going to make a

5  recommendation that the Bureau of Prisons designate -- will

6  strongly recommend, if you put that in there, that the Bureau

7  of Prisons designate the facility at Littleton, Colorado; that

8  the defendant be allowed to participate in the RDAP alcohol

9  program and receive sex offender treatment.

10        All right.  The final issue is remand.  The

11 government is asking for remand?

12        MR. DeBROTA:  We are, Your Honor.

13        THE COURT:  Do you want to respond?

14        MR. MARGOLIS:  We spoke of this before, Your Honor.

15 Mr. Fogle has demonstrated, I think quite strongly, that he is

16 not a flight risk.  I would ask that he be allowed to have

17 another, whatever the time period is within which the Bureau

18 of Prisons will designate, hopefully Littleton, to continue

19 his intensive treatment with Dr. May.  And that would be our

20 request.

21        THE COURT:  Okay.  All right.  I'm going to grant

22 the government's request.  I think for the safety of the

23 defendant, as well as the community and those victims, this

24 one little girl is suicidal, that the appropriate thing in

25 this case would be to remand the defendant to the custody of

195

1   the United States Marshal.

2           Are there any other matters for the government?

3           MR. DeBROTA:  No, Your Honor.

4           THE COURT:  Anything else, Defendant?

5           MR. MARGOLIS:  No, Your Honor.

6           THE COURT:  And, defense counsel, you did an

7   excellent job, you were very thorough, but this was a tough

8   one.

9           MR. MARGOLIS:  Thank you, Your Honor.

10          THE COURT:  Okay.  The defendant is remanded to the

11  custody of the marshals, and we are adjourned.

12          THE COURTROOM DEPUTY:  All rise.

13          (Proceedings adjourned at 1:43 p.m.)

14

15                  CERTIFICATE OF COURT REPORTER

16      I, David W. Moxley, hereby certify that the

17  foregoing is a true and correct transcript from

18  reported proceedings in the above-entitled matter.

19

20

21

22  /S/ David W. Moxley_____     November 30, 2015
    DAVID W. MOXLEY, RMR/CRR/CMRS
23  Official Court Reporter
    Southern District of Indiana
24  Indianapolis Division

25

**SA 039**