IN THE

# United States Court of Appeals

## FOR THE SEVENTH CIRCUIT

---

*No. 15-3770*

---

UNITED STATES OF AMERICA,
Plaintiff-Appellee

v.

JARED S. FOGLE,
Defendant-Appellant

On Appeal From the Judgment in A Criminal Case
in the United States District Court,
Southern District of Indiana, Indianapolis Division
The Honorable Tanya Walton Pratt, Judge
District Court Action No. 1:15-cr-00159-TWP-MJD-1

---

## APPENDIX TO BRIEF OF
## DEFENDANT-APPELLANT JARED S. FOGLE

---

Ronald E. Elberger, #6675-49
[*Counsel of Record*]
BOSE MCKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN  46204
(317) 684-5195
(317) 223-0195 (FAX)
relberger@boselaw.com


*Attorneys for Defendant-Appellant
Jared S. Fogle*

# TABLE OF CONTENTS
# TO APPENDIX

**Page**

United States District Court Docket Sheet ...............................................1

Information (August 19, 2015) [Lower Court Docket 1
or "Dkt. 1"].........................................................................................9

Petition to Enter Plea of Guilty and Plea Agreement
(August 19, 2015) [Dkt. 4].........................................................21

Waiver of an Indictment (August 19, 2015) [Dkt. 12] ............................48

Government's Sentencing Memorandum (November 12,
2015) [Dkt. 57].........................................................................49

Defendant's Sentencing Memorandum (November 12,
2015) [Dkt. 58].........................................................................70

    Exhibit A to Sentencing Memorandum, Filings in
    *United States of America v. Richard Zachery Gardner,*
    United States District Court, Southern District of
    Indiana, Indianapolis Division, No. 1:13-MJ-00519,
    1:13-cr-00251 TWP-MJD ...............................................95

    Exhibit B to Sentencing Memorandum, Filings in
    *United States of America v. William Donald Horner,*
    United States District Court. Southern District of Indiana,
    Indianapolis Division, No. 1:13-cr-0124 TWP-TAB.......................133

Sentencing Letters (November 13, 2015) [Dkt. 60] ................................170

Supplement to Defendant's Sentencing Memorandum
(November 17, 2015) [Dkt. 67] .............................................188

    Exhibit A to Supplement, Biography of Dr. John Bradford...........191

    Exhibit B to Supplement, Curriculum Vitae of Dr. John
    Bradford with list of articles intentionally omitted........................194

TABLE OF CONTENTS (cont.)

Exhibit C to Supplement, Curriculum Vitae of Rick L. May, Psy.D., CAC III ..................................................................197

Entry for November 19, 2015, The Honorable Tanya Walton Pratt (November 19, 2015) {Dkt. 74].........................................201

Judgment in a Criminal Case (December 1, 2015) [Dkt. 78] .................204

Circuit Rule 30(d) Statement That All Required Materials Are in Appendix ....................................................................................210

Certificate of Service.............................................................................211

# *** PUBLIC DOCKET ***

APPEAL,REDACT,CLOSED

U.S. District Court
Southern District of Indiana (Indianapolis)
**CRIMINAL DOCKET FOR CASE #: 1:15-cr-00159-TWP-MJD-1**

---

Case title: USA v. FOGLE

Date Filed: 08/19/2015
Date Terminated: 12/01/2015

---

Assigned to: Judge Tanya Walton Pratt
Referred to: Magistrate Judge Mark J.
Dinsmore

Defendant (1)

**JARED S FOGLE**
*TERMINATED: 12/01/2015*

represented by Andrew Richard DeVooght
LOEB & LOEB LLP
321 North Clark Street
Suite 2300
Chicago, IL 60654
312-464-3156
Fax: 312-277-8984
Email: adevooght@loeb.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

Jeremy Margolis
Loeb & Loeb LLP
321 North Clark Street
Suite 2300
Chicago, IL 60654
312-464-3167
Fax: 312-277-8957
Email: jmargolis@loeb.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

Ronald E. Elberger
BOSE MCKINNEY & EVANS, LLP
111 Monument Circle
Suite 2700
Indianapolis, IN 46204
(317)684-5000
Fax: (317)684-5173
Email: relberger@boselaw.com

*ATTORNEY TO BE NOTICED*

Pending Counts                          Disposition

18:2252.F  SEXUAL EXPLOITATION          Defendant Pled guilty to Counts 1 and
OF MINORS (Distribution and Receipt     2. IMPRISONMENT: 188 Months on
of Child Pornography and Conspiracy     each count, to be served concurrently.
to Distribute and Receive Child         SUPERVISED RELEASE: Life on
Pornography)                            each count to be served concurrently.
(1)                                     S.A. Fee: $200.00. FINE: 175,000.
                                        RESTITUTION: $1,400,000.

18:2423.F  COERCION OR                  Defendant Pled guilty to Counts 1 and
ENTICEMENT OF MINOR FEMALE              2. IMPRISONMENT: 188 Months on
(Travel to Engage in Illicit Sexual     each count, to be served concurrently.
Conduct with a Minor and Attempting     SUPERVISED RELEASE: Life on
to Travel to Engage in Illicit Sexual   each count to be served concurrently.
Contact with a Minor)                   S.A. Fee: $200.00. FINE: 175,000.
(2)                                     RESTITUTION: $1,400,000.

Highest Offense Level (Opening)
Felony

Terminated Counts                       Disposition
None

Highest Offense Level (Terminated)
None

Complaints                              Disposition
None

_____

Plaintiff
USA                          represented by  Steven D. DeBrota
                                             UNITED STATES ATTORNEY'S
                                             OFFICE
                                             10 West Market Street
                                             Suite 2100
                                             Indianapolis, IN 46204
                                             (317) 226-6333
                                             Fax: (317) 226-6125
                                             Email: steve.debrota@usdoj.gov
                                             *ATTORNEY TO BE NOTICED*
                                             Designation: Government Attorney

App. 002

| Date Filed | # | Docket Text |
|---|---|---|
| 08/19/2015 | 1 | INFORMATION FILED FELONY as to JARED S FOGLE (1) count(s) 1, 2. Electronic Notice to USM. (DW) (Entered: 08/19/2015) |
| 08/19/2015 | 4 | PETITION TO ENTER PLEA OF GUILTY AND PLEA AGREEMENT (WITH STIPULATED FACTUAL BASIS INCLUDED) as to JARED S FOGLE (1). Electronic Notice to USM.(DW) (Entered: 08/19/2015) |
| 08/19/2015 | 6 | NOTICE OF ATTORNEY APPEARANCE Steven D. DeBrota appearing for USA. (DeBrota, Steven) (Entered: 08/19/2015) |
| 08/19/2015 | 7 | MOTION for Attorney Andrew DeVooght to Appear pro hac vice. (No fee paid with this filing) by JARED S FOGLE (1). (Attachments: # 1 Text of Proposed Order)(Elberger, Ronald) (Entered: 08/19/2015) |
| 08/19/2015 | 8 | MOTION for Attorney Jeremy D. Margolis to Appear pro hac vice. (No fee paid with this filing) by JARED S FOGLE (1). (Attachments: # 1 Text of Proposed Order)(Elberger, Ronald) (Entered: 08/19/2015) |
| 08/19/2015 | 9 | Receipt for Pro Hac filing fee for Jeremy Margolis (no document attached) as to JARED S FOGLE (1) (JRT) (Entered: 08/19/2015) |
| 08/19/2015 | 10 | Receipt for Pro Hac filing fee for Andrew Devooght (no document attached) as to JARED S FOGLE (1) (JRT) (Entered: 08/19/2015) |
| 08/19/2015 | 11 | Summons Returned Executed on 8/19/2015 for 5 Summons Issued in case as to JARED S FOGLE (1). Initial Appearance set for 8/19/2015 at 11:00 AM in room #243, United States Courthouse, 46 E. Ohio Street, Indianapolis, Indiana before Criminal Duty Magistrate Judge. Electronic Notice to USM. (DW) (BAS) (Entered: 08/19/2015) |
| 08/19/2015 | 12 | WAIVER OF INDICTMENT by JARED S FOGLE (1) (BAS) (Entered: 08/19/2015) |
| 08/19/2015 | 13 | ORDER Setting Conditions of Release as to JARED S FOGLE (1). Signed by Magistrate Judge Mark J. Dinsmore on 8/19/2015. Electronic Notice to USM.(BAS) (Entered: 08/19/2015) |
| 08/19/2015 | 14 | NOTICE OF ATTORNEY APPEARANCE: Ronald E. Elberger appearing for JARED S FOGLE (1) (Retained). (Elberger, Ronald) (Entered: 08/19/2015) |
| 08/19/2015 | 15 | ORDER granting 7 Motion for Leave to Appear Pro Hac Vice for Attorney Andrew DeVooght for JARED S FOGLE. Signed by Magistrate Judge Mark J. Dinsmore on 8/19/2015.(BAS) (Entered: 08/20/2015) |
| 08/19/2015 | 16 | ORDER granting 8 Motion for Leave to Appear Pro Hac Vice for Attorney Jeremy Margolis for JARED S FOGLE. Signed by Magistrate Judge Mark J. Dinsmore on 8/19/2015.(BAS) (Entered: 08/20/2015) |
| 08/19/2015 | 18 | MINUTE ORDER for proceedings held before Magistrate Judge Mark J. Dinsmore: Initial Appearance on Information held on 8/19/2015. Defendant JARED S FOGLE (1) appears in person and by retained counsel Jeremy Margolis, Andrew DeVooght and Ronald Elberger. Appearance for the USA |

| | | |
|---|---|---|
| | | by AUSA Steve DeBrota. USPO represented by Brittany Neat. Charges, Rights and Penalties explained. Defendant signed Waiver of Indictment in open court. The case will proceed under the Information as the operative charging instrument. Defendant waived formal arraignment. Parties ordered to meet and confer regarding disclosure of evidence on or before 8/21/15. Government did not seek pretrial detention and defendant ordered released. Defendant is released on recognizance. Signed by Magistrate Judge Mark J. Dinsmore. (BAS) (Entered: 08/21/2015) |
| 08/21/2015 | 19 | SCHEDULING ORDER as to JARED S FOGLE (1). The Court notes that Defendant has filed with the Court his Petition to Enter Plea of Guilty and Request for Presentence Investigation. Plea and Sentence set for 11/19/2015 at 09:00 AM in room #344, United States Courthouse, 46 E. Ohio Street, Indianapolis, Indiana before Judge Tanya Walton Pratt. Signed by Judge Tanya Walton Pratt on 8/21/2015. (MAC) (Entered: 08/21/2015) |
| 08/27/2015 | 20 | ENTRY in case as to JARED S FOGLE (1) - The Court has received a letter regarding the Defendant. The Clerk of the Court shall docket the letter as a restricted access filing - submission of sentencing letter - and distribute a copy to counsel of record only. Signed by Judge Tanya Walton Pratt on 8/27/2015. (MAC) (Entered: 08/28/2015) |
| 09/11/2015 | 22 | ORDER as to JARED S FOGLE (1)- The Court has received two letters regarding the Defendant in this matter. The Clerk of the Court shall docket the letters as a submission of letters. Signed by Judge Tanya Walton Pratt on 9/11/2015. (CBU) (Entered: 09/11/2015) |
| 09/11/2015 | 23 | Letter from Thomas S. Ford in case as to JARED S FOGLE (1) regarding sentencing (Attachments: # 1 Envelope) (CBU) (Entered: 09/11/2015) |
| 09/11/2015 | 24 | Motion and Letter from Scott Petrie in case as to JARED S FOGLE (1) regarding sentencing (Attachments: # 1 Envelope) (CBU) Modified on 9/11/2015 (CBU). (Entered: 09/11/2015) |
| 09/17/2015 | 26 | MOTION to Maintain Document Under Seal 25 SEALED MOTION by JARED S FOGLE (1). (Attachments: # 1 Proposed Order)(Margolis, Jeremy) (Entered: 09/17/2015) |
| 09/17/2015 | 28 | ORDER granting 26 Motion to Maintain Document Under Seal 25 SEALED MOTION as to JARED S FOGLE (1). Signed by Judge Tanya Walton Pratt on 9/17/2015.(TRG) (Entered: 09/17/2015) |
| 09/18/2015 | 30 | Submission of Signature Requirement re 26 MOTION to Maintain Document Under Seal 25 SEALED MOTION by JARED S FOGLE (1) (Attachments: # 1 Proposed Order)(DeVooght, Andrew) (Entered: 09/18/2015) |
| 10/05/2015 | 32 | MOTION to Maintain Document Under Seal 31 Unopposed MOTION to Modify Conditions of Release by JARED S FOGLE (1). (Attachments: # 1 Text of Proposed Order Proposed Order)(DeVooght, Andrew) (Entered: 10/05/2015) |
| 10/06/2015 | 34 | ORDER granting Defendant's 32 Motion to Maintain Document Under Seal |

| | | |
|---|---|---|
| | | as to JARED S FOGLE (1). Signed by Judge Tanya Walton Pratt on 10/6/2015.(MAC) (Entered: 10/06/2015) |
| 10/21/2015 | <u>38</u> | MOTION to Maintain Document Under Seal <u>37</u> SEALED MOTION *UNOPPOSED MOTION TO DISCLOSE THE PRESENTENCE INVESTIGATION REPORT* by JARED S FOGLE (1). (Attachments: # <u>1</u> Propsed Order)(DeVooght, Andrew) (Entered: 10/21/2015) |
| 10/22/2015 | <u>40</u> | ORDER granting <u>38</u> Motion to Maintain Document Under Seal <u>37</u> SEALED MOTION *UNOPPOSED MOTION TO DISCLOSE THE PRESENTENCE INVESTIGATION REPORT* as to JARED S FOGLE (1). Signed by Judge Tanya Walton Pratt on 10/22/2015.(JLS) (Entered: 10/23/2015) |
| 10/23/2015 | <u>43</u> | ORDER denying Scott Petrie's Pro Se <u>24</u> Motion for Amicus Curiae as to JARED S FOGLE (1). Copy to Petrie via U.S. Mail. Signed by Judge Tanya Walton Pratt on 10/23/2015.(MAC) (Entered: 10/23/2015) |
| 10/26/2015 | <u>44</u> | ORDER - The Court has received a letter regarding the Defendant in this matter. The Clerk of the Court shall docket the letter as a submission of letter. Signed by Judge Tanya Walton Pratt on 10/26/2015. (JLS) (Entered: 10/26/2015) |
| 10/26/2015 | <u>45</u> | Submission of Letter regarding the Defendant. (Attachments: # <u>1</u> Envelope) (JLS) (Entered: 10/26/2015) |
| 10/27/2015 | <u>47</u> | MOTION to Maintain Document Under Seal <u>46</u> Unopposed SEALED MOTION *to Modify Conditions of Release* by JARED S FOGLE (1). (Attachments: # <u>1</u> Propsed Order)(DeVooght, Andrew) (Entered: 10/27/2015) |
| 10/30/2015 | <u>48</u> | MOTION to Withdraw Document <u>46</u> Unopposed SEALED MOTION *to Modify Conditions of Release* by JARED S FOGLE (1). (Attachments: # <u>1</u> Proposed Order)(DeVooght, Andrew) (Entered: 10/30/2015) |
| 11/02/2015 | <u>53</u> | ORDER - This matter remains set for change of plea and sentencing hearing on November 19, 2015 at 9:00 a.m. in Courtroom 344, Birch Bayh Federal Building and United States Courthouse, Indianapolis, Indiana. The doors to the Courtroom will open to parties and counsel at 8:15 a.m. The Courtroom will open to the public at 8:40 a.m. Sentencing memorandums, if any, are due no later than Thursday, November 12, 2015. Anyone found with an electronic device turned on inside Courtroom 344, will be escorted from the building and may be subject to criminal contempt. Anyone attending the hearing in Courtroom 344 is expected to stay for the duration of the proceedings. A live video and audio feed will be streamed into an overflow room (Room 434). Photographing, filming or recording of the proceedings in either the Courtroom or the overflow room 434 is prohibited. Signed by Judge Tanya Walton Pratt on 11/2/2015. (JLS) (Entered: 11/03/2015) |
| 11/02/2015 | <u>54</u> | ORDER - Pursuant to Federal Rule of Criminal Procedure 53, photographing and broadcasting of Court proceedings including remote broadcast, is prohibited. Anyone caught photographing, filming or recording the change of plea and sentencing proceedings either within Courtroom 344 or the overflow room 434 will be removed from the courthouse, may have their |

| | | |
|---|---|---|
| | | device confiscated, and may be subject to contempt of court. Signed by Judge Tanya Walton Pratt on 11/2/2015. (JLS) (Entered: 11/03/2015) |
| 11/02/2015 | 55 | ORDER granting 48 Motion to Withdraw Document 46 as to JARED S FOGLE (1). Signed by Magistrate Judge Mark J. Dinsmore on 11/2/2015. (BAS) (Entered: 11/04/2015) |
| 11/03/2015 | 50 | ORDER - The Court has received two letters regarding the Defendant in this matter. The Clerk of the Court shall docket the letters as a submission of letters. Signed by Judge Tanya Walton Pratt on 11/3/2015. (JLS) (Entered: 11/03/2015) |
| 11/03/2015 | 51 | Submission of Letter regarding the Defendant. (Attachments: # 1 Envelope) (JLS) (Entered: 11/03/2015) |
| 11/03/2015 | 52 | Submission of Letter regarding the Defendant. (Attachments: # 1 Envelope) (JLS) (Entered: 11/03/2015) |
| 11/12/2015 | 57 | SENTENCING MEMORANDUM by USA as to JARED S FOGLE (1) (DeBrota, Steven) (Entered: 11/12/2015) |
| 11/12/2015 | 58 | SENTENCING MEMORANDUM by JARED S FOGLE (1) (Attachments: # 1 Exhibit A, # 2 Exhibit B)(DeVooght, Andrew) (Entered: 11/12/2015) |
| 11/13/2015 | 59 | SCHEDULING ORDER as to JARED S FOGLE (1)- This matter is scheduled for an attorneys only telephonic conference on Monday, November 16, 2015 at 11:00 a.m. Counsel shall call the number provided by the Courtroom Deputy Clerk in a separate email. Signed by Judge Tanya Walton Pratt on 11/13/2015. (TRG) (Entered: 11/13/2015) |
| 11/16/2015 | 61 | MINUTE ENTRY for attorneys only telephonic conference held before Judge Tanya Walton Pratt on 11/16/2015: Parties appeared by counsel. Discussion was held regarding the logistics of the upcoming hearing. This matter remains set for change of plea and sentencing hearing on 11/19/15 at 9:00 a.m. in Courtroom 344. Signed by Judge Tanya Walton Pratt. (Court Reporter David Moxley) (TRG) (Entered: 11/16/2015) |
| 11/16/2015 | 63 | MOTION for Stay of Execution of Sentencing and Motion for Reconsideration of Amicus Curiae Status, filed by Scott Petrie. (TRG) (Entered: 11/16/2015) |
| 11/16/2015 | 64 | Entry on Motion to Reconsider and Motion to Stay - The Court has received and has considered Scott Petrie's Motion for Reconsideration of Amicus Curiae Status and his Temporary Motion for Stay of Execution of Sentencing. Mr. Petrie's materials differ in form but not in substance from his prior motion and several letters concerning the disposition of this case. His materials will be treated as such and the motions he has tendered are DENIED. Signed by Judge Tanya Walton Pratt on 11/16/2015.(TRG) (Entered: 11/16/2015) |
| 11/16/2015 | 65 | DECORUM ORDER as to JARED S FOGLE (1) - For the orderly progression of proceedings in this matter, the Court orders as follows: Change of plea and sentencing hearing remains set 11/19/2015 at 9:00 a.m. in Courtroom 344. The Courtroom will open to the public at 8:40 a.m. A live |

| | | video and audio feed will be streamed into an overflow room, Courtroom 307 which will open at 8:00 a.m. Signed by Judge Tanya Walton Pratt on 11/16/2015. (Please see order for further details)(TRG) (Entered: 11/16/2015) |
|---|---|---|
| 11/16/2015 | 66 | ENTRY DIRECTING TREATMENT OF DOCUMENT - Further proceedings associated with the question of a guardian ad litem will be docketed in the newly-opened Miscellaneous matter, which shall remain under seal except to case participants in No. 1:15-cr-159-TWP-MJD. The motion [dkt 56] shall therefore be terminated on the criminal docket. Signed by Judge Tanya Walton Pratt on 11/16/2015. (JLS) (Entered: 11/17/2015) |
| 11/17/2015 | 67 | SENTENCING MEMORANDUM by JARED S FOGLE (1) (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(DeVooght, Andrew) (Entered: 11/17/2015) |
| 11/17/2015 | 68 | ORDER as to JARED S FOGLE (1) - Pursuant to Federal Rule of Criminal Procedure 53, photographing and broadcasting of Court proceedings including remote broadcast, is prohibited. Anyone caught photographing, filming or recording the change of plea and sentencing proceedings either within Courtroom 344 or the overflow room 307 will be removed from the courthouse, may have their device confiscated, and may be subject to contempt of court. Signed by Judge Tanya Walton Pratt on 11/17/2015. (TRG) (Entered: 11/17/2015) |
| 11/19/2015 | 74 | MINUTE ENTRY for change of plea and sentencing held before Judge Tanya Walton Pratt on 11/19/2015: Defendant JARED S FOGLE (1) appeared in person and by retained counsel Andrew Richard DeVooght, Jeremy Margolis, and Ronald E. Elberger. Appearance for the USA by AUSA Steve DeBrota. USPO represented by Stephanie Ivie. Factual Basis contained in plea agreement. Testimony and evidence presented. Argument heard. Sentence imposed. Judgment forthcoming. Defendant is remanded to custody of USM. Signed by Judge Tanya Walton Pratt. (Court Reporter David Moxley) (TRG) (Entered: 11/19/2015) |
| 11/24/2015 | 75 | ORDER granting 47 Motion to Maintain Document Under Seal 46 Unopposed SEALED MOTION to Modify Conditions of Release as to JARED S FOGLE (1). Signed by Magistrate Judge Mark J. Dinsmore on 11/24/2015.(CBU) (Entered: 11/24/2015) |
| 11/30/2015 | 76 | TRANSCRIPT of Plea and Sentencing Hearing as to JARED S FOGLE (1) held on 11/19/2015 before Judge Tanya Walton Pratt. (195 pages.) Court Reporter/Transcriber: David Moxley (Telephone: (317) 916-8209). Please review Local Rule 80-2 for more information on redaction procedures. Redaction Statement due 12/21/2015. Release of Transcript Restriction set for 2/29/2016. (Moxley, David) (Entered: 11/30/2015) |
| 11/30/2015 | 77 | NOTICE of FILING of OFFICIAL TRANSCRIPT of Plea and Sentencing Hearing held before Judge Tanya Walton Pratt on 11/19/2015 in case as to JARED S FOGLE (1) (Moxley, David) (Entered: 11/30/2015) |
| 12/01/2015 | 78 | JUDGMENT as to JARED S FOGLE (1). Count(s) 1, 2, Defendant Pled guilty to Counts 1 and 2. IMPRISONMENT: 188 Months on each count, to |

| | | |
|---|---|---|
| | | be served concurrently. SUPERVISED RELEASE: Life on each count to be served concurrently. S.A. Fee: $200.00. FINE: 175,000. RESTITUTION: $1,400,000. Signed by Judge Tanya Walton Pratt on 12/1/2015. Electronic Notice to USM.(JLS) (Entered: 12/01/2015) |
| 12/07/2015 | 80 | NOTICE *of Non-Redaction* by JARED S FOGLE (1) re 76 Transcript (Elberger, Ronald) (Entered: 12/07/2015) |
| 12/08/2015 | 81 | REDACTION STATEMENT in case as to JARED S FOGLE (1) re 76 Transcript filed by attorney Steven D. DeBrota (DeBrota, Steven) (Entered: 12/08/2015) |
| 12/14/2015 | 82 | NOTICE OF APPEAL by JARED S FOGLE (1) re 78 Judgment. (Filing fee $505, receipt number 0756-3705362) (Elberger, Ronald) (Entered: 12/14/2015) |
| 12/14/2015 | 83 | DOCKETING STATEMENT as to JARED S FOGLE (1) re 82 Notice of Appeal (Elberger, Ronald) (Entered: 12/14/2015) |
| 12/14/2015 | 84 | DESIGNATION OF RECORD ON APPEAL by JARED S FOGLE (1) re 82 Notice of Appeal (Attachments: # 1 **RESTRICTED TO CASE PARTICIPANTS** Exhibit A Designation of Record)(Elberger, Ronald) Modified on 12/14/2015 (LBT). (Entered: 12/14/2015) |
| 12/14/2015 | 85 | Unopposed MOTION *to Retain the Record Temporarily in the District Court for Use in Preparing the Appeal* by JARED S FOGLE (1). (Attachments: # 1 Text of Proposed Order)(Elberger, Ronald) (Entered: 12/14/2015) |
| 12/14/2015 | 86 | PARTIES' SHORT RECORD as to JARED S FOGLE (1) re 82 Notice of Appeal - Instructions for Attorneys and Designation of Record information attached. **Docket Sheet containing sealed entries emailed to counsel of record.** (A paper copy of the Short Record was sent on 12/14/2015 to the defendant, via US Mail, at *FCI Englewood Federal Correctional Institution*) (MAG) (Entered: 12/14/2015) |

Case #: 1:15-cr-00159-TWP-MJD-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,   ) | |
|   ) | |
| Plaintiff,   ) | |
|   ) | |
| v.   ) | Cause No.   1:15-CR |
|   ) | |
| JARED FOGLE,   ) | **1:15-cr-0159** TWP -MJD |
|   ) | |
| Defendant.   ) | |

## INFORMATION

The United States Attorney charges that:

### General Allegations for All Counts

At times material to these charges:

### Definitions

1.     The term "minor" was defined as a person under the age of 18 years. 18 U.S.C. § 2256(1).

2.     The term "sexually explicit conduct" was defined to include actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) masturbation; or (c) lascivious exhibition of the genitals or pubic area of any person. 18 U.S.C. § 2256.

1

3.     The term "visual depiction" was defined as to include undeveloped film and videotape, data stored on computer disk or by other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format. 18 U.S.C. § 2256(5).

### Defendant JARED FOGLE

4.     The Defendant, JARED FOGLE, was a resident of the Southern District of Indiana.   The Defendant regularly used Internet email accounts, social networking websites containing advertisements for services, online messaging services, and text messaging.   All of these activities used facilities of interstate or foreign commerce.

5.     The Defendant would travel frequently from Indiana to other states or countries for business purposes or personal vacations.

6.     The Defendant was the organizer of a charitable foundation in Indiana, which held events there and in other states.   He was also a spokesperson for a business having multiple worldwide retail locations, which he frequently visited for marketing purposes.

### Co-Conspirator Russell Taylor

7.     Russell Taylor ("Taylor") was a resident of the Southern District of Indiana, who worked for the charitable foundation organized by the Defendant.

2

Taylor was also the Defendant's close personal friend and they communicated on a daily basis through direct discussions, text messages, and emails.

8.    Taylor frequently accompanied the Defendant on various business trips in the United States and other countries.

9.    Taylor was paid a salary by the charitable foundation.

**Minor Victims 1 through 12**

10.    The pseudonyms "Minor Victim 1" through "Minor Victim 12" represent minor girls and boys, who lived in the Southern District of Indiana.

11.    Between in or about March 2011 and on or about January 30, 2015, Taylor used "Minor Victim 1" through "Minor Victim 12" to engage in sexually explicit conduct for the purpose of secretly producing visual depictions of such conduct.   This included multiple video and image files.   These images and videos included a lascivious exhibition of the genitals or pubic area of the minors, while some material also included other sexually explicit conduct depending upon the minors involved and precise content.

12.    "Minor Victim 1" through "Minor Victim 12" did not know that they were being secretly filmed in Taylor's current and former residences.   Rather, the images or videos were produced using multiple hidden cameras concealed in clock radios positioned so that they would capture the minors changing clothes, showering, bathing, or engaging in other activities.   Taylor distributed some of these sexually explicit images and videos of minors to other persons.

3

App. 011

13.    On multiple occasions between in or about March 2011 and on or about April 29, 2015, the Defendant received from Taylor images and videos of nude or partially clothed minors engaging in sexually explicit conduct.   The Defendant knew that the minors depicted in these images or videos were under the age of 18, including minors as young as approximately 13-14 years.

14.    The Defendant knew of Taylor's relationship or association with some of the minors, including in some instances, their actual names, and where they lived.   In some cases, the Defendant met the minors during social events in Indiana.

15.    The Defendant and Taylor discussed among themselves that Taylor was secretly producing nude images and videos of minors in Taylor's current and former residences in the Southern District of Indiana.   In some of these conversations, the Defendant made comments approving of this activity and discussed some of these minors by name.

16.    The Defendant chose to benefit from production of the nude images and videos by obtaining access to a significant amount of such material over the time period set forth in Paragraph 13, above.   However, the Defendant did not obtain access to all of the material Taylor produced.   If the Defendant had promptly reported to law enforcement what he knew of these activities, then the sexually explicit material involving later victims would not have been produced.

4

### Commercial Child Pornography

17.    Through Internet file distribution sources, Taylor obtained and provided the Defendant with other visual depictions of minors engaging in sexually explicit conduct.    This child pornography was commercially made by other persons.

18.    The presently unidentified minors in these images and videos were as young as approximately six years of age and they were engaged in sexually explicit conduct.    The material was produced outside the United States and has been seen in other previous investigations unrelated to the Defendant and Taylor.

### Child Pornography Exchanges by Taylor and the Defendant

19.    At various times, Taylor stored child pornography in his current and former residences and on his person using computer equipment, storage devices, cameras and other media.

20.    The Defendant's distribution and receipt of images or videos was accomplished using a means or facility of interstate or foreign commerce, and in or affecting interstate or foreign commerce, by any means including by computer.

21.    On multiple occasions, the Defendant obtained access to the images or videos by viewing them on a computer provided by Taylor.    He also received some images and videos through text messages and a thumb drive.

App. 013

22.    On one occasion between in or about October 2014 and on or about April 29, 2015, the Defendant displayed to another person the commercial child pornography he obtained from Taylor on a thumb drive.

23.    The visual depictions the Defendant distributed and received were produced using camera equipment, computers, cell phones, and storage media manufactured outside the State of Indiana.   The production of the visual depictions involved the use of a minor engaging in sexually explicit conduct and the visual depictions were of a minor engaged in sexually explicit conduct.

24.    The Defendant knew that at least one of the minors in such visual depictions was a minor and knew that the visual depictions were of such minor engaged in sexually explicit conduct.

## COUNT 1

**Distribution and Receipt of Child Pornography and
Conspiracy to Distribute and Receive Child Pornography
18 U.S.C. §§ 2252(a)(2) and (b)(1)
Minor Victims 1 though 12**

25.    The General Allegations in Paragraphs 1 through 24 are alleged in this Count.

26.    On multiple occasions between in or about March 2011 and on or about April 29, 2015, in the Southern District of Indiana and elsewhere, the Defendant, JARED FOGLE, knowingly distributed and received, and unlawfully conspired to distribute and receive with Russell Taylor and other persons

6

known and unknown to the United States Attorney, any visual depiction using any means or facility of interstate or foreign commerce or that had been mailed, or had been shipped or transported in or affecting interstate or foreign commerce, or which contained materials which had been mailed or so shipped or transported, by any means including by computer, or knowingly reproduced any visual depiction for distribution using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or through the mails, the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and such visual depiction is of such conduct, that being, one or more images and videos of the Minor Victims listed above, and other minors depicted in commercial child pornography.

All of which is a violation of Title 18, United States Code, Sections 2252(a)(2) and (b)(1).

## COUNT 2

**Travel to Engage in Illicit Sexual Conduct with a Minor and
Attempting to Travel to Engage in Illicit Sexual Conduct with a Minor
18 U.S.C. §§ 2423(b) and (e)
Minor Victims 13 and 14**

The United States Attorney further charges that:

27.    The General Allegations in paragraphs 4 through 6 are alleged in this Count.

7

**App. 015**

### Definitions

28.    The term "illicit sexual conduct" was defined as any commercial sex act with a person under 18 years of age; or the production of child pornography. 18 U.S.C. § 2423(f).

29.    The term "commercial sex act" was defined as any sex act for which anything of value is given to or received by any person. 18 U.S.C. §§ 2423(f) and 1591(e)(3).

30.    "Minor Victim 13" and "Minor Victim 14" were girls under the age of 18 years engaged in commercial sex trafficking through an Internet website containing advertisements for erotic services.

### Defendant's Commercial Sexual Activity with Minors

31.    Beginning in or about 2007 and continuing until on or about June 23, 2015, the Defendant repeatedly engaged in Internet social networking and traveled for the purpose of engaging in commercial sexual activity.

32.    The Defendant did this using an Internet email account, social networking websites containing advertisements for escorts or erotic services, online messaging services, and text messages.   All of these activities used facilities of interstate or foreign commerce.

### Minor Victims 13 and 14

33.    Between in or about 2010 and in or about February 2013, the Defendant traveled from Indiana to New York City in order to engage in

8

commercial sexual acts with minors under the age of 18 years, including Minor Victim 13 and Minor Victim 14.

34.    On or about November 3, 2012, the Defendant engaged in sexual acts with Minor Victim 13 in exchange for an amount of U.S. Currency.    This occurred at the Plaza Hotel, 768 5th Ave, New York, NY, when she was then 17 years of age.    The Defendant was a guest at the hotel.

35.    The next day, on or about November 4, 2012, the Defendant sent text messages to Minor Victim 13 offering to pay her a fee if she could find him an underage girl to engage in commercial sex acts with him.    During these discussions, the Defendant stated that he would accept a 16 year old girl, while stating that the younger the girl, the better.

36.    On or about December 27, 2012, the Defendant sent text messages to Minor Victim 13 offering again to pay her a fee if she could find him a young minor to engage in commercial sex acts with him.    During these discussions, the Defendant stated that he would really make it worth her while if she could find one.    The Defendant also provided his email address and asked Minor Victim 12 to send him some pictures of herself to him.

37.    At the Defendant's request, on or about December 27, 2012, Minor Victim 13 sent a message to the Defendant's email account containing three attached images.    One of these images showed the nude genitals or pubic area of Minor Victim 13.    The Defendant acknowledged receiving these pictures in a

9

text message and expressed his approval of the content.    Minor Victim 13 was then 17 years of age.

38.    On or about January 11, 2013, the Defendant engaged in sexual acts with Minor Victim 13 in exchange for an amount of U.S. Currency.   This occurred at the Ritz Carlton Hotel, 2 West St, New York, NY, when she was then 17 years of age. The Defendant was a guest at the hotel.

39.    The various meetings between the Defendant and Minor Victim 13 were arranged through text messages and Internet communications which provided sexually explicit details and financial terms.

40.    Minor Victim 13 provided the Defendant with her true age when they first met and he then knew that she was a minor before her 18th birthday in April 2013.

41.    At other times, the Defendant asked Minor Victim 13 to provide him with access to other underage minors for purposes of commercial sexual activity.

### Other Solicitations and Activities

42.    Between in or about June 2011 and in or about 2013, the Defendant repeatedly sent text messages to several escorts other than Minor Victim 13 soliciting them to provide him with access to minors as young as 14 to 15 years for purposes of commercial sex acts with him.   He did this only

after engaging in commercial sexual acts with the escorts to insure that they were not undercover police officers.

43.   The Defendant repeatedly made travel plans in order to have his business trips coincide with his pursuit of commercial sex acts.

44.   The Defendant used facilities of interstate commerce to provide his contact information and a telephone number in communications with prostitutes.

### Communications with Non-Prostitutes

45.   At various times between in or about 2007 and in or about 2013, the Defendant communicated with several adult women who were not escorts and expressed his desire to engage in sexual acts with young minors.   In some cases, he stated that he has done so in the past.

46.   Between in or about November 3, 2012, and on or about January 11, 2013, at Zionsville, in the Southern District of Indiana, the Defendant, JARED FOGLE, travelled in interstate commerce, and attempted to do so, for the purpose of engaging in any illicit sexual conduct, as defined in Title 18, United States Code, Section 2423(f), with another person, that being, commercial sexual acts with Minor Victim 13, a minor, and commercial sexual acts with other minors.

11

All of which is a violation of Title 18, United States Code, Sections 2423(b) and (e).

JOSH J. MINKLER
United States Attorney

STATE OF INDIANA    )
                  )    SS:
COUNTY OF MARION   )

Steven D. DeBrota, being first duly sworn, upon his oath deposes and says that he is an Assistant United States Attorney in and for the Southern District of Indiana, that he makes this affidavit for and on behalf of the United States of America and that the allegations in the foregoing Information are true as he is informed and verily believes.

Steven D. DeBrota
Senior Litigation Counsel

Subscribed and sworn to before me, a notary public, on this 19th day of August, 2015.

Carrie A. Griffin
Notary Public

My Commission Expires:        January 21, 2016

My County of Residence:        Hancock

12

App. 020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

2016 AUG 19  AM 8: 05

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JARED FOGLE, | ) |
| | ) |
| Defendant. | ) |

1:15-cr-0159 TWP -MJD

## PETITION TO ENTER PLEA OF GUILTY AND PLEA AGREEMENT

The United States of America, by counsel, Josh J. Minkler, United States Attorney for the Southern District of Indiana, and Steven D. DeBrota, Senior Litigation Counsel ("the Government"), and the Defendant, JARED FOGLE ("the Defendant"), in person and by counsel, Jeremy D. Margolis and Andrew DeVooght, hereby inform the Court that a Plea Agreement has been reached in this case pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). The following are its terms and conditions:

### Part 1:  Guilty Plea and Charges

1.      **Plea of Guilty:** The Defendant will waive his right to indictment by a grand jury and petition the Court for leave to enter, and then enter, a plea of guilty to the following offenses charged in the Information:

A.      Count 1 which charges that the Defendant committed the offense of distributing and receiving visual depictions of minors engaging

in sexually explicit conduct, and conspiring with others to do so, in violation of 18 U.S.C. § 2252(a)(2).

B.     Count 2 which charges that the Defendant traveled in interstate commerce in order to engage in unlawful commercial sexual acts with minors, and attempted to do so, in violation of 18 U.S.C. § 2423(b).

2.     **Count 1: 18 U.S.C. § 2252(a)(2)(Child Pornography)**

A.     **Potential Penalties**: This offense may be punished by a term of imprisonment of between 60 and 240 months, a fine of up to $250,000, and a term of supervised release following any term of imprisonment for at least five (5) years and up to the life of the Defendant.

B.     **Elements of the Offense**: To sustain this offense, the Government must prove the following propositions beyond a reasonable doubt:  (1) the Defendant knowingly distributed or received, or conspired to distribute or receive, a visual depiction using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce, by any means including by computer; (2) the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct; (3) such visual depiction was of a minor engaged in sexually explicit conduct; and (4) the Defendant knew that at least one of the persons in such visual depiction was a minor and knew that the visual depiction was of such minor engaged in sexually explicit conduct.

2

3.    **Count 2: 18 U.S.C. § 2423(b)(Travel to Engage in illicit Sexual Conduct with Minors)**

A.    **Potential Penalties**: This offense may be punished by a term of imprisonment of up to 360 months, a fine of up to $250,000, and a term of supervised release following any term of imprisonment for at least five (5) years and up to the life of the Defendant.

B.    **Elements of the Offense**: To sustain this offense, the Government must prove the following propositions beyond a reasonable doubt: (1) the Defendant traveled in interstate commerce; and (2) the Defendant's purpose in traveling in interstate commerce was to engage in a commercial sex act with a minor. A "commercial sex act" means any sex act for which anything of value is given to or received by any person. A "sexual act" means penetration, however slight, of the vulva or anus by the penis; or contact between the mouth and the penis, vulva, or anus; penetration, however slight, of the anal or genital opening of another by a hand, a finger, or any object with an intent to abuse, humiliate, harass, or degrade, arouse or gratify the sexual desire of any person.

## Part 2: General Provisions

4.    **Sentencing Court's Discretion Within Statutory Range:** The Defendant agrees and understands that: (A) the Court will use its discretion to fashion a sentence within the statutory range(s) set forth above; (B) the Court will consider the factors set forth in 18 U.S.C. § 3553(a) in determining the appropriate sentence within the statutory range(s); (C) the Court will also consult and take into account the United States Sentencing Guidelines

App. 023

("Sentencing Guidelines" or "U.S.S.G.") in determining the appropriate sentence within the statutory range(s); (D) the Sentencing Guidelines are not mandatory or binding on the Court, but are advisory in nature; (E) restitution may be imposed; (F) by pleading "Guilty" to more than one offense (Count), the Court may order the sentences to be served consecutively one after another; (G) the final determination concerning the applicable advisory guideline calculation, criminal history category, and advisory sentencing guideline range will be made by the Court; and (H) by pleading "Guilty", the Court may impose the same punishment as if the Defendant had plead "Not Guilty", had stood trial and been convicted by a jury.

5.    **Sentencing Court Not Bound by Guidelines or Recommendations:**  The Defendant acknowledges that this Plea Agreement is governed by Federal Rule of Criminal Procedure 11(c)(1)(B) and that the determination of the Defendant's sentence is within the discretion of the Court. The Defendant understands that if the Court decides to impose a sentence higher or lower than any recommendation of either party, or determines a different advisory Sentencing Guideline range applies in this case, or decides to impose a sentence outside of the advisory Sentencing Guideline range for any reason, then the Defendant will not be permitted to withdraw this plea of guilty for that reason and will be bound by this plea of guilty.

6.    **Plea Agreement Based on Information Presently Known:**  The Defendant recognizes and understands that this Plea Agreement is based upon

4

the information presently known to the United States Attorney for the Southern District of Indiana.

**7.    No Protection From Prosecution for Unknown or Subsequent Offenses:**  The Defendant acknowledges and agrees that nothing in this Plea Agreement shall protect the Defendant in any way from prosecution for any offense not specifically covered by this Agreement, or not known to the United States Attorney for the Southern District of Indiana at this time.  The Defendant further acknowledges and agrees that nothing in this Agreement shall protect the Defendant in any way from prosecution for any offense committed after the date of this agreement.

**8.    Rights Under Rule 11(b), Fed.R.Crim.P.:**  The Defendant understands that the Government has the right, in a prosecution for perjury or false statement, to use against the Defendant any statement that the Defendant gives under oath during the guilty plea colloquy.  The Defendant also understands that the Defendant has the right: (A) to plead not guilty, or having already so pleaded, the right to persist in that plea; (B) to a jury trial; (C) to be represented by counsel--and if necessary have the Court appoint counsel--at trial and at every other stage of the proceedings, including appeal; and (D) to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses.  The Defendant also understands that the

Constitution guarantees the right to be considered for release until trial[1]; and if found guilty of the charge(s), the right to appeal the conviction on such charge(s) to a higher court. The Defendant understands that if the Court accepts this plea of guilty, the Defendant waives all of these rights.

### Part 3:  Sentence of Imprisonment

9.     **Sentencing Recommendation Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B):** The parties have **not** agreed upon a specific sentence.  The parties reserve the right to present evidence and arguments concerning what they believe to be the appropriate sentence in this matter.

A.     **Government's Recommendation:**  The Government has agreed not to ask for a sentence greater than **151 months of imprisonment.**

B.     **Defendant's Recommendation:**  The Defendant has agreed <u>not</u> to ask for a sentence below **60 months of imprisonment.**

C.     **Length of Supervised Release:**  Each party may present evidence and arguments concerning the length of the period of supervised release to follow the term of imprisonment.  The parties understand that this period of supervised release may be ordered for a period of **at least five (5) years and of up to the life of the Defendant.**  Each party may present evidence and arguments for a specific period of supervised release in this range.

10.   **Conditions of Supervised Release:**  The parties understand and agree that the Court will determine which standard and special conditions of

---

[1] 18 U.S.C. §§ 3141-3156, <u>Release and Detention Pending Judicial Proceedings.</u>

supervised release to apply in this case. The parties reserve the right to present evidence and arguments concerning these conditions. However, to assist the Court, the parties have carefully considered the factors listed in 18 U.S.C. § 3553 and jointly recommend that the Court impose the special conditions of supervised release set forth below, in addition to any other standard and special conditions which the Court deems appropriate in this case.

11.   **Pornography Prohibition:**  The Defendant shall not possess any obscene material, child pornography, child erotica, or nude images of minors. Any such material found in the Defendant's possession shall be considered contraband and may be confiscated by the probation officer. The parties agree that possessing such material would be detrimental to the Defendant's ability to avoid committing child pornography or related sex crimes in the future. The parties also make this recommendation based upon their knowledge of his history and the criminal conduct in this case.

12.   **Sexual Disorders Treatment:**  The Defendant shall participate in a program of treatment for sexual disorders, including periodic polygraph examinations, as directed by the probation officer. The Court should authorize the release of the Presentence Investigation Report and available psychological evaluations to the mental health provider, as approved by the probation officer. The parties agree that such treatment would be beneficial to the Defendant and help him to avoid committing child pornography crimes or related sex crimes in

App. 027

the future.  The parties also make this recommendation based upon their
knowledge of his history and the criminal conduct in this case.

**13.   No Unsupervised Meetings or Communications with Minors:**
The Defendant shall not have any unsupervised meetings, non-incidental
communications, activities, or visits with any minor, unless they have been
disclosed to and approved by the probation officer.  In determining whether to
approve such activities involving members of the Defendant's family, the
probation officer shall determine if the Defendant has notified the persons
having custody of any such minors about the conviction in this case and the
fact that the Defendant is under supervision.  If this notification has been
made, and if the person having custody consents to these activities, then this
condition is not intended to prevent approval of the activity.  The parties agree
that this condition is appropriate based upon the Defendant's history and
criminal conduct in this case.  This condition is also intended to protect the
public.

**14.   Activity Restriction:**  The Defendant shall not be employed in any
positon, or participate as a volunteer in any activity, that involves
unsupervised meetings, non-incidental communications, activities, or visits
with minors except as disclosed to the Probation Officer and approved by the
Court.  The parties agree that this condition is appropriate based upon the
Defendant's history and offending in this case.  This condition is also intended
to protect the public.

15. **Sex Offender Registration:** The Defendant shall register as a sex offender with the appropriate authorities of any state in which the Defendant resides, is employed, or attends school as required by both federal and state law, pursuant to 18 U.S.C. § 3583(d) and the Sex Offender Registration and Notification Act (SORNA) at 42 U.S.C. §16913, et seq. The parties agree that this condition is appropriate based upon the Defendant's history and offending in this case. It is also required by sex offender registration laws.

16. **Consent to Searches:** The Defendant shall submit to the search by the probation officer of his person, vehicle, office/business, residence, and property, including any computer systems, telephones and Internet enabled devices, whenever the probation officer has a reasonable suspicion that a violation of a condition of supervision or other unlawful conduct may have occurred or be underway involving the Defendant. Other law enforcement may assist as necessary. The Defendant shall submit to the seizure of contraband found by the probation officer. The Defendant shall warn other occupants the premises may be subject to searches. The parties agree that this condition is appropriate based upon the Defendant's history and criminal conduct in this case. This condition is also intended to protect the public and reduce the chance the Defendant will commit future crimes.

17. **Computer Monitoring:** The Defendant shall consent, at the direction of the probation officer, to having installed on the Defendant's computers, telephones, electronic devices, and any hardware or software, systems to monitor his use of these items. Monitoring will occur on a random

9

App. 029

and/or regular basis. The Defendant will warn other occupants or users of the existence of the monitoring hardware or software. To promote the effectiveness of this monitoring, the Defendant shall disclose in advance of any use of all cellular phones, electronic devices, computers, and any hardware to the probation officer and may not access or use any undisclosed equipment. The parties agree that this condition is appropriate based upon the Defendant's history and criminal conduct in this case. This condition is also intended to protect the public and reduce the chance the Defendant will commit future crimes.

18.    **DNA Sample:** The Defendant shall provide a DNA sample as directed by the probation officer. The parties agree that this condition is required by federal law and is appropriate based upon the Defendant's history and offending in this case. This condition is also intended to protect the public and reduce the chance the Defendant will commit future crimes.

19.    **Modification of Conditions:** The parties understand and agree that the facts and circumstances of this case, including the Defendant's history, show that these terms should last for the entire term of supervised release. However, the parties understand that the Defendant may petition the Court to modify these conditions as described in 18 U.S.C. § 3583, and the final decision to modify such terms would lie with the Court.

20.    **No Appeal of Supervised Release Term and Conditions:** As discussed in greater detail below, the parties' reservation of the rights to present evidence and arguments to the Court concerning the length and

conditions of supervised release is not intended to be inconsistent with the
Waiver of Appeal specified below, which includes a waiver of the right to appeal
to the length and conditions of the period of supervised release.

### Part 4: Financial Conditions

21.    **Mandatory Special Assessment:**  The Defendant will pay a total of
$200 on the date of sentencing or as ordered by the Court to the Clerk, United
States District Court, which amount represents the mandatory special
assessment fee imposed pursuant to 18 U.S.C. § 3013.

22.    **Fine:**  Both parties reserve the right to present evidence and
argument concerning the amount of the fine.  However, the government will not
ask for a fine greater than that provided by the advisory fine range provided in
the Sentencing Guidelines and determined by the Court.

23.    **Restitution:**  The parties understand that federal law requires
restitution to the minor victims in the offenses charged in Counts 1 and 2, who
were the victims in the relevant child pornography or were victims of travel for
commercial sex with minors.

24.    **$1,400,000 in Agreed Amount:**  The Defendant will pay $100,000
each to Minor Victim 1 through Minor Victim 14, for a total of $1,400,000 in
agreed restitution.  These funds are intended to allow these victims to obtain
counseling, support, treatment, or other assistance related to their
victimization.

25.    **Other Presently Unidentified Victims:**  The parties understand
that the Government has not yet determined through its investigation whether

11

App. 031

any other victim(s) in the relevant child pornography or were victims of travel for commercial sex with minors can be identified or will seek such restitution.

26.    **Payment Terms:**  To make restitution payments, the Defendant agrees to deposit in his counsel's client trust account the full amount of restitution within two business days of the filing of this agreement ($1,400,000).  These funds will then be distributed within 10 days thereafter or as later directed by the Court.  The parties intend to distribute these funds to Minor Victim 1 through Minor Victim 14 during the initial 10 day period as soon as appropriate arrangements can be made to accomplish such payments and protect the victims from any potential misuse of such funds.

27.    **Amount of Fine:**  The Government agrees to consider the amount of restitution paid in making its fine recommendation.  However, the Government retains the right to determine what effect, if any, the amount of restitution may have in its recommendation.

28.    **Other Claims:**  Nothing in this agreement prevents any identified or unidentified victim of these offenses from seeking additional restitution if they choose to do so and can demonstrate losses higher than the amount of the agreed restitution.  However, at the present time, the Government does not have any such victims presently identified.

29.    **Forfeiture:**  The Defendant agrees to forfeit $50,000 to the United States on the date of sentencing as a substitute for the seizure of the vehicles, personal property or other assets he used in connection with these offenses.

30. **Obligation to Pay Financial Component of Sentence**: If the Defendant is unable to pay any financial component of the Defendant's sentence on the date of sentencing, then the Defendant agrees that the payment of the financial component should be a condition of supervised release as well as an ordered payment through the Inmate Financial Responsibility Program of the U.S. Bureau of Prisons. The Defendant would have a continuing obligation to pay the financial component of the sentence. The Defendant further agrees that as of the date of filing this Plea Agreement the Defendant will provide all requested financial information to the Financial Litigation Unit of the United States Attorney's Office for the Southern District of Indiana for use in the collection of any fines and restitution imposed by the Court and authorizes the Financial Litigation Unit to obtain credit reports relating to the Defendant for use in the collection of any fines and restitution imposed by the Court.

## Part 5:  Factual Basis for Guilty Plea

31. The parties stipulate and agree that the following facts establish a factual basis for the Defendant's plea(s) of guilty to the offense(s) set forth in Paragraph 1, above, and that the Government would be able to establish the following facts beyond a reasonable doubt in the event this cause was to proceed to a jury trial.

32. **Count 1:** On multiple occasions between in or about 2011 and in or about April 2015, the Defendant received visual depictions of numerous minors engaging in sexually explicit conduct from Russell Taylor. The

13

Defendant knew that the minors depicted in these images or videos were under the age of 18 years. He also knew Taylor's relationship or association with such minors, including in many instances, their actual names. In some cases, the Defendant met the minors during social events in Indiana.

33.     The Defendant and Taylor discussed among themselves the fact that Taylor was secretly producing sexually explicit images and videos of minors in Taylor's current and former residence in the Southern District of Indiana. The Defendant chose to benefit from such production by obtaining access to a significant amount of such material over the time period. If the Defendant had promptly reported what he knew of these activities, then the sexually explicit material involving later victims would not have been produced. However, the Defendant did not obtain access to all of the material Taylor produced.

34.     None of the minors in the images or videos were aware that they were being filmed. Rather, the images or videos were produced using multiple hidden cameras set up in Taylor's residences. Taylor also obtained and provided the Defendant with child pornography obtained through Internet sources which may be classified as commercial material produced by other persons. The unidentified victims in these images and videos were as young as approximately six years of age. During the investigation, the child pornography was recovered during a search of Taylor's Indianapolis residence, where it was found in computer equipment, storage devices, cameras and other media analyzed by the Cybercrime Section of the Indiana State Police.

35.    All of the images and videos included a lascivious exhibition of the genitals or pubic area of the relevant minor, while some material also included other sexually explicit conduct depending upon the minor involved.

36.    The Defendant's distribution and receipt of images or videos was accomplished using a means or facility of interstate or foreign commerce, and in or affecting interstate or foreign commerce, by any means including by computer.  On one occasion, the Defendant displayed the child pornography to another person.

37.    On multiple occasions, the Defendant obtained access to the images or videos by viewing them on a computer provided by Taylor.  He also received some images and videos through text messages and a thumb drive.

38.    The visual depictions were produced using camera equipment, computers, cell phones, and storage media manufactured outside the State of Indiana.

39.    The production of the visual depictions involved the use of a minor engaging in sexually explicit conduct and the visual depictions were of a minor engaged in sexually explicit conduct.

40.    The Defendant knew that at least one of the minors in such visual depiction was a minor and knew that the visual depiction was of such minor engaged in sexually explicit conduct.

41.    **Count 2**:  Between in or about 2010 and in or about February 2013, the Defendant traveled from Indiana to New York City in order to engage in commercial sexual activity with minors under the age of 18 years, including

15

Minor Victims 13 and 14. He repeatedly asked Minor Victim 13 and several other persons to provide him with access to minors as young as 14 years for purposes of commercial sex acts with him.

42. The Defendant engaged in sexual intercourse with Minor Victim 13 in exchange for an amount of U.S. Currency. This occurred at the Plaza Hotel in New York City on or about November 4, 2012 when she was then 17 years of age.

43. In or about January 2013, the Defendant engaged in sexual intercourse with Minor Victim 13 in exchange for an amount of U.S. Currency. This occurred at the Ritz Carlton Hotel in New York City when she was then 17 years of age.

44. In an interview with the investigating agents, Minor Victim 13 reported that, before November 2012, the Defendant engaged in commercial sex acts with her on three occasions in New York City when she was approximately 16 years of age.

45. The meetings between the Defendant and Minor Victim 13 were arranged through text messages and Internet communications which provided explicit details in each instance. Records of these activities were found in text messages, travel records, images, and hotel records obtained through the investigation, include the search of the Defendant's Zionsville, Indiana residence.

46. During the investigation, Minor Victim 13 identified the Defendant as being the person engaging in the activities during an interview by the

investigation agents. Her cellular phone was also found to contain the Defendant's contact information and relevant communications. She indicated that she discussed her true age with the Defendant during their meetings and that he then knew that she was a minor. In addition, at various times, the Defendant asked her to provide him with access to other underage minors for purposes of commercial sexual activity.

47.    In an interview with the investigating agents, Minor Victim 13 stated that the Defendant also engaged in sexual intercourse with Minor Victim 14 in exchange for an amount of U.S. Currency. This occurred at a hotel in New York City when Minor Victim 14 was then approximately 16 years of age.

48.    During the investigation, the Government obtained information and audio recordings from witnesses in Florida, Georgia, and Washington State showing that the Defendant repeatedly discussed with them his interest in engaging in commercial sex acts with minors or stated that he has done so in the past. The recordings were produced beginning in or about 2007 and continuing thereafter.

49.    During the investigation, the Government obtained information from text messages and other documents in the Defendant's cellular phones that he repeatedly discussed with numerous prostitutes in other places, including Richmond, Virginia; Kansas City, Missouri; and Las Vegas, Nevada, his interest in paying them a finder's fee to provide him with access to minors for commercial sex acts. He did this only after engaging in commercial sex acts with these prostitutes and knowing that they were not police officers.

App. 037

50.   **Summary:**  The information provided above is only a summary of the Government's evidence and it reserves the right to present any additional evidence at the time of sentencing.  This Plea Agreement is not intended to foreclose the presentation of such evidence.

### Part 6:  Other Conditions

51.   **Background Information:**  The Defendant acknowledges and understands that no limitation shall be placed upon the Court's consideration of information concerning the background, character, and conduct of the Defendant for the purpose of imposing an appropriate sentence.  The Defendant acknowledges and understands that the Government is not prohibited from providing information concerning background, character, and conduct of the Defendant for the purpose of recommending or advocating an appropriate guideline calculation and sentence.

52.   **Good Behavior Requirement:**  The Defendant agrees to fully comply with all conditions of release imposed by the Court during all stages of this case.  If the Defendant fails to fully comply with such conditions, then the Government may withdraw from this Agreement.

53.   **Compliance with Federal and State Laws:**  The Defendant understands that the obligations of the Government in this Plea Agreement are expressly contingent upon the Defendant abiding by federal and state laws.

54.   **Proffer Agreement:**  Nothing in this Plea Agreement supersedes or removes any provision or protection contained in the Defendant's Proffer Agreement, including the government's ability to use the information derived

App. 038

directly or indirectly from the proffer session in the event of a breach or a rejection of the plea agreement.

### Part 7:  Sentencing Guidelines

55.  **Guideline Computations:**  The parties reserve the right to present evidence and argument concerning the appropriate advisory Sentencing Guideline range for these offenses.  The parties have discussed this computation, but have not agreed upon the advisory calculation.  They agree that the Court will make this determination.

56.  **Acceptance of Responsibility:**  To date, the Defendant has demonstrated a recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct.  Based upon the Defendant's willingness to accept a Plea Agreement and enter a plea of guilty to the criminal conduct noted in this agreement, the Government agrees that the Defendant should receive a two (2) level reduction *provided* the Defendant satisfies the criteria set forth in Guideline § 3E1.1(a) up to and including the time of sentencing.  The Defendant timely notified the Government of Defendant's intention to enter a plea of guilty, thereby permitting the Government and the Court to allocate their resources efficiently.  After the Defendant enters a plea of guilty, the government intends to file a motion pursuant to U.S.S.G. § 3E1.1(b) requesting that the Court decrease the offense level by one (1) additional level.  The parties reserve the right to present evidence and arguments concerning the Defendant's acceptance of responsibility at the time of sentencing.

19

### Part 8:  Waiver of Right to Appeal

57.   **Direct Appeal:**  The Defendant understands that the Defendant has a statutory right to appeal the conviction and sentence imposed and the manner in which the sentence was determined.  Acknowledging this right, and in exchange for the concessions made by the Government in this Plea Agreement, the Defendant expressly waives the Defendant's right to appeal the conviction imposed in this case on any ground, including the right to appeal conferred by 18 U.S.C. § 3742.  The Defendant further agrees that in the event the Court sentences the Defendant to **151 months of imprisonment or any lesser term**, regardless of the Defendant's criminal history category or how the sentence is calculated by the Court, then the Defendant expressly waives the Defendant's right to appeal the sentence imposed in this case on any ground, including the right to appeal conferred by 18 U.S.C. § 3742. This waiver of appeal specifically includes all provisions of the guilty plea and sentence imposed, including the length and conditions supervised release and the amount of any fine.

58.   **Collateral Attack:**  Additionally, the Defendant expressly agrees not to contest, or seek to modify, the Defendant's conviction or sentence or the manner in which either was determined in any proceeding, including but not limited to, an action brought under 18 U.S.C. § 3582 or 28 U.S.C. § 2255.  As concerns this Section 3582 waiver, should the United States Sentencing Commission and/or Congress in the future amend the Sentencing Guidelines to lower the guideline range that pertains to the Defendant's offense(s) and

explicitly make such an amendment retroactive, the government agrees that it will not assert this waiver as a bar to the Defendant filing a motion with the district court pursuant to 18 U.S.C. § 3582(c)(2). However, if the Defendant files such a motion, the government reserves the right to oppose the motion on any other grounds, and reserves the right to assert this waiver as a bar to an appeal from the district court's decision regarding the motion.   As concerns the Section 2255 waiver, the waiver does not encompass claims, either on direct or collateral review, that the Defendant received ineffective assistance of counsel.

    **59.**   **No Appeal of Supervised Release Term and Conditions:**  The parties' reservation of the rights to present evidence and arguments in this Court concerning the length and conditions of supervised release is not intended to be inconsistent with the Waiver of Appeal specified above, which includes a waiver of the right to appeal to the length and conditions of the period of supervised release.

### Part 9:  Presentence Investigation Report

    **60.**   The Defendant requests and consents to the commencement of a presentence investigation by probation officers of the United States District Court for purposes of preparing a Presentence Investigation Report at this time and prior to the entry of a formal plea of guilty.

    **61.**   The Defendant further requests and consents to the review of the Defendant's Presentence Investigation Report by a Judge, Defendant's counsel,

App. 041

the Defendant, and the government at any time, including prior to entry of a
formal plea of guilty.

### Part 10:  Immigration Consequences

**62.**    The Defendant recognizes that pleading guilty may have
consequences with respect to the Defendant's immigration status if the
Defendant is not a citizen of the United States.  Under federal law, a broad
range of crimes are removable offenses, including the offenses to which the
Defendant is pleading guilty.  The Defendant also recognizes that removal will
not occur until service of any sentence imposed in this case has been
completed.  Removal and other immigration consequences are the subject of a
separate proceeding, however, and the Defendant understands that no one,
including the Defendant's attorney or the Court, can predict to a certainty the
effect of the conviction in this case on the Defendant's immigration status.  The
Defendant nevertheless affirms that the Defendant wants to plead guilty
regardless of any immigration consequences that this plea may entail, even if
the consequence is the Defendant's removal from the United States.

### Part 11:  Statement of the Defendant

**63.**    By signing this document, the Defendant acknowledges the
following:

**A.**    I have received a copy of the Information and have read and
discussed it with my attorneys.  I believe and feel that I understand every
accusation made against me in this case. I wish the Court to omit and consider

22

App. 042

as waived by me all readings of the Information in open Court, and all further proceedings including my arraignment.

     **B.**    I have told my attorneys the facts and surrounding circumstances as known to me concerning the matters mentioned in the Information, and believe and feel that my attorneys are fully informed as to all such matters. My attorneys have since informed, counseled and advised me as to the nature and cause of every accusation against me and as to any possible defenses I might have in this case.

     **C.**    I have read the entire Plea Agreement and discussed it with my attorneys.

     **D.**    I understand all the terms of the Plea Agreement and those terms correctly reflect the results of plea negotiations.

     **E.**    Except for the provisions of the Plea Agreement, no officer or agent of any branch of government (federal, state or local), nor any other person, has made any promise or suggestion of any kind to me, or within my knowledge to anyone else, that I would receive a lighter sentence, or probation, or any other form of leniency, if I would plead "Guilty". I am prepared to accept any punishment permitted by law which the Court may see fit to impose. However, I respectfully request that the Court consider in mitigation of punishment at the time of sentencing the fact that by voluntarily pleading "Guilty" I have saved the Government and the Court the expense and inconvenience of a trial. I understand that before it imposes sentence, the Court will address me

personally and ask me if I wish to make a statement on my behalf and to
present any information in mitigation of punishment.

  **F.**   I am fully satisfied with my attorneys' representation during all
phases of this case. My attorneys have done all that anyone could do to
counsel and assist me and that I fully understand the proceedings in this case
against me.

  **G.**   I make no claim of innocence, and I am freely and voluntarily
pleading guilty in this case.

  **H.**   I am pleading guilty as set forth in this Plea Agreement because I
am guilty of the crimes to which I am entering my plea.

  **I.**   I understand that if convicted, a Defendant who is not a United
States Citizen may be removed from the United States, denied citizenship, and
denied admission to the United States in the future.

  **J.**   My attorneys have informed me, and I understand, that I have the
right to appeal any conviction and sentence that I receive, unless I have waived
my right to appeal as part of this Plea Agreement. If I have not waived my right
to appeal, I understand that I must file a Notice of Appeal within fourteen (14)
days of the entry of the judgment in this case; I further understand that the
Clerk of the Court will prepare and file a Notice of Appeal on my behalf if I ask
that to be done. I also understand that the United States has the right to
appeal any sentence that I receive under this Plea Agreement.

  **K.**   My attorneys have informed me, and I understand, that if I provide
or cause to be provided materially false information to a judge, magistrate-

judge, or probation office, then Section 3C1.1 of the Sentencing Guidelines allows the Court to impose a two level increase in the offense level.

**L.**    No trial date of this cause has yet been scheduled. However, I request that any such date be continued to permit the Court to consider this proposed guilty plea agreement. I further understand that any delay resulting from the Court's consideration of this proposed guilty plea agreement, up to and including the date on which the Court either accepts or rejects my guilty plea, will be excluded in computing the time within which trial of this cause must commence, pursuant to 18 U.S.C. § 3161(h)(1)(G).

### Part 12:  Certificate of Counsel

**64.**    By signing this document, the Defendant's attorneys and counselors certify as follows:

**A.**    We have read and fully explained to the Defendant all the accusations against the Defendant which are set forth in the Information in this case;

**B.**    To the best of our knowledge and belief each statement set forth in the foregoing petition to enter plea of guilty and plea agreement is in all respects accurate and true;

**C.**    The plea of "Guilty" as offered by the Defendant in the foregoing petition to enter plea of guilty and plea agreement accords with our understanding of the facts as related to us by the Defendant and is consistent with our advice to the Defendant;

App. 045

D.    In our opinion, the Defendant's waiver of all reading of the Information in open court, and in all further proceedings, including arraignment as provided in Rule 10, Fed.R.Crim.P., is voluntarily and understandingly made; and we recommend to the Court that the waiver be accepted by the Court;

E.    In our opinion, the plea of "Guilty" as offered by the Defendant in the foregoing petition to enter plea of guilty and plea agreement is voluntarily and understandingly made and we recommend to the Court that the plea of "Guilty" be now accepted and entered on behalf of the Defendant as requested in the foregoing petition to enter plea of guilty and plea agreement.

App. 046

## Part 13:  Final Provision

**65.    Complete Agreement:** The Defendant acknowledges that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this document, to induce the Defendant to plead guilty.  This document is the complete and only Plea Agreement between the Defendant and the United States Attorney for the Southern District of Indiana and is binding only on the parties to the plea agreement, supersedes all prior understandings, if any, whether written or oral, and cannot be modified except in writing, signed by all parties and filed with the Court, or on the record in open court.

Respectfully submitted,

JOSH J. MINKLER
United States Attorney

_Aug 19, 2015_
DATE

_Steven D. DeBrota_
Senior Litigation Counsel

_8-19-15_
DATE

_Joe H. Vaughn_
First Assistant United States Attorney

_Aug 19 2015_
DATE

_Jared Fogle_
Defendant

_Aug 19, 2015_
DATE

_Jeremy D. Margolis_
Counsel for Defendant

_Aug 19, 2015_
DATE

_Andrew DeVooght_
Counsel for Defendant

27

AO 455 (Rev. 01-09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Indiana

**FILED**

AUG 19 2015

U.S. CLERK'S OFFICE
INDIANAPOLIS, INDIANA

United States of America )
v. )
JARED S. FOGLE )
*Defendant* )

Case No.   1:15-CR-

## 1:15-cr-0159 TWP-MJD

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: *Aug 19, 2015*

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

JEREMY D. MARGOLIS and ANDREW R. DEVOOGHT
*Printed name of defendant's attorney*

*19 AUG 2015*

_____
*Judge's signature*

*Mark J. Dinsmore, U.S. Magistrate Judge*
*Judge's printed name and title*

App. 048

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

UNITED STATES OF AMERICA

v.

JARED FOGLE

1:15-CR-159-TWP-MJD

## Government's Sentencing Memorandum

The United States of America, by counsel, Josh J. Minkler, United States Attorney, and Steven DeBrota, Senior Litigation Counsel, hereby submits its Sentencing Memorandum in advance of the hearing presently scheduled for November 19, 2015.   For the reasons stated below, and the additional grounds the Unites States intends to present during the sentencing hearing, the Court should impose a sentence of 151 months of imprisonment, followed by a lifetime period of supervised release.   Upon conviction, he faces a mandatory minimum sentence of 5 years of imprisonment, followed by supervised release for at least 5 additional years and up to the rest of his life. *See* 18 U.S.C. § 2252(a)(2) and (b)(1).   He will also have to register as a sex offender in any state where he works or resides.

### Introduction

Over a long period of time, Defendant Jared Fogle ("Fogle") engaged in two different types of criminal activity targeting children:   He committed some criminal acts on his own, while doing others with a willing and dangerous co-conspirator.   Fogle's actions greatly impacted the lives of 14 children and their families.   He denied them their vital and personal right to grow up free

from sexual exploitation and interference by adults.   In the process, he committed serious federal crimes, which deserve a sentence within the advisory Sentencing Guideline range.

The United States' request for a 151 month sentence falls squarely within the advisory range of 135-168 months provided by a correct application of the United Sentencing Guidelines to the facts of this case.   This accuracy of this advisory guideline range is uncontested and includes consideration of all applicable facts, special offense characteristics, and sentencing enhancements, including the five (5) level increase for repeat and dangerous sex offenders involving minors in USSG § 4B1.5(b).   As the Court knows, the advisory range is the starting point of the statutory sentencing analysis. 18 U.S.C. § 3553.

### Part 1:   Overview of Fogle's Case

Fogle's crimes are described in Counts 1 and 2 of the Information in this matter and the detailed agreed factual basis in the Plea Agreement.   He has fully and timely accepted responsibility for these crimes, thereby insuring that his many victims and their families receive a much quicker endpoint to their suffering than would be the case if he contested his guilt at trial.   In crimes against children cases, abating the ongoing harm to the victims is a paramount value.   Because this case has received substantial public attention, and because Fogle was a public figure, their lives will never be the same and their

right to privacy will never be fully protected.   In some cases, this unrelenting pressure has caused substantial anguish to these victims, who simply want to be left alone and go on with their lives.   A public trial would only have made this process of healing even more protracted and difficult, without changing the outcome.

This Sentencing Memorandum will provide details concerning Fogle's crimes and the results of the extensive federal, state, and local investigation of his conduct.   Consideration of these facts is appropriate under the statutory sentencing factors in 18 U.S.C. § 3553, which include the nature and circumstances of the offense, and the defendant's history and character.

First, as charged in Count 1, on multiple occasions, Fogle obtained and viewed child pornography given to him by his co-conspirator, Russell Taylor ("Taylor").   Fogle did this to fuel his sexual fantasies involving children.   The child pornography Fogle viewed included homemade material involving victims in Indiana as well as commercially produced files Taylor obtained through internet sources.

### A.    Taylor's Homemade Child Pornography

The victims in the homemade videos and images had different ages when the material was produced.   The youngest victim was 9 years old (Minor Victim 12), while the oldest was about 16 years old.   All of the homemade images and videos included a lascivious exhibition of the genitals or pubic area of each victim.   Additionally, some material also included sexually explicit conduct of the victims.   None of them were aware that they were being filmed.   Rather, the

videos and images were secretly produced using multiple hidden cameras set up in Taylor's residences and operating at various times between March 2011 and April 2015.

### B.    Commercial Child Pornography

The commercial child pornography was more sexually explicit, including actual or simulated sexual intercourse.   This material came from internet sources and may be classified as commercial child pornography produced by other offenders, some of whom likely had a financial motivation.   This child pornography is believed to have been produced in Eastern Europe by unknown persons based upon some labels in the images or videos.   The unidentified victims in these images and videos were as young as approximately 6 years old. Their names will likely never be known and this material has been seen before in multiple cases.   Fogle and Taylor did not produce any of this material, nor did they have any role in its commercial sale by the original producers.

### C.    Recovered Evidence

During the investigation, the commercial and homemade child pornography was first recovered during a search of Taylor's Indianapolis residence, where hundreds of videos were found in computer equipment, storage devices, cameras, and other media analyzed by the Cybercrime Section of the Indiana State Police ("ISP Cybercrime Section").   During the search of Fogle's home, two images of child pornography were recovered from his cellular phone as part of a text message from Taylor to Fogle.   This victim was 14 years old. Fogle received these images, but did not produce them.

### D.    The Indiana Investigation

The search of Taylor's residence resulted from information a concerned Indiana resident gave to the ISP Cybercrime Section.   The Indiana resident told the ISP Cybercrime Section that the resident received text messages from Taylor discussing his sexual interest in children and bestiality.    This information formed the basis of a state search warrant.   Later, while serving the search warrant at Taylor's residence, child pornography was discovered.   The resulting investigation of Taylor then addressed his collection of child pornography through further search warrants.

The Taylor investigation was expanded to include people associating with him.   This included Fogle, whose criminal activity was initially discovered through text messages recovered from Taylor's cellular phones.   The federal investigation of Taylor and Fogle in Indiana arose from this discovery, not information from persons in other states that was only received in Indiana after Taylor's residential search in April 2015.

### E.    Relationship between Fogle and Taylor

The conspiracy between Fogle and Taylor grew from their personal and business relationships.   Fogle frequently traveled with Taylor, including trips to foreign countries.   They met frequently because they both worked for, or on behalf of, Fogle's charitable foundation.   Their communications included the extensive use of text messaging on cellular phones and email, in addition to meetings in person and through telephone calls.   Through these contacts with Taylor, Fogle knew that the children depicted in the homemade images or videos

were under the age of 18 years.   He also knew of Taylor's family relationship or association with the victims, including in many instances, their actual names. In some cases, Fogle met the children during social events in Indiana with Taylor and his family.   However, these meeting were social and did not include any sexual activity of any kind at any point.

### F.     Scope of Investigation

Over the course of the present investigation, the federal, state and local investigators in Indiana conducted multiple search warrants, analyzed seized computer data, and visually examined each and every one of the many images and videos recovered during the investigation.   The purpose of this work was to locate and identify every one of the victims where possible.   This was an exacting process that involved the careful consideration of the data in each file, together with any metadata, and the other evidence in the case.   All of the email accounts of the relevant persons were examined.

A fair estimate of the amount of data recovered and examined would be approximately 5.6 terabytes recovered from the following:

- 16 smartphones

- 5 basic cell phones

- 5 MP3 players

- 5 tablet devices

- 6 laptops

- 1 desktop

- 6 loose hard drives (including Externals)

- 5 cameras (including hidden cameras)

- 10 flash drives

- 10 memory cards (SD & micro SD)

- 46 CDs

- 22 DVDs

The amount of data included at least the following:

- 159,634 SMS & MMS messages

- 27,140 emails, not including Taylor's account

- 47,623 images

- 3,394 videos

These large numbers are fair estimates—the amount of data may be higher than this, but all this work provided the solid evidentiary foundation for the charging decisions against Fogle and Taylor.   The analysis took several weeks and led to the identification of 12 victims of the child pornography offense living in Indiana (Minor Victims 1 through 12), together with two further victims of child prostitution (Minor Victims 13 and 14) then living in New York.

Fogle is not shown in any of the child pornography, nor does the United States believe that he produced any of the recovered material himself.   This conclusion is consistent with the victim interviews because none of those persons stated that the recovered child pornography involving them was photographed or filmed by Fogle.   The homemade child pornography was also made at Taylor's residence when Fogle was not present.

G.     **The Fogle and Taylor Conspiracy (Count 1)**

By 2011 at the latest, Fogle learned that Taylor was sexually attracted to children.   Fogle knew that Taylor would obtain and view child pornography from the internet.   Then, in March 2011, Fogle learned that Taylor was secretly filming Minor Victim 1 in Taylor's residence.   The videos involving Minor Victim 1 included sexually explicit conduct produced inside that location.   Minor Victim 1 was then a 14 year old girl working for Taylor at his residence.

In the years that followed, Taylor provided minors with drugs, alcohol, and occasionally money to induce them to engage in sex acts.   Taylor also engaged in sexual acts with two of them when they were 14 years old.   However, the child pornography recovered during the investigation does not show any sexual activity between Taylor and these victims.   Fogle could have prevented this, even if he did not actively participate in Taylor's other sexual activities.

Fogle decided not to report his knowledge of Taylor's sexual exploitation of Minor Victim 1 to law enforcement officials, a decision giving Taylor the opportunity to sexually exploit Minor Victims 1 through 12 during the four years that followed.   Fogle's decision was motivated by his desire to see the child

pornography Taylor produced.   Taylor stored this material on his computers or

storage media.   However, Fogle never met Minor Victim 1 in person.

Fogle essentially rationalized that Taylor was going to secretly produce

more material involving the minors in his home anyway, so he might as well

benefit from the production by seeing the results, which interested him.   Fogle's

decision and the many resulting later actions were the genesis of the conspiracy

to distribute and receive child pornography.

On various occasions between March 2011 and February 2015, Taylor

provided Fogle with child pornography images and videos through text messages

and by providing him with a thumb drive containing files.   Taylor would also

provide Fogle with access to a computer containing child pornography.   This

activity formed the basis for their conspiracy to distribute and receive child

pornography with each other.   Two of these files were found in Fogle's

telephone, together with the actual first name of the Minor Victim depicted.

The United States has concluded that Fogle received access to the child

pornography involving Minor Victims 1 through 8 (all of whom are female and at

least 12 years old), but did not receive the material involving Minor Victims 9

through 12 (males and the youngest female).   Taylor kept the rest of the

material from Fogle.   Nevertheless, Fogle could have prevented the sexual

exploitation of all of these victims had he promptly reported what he knew about

Taylor's criminal activities.   Rather than doing this, he continued to obtain child

pornography he received from Taylor, including some of the new material Taylor was producing involving later victims.

### H.    Fogle's Child Prostitution Activities (Count 2)

Between 2010 and February 2013, Fogle traveled to other states and engaged in commercial sexual acts with underage minors.   This included Minor Victims 13 and 14, who were then 16-17 years old.   Both were living in New York City.   Fogle paid them to engage in sexual acts with him in hotel rooms. However, Fogle did this on his own and without any participation by Taylor.

Fogle's sexual activities with underage minors was initially discovered in Indiana through analysis of the text messages recovered from his cellular phones, three of which were found during the search of his Zionsville residence on July 7, 2015.   These messages and related emails show that he repeatedly found adult escorts through the Internet and discussed with them his interest in paying them a finder's fee to provide him with access to underage minors for commercial sex acts.   He did this in several places, including Richmond, Virginia; Kansas City, Missouri; and Las Vegas, Nevada.   His pattern was to do this only after engaging in commercial sex acts with these escorts and knowing that they were not police officers.   In most cases, Fogle was unsuccessful in finding an underage minor for commercial sex, either because the adult escorts refused to do this or because they said that they did not have any underage associates.

The United States examined all of Fogle's text messages covering a

multi-year period, conducted many interviews, and determined that Fogle

engaged in commercial sexual acts with Minor Victims 13 and 14 in New York

City.   This behavior, which included interstate travel to New York City, is

charged in Count 2.   Federal law makes it a crime to engage in commercial

sexual activity with a minor under the age of 18 years.   For non-commercial

sexual acts, the relevant age of consent in Indiana is 16 years.

## I.      The Investigation of Fogle's Activities

In addition to the charged behavior, Fogle has discussed sexual activity

involving minors with several other adults around in the United States over an

extensive period of time.   The United States has very carefully examined all of

these communications and searched for evidence corroborating the statements

Fogle made to these persons concerning what he said was his prior sexual

activity involving children.   For example, if he described engaging in sexual

activity in a certain geographical area, the investigators tried to locate any child

generally described in the communication or otherwise try to prove that Fogle's

Actually engaged in the behavior he described.   However, this process was

difficult because none of these communications included the specific name or

address of a child victim.

During the investigation, the United States obtained information from

adult witnesses in Florida, Georgia, and Oregon showing that Fogle repeatedly

discussed with them his interest in engaging in sex acts with children or stated

that he had done so in the past.   For two of these people (Person 1 and Person 2),

there were recordings or text messages that were produced at various times

between 2007 and 2009.    No child pornography relating to these communications was ever identified as having been produced or recovered during the investigation.    Nor did Person 1 or Person 2 receive any child pornography from Fogle, or witness him doing anything improper with a child.

**J.    Information Provided By Person 1**

According to the analysis of all of the telephone conversations between Person 1 and Fogle between July 31, 2007 and January 26, 2009, Fogle stated that he was sexually attracted to children as young as 8 years old and wanted to engage in sexual acts with them.    These calls included highly inappropriate and disturbing references to Person 1's young children and their friends.    In addition, Fogle told Person 1 about traveling to foreign countries to engage in sex with children.    Fogle stated that he has done this in the past, meaning the period before the conversations in the recordings.

Person 1 was an adult in Florida, who reported Fogle statements to the FBI in Florida in 2007 and then participated in consensually monitored telephone calls over this period of time, ending in January 2009.    The Indiana investigators first spoke to Person 1 on July 9, 2015, after they learned of her existence and then obtained the recordings she provided to the FBI in Florida. She provided very helpful information concerning her calls with Fogle.    She described the process that led to her reporting his activities to the FBI in Florida and their subsequent investigation.    The FBI in Indiana listened to all of these recordings, as summarized above.    All of the recordings predated the crimes charged in this case, which began in March 2011.    Fogle never mentioned

App. 060

Taylor at any point in these records and the conspiracy with him had not yet been formed.

The information and recordings provided by Person 1 provide important corroborative evidence of Fogle's motive and intent to engage in the criminal activity charged in this case. They help to explain, for example, why he would want to view child pornography or engage in sexual acts with an underage minor. However, Fogle never actually traveled to Florida to meet Person 1's children for sexual purposes or sent any child pornography to Person 1. Moreover, there is no evidence showing that Fogle engaged in sexual acts with a preteen minor in a foreign country, as he stated in the recordings. The evidence involving foreign travel only includes encounters with adult prostitutes, none of whom were preteens. Therefore, while Fogle clearly discussed his desire to engage in illegal sexual acts with Person 1's children or other minors during the telephone calls, the United States cannot prove that he went beyond talking about these things. He never traveled to Florida or met the children involved for this purpose.

**K.      Information Provided by Persons 2 and 3**

Additionally, Fogle separately discussed his sexual attraction to underage minors with Persons 2 and 3, who were also then residents of Florida, and Person 4, a resident of Oregon. These communications occurred in the context of their telephone or other discussions with Fogle, which they separately reported to the Indiana investigators in 2015, after the searches of Taylor and Fogle home were widely reported in the press.

Person 2 contacted the FBI in Indianapolis through their counsel after the

search of Fogle's residence on July 7, 2015.   Before this, the FBI in Indiana had

no information from her.   The news coverage of the search encouraged many

witnesses to come forward.   Person 2 provided some text messages she received

from Fogle between January 6, 2008 and June 19, 2008, during which he

discussed having sexual contact with a 16 year old prostituted minor he met

through Craiglist.com.   He also discussed wanting Person 2 to engage in adult

prostitution while he watched.   Person 2 was an adult; she never worked as a

prostitute at any point, nor had any intension of doing so.   Finally, Person 2

reported that Fogle discussed his sexual attraction to underage minors with her.

Persons 3 and 4 also contacted the Indiana investigators after the search

of Fogle's residence on July 7, 2015.   Before this, their existence was also not

known to them.   Persons 3 and 4 did not make any recording of their telephone

calls with Fogle, but both adults reported that he discussed his interest sexual

interest in underage minors with them.   Persons 3 and 4 found this offensive

and did not approve of such interest.   The discussions between involving

Persons 3 and 4 with Fogle did not progress to the more explicit point seen in the

discussions with Persons 1 and 2.   Both Person 1 and 2 had no sexual interest

in children, nor desire to engage in such conversations or behavior with Fogle.

### L.   Investigative conclusions about these statements

The United States' conclusion about the communications with Persons 1-4

is that Fogle repeatedly expressed sexual fantasies concerning children to

multiple persons, but no victims under the age of 18 years could be specifically

identified apart from those victims already charged in this case.   There are no

promising investigative trails to find any other victims either, especially given the passage of time from the events Fogle described which predate most of the digital evidence.   The Court can be confident that this analysis was very thorough and included the analysis of hundreds of thousands of text messages, online records, images, videos, email messages, travel records, and other documents, together with multiple witness interviews.   While Fogle has paid for commercial sexual activity with adults on hundreds of occasions, Minor Victims 13 and 14 are the only specifically identified persons that have been found and interviewed at this point.   To the extent any other witness surfaces, the Plea Agreement expressly allows the United States to bring any additional charges that would be appropriate in those circumstances.   The United States has not given up the right to pursue additional charge if this happens.   Fogle is pleading guilty to every crime the United States could prove to a jury beyond a reasonable doubt based upon admissible evidence.

Fogle went to great lengths to engage in commercial sex acts with underage minors.   He bought plane tickets, reserved and paid for hotel rooms, made arrangements for the commercial sex acts, engaged in commercial sex acts with minors, and solicited a digital image of a minor engaged in sexually explicit conduct from one of the prostituted minors.   He sought to use these prostituted minors to find other minor children with whom he could have sexual contact. He continually communicated with the prostituted minors in his attempts to find even younger children for sex.   He specified the ages he wanted, including 14 and 15 year olds.   He was willing to pay a significant finder's fee and price for

this contact.

In summary, Fogle has sacrificed absolutely everything he had built – including his family – to engage in sexually explicit conduct with two minors. He emboldened a molester and a producer of child pornography.   He allowed Taylor to produce child pornography because of his own sexual attractions.   He did this even though he actually knew some of the children in the Taylor's recordings.

### Part 2:   Factors under 18 U.S.C. § 3553

The Court's reasoning in imposing a sentence must be guided by the sentencing considerations set forth in 18 U.S.C. § 3553(a).   In pertinent part, these factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed-- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of

the defendant.   Because the Sentencing Guidelines are now advisory, the Court must consider the § 3553 factors listed to determine the actual sentence.

The nature and circumstances of the offenses have been discussed in detail above.   These facts form an accurate and reliable basis to understand his true interests and activities, which show a longstanding and persistent pattern of behavior.   They also provide a window to Fogle's history and character.   Beyond this he has no prior criminal convictions.

Unlike many defendants before this Court, Fogle had a good childhood. His parents provided for all of his needs and continue to remain supportive.   His wife had no idea he was going any of these things and has filed for divorce. While the Court will receive extensive information during and before the sentencing hearing about his mental health treatment and extensive testing, this information should be viewed in the context with all of the other facts and circumstances.

Congress, the Supreme Court, and the Sentencing Commission believe that general deterrence is a very important factor when considering an appropriate sentence.   *Irey*, 612 F.3d at 1206, (citing *United States v. Ferber*, 458 U.S. 747, 760 (1982) ("The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product"); *Osbourne v. Ohio*, 495 U.S. 102, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the

product, thereby decreasing demand"); *United States v. Goff*, 501 F.3d 250, 261

(3rd Cir. 2007) ("Deterring the production of child pornography and protecting

the children who are victimized by it are factors that should have been given

significant weight at sentencing."); *United States v. Barevich*, 445 F.3d 956, 959

(7th Cir. 2006) ("Transporting and receiving child pornography increases market

demand.   The greater concern under the Sentencing Guidelines is for the

welfare of these exploited children.   The avenue Congress has chosen to weaken

the child pornography industry is to punish those who traffic in it."). In *United*

*States v. Goldberg,* 491 F.3d 668, 672 (7th Cir. 2007), the Seventh Circuit opined

that:

> Young children were raped in order to enable the production of the
> pornography that the defendant both downloaded and uploaded –
> both consumed himself and disseminated to others.   The greater
> the customer demand for child pornography, the more that will be
> produced.   Sentences influence behavior, or so at least Congress
> thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory
> sentencing factor.   The logic of deterrence suggests that the lighter
> the punishment for downloading and uploading child pornography,
> the greater the customer demand for it and so more will be
> produced.

Similarly, the Sixth Circuit reversed the district court when the district

court failed to see any importance in general deterrence.   *See United States v.*

*Bistline*, 665 F.3d 758, 767 (6th Cir. 2012).   The district court stated, "general

deterrence ... will have little [if] anything to do with this particular case."   *Id.*

The Sixth Circuit found the district court's statement "inexplicable and in any

event conflicts with our statement that 'general deterrence is crucial in the child

pornography context[.]"   *Id.*   (citing *United States v. Camiscione*, 591 F.3d 823,

834 (6th Cir. 2010)).

Persons with a sexual attraction to young children may be difficult to deter, but these sentences matter. These offenders frequently communicate with each other online and they are concerned about law enforcement efforts. In many ways, the results of these cases help to deter and teach by example. There is no avoiding the point that, whatever the result in this matter, it will be closely watched by current and potential offenders who have not yet been identified.

Concerning the need for the sentence imposed to protect the public from further crimes of the defendant, it is true that Fogle argues that he is at a low risk to recidivate. However, he is more likely to recidivate than others convicted of non-contact child pornography offenses because of his repeated offenses efforts to obtain and use prostituted minors.[1]

### Conclusion

For the reasons stated, the United States will request the Court to impose a sentence of 151 months of imprisonment, followed by lifetime supervised release. Concerning restitution, the Court should approve Fogle's agreement to pay a total of $1,400,000 to Minor Victims 1 through 14 ($100,000 each). Finally, the Court should also impose a substantial fine, order forfeiture of

---

[1] "A pedophilic sex offender who has committed both a child –pornography offense and a hands-on sex crime is more likely to commit a future crime, including another hands-on offense, than a defendant who has committed only a child-pornography offense." Citing Drew A. Kingston et al., Pornography Use and Sexual Aggression:   The Impact of Frequency and Type of Pornography Use on Recidivism Among Sexual Offenders, 34 AGGRESSIVE Behav.1, 9 (2008).

$50,000 in lieu of the vehicle used during the criminal activity, order forfeiture

all of the seized materials, and impose a $200 mandatory special assessment.

Respectfully submitted,

JOSH J. MINKLER
United States Attorney


By:    s/Steven D. DeBrota
       Steven D. DeBrota
       Assistant United States Attorney
       Office of the United States Attorney
       10 W. Market Street, Suite 2100
       Indianapolis, IN 46204-3048
       Telephone: (317) 226-6333
       Fax:   (317) 226-6125
       Email:   Steve.DeBrota@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2015, a copy of the foregoing Sentencing

Memorandum was filed electronically.   Notice of this filing will be sent to the following parties

by operation of the Court's electronic filing system.   Parties may access this filing through the

Court's system.

> Jeremy D. Margolis
> LOEB & LOEB, LLP
> 321 North Clark Street
> Suite 2300
> Chicago, IL 60654

By:    s/Steven D. DeBrota
      Steven D. DeBrota
      Senior Litigation Counsel
      Office of the United States Attorney
      10 W. Market Street, Suite 2100
      Indianapolis, IN 46204-3048
      Telephone: (317) 226-6333
      Fax:   (317) 226-6125
      Email:   Steve.DeBrota@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:15-CR-00159-TWP-MJD |
| | ) | |
| v. | ) | |
| | ) | Judge Tanya Walton Pratt |
| JARED FOGLE, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant, JARED FOGLE, by and through his attorneys, JEREMY MARGOLIS and ANDREW DEVOOGHT, respectfully submits this memorandum for this Court's consideration in fashioning a sentence that is sufficient, but not greater than necessary to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).

**I.    Introduction**

As he will tell the Court himself next week, Mr. Fogle is profoundly sorry for what he has done. He is painfully aware of the fact that he has impacted the lives of minor victims, hurt those closest to him, and, for all practical purposes, destroyed the life he worked to build over the last eighteen years. Mr. Fogle also understands that he has certain medical issues that he must address. Since law enforcement searched his house in July, Mr. Fogle has worked to take responsibility for his conduct, to assist the minor victims in this case, to make amends with his family, and to address his medical issues. Mr. Fogle understands that he must remain focused on these tasks, *both during his incarceration and after*, so he can be the father, family member, and member of society he wants to be. And he is fully committed to doing so.

Mr. Fogle understands that part of taking responsibility for his conduct includes going to federal prison for a significant period of time. And he is ready to do so. For the reasons set out below, Mr. Fogle respectfully submits that a term of imprisonment of 60 months is an appropriate sentence that is sufficient, but not greater than necessary to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).

## II.    Presentence Investigation Report's Guidelines Calculation

Mr. Fogle does not dispute the accuracy of the Presentence Investigation Report's ("PSR") determination that pursuant to the United States Sentencing Guidelines, his total offense level is 33, and his criminal history category is I, such that his advisory guideline range of imprisonment is 135 to 168 months. As described below, however, this advisory guideline range, which is just one of a number of factors this Court considers in determining Mr. Fogle's sentence, is entitled to little weight because it is the result of a flawed and widely criticized set of Guideline provisions.

## III.   Section 3553(a) Factors

When sentencing a defendant, this Court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a)." *Nelson v. United States*, 555 U.S. 350, 351, 129 S. Ct. 890, 891-892 (2009); *United States v. Panice*, 598 F.3d 426, 441 (7th Cir. 2010). Here, as the parties agree with the PSR's calculation of the advisory guideline range, "the primary issue involves the second step, the application of the criteria set forth in § 3553(a) to the facts and circumstances" of Mr. Fogle's case. *United States v. Biddle*, 2014 U.S. Dist. LEXIS 143733 at *10 (N.D. Ind. Oct. 9, 2014). Mr. Fogle respectfully submits that consideration of the criteria set

2

forth in § 3553(a) demonstrates that a term of imprisonment of 60 months is an appropriate sentence in this case.

### A.     The Advisory Guideline Range

The advisory guideline range is one factor this Court considers in determining Mr. Fogle's sentence. *See Biddle,* 2014 U.S. Dist. LEXIS 143733 at *11 (citing 18 U.S.C. § 3553(a)). In this specific instance, however, the Guideline provisions applicable to Mr. Fogle are uniquely flawed such that the resulting advisory guideline range does not warrant the same weight it might deserve in cases involving other Guideline provisions. This is particularly true here, where a number of the enhancements that technically apply to Mr. Fogle have no rational bearing on his culpability.

The Guideline provisions applicable to Mr. Fogle have been widely and repeatedly criticized by courts, scholars, and, most tellingly, the United States Sentencing Commission itself. *See, e.g United States v. Henderson,* 649 F.3d 955, 963 (9th Cir. 2011) (noting that "similar to the crack cocaine Guidelines, district courts may vary from the child pornography Guidelines, § 2G2.2, based on policy disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case."); *United States v. Dorvee,* 616 F.3d 174, 184-188 (2d Cir. 2010) (stating that the child pornography "Guideline [ ] is fundamentally different from most and that, unless applied with great care, can lead to unreasonable sentences that are inconsistent with what *§ 3553* requires," and engaging in an in-depth analysis of the various flaws, including the "irrationality" of certain enhancements); *United States v. Gorber,* 624 F.3d 592, 609-10 (3d Cir. 2010); *United States v. Diaz,* 720 F. Supp. 2d 1039, 1041-1048 (E.D. Wis. 2010); *United States v. Brasfield,* 2011 U.S. Dist. LEXIS 96890 at *7 (E.D. Wis. Aug. 29, 2011) (referring to § 2G2.2 as "a seriously flawed provision

worthy of little deference" and citing substantial body of authority "explain[ing] these flaws in detail.") (citations omitted). A fundamental criticism that has led courts to give the provisions of § 2G2.2 little or no weight is the fact that unlike other components of the Guidelines, these provisions "did not result from careful study based in empirical analysis and national experience, *but are the result of congressional mandates.*" *Biddle,* 2014 U.S. Dist. LEXIS 143733 at *15 (emphasis added) (citing *United States v. Huffstatler,* 571 F.3d 620, 622-23 (7th Cir. 2009)).

Unfortunately, but not necessarily surprisingly, Guidelines based primarily on the directives of individuals seeking to maintain elected office resulted in a sentencing scheme that produces unduly harsh guideline ranges for many offenders. Indeed, seventy percent of *639* district judges surveyed in 2010 indicated that the guideline ranges for possession of child pornography are too high, and sixty-nine percent considered the ranges for receipt of child pornography too high. *Grober,* 624 F.3d at 606-07 (citing U.S. Sentencing Comm'n, *Results of Survey of United States District Judges January 2010 through March 2010* (June 2010).) This judicial condemnation is particularly damning given that only thirty percent of these same judges indicated that the guideline ranges for distribution offenses generally were too high. *Id,* at 607. Thus, the strikingly high percentage of judges who indicated that the guideline ranges for possession and receipt of child pornography are too high is not simply the result of a judiciary that is somehow predisposed to be critical of lengthy guideline ranges in all child pornography related cases. Instead, it reflects an experienced-based awareness that the provisions related to non-production offenses are uniquely flawed.

District court judges have reiterated their disapproval of § 2G2.2 in courtrooms across the United States. Indeed, since *"United States v. Booker,* which made the guidelines 'effectively advisory' in 2005, there has been a steadily decreasing rate of sentences imposed within the

4

applicable guidelines ranges in non-production cases. . . . *to 32.7 percent in fiscal year 2011.*" *United States Sentencing Commission Report to the Congress: Federal Child Pornography Offenses* (December 2012) ("Sentencing Commission Report"), Executive Summary at (ii) (emphasis added) (available at http://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf (last accessed November 12, 2015).) As the Sentencing Commission explained, "[t]hese sentencing data indicate that a growing number of courts believe that the current sentencing scheme in non-production offenses is overly severe for some offenders." *Id.*

The Seventh Circuit has acknowledged this criticism of § 2G2.2 and recognizes the ability of the district courts to take that criticism into account when determining a defendant's sentence. *See, United States v. Price,* 775 F.3d 828, 841 (7th Cir. 2014) (affirming below guidelines sentence for possession and production offenses, acknowledging that the district court "exercised her discretion to consider the scholarly and judicial criticism of the guidelines for child-pornography offenses," and explaining that "[w]e have said before that the concerns expressed in *Dorvee* 'can certainly be taken into account by district judges when exercising their sentencing discretion under the now advisory guidelines.'") (citations and quotations omitted).

The individual sentencing enhancements of § 2G2.2 have garnered particular criticism. Most of these enhancements, including several present in this case, have failed to evolve to reflect changes in and wide-spread use of technology. Indeed, as this Court recently observed, "this guideline is arguably vulnerable to the criticism that the enhancements apply in nearly every case." *Lowe v. United States,* 2015 U.S. Dist. LEXIS 33902 at *7 (S.D. Ind. Mar. 18, 2015) (citing *Price,* 775 F.3d at 841). As a result, these enhancements "produce a sentence

approaching the statutory maximum, even for an offender with no prior record, based solely on

characteristics that are all but inherent to the crime of conviction, an approach fundamentally

inconsistent with § 3553(a)." *Diaz*, 720 F. Supp. 2d at 1042 (citing *Dorvee*, 604 F.3d at 95-96);

*see also Price*, 775 F.3d at 841 ("§ 2G2.2 ... calls for the application of multiple enhancements

that apply in almost every case, making inadequate distinctions between the worst offenders and

those who are less dangerous.") (citing *Dorvee*, 616 F.3d at 186-87); *United States v. Burns*,

2009 U.S. Dist. LEXIS 100642 at *40 (N.D. Ill. Oct. 27, 2009) ("These Guidelines are flawed

not only because they are duplicative and draconian but most critically because they apply to

almost all offenders, allowing no distinction between aggravated and less aggravated behavior.")

As the Sentencing Commission explained:

> Innovations in digital cameras and videography as well as in computers and Internet-related technology, such as peer-to-peer ("P2P") file-sharing programs, have been used by offenders in the production, mass distribution (both commercial and non-commercial distribution), and acquisition of child pornography. These technological changes have resulted in exponential increases in the volume and ready accessibility of child pornography, including many graphic sexual images involving very young victims, a genre that previously was not as widely circulated as it is today. As a result of such changes, entry-level offenders now easily can acquire and distribute large quantities of child pornography at little or no financial cost and often in an anonymous, indiscriminate manner.

> Several provisions in the current sentencing guidelines for non-production offenses--in particular, the existing enhancements for the nature and volume of the images possessed, an offender's use of a computer, and distribution of images--originally were promulgated in an earlier technological era. Indeed, most of the enhancements, in their current or antecedent versions, were promulgated when offenders typically received and distributed child pornography in printed form using the United States mail. As a result, enhancements that were intended to apply to only certain offenders who committed aggravated child pornography offenses are now being applied routinely to most offenders.

*Sentencing Commission Report* at 312-313 (footnotes omitted).

To its credit, the Department of Justice ("DOJ") agreed with the Sentencing

Commission's critique of these enhancements:

> [T]he Department agrees with the Commission's conclusion that
> advancements in technology and the evolution of the child
> pornography "market" have led to a significantly changed
> landscape--one that is no longer adequately represented by the
> existing sentencing guidelines. Specifically, we agree with the
> Report's conclusion that the existing Specific Offense
> Characteristics ("SOCs") in USSG § 2G2.2 may not accurately
> reflect the seriousness of an offender's conduct, nor fairly account
> for differing degrees of offender dangerousness. The current
> guidelines can at times under-represent and at times over-represent
> the seriousness of an offender's conduct and the danger an
> offender possesses.

United States Department of Justice, *Letter to the Honorable Patti B. Saris, Chair of the United States Sentencing Commission,* 1 (Mar. 5, 2013)) ("DOJ Letter") (available at http://sentencing.typepad.com/files/doj-letter-to-ussc-on-cp-report.pdf) (last accessed November 12, 2015).

### 1.    Use of a Computer Enhancement

The enhancement for the use of a computer applied in 96.3% of cases in fiscal year 2009. *Sentencing Commission Report* at 209.   Accordingly, this 2-level enhancement "applies in virtually every case and, thus, fails to differentiate among offenders with respect to their involvement in [online child pornography] communities." *Id.,* at 323-24. *See also, Diaz,* 720 F. Supp. 2d at 1042 ("[a]s the Sentencing Commission noted, the use of a computer enhancement fails to distinguish serious commercial distributors of online pornography from more run-of-the-mill users."); *United States v. Minor,* 553 Fed. Appx. 644, 645 (7th Cir. Feb. 13, 2014) (noting the district court had "concluded that the 2-level adjustment for using a computer was overkill (computers being a ubiquitous feature of child-pornography offenses)"); *Biddle,* 2014 U.S. Dist. LEXIS 143733 at *19-20 ("Although a computer can provide an effective means to transport material quickly in interstate commerce, it is distributors, traffickers, and those desiring to entice

7

children to engage in sexual activity who most exploit the technology and increase the market for child pornography."). Indeed, the DOJ has recommended that "[b]ecause the vast majority of child pornography offenses now involve the use of a computer," the computer enhancement "be eliminated and replaced by others, . . . which better distinguish between different classes of offenders." *DOJ Letter* at 4.

Mr. Fogle's case highlights the flawed nature of this enhancement. Mr. Fogle essentially used his cellular telephone and a laptop computer like a slide projector, television, and VCR, to view the material he received from Mr. Taylor. This use of a computer lies in stark contrast with computer use that serves to further proliferate or profit from child pornography. Mr. Fogle was not commercially distributing child pornography, trafficking child pornography, or participating in online child pornography communities. Yet his advisory guideline range receives the same increase as those individuals "who most exploit the technology and increase the market for child pornography." *Biddle,* 2014 U.S. Dist. LEXIS 143733 at *19-20. Mr. Fogle can and should be differentiated from such individuals.

### 2.    The Number of Images Enhancement

The maximum enhancement for possessing 600 or more images, *which is now a five level enhancement,* applied in 67.6% of cases in fiscal year 2009. *Sentencing Commission Report* at 209 & 323, n. 58. Courts have recognized that this enhancement is a poor predictor of comparative culpability because "offenders readily obtain the necessary number of images with minimal effort." *Diaz,* 720 F. Supp. 2d at 1042; Burns, 2009 U.S. Dist. LEXIS 100642 at *24 (rejecting number of images enhancement because "the number and type of images received is frequently accidental"); *Brasfield,* 2011 U.S. Dist. LEXIS 96890 at *8-9 ("The number of images enhancement is also questionable because, as a result of internet swapping, offenders

8

readily obtain the necessary number of images with minimal effort.")  The DOJ recognizes that "in light of the technology-facilitated ease of obtaining larger child pornography collections, the numeric thresholds should be substantially increased for each offense level, so as to better distinguish between occasional and habitual collectors of child pornography." *DOJ Letter* at 4.

Mr. Fogle's case similarly demonstrates the flawed nature of this enhancement that has a dramatic effect on an offender's total offense level.  While Mr. Fogle received images and videos from Mr. Taylor on a number of occasions, he did not control, dictate or even request a given number of images or videos on any such occasion.  For example, Mr. Fogle received the bulk of the images and videos that caused him to receive this five level enhancement by way of a single thumb drive that Mr. Taylor gave to Mr. Fogle.  The thumb drive was accepted but had not been requested.  While Mr. Fogle does not dispute that he looked at the material on the thumb drive, he had no idea how many images or videos were on the thumb drive when he received it from Mr. Taylor.  Thus, Mr. Fogle's having possessed more than 600 images underscores the notion that "the number . . . of images received is frequently accidental." *Burns*, 2009 U.S. Dist. LEXIS 100642 at *24.  Indeed, the number of images Mr. Fogle received does not reflect an intentional effort to amass a collection of child pornography, and the dramatic, five-level enhancement is unjust.

### 3.    Age of the Children in the Material Enhancement

The enhancement for possession of material involving children under age twelve applied in 96.3 percent of all sentences under 2G2.2 in fiscal year 2009.  *Sentencing Commission Report* at 209.  "[I]mages of very young children are sadly 'typical of this crime,' and do not indicate increased culpability for those receiving such images." *Biddle*, 2014 U.S. Dist. LEXIS 143733

at *22 (citing *United States v. Hanson,* 561 F. Supp. 2d at 1009; *Burns,* 2009 U.S. Dist. LEXIS 100642 at *42-43.)

Separate and apart from the Sentencing Commission's and courts' observations regarding the limitations of this enhancement, this enhancement is particularly flawed as applied to Mr. Fogle. Indeed, it is critical to note that Mr. Fogle never requested material involving prepubescent minors, such that this enhancement, "do[es] not reflect any atypical culpability on his part," underscoring the notion that the "type of images received is frequently accidental." *Burns,* 2009 U.S. Dist. LEXIS 100642 at *43, *24.

The severe consequences of a rote application of these three enhancements, which are flawed both generally and as specifically applied to Mr. Fogle, cannot be overstated. Their application results in a dramatic impact on his advisory guideline range, raising Mr. Fogle's total offense level by nine levels, and increasing his advisory guideline range from 41-51 months, to 108-135 months.

Given all of the above, Mr. Fogle would respectfully ask this Court not to give the advisory guideline range much, if any weight in determining his sentence.

**B.      The Nature and Circumstances of the Offense**

Mr. Fogle has not, nor will he now try to minimize the troubling nature of his conduct. That said, in determining his sentence, it is important to recognize both what Mr. Fogle did *and what he did not do.* This complete picture demonstrates that a term of imprisonment of 60 months is an appropriate sentence in this case.

*Count 1: 18 U.S.C. § 2252(a)(2)(Child Pornography)*

Mr. Fogle readily admits that he received images and videos of child pornography from Mr. Taylor that Mr. Taylor secretly produced at his house. However, there are a number of

App. 079

critical points Mr. Fogle would ask the Court to consider in assessing his conduct.  First, Mr. Fogle never engaged in any sexual conduct whatsoever with any of the minor victims Mr. Taylor recorded.  Second, Mr. Fogle played no role in producing any of the images or videos Mr. Taylor recorded.  Third, other than briefly showing certain of these images and videos on one occasion to an adult woman with whom Mr. Fogle was involved in a personal, romantic relationship, in the privacy of a locked hotel room, Mr. Fogle never shared any of these images or videos with anyone else.  Thus, Mr. Fogle is not like other defendants this and other courts have seen who actively traded images and videos of child pornography.  *See, e.g., United States v. Richard Zachery Gardner*, 1:13-MJ-00251-TWP-MJD (S.D. Ind.), Judgment [Dkt. # 58] (Defendant sentenced to 72 months for receipt of child pornography admitted to installing and using P2P software to share and download such material).[1]  Indeed, Mr. Fogle discarded the thumb drive Mr. Taylor gave him that contained these images and videos shortly after Mr. Fogle displayed them on the one occasion.

Fourth, while Mr. Taylor secretly recorded twelve victims, Mr. Fogle "did not obtain access to all of the material [Mr.] Taylor produced."  (Information [Dkt. #1] at ¶ 16, https://ecf.insd.uscourts.gov/doc1/07314972746)  Specifically, Mr. Fogle can say unequivocally that he did not receive images or videos of at least four of these twelve Minor Victims.  Further, Mr. Fogle does not recall receiving and does not believe that he ever received images or videos of two additional Minor Victims that Mr. Taylor recorded.  While Mr. Fogle fully recognizes that his passivity and failure to report Mr. Taylor to law enforcement personnel enabled Mr. Taylor to subsequently victimize these individuals, it is important to note that Mr. Fogle did not receive any images or videos of them.

---

[1] Copies of case materials cited from the Gardner case and the Horner case cited below are attached to this Memorandum as Group Exhibits 1 and 2, respectively.

11

**App. 080**

Finally, Mr. Fogle acknowledges that the images and videos Mr. Taylor surreptitiously recorded included, "a lascivious exhibition of the genitals or pubic area of the minors." (Information, [Dkt. #1] at ¶ 11.)   However, Mr. Fogle only recalls receiving one video Mr. Taylor produced in which a Minor Victim was engaged in any other form of "sexually explicit conduct" as defined in the Information.   Here again, Mr. Fogle does not downplay the disturbing nature of the images and videos he received.   Instead, he simply notes the that vast majority of the material Mr. Taylor produced and provided to Mr. Fogle did not include images or videos of minors engaged in "sexually explicit conduct" with Mr. Taylor, other adults, or other minors. This fact differentiates the material Mr. Fogle received from Mr. Taylor from much of the material at issue in many child pornography cases.  *See, e.g., United States v. Mantanes,* 632 F.3d 372, 373-74 (7th Cir. 2011) (case involving graphic sadistic images, including sexually explicit conduct); *United States v. Pape,* 601 F.3d 743, 745 (7th Cir. 2010) (case involving depictions of prepubescent minors engaging in sexual intercourse).

Mr. Fogle also received child pornography from Mr. Taylor that Mr. Taylor obtained through Internet sources, which is classified as commercial material produced by other persons. Unlike the material Mr. Taylor produced, this material included unidentified victims as young as six years old engaged in sexually explicit conduct.   Most importantly, Mr. Fogle *never* requested material of this kind from Mr. Taylor.   Moreover, like the images and videos Mr. Taylor produced, Mr. Fogle only briefly shared certain of these images and videos on the single and limited occasion described above, and destroyed them shortly thereafter.

### Count 2: 18 U.S.C. § 2423(b) (Travel to Engage in Illicit Sexual Conduct with Minors)

Mr. Fogle traveled in interstate commerce to engage in sex acts with minors for money. Mr. Fogle does not dispute this fact.   But here again, there are important components of Mr.

12

App. 081

Fogle's conduct he would ask the Court to consider in determining his sentence. First, Mr. Fogle arranged these encounters after seeing commercial advertisements on the internet related to Victim 13 offering sex acts for money. Mr. Fogle did not find these individuals by trolling chat rooms, lying about both his age and intentions. *See, e.g., United States v. Henzel,* 668 F.3d 972, 973-74 (7th Cir. 2012) (defendant guilty of traveling across state lines with the intent to engage in illicit sexual conduct under 18 U.S.C. § 2423(b) and sentenced to 135 months in prison after meeting a 12 year-old girl on an internet chat room about video games, telling her he was 14 instead of 29, traveling to Indiana to meet her and coercing her into having sexual intercourse in his hotel). Second, although the individuals with whom Mr. Fogle engaged in sexual intercourse for money were minors, it is worth noting that they were sixteen and seventeen years old, respectively. While Mr. Fogle's conduct is inexcusable, these individuals were far older than many victims of this same crime. *See, e.g., Henzel,* 668 F.3d at 973 (12 year-old victim). Indeed, the age of consent in New York is seventeen, N.Y. Penal Law § 130.05(3)(a) (Consol. 2015), and the age of consent in Mr. Fogle's home state of Indiana is sixteen. Ind. Code § 35-42-4-3. And while the plea agreement correctly notes that Mr. Fogle "asked Victim 13, as well as several other people, to provide him with access to minors as young as 14 years old for purposes of commercial sex acts with him," Mr. Fogle *did not* engage in any sex acts of any kind, commercial or otherwise, *with anyone below the age of sixteen.*

Finally, the plea agreement further describes the Government having "obtained information and audio recordings from witnesses" in several states "showing that the Defendant repeatedly discussed with them his interest in engaging in commercial sex acts with minors or stated that he has done so in the past." Mr. Fogle does not deny that such conversations occurred. He would note, however, that they occurred between Mr. Fogle and individuals with

13

whom Mr. Fogle was, at the time the conversations took place, involved in personal, sexual relationships. Further, Mr. Fogle made these statements during the course of what he thought were consensual, intimate conversations between Mr. Fogle and these individuals. Moreover, and most importantly, while Mr. Fogle's comments were clearly troubling, it is important to note that the "past" sex acts Mr. Fogle described during these conversations did not take place. Instead, Mr. Fogle made these comments during the course of what he thought were consensual, "fantasy" discussions between Mr. Fogle and these adult sexual partners. These comments are similar to those the government and this Court have seen in other "fantasy" discussions, and ultimately did not hold against other defendants where there was no evidence of actual wrongdoing. *See, e.g., Gardner*, 1:13-MJ-00251-TWP-MJD (Defendant sentenced to 72 months for receipt of child pornography engaged in email conversations in which he described having "recently had sexual intercourse with a minor child." (Complaint, [Dkt. #1] at ¶ 50a; Judgment [Dkt. # 58].) Defendant later denied engaging in any unlawful sexual contact with a minor and such conduct was identified as an "excluded offense[]." (Plea Agreement, [Dkt. # 24] at ¶ 15).)

These important aspects of Mr. Fogle's conduct differentiate him from other defendants and demonstrate that while he should be punished for his conduct, a term of imprisonment of 60 months is an appropriate sentence in this case.

C.    **History and Characteristics of the Defendant**

Certain aspects of Mr. Fogle's history and characteristics demonstrate that a 60 month term of imprisonment is more than sufficient in this case.

1.    **Medical Diagnosis and Treatment**

Mr. Fogle does not offer discussion of his medical diagnosis and treatment as an excuse for his conduct. That said, he does believe that it helps explain aspects of that conduct. More

14

importantly, Mr. Fogle's prognosis and demonstrated commitment to treatment show that a term of imprisonment of 60 months is more than sufficient in this case.

After law enforcement searched his house in July, Mr. Fogle was finally forced to face the nature and extent of his conduct. In addition to taking responsibility for his shameful conduct, Mr. Fogle knew he had a problem and needed help. He sought the assistance of Dr. John Bradford, an internationally renowned forensic psychiatrist. Dr. Bradford spent two days with Mr. Fogle, subjecting him to a number of tests and examinations to assess Mr. Fogle's mental condition and chart out an appropriate treatment plan for any condition from which Dr. Bradford concluded Mr. Fogle is suffering. As this Court knows, Dr. Bradford also sent Mr. Fogle to Dr. Robert P. Granacher, a forensic psychiatrist and neuropsychiatric expert, to perform a neuropsychiatric evaluation.

As summarized in the PSR, and as Dr. Bradford will be able to discuss at Mr. Fogle's sentencing hearing, Mr. Fogle suffers from hypersexuality and alcohol abuse/dependence. Dr. Bradford also identified weak evidence of erotic preference of a heterosexual pedophilia/hebephilia. Thankfully and most importantly, according to Dr. Bradford, Mr. Fogle's conditions, if addressed properly, are very treatable:

> (F)rom a treatment perspective, hypersexuality would need to be treated with pharmacological treatment, and he would respond very well to the traditional treatments. The weak evidence of heterosexual pedophilia/hebephilia should be treated by the traditional psychological treatments and I believe that he would respond well to that type of intervention. If he accepts pharmacological treatment for hypersexuality this would also suppress any deviant sexual arousal. His evaluation is fairly typical of individuals who are found to be in possession of child pornography, but have no evidence of ever engaging in any hands-on contact with the child. They are at low risk for future sexual offense recidivism."

(Presentence      Investigation      Report,      [Dkt.      #      41]      at      23,

https://ecf.insd.uscourts.gov/doc1/07315062292 )  Mr. Fogle understands that he has serious

medical issues that need to be addressed and he has been and will continue to be focused on getting healthy. Indeed, while Mr. Fogle waited for feedback from Dr. Bradford, he voluntarily began the process of trying to get healthy. Specifically, he attended weekly individual counseling sessions with Dr. Camille Sexton-Villalta, and weekly addiction counseling with Christopher Countryman, a licensed clinical social worker. In addition, Mr. Fogle attended Sex Addicts Anonymous meetings twice per week in Indianapolis. As this Court will see in a letter from Mr. Countryman, Mr. Fogle took this treatment very seriously.

Additionally, shortly after Dr. Bradford evaluated Mr. Fogle, with this Court's permission, Dr. Bradford helped arrange for Mr. Fogle to voluntarily undergo an intensive four week outpatient treatment program to address his medical issues under the care of Dr. Rick May. As Dr. May will explain in person at Mr. Fogle's sentencing hearing, Mr. Fogle demonstrated his total commitment to the program and showed that he is responsive to treatment.

Although Mr. Fogle knows he cannot undo what he has done, he hopes to demonstrate to the Court that he is taking every step possible to ensure that he never engages in any such conduct in the future.

### 2.      Positive impact and commitment to others' well-being

While Mr. Fogle understands that his selfish conduct has rendered him a social pariah, he respectfully requests that this Court consider the positive impact he has had on many lives and his demonstrated commitment to others' well-being. After suffering the physical, mental, and emotional distress that can come with being morbidly obese, Mr. Fogle spent countless hours over the last eighteen years speaking with people around the world about his struggles to get healthy. Mr. Fogle sought to use his status as a public figure to inspire others and motivate them to take control of their health. The impact of Mr. Fogle's efforts is undeniable. Mr. Fogle has

App. 085

received feedback from literally thousands of people from all parts of the world thanking him for helping them focus on their health and well-being. While Mr. Fogle recognizes that this positive impact does not undo his reprehensible conduct, he respectfully submits that it does help demonstrate that this conduct is only one part of Mr. Fogle, and that he has sought to, and in fact succeeded, in having made a significant, positive contribution to society.

### 3.    Mr. Fogle's role as a father and family member

Mr. Fogle has deeply hurt those closest to him, betraying the trust of his family. Along with getting healthy, a top priority for Mr. Fogle is trying to earn back this trust. Although these family members are understandably upset with Mr. Fogle, they all, including, as the PSR notes, Mr. Fogle's wife, believe Mr. Fogle has been a good father to his children. Mr. Fogle wants nothing more than to continue to be a positive influence in the lives of his children and he is willing to do whatever it takes to do so. Mr. Fogle would ask the Court to consider Mr. Fogle's prior positive involvement in his children's lives and his desire to continue to provide such involvement in determining his term of imprisonment.

### D.    The need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

Mr. Fogle has committed serious crimes and he understands that he must be punished for his actions. However, in formulating a sentence that reflects the seriousness of the offense, promotes respect for the law, and constitutes "just punishment," Mr. Fogle would ask the Court to consider the PSR's observation regarding the uniquely severe consequences Mr. Fogle has already faced and will continue to face for the rest of his life:

> The defendant has suffered collateral consequences greater than that of a "typical" defendant facing sentencing for similar offenses. In addition to the loss of his income and marriage, he has lost his community reputation and anonymity of the details of the offense. He is a public figure known worldwide. Regardless of the Bureau of Prisons facility to which he is designated, he will be recognized, and

17

the details of his offenses will be known. Thus, the time served in prison may be more stressful than that of other inmates whose identities and offenses details are not known to others.

(Presentence Investigation Report, [Dkt. # 41] at ¶ 121.)   While the consequences the PSR identifies are undoubtedly the result of Mr. Fogle's own selfish conduct, they readily demonstrate that Mr. Fogle has and will continue to suffer in ways that other defendants who have committed similar crimes would not.   This fact further underscores that a term of imprisonment of 60 months will ensure that Mr. Fogle is "just[ly] punish[ed]."

E.     **The need to afford adequate deterrence to criminal conduct**

A term of imprisonment of 60 months will be more than sufficient to effectuate the goals of specific and general deterrence.   In terms of specific deterrence, as noted above, Mr. Fogle fully understands the harm he has caused.   And he will be painfully aware of this fact for the rest of his life.   Mr. Fogle is focused on getting healthy and trying to repair the damage he has done. He is committed to these goals and a term of imprisonment of 60 months will be more than enough punishment for Mr. Fogle to understand that he cannot, under any circumstances, return to his shameful conduct of the past.

In terms of general deterrence, the country, indeed the world, has witnessed Mr. Fogle's very public humiliation.   Anyone with a television or access to the internet has witnessed and will continue to witness Mr. Fogle lose everything he has worked for over the last eighteen years and go to federal prison.   Simply put, *no one* wants to be Mr. Fogle.   Thus, anyone considering engaging in similar conduct, who otherwise has the medical and mental wherewithal to resist such behavior, will clearly be deterred from doing so by seeing that Mr. Fogle, in addition to destroying his own life and subjecting himself to public humiliation, receives a term of imprisonment of 60 months.

App. 087

**F.      The need to protect the public from further crimes of the defendant**

A term of imprisonment of 60 months is more than sufficient to protect the public from further crimes committed by Mr. Fogle. As noted above, Mr. Fogle is experiencing and fully appreciates the painful consequences of his conduct. And he will continue to do so. These experiences will serve as more than enough motivation for Mr. Fogle to never commit such crimes again. More importantly, Mr. Fogle is committed to doing everything he can to ensure that he never commits such crimes in the future. For example, as noted above, Mr. Fogle has been pursuing the appropriate medical treatment to put himself in a position to succeed. And, as noted above, and as this Court will hear at Mr. Fogle's sentencing hearing, not only is Mr. Fogle a prime candidate for successful treatment, Mr. Fogle has been pursuing this treatment with total commitment, and has demonstrated that he is, in fact, treatable.

**G.      The need to provide the defendant with needed medical care in the most effective manner**

As described above, Mr. Fogle is fully committed to receiving the treatment he needs to move forward with his life and be the father, family member, and member of society that he wants to be. He has and will continue to work with medical professionals to identify and carry out exactly what he needs to do to reach these goals. While Mr. Fogle understand that he must go to federal prison for what he has done, and he is prepared to do so, an unnecessarily long term of imprisonment will likely hamper or at least delay Mr. Fogle receiving the full benefit of such treatment. To a certain extent this is of course the price Mr. Fogle must pay for his selfish conduct. That said, it is a consequence that underscores the appropriateness of a term of imprisonment of 60 months in this case.

**H.      The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct**

19

While every case presents unique facts and circumstances, courts, including this one, have sentenced defendants who have engaged in conduct similar to that of Mr. Fogle to below-guidelines sentences. *United States v. William Donald Horner*, 1:13-cr-00124-TWP-TAB (S.D. Ind.) is an instructive example. In *Horner*, the defendant pled guilty to one count of possession of child pornography in violation of 18 U.S.C. 2252(a)(4)(B).[2] Horner's final offense level was 28, resulting in a guidelines range of 78-97 months, and included enhancements for use of a computer and for the number images exceeding 600, among other enhancements. (Plea Agreement [Dkt. 28] at 9-10.) Despite the Government's request that he be given a sentence within the guidelines range (Government's Sentencing Memorandum, [Dkt. 48] at 5), he received a below guidelines sentence of 70 months. (Judgment [Dkt. #52] at 2.)

Although Mr. Fogle's total offense level is higher than Mr. Horner's, the facts of Horner's case demonstrate that a term of imprisonment of 60 months is appropriate in Mr. Fogle's case. Unlike Mr. Fogle, Mr. Horner actively sought and amassed images of child pornography from online sources. (Government's Sentencing Memorandum. [Dkt. 48] at 3.) Indeed, he had been searching and looking at child pornography on the internet for approximately 15 years. (*Id.* at 14.) Additionally, and in stark contrast to Mr. Fogle, Mr. Horner explicitly sought out images of "prepubescent children engaged in hardcore sex acts, including sadistic and masochistic conduct." (*See, id.*) Although Mr. Horner did not engage in commercial sex acts with sixteen and seventeen year old individuals, as this Court knows, it is Mr. Fogle's receipt of child pornography that is driving his advisory guideline range. Moreover,

---

[2] While Mr. Fogle has pled to receipt as opposed to possession, this is a distinction without a difference when comparing actual conduct. As Judge Posner stated in *Richardson*, because "possessors, unless they fabricate their own [child] pornography, are also receivers [at some earlier point in time]." 238 F.3d at 839-40.

20

Mr. Horner did admit to conduct beyond possessing and viewing child pornography, including stealing young girls' underwear from laundry-mats, driving around specific neighborhoods to watch people undressing from his car, and looking at girls inappropriately in shopping malls. (*Id.* at 3-5.)

The sentence in *United States v. Biddle* also provides useful comparison with Mr. Fogle's case. 2014 U.S. Dist. LEXIS 143733. In that case, Biddle pled guilty to possession of child pornography. The charges resulted from an FBI investigation of "communications involving the Defendant that included the transmission of child pornography."[3] *Id.* at *2. Like Mr. Fogle, Mr. Biddle's Guidelines range was 108 to 135 months after application of enhancements for depictions of prepubescent minors, use of a computer, and the five level enhancement for number of images.[4] *Id.* at *4. Unlike Mr. Fogle, Biddle had a criminal history category of II resulting from convictions that included domestic battery, impersonation of a public servant and criminal recklessness. *Id.* The court, observing the flaws of the Guidelines, both generally and as applied to Biddle, sentenced Biddle to 54 months, a sentence well below his Guidelines range. *Id.* at *2. The court's observations of the nature and circumstances of the offense bear striking similarity to Mr. Fogle's case:

> In consideration of the nature and circumstances of the offense, the Court finds that the Defendant did not seek pecuniary gain or exchange money in his acquisition of images; thus, he did not contribute to any commercial market for child pornography. Nor was the Defendant motivated to distribute images, but instead collected them for his personal use. In addition, the Defendant was not involved in the production of child pornography but rather was a run-of-the-mill user who viewed the images privately.

---

[3] This highlights Judge Posner's observation regarding the lack of true distinction between receipt and possession.

[4] Biddle also had an enhancement for material portraying sadistic conduct. *Id.*

App. 090

*Id.* at *25. While the court did take into consideration the lack of improper contact with minors, *id.* at *26-27, the nature of Mr. Fogle's contact is unique and should not result in a large disparity in sentencing.

Similar, below-Guidelines sentencing occurred in *United States v. Dittiway,* 2014 U.S. Dist. LEXIS 77908 (N.D. Ind. Jun. 9, 2014). Dittiway pled guilty to possession of child pornography and was sentenced to 60 months, well below his Guidelines range of 97-120 months. *Id.* at *2, 4. Like Mr. Fogle, Dittiway had no criminal history, but was had substantial enhancements applied for possessing prepubescent images, possessing over 600 images and the use of a computer. *Id.* at *3-4. Unlike Mr. Fogle, he had further enhancements for distributing the material and for possessing material with sadistic conduct or other depictions of violence. *Id.* In addition to critiquing the Guidelines and their particular application to Dittiway, the court observed the same nature and circumstances as in *Biddle* and as in this case, in that Dittiway did not seek any financial gain, did not pay for images and thus did not contribute to the market. *Id* at *22. Poignantly, many positive characteristics of Dittiway warranted a more lenient sentence, characteristics quite similar to Mr. Fogle. *Id.* at *22-23. These included his love and care for his children and his demonstration of an ability to turn his life around in the past. *Id.* Mr. Fogle has similarly shown that he is a loving father and also capable of significant and lasting change. Moreover, the court observed that Dittiway had shown genuine remorse and acceptance of the consequences of his actions as well as a high motivation "to address and correct the issues" that brought him before the court." *Id.* at *24. Mr. Fogle, in accepting responsibility, providing immediate and meaningful restitution and in seeking out and participating fully in treatment he shares these characteristics with Dittiway.

I.       **The need to provide restitution to any victims of the offense**

Mr. Fogle has voluntarily provided each of the fourteen victims noted in the Information and Plea Agreement with restitution of $100,000, totaling $1,400,000.  Mr. Fogle fully understands that such financial assistance cannot undo his conduct.  He also recognizes that it will not, by itself, heal the pain and sorrow he has caused these individuals.  Instead, Mr. Fogle hopes that this financial assistance demonstrates both the genuine remorse he feels and his commitment to helping these victims work through this difficult time and move forward to live happy and productive lives.

Mr. Fogle provided financial assistance to all fourteen victims despite the fact that he did not receive images of at least four and he believes as many as six of the twelve victims Taylor secretly recorded.  Mr. Fogle does not mention this fact as a point of self-congratulation.  He does so because he wants the Court to know that he recognizes that his passivity, and failure to report Taylor to law enforcement personnel, enabled Taylor to subsequently victimize these additional individuals.  Recognizing as much, Mr. Fogle wanted to similarly try to help these individuals.

Mr. Fogle would ask the Court to consider these voluntary steps he has taken in determining his sentence.

WHEREFORE, defendant JARED FOGLE respectfully requests that this Court sentence him to a term of imprisonment of 60 months.

Dated:   November 12, 2015          By:      /s/ Andrew DeVooght _____

                                                        Jeremy Margolis
                                                        Andrew DeVooght
                                                        LOEB & LOEB LLP

App. 092

321 N. Clark Street, Suite 2300
Chicago, IL  60647
Telephone: 312.464.3100
Facsimile: 312.464.3111

Attorneys for Defendant

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on this 12th day of November.


November 12, 2015                          By:   /s/ Andrew DeVooght
                                                Andrew DeVooght

# EXHIBIT A

**ORIGINAL**

# United States District Court

## SOUTHERN DISTRICT OF INDIANA

UNITED STATES OF AMERICA

v.

**RICHARD ZACHERY GARDNER**

**CRIMINAL COMPLAINT**

CASE NUMBER: 1:13-MJ-00519

I, Special Agent Michael Johnson, Dept. Of Homeland Security, U.S. Homeland Security Investigations, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.

**COUNT 1:** Between on or about September 18, 2012 and September 19, 2012, at Anderson, Indiana in the Southern District of Indiana, Gardner knowingly received visual depictions of minors engaged in sexually explicit conduct, in violation of Title 18, United States Code, Section 2252(a)(2).

**COUNT 2:** Between on or about January 1, 2012 and on or about November 14, 2012, at Anderson, Indiana in the Southern District of Indiana, Gardner knowingly possessed visual depictions of minors engaged in sexually explicit conduct, in violation of Title 18, United States Code, Section 2252(a)(4)(B).

I further state that I am a Special Agent and that this complaint is based on the following facts:

See attached affidavit

Continued on the attached sheet and made a part hereof.

Special Agent Michael Johnson
Dept. Of Homeland Security
U.S. Homeland Security Investigations

Sworn to before me, and subscribed in my presence

June 20, 2013
**Date**

at      Indianapolis, Indiana
**City and State**

Debra McVicker Lynch, U.S. Magistrate Judge
**Name and Title of Judicial Officer**

**Signature of Judicial Officer**

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Michael Johnson, a Special Agent (SA) with the Department of Homeland Security,
U.S. Homeland Security Investigations ("HSI"), being duly sworn, hereby depose and state as
follows:

1.      I am a Special Agent with HSI and I am currently assigned to the Office of
Investigations, Resident Agent in Charge, Indianapolis, Indiana (RAC/IP).  I have been
employed as a Special Agent with HSI since February of 2006.

2.      Prior to being appointed as a Special Agent with HSI, I was a Police Officer for
the City of Indianapolis for approximately eleven years.  The last four years, I was assigned to a
federal task force. During my experience with both agencies, I have been involved in numerous
investigations, including those involving production, distribution, receipt and possession of child
pornography.

3.      I have had training through the Federal Law Enforcement Training Center, HSI,
the Indiana State Police, Office of Juvenile Justice Prevention, the United States Attorney's
Office, and Project Safe Childhood in investigating computer related crimes and child
exploitation.  Since being employed with HSI, I was temporarily assigned to HSI's Cyber Crimes
Center (C3).  During this assignment, I worked on active undercover cyber investigations as well
as the cataloging of over 10,000 images and videos of child pornography.  I have been involved
in over one-hundred investigations pertaining to the sexual exploitation of children

4.      As a federal agent, I am authorized to investigate violations of the laws of the
United States and to execute warrants issued under the authority of the United States.

5.      The factual information supplied in this affidavit is based on an investigation
conducted by me and another law enforcement officer; my experience, training, and background;

1

and, my conversations with other law enforcement officers who have engaged in numerous investigations involving child pornography. In particular, one of the investigators I have spoken to concerning this investigation was Detective Christopher Cecil.

6.       Detective Cecil is a detective with the Indiana State Police, assigned to the Crimes Against Children Unit, and authorized to conduct investigations on behalf of the State of Indiana. He has been employed with the department since October 2004. Cecil is an active member of the Indiana Internet Crimes Against Children Task Force. Cecil has been involved in numerous child exploitation investigations, especially those involving the online dissemination of child pornography via the Internet. He has assisted in child exploitation investigations with the US Department of Homeland Security Investigations – ICE, the US Postal Inspection Service, the FBI, and various other local law enforcement agencies throughout the United States and Indiana.

7.       I have also conferred with Detective Sergeant Joel Metzger about this investigation. Detective Sergeant Metzger has been employed with the Indiana State Police since 1979. He is also a task force officer assigned to the US Department of Homeland Security Investigations – ICE. In addition, he is the assistant commander of the Indiana Internet Crimes Against Children Task Force. Detective Sergeant Metzger has received extensive training in the area of child pornography and child exploitation. He has had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2252) in all forms of media (including computer media) and has participated in the execution of numerous search warrants, many of which involved child exploitation and/or child pornography offenses.

8.       Because this affidavit is being submitted for the limited purpose of securing a Criminal Complaint and Arrest Warrant to charge **Richard Zachery Gardner ("GARDNER")** with receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and

2

2252(a)(4)(B), I have not included each and every fact known to me concerning this investigation.

9. **Receipt of Child Pornography:** 18 U.S.C. § 2252(a)(2), in pertinent part, prohibits a person from knowingly receives or attempting to receive any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, if the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and such visual depiction is of such conduct.

10. **Possession of Child Pornography:** 18 U.S.C. § 2252(a)(4)(B), in pertinent part, prohibits a person from knowingly possessing any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, if the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and such visual depiction is of such conduct.

11. **Definitions:** As used herein:

a. The term "minor" means a person under the age of 18 years. 18 U.S.C. § 2256.

b. The term "peer to peer file sharing" (P2P) is a method of communication available to Internet users through the use of special software. Computers linked together through the Internet using P2P software form a network that allows for the sharing of digital files between users on the network.

c. The term "Globally Unique Identifier" (GUID) number is a unique reference number used as an identifier in computer software. Most peer-to-peer file sharing

3

software generates a unique GUID per user account.  Even if the users IP address changes, the GUID remains the same.

### I.     BACKGROUND OF INVESTIGATION

12.     Detective Cecil conducts undercover investigations into the internet sharing of child pornography on a P2P file sharing program that accesses the Gnutella Network.  Detective Cecil used P2P file sharing software to locate computers sharing images and videos of child pornography.  Detective Cecil utilized an enhanced version of this software which is set for single source downloads.  Additionally, the software has an embedded mechanism that logs the traffic between the undercover and the subject computer.

13.     On August 21, 2012, Detective Cecil located a computer on the network that was participating in the distribution or attempted distribution of known images and videos of child pornography.  The computer was utilizing an IP address of **99.137.61.203** and GUID **2CDC804C4E453DE435947C937D9C1B00**.  The computer was configured to allow the browsing of their public shared folder.

14.     At approximately 2:42 p.m., Detective Cecil successfully connected with the computer using the IP address **99.137.61.203**.  With the aid of is his investigative P2P software, Detective Cecil was able to obtain a list of files that the individual using the IP address **99.137.61.203** was sharing on the P2P network.

15.     Detective Cecil viewed the list of files available to download from the IP address **99.137.61.203**.  The shared list consisted of 35 files; several of these files were identified as child pornography or had filenames suggestive of child pornography.  Detective Cecil initiated a single source download from the files listed and received 1 complete video and 1 complete image downloads during that undercover session, both of which depicted children under the age of

4

**App. 100**

eighteen engaging in sexually explicit acts and/or poses. The downloaded videos are as follows:

File Name:  1 Yoyo Cute Little 10yo Preteen Boy Naked Nude On Bed Legs Spread Playing With Self Pedo Young Child Sex Kdv.jpg
SHA-1 Value:  TEZUCG6SEOOWYPETXTY7WOMB6EEFOUTD
Single Source Download Started:  August 21, 2012 14:42:42 EDT
Single Source Download Completed:  August 21, 2012 14:48:31 EDT

*This image depicted a partially nude prepubescent Caucasian boy approximately 8 to 10 years of age reclining on his back on a bed while firmly grabbing his erect penis with his right point finger and thumb. His left arm is positioned slightly behind him supporting his head. The boy had short brown hair. He wore only a red shirt with gray sleeves. There is a cartoon screen print on the shirt. The boy wore a gray argyle style sock on this right foot. The boy lay on a blue and white checkered pattern bedspread. The boy's head was at the foot of the bed; he was looking towards the headboard. In the upper left corner of the image was a white pedestal sink. A black suitcase was in the floor in front of the sink. This image was in a JPG format approximately 51.1 kilobytes in size.*

File Name:  family sex - 13yo brother fucks 11yo sister and sperm inside.mpg
SHA-1 Value:  KGECXAOYTCCYYIDB5EPZQN2UZJ4EHUYR
Single Source Download Started:  August 21, 2012 14:42:51 EDT
Single Source Download Completed:  August 21, 2012 15:22:22 EDT

*This video depicted a prepubescent girl approximately 8 to 11 years of age lying on her back wearing only a black short sleeve shirt, white panties, and white knee high socks. The right thumb of a male rubbed the outside of the girl's panties near her vaginal area. The size of the hand appeared to suggest the male was a child also. The male then removed the girl's panties and rubbed the girl's vagina with his right point finger. As the video continued the male inserted his penis into the girl's vagina and began having sexual intercourse. On at least three occasions, the camera was pointed towards the faces of the girl and the male. Occasion 1: When the camera tilted up towards the girl's face, her face was covered by blankets; Occasion 2: A partial glimpse of a side view of a Caucasian male wearing glasses; Occasion 3: a partial glimpse of a girl with dark colored hair lying on a bed. Near the conclusion of the video, the male ejaculated inside the girl's vagina. The video concluded with a handing grasping white tissue and wiping semen which excreted from the girl's vagina. In the upper left corner of the video were the letters AGO. This video was in a MPG format and around 59 megabytes in size. It was approximately 5 minutes and 54 seconds in length.*

16.    On various other occasions, including September 4, 2012 and September 7, 2012,

Detective Cecil located the same computer utilizing the IP address of **99.137.61.203** and GUID

**2CDC804C4E453DE435947C937D9C1B00** on the network and initiated single source

downloads from that computer. Such downloads depicted children under the age of eighteen

engaging in sexually explicit acts and/or poses.

17.     The IP address of **99.137.61.203** was active from August 21, 2012 to September 7, 2012.

18.     Detective Cecil reviewed the downloaded files from his undercover sessions outlined above and, based upon his training and investigation experience, he concluded these files were child pornography.

19.     Detective Cecil provided me with copies of the downloaded files described above. I have reviewed the images and videos and have concluded they are child pornography.

20.     Detective Cecil conducted an Internet search and ascertained the IP address 99.137.61.203 resolved to the Internet service provider AT&T U-verse.  On August 24, 2012 the United States Attorney's Office for the Southern District of Indiana sent an administrative summons to AT&T U-verse requesting the identification the subscriber using the IP address **99.137.61.203** assigned on August 21, 2012 at 1442 hours EDT.

21.     On August 30, 2012, Detective Cecil received a response from AT&T U-verse concerning the account which had been accessing the IP address on the given dates.  According to the subpoena response, AT&T Internet Services U-verse Light Speed internet access accounts have a unique IP address provisioned to the account.  The subpoena response contained the following subscriber information: Alice Miller, 2619 Fowler Street, Anderson, Indiana, 46012.

## II.    PROBABLE CAUSE

### A.  2619 Fowler Street Investigation – November 26, 2012

22.     On November 26, 2012, a Federal Search Warrant, issued in the Southern District of Indiana, was executed at 2619 Fowler Street, Anderson, Indiana.  The law enforcement officers executing the search warrant included Special Agents from HSI, as well as law

6

enforcement officers from the Indiana State Police (ISP) and the Indiana Internet Crimes Against Children Task Force.

    23.    During the execution of the search warrant, no child pornography was uncovered. However, law enforcement officers learned that Lee Petry, Robert Mahon and **Richard Zachery Gardner ("GARDNER")**, had lived in the garage behind the residence but moved out in mid-September 2012. Law enforcement also learned that Petry purchased a residence located at 1723 West 10th Street, Anderson, Indiana, and that Petry, Mahon and **GARDNER** now live there. In addition, law enforcement learned that all three men utilized the wireless internet from Miller's house.

### B. 1723 West 10th Street Investigation – November 26, 2012

    24.    On November 26, 2012, law enforcement drove to 1723 10th Street, Anderson, Indiana to locate Petry, Mahon, and **GARDNER**.

    25.    Law enforcement arrived at the residence at approximately 1:15 p.m. Petry and Mahon verbally consented for law enforcement to enter the residence. Petry and Mahon voluntarily spoke to law enforcement.

    26.    Mahon verbally consented to an examination of his computer. Nothing of evidentiary value was found on his computer following a forensic triage examination.

    27.    Petry also verbally consented to the examination of his desktop computer and laptop computer. Both computers were collected and examined in the mobile forensic vehicle. Nothing of evidentiary value was found on Petry's desktop computer.

    28.    However, Petry's laptop computer, a black HP laptop, was powered on and a P2P program was active on the desktop. Petry told law enforcement that **GARDNER** recently traded the laptop to Petry sometime within the past couple of months and that **GARDNER** installed a

7

App. 103

new Windows operating system over the original operating system for Petry.

29.    Child pornographic images and videos were found by law enforcement on the black HP laptop computer during an onsite forensic triage examination. These images were found in a directory called "Windows.old." This directory contained numerous folders from the previous operating system. The user profiles: "Zacheriah" and "Guest.Zacheriah-PC" were found within the "Windows.old" directory.

30.    Law enforcement also found a movie named "Zachs movie_0001.wmv" on the black HP laptop computer, which contained a compilation of still images of prepubescent Caucasian boys depicted in various states of nudity, in sexually suggestive poses, and engaging in sexual intercourse with an adult male. The boys appeared to be 4 to 6 years of age.

31.    **GARDNER** was advised that he was not under arrest and did not have to speak with law enforcement. **GARDNER** consented to an interview with law enforcement.

32.    **GARDNER** admitted that he first viewed child pornography when he was approximately 15 years old. He stated that he began searching for child pornography via a P2P file sharing network when he was approximately 16 years old.

33.    **GARDNER** admitted searching for child pornography using terms such as "PTHC" and "KDV," a term he admitted was used by pedophiles.

34.    **GARDNER** admitted that he, Petry and Mahon previously lived with Alice Miller at 2619 Fowler Street, Anderson, Indiana.

35.    **GARDNER** admitted that he gave his black HP laptop computer to Petry approximately one month prior to the November 26, 2012 search. **GARDNER** stated that Petry was not aware that there was child pornography on the black HP laptop. **GARDNER** stated that although he has allowed a few people to use his computer he did not think anyone who used the

8

computer downloaded anything. **GARDNER** stated that no one else was responsible for downloading the child pornography found on the black HP laptop computer.

36.     **GARDNER** admitted that he installed the P2P software on the computer that he traded to Petry. **GARDNER** stated that he knew that he had files going to a shared folder. In response to whether he knew he was sharing on the P2P program, Zack stated that he "really didn't know what P2P was, but just to download stuff. So, I knew it was sharing. But, I didn't know at the time." When law enforcement clarified the question, Zack stated that he knew he was sharing. Zack also stated that he used other P2P programs. **GARDNER** admitted to last using P2P file sharing software during September 2012.

37.     **GARDNER** stated that he downloaded a lot of files and deleted those files which he did not like.

38.     **GARDNER** was questioned about the "Zachs movie_0001.wmv." He admitted to downloading the file approximately three to four months ago and renaming it.

39.     **GARDNER** stated that he never received any child pornography though chatting with individuals electronically. **GARDNER** stated that he received some child pornographic files via email.

40.     **GARDNER** stated the he used the following email addresses: **ZACH EMAIL GMAIL and ZACH EMAIL YAHOO.**[1] **GARDNER** identified the user account **ZACH EMAIL YAHOO** as being the account that he used to share child pornography. **GARDNER** stated that he set up his Gmail account approximately one month ago. **GARDNER** gave law enforcement written consent to take over these two email accounts.

41.     **GARDNER** stated that he last received child pornography via email about three months ago but could not recall the individual he received it from.

---

[1] The actual email addresses will remain confidential for purposes of this arrest warrant.

42.    Following this discussion with **GARDNER**, Detective Cecil accessed **GARDNER's** two email accounts.

43.    Detective Cecil found an email in **GARDNER's** Gmail account dated September 18, 2012 at 2:44pm from a user identified as **PERSON 1** utilizing the email address **PERSONAL ADDRESS 1.**[2] **PERSON 1** identified himself a 58 year old French male named "Leo" who liked "cp boy 5yo and 14yo." Leo expressed an interest in exchanging images and attached four images to the email, three of which appeared to be child pornography as follows:

    a.    **File name: k1 nice-little-boy 1023.jpg**
        **File Size: 21K**

        *This image depicted a nude prepubescent Caucasian boy reclining on his back with his legs pulled back towards his chest. The boy's anus and testicles were visible. The boy appeared to be between 6 and 8 years of age. Blue jeans appear to be around the boy's ankles.*

    b.    **File name: k1 nice-little-boy 1188.jpg**
        **File Size: 74K**

        *This image depicted a nude prepubescent Caucasian boy reclining on his back. The boy's face was not seen, however his penis and testicles were visible. A white milky like fluid covered the boy's genitals, lower abdomen, and right thigh.*

    c.    **File Name: k1 nice-little-boy 1195.jpg**
        **File Size: 419K**

        *This image depicted the penises of two males inserted into the mouth of a young boy with an olive complexion. One male is pubescent whereas the other is prepubescent. Only the face of the young boy was observed.*

---

2 The actual name and email address of Person 1 will remain confidential for purposes of this arrest warrant.

44.    Detective Cecil found a reply email, dated September 19, 2012 at 12:57pm, from **GARDNER** to **PERSONAL ADDRESS 1** stating:

> *Skype me I love the pics we can talk and trade :) and can we be friends and connect with each other on shareghost?  Get back to me :) btw love the pics :) im zach*

45.    Detective Cecil showed **GARDNER** the September 18 and 19, 2012 emails to and from **PERSONAL ADDRESS 1**.  **GARDNER** stated that he had forgotten about those emails.  **GARDNER** admitted to responding to **PERSONAL ADDRESS 1**.  **GARDNER** stated that he never emailed this user any images.

46.    **GARDNER** stated that he never had sexual contact with a child.

47.    Law enforcement concluded the discussion with **GARDNER**

C. <u>Follow Up Forensic Examinations</u>

48.    On January 7, 2013, Detective Cecil reexamined the contents of **GARDNER's** two email accounts.

49.    Detective Cecil discovered numerous texting conversations which had been stored in the Yahoo! email account.

50.    There was one series of conversations which were between **ZACH EMAIL YAHOO** and a user identified as **PERSON 2** utilizing the email address **PERSONAL ADDRESS 2**.3  The earliest conversation available between **GARDNER** and **PERSON 2** appears to have been November 1, 2011.  The topic of discussion in many of these conversations related to having sexual intercourse with minor children and the desire of both of them to find a boy and have sex with him.  The following describes in sum and substance the nature of these conversations:

---

3 The actual name and email address of Person 2 will remain confidential for purposes of this arrest warrant.

a.    **GARDNER** stated in one of these conversations that he had recently had sexual intercourse with a minor child and that he had taken pictures on some occasions of the children he was having sex with.

b.    There was a discussion which mentioned **PERSON 2** getting together with **GARDNER** and having sexual intercourse with a minor male child and one with another. At times, **PERSON 2** stated he was traveling to Indiana and had traveled to Indiana. He even mentioned staying with friends in "TH" (which appears to be Terre Haute).

c.    There was discussion of trading nude images and videos of minor male children. It appeared from the conversations that **GARDNER** and **PERSON 2** traded with one another images and videos of minor boys having sexual intercourse with minor boys or men. In many of the conversations, **GARDNER** mentioned his obsession of trying to find videos and/or images of minor boys.

51.    Further investigation of the email address **PERSONAL ADDRESS 2** revealed a Facebook profile for a person having a name consistent with **PERSON 2**. According to his Facebook profile, **PERSON 2** is affiliated with Indiana.

52.    Detective Cecil further found two emails sent form **GARDNER** to a user identified as **PERSON 3** utilizing the email address **PERSONAL ADDRESS 3**.[4] The first email, sent on September 8, 2012 at 5:03am, contained the following statement: "hey andy im gay too im 21 yr old (pthc)". The second email, sent on September 8, 2012 at 10:42am, contained the following statement: "hey andy im gay too im 21 yr old (pthc)!!".

53.    Detective Sergeant Jennifer Barnes conducted a forensic examination on the black HP laptop computer. Detective Sergeant Barnes confirmed that there was no child pornography

---

4 The actual name and email address of Person 3 will remain confidential for purposes of this arrest warrant.

on the HP laptop in the current user files and folders created after the reinstallation of the operating system. Detective Sergeant Barnes determined that the most recent operating system had been reinstalled on or about November 14, 2012.

54. Detective Sergeant Barnes found evidence of the installation of multiple different P2P file sharing programs on the black HP laptop computer. In addition, she reported finding the GUID **2CDC804C4E453DE435947C937D9C1B00** which was the same GUID of the computer from which Detective Cecil connected to during the course of the undercover operation.

55. Detective Sergeant Barnes conducted forensics on the HP laptop computer and found images and videos of child pornography, including images saved to the root of the recovery partition of the computer. One of the recovered folders was named "mixed and sorted", and included following files:

a. **1180841183683.jpg**

*The image depicts a nude prepubescent child with arms bound behind his/her back with rope. An adult penis is being inserted into the anal area of the minor child.*

b. **1181352709351.jpg**

*The image depicts a nudge prepubescent child laying on his/her stomach with arms bound behind his/her back with duct tape. The child's legs are being stretched apart with rope, revealing the minor child's anal and/or pubic area.*

c. **1182716773803.jpg**

*The image depicts a nudge prepubescent child laying on his/her back. The child's legs are being stretched apart with rope, revealing the minor child's anal and/or pubic area. The child's face is covered.*

d. **Babyshi-helpless006.jpg**

*The image depicts a nudge prepubescent child leaning forward on some item covered by a blue blanket. The*

13

*child's legs are bound and stretched apart. An adult male is seen inserting his fingers into the anal and/or public area of the child.*

e.    **Babyshi-helpless010.jpg**

*The image depicts a nudge prepubescent child leaning forward on some item covered by a blue blanket. The child's legs are bound and stretched apart. An adult male is seen inserting his penis into the anal and/or public area of the child.*

f.    **Goldi_tied+and+hanging.jpg**

*The image depicts a nudge prepubescent child that is bound, gagged and hanging upside-down by rope. The genital and/or pubic region is visible.*

56.    After an examination of the internet activity on the black HP laptop computer, Detective Sergeant Barnes found evidence of searches for child pornography utilizing various internet search engines. In addition, Detective Sergeant Barnes found a search for "Anderson Indiana daycare help" in the search terms.

### D. Follow Up to 1723 West 10th Street Investigation – February 25, 2013

57.    On February 25, 2013, law enforcement conducted a follow up interview with **GARDNER** at his residence at 1723 West 10th Street, Anderson, Indiana. **GARDNER** was again advised that he was not under arrest and did not have to speak with law enforcement. **GARDNER** consented to an interview with law enforcement in the law enforcement vehicle.

58.    **GARDNER** admitted to installing prior versions of Windows. He admitted that he downloaded child pornography to his HP laptop computer and then would move the files to a thumbdrive. **GARDNER** stated that he reinstalled Windows again when he gave the computer to Petry.

59.    When told that forensics revealed that the operating system had been reinstalled

14

on or about November 14, 2012, **GARDNER** admitted that would have been about the time he gave the HP computer to Petry. **GARDNER** stated that Petry gave **GARDNER** Percocet in exchange for the laptop.

60.     Detective Cecil showed **GARDNER** pieces of paper containing multiple images of child pornography in gallery form that had been found on the HP laptop computer. Detective Cecil also showed **GARDNER** printed copies of child pornographic videos which depicted random frames. All of these images depicted nudge, prepubescent minor children, exposing their genital or pubic area. **GARDNER** signed his name, date and time on those images and videos which he recognized, including "Zachs movie_0001.wmv" (described above).

61.     **GARDNER** admitted that he downloaded these images and videos that he signed. **GARDNER** admitted to downloading the video "Zachs movie_0001.wmv". He stated that he used Windows Movie Maker to view the video and changed the file name. He stated that he did not create the video.

62.     **GARDNER** admitted receiving the September 18, 2012 email from **PERSON 1** with the **PERSONAL ADDRESS 1.**

63.     **GARDNER** admitted to initiating a chat conversation with **PERSON 2** with the mail address **PERSONAL ADDRESS 2. GARDNER** admitted to trading videos with **PERSON 2. GARDNER** admitted to discussing having sexual intercourse with a boy with **PERSON 2.**

64.     **GARDNER** admitted that he may have sent **PERSON 2** approximately 20-40 pictures and 5-10 videos. **GARDNER** admitted that **PERSON 2** may have sent **GARDNER** approximately 3 or 4 pictures and videos.

65.     When discussing the email to **PERSON 3** on September 8, 2012, **GARDNER**

15

App. 111

admitted that he knew that the term "PTHC" meant child pornography although he did not know what the acronym meant. **GARDNER** stated that searching "PTHC" in a P2P file sharing program came up with all kinds of search results, including "preteen hardcore". **GARDNER** stated that one of the pictures he downloaded via P2P file sharing had the email address **PERSONAL ADDRESS 3**, consistent with that of **PERSON 3**.

66.    **GARDNER** admitted to using internet search engines to find child pornography, and used the term "PTHC" in doing so. **GARDNER** stated that he knew a search of the term "PTHC" would show pictures of young children.

67.    **GARDNER** admitted to searching for "Anderson Indiana daycare help" via an internet search engine.

68.    **GARDNER** admitted to downloading the P2P programs that Detective Sergeant Barnes had determined were installed on the black HP laptop computer.

### III.    CONCLUSION

69.    Based on the foregoing, it is my belief that probable cause exists that:

a.    **COUNT 1:** Between on or about September 18, 2012 and September 19, 2012, at Anderson, Indiana in the Southern District of Indiana, **GARDNER** knowingly received visual depictions of minors engaged in sexually explicit conduct, in violation of Title 18, United States Code, Section 2252(a)(2).

b.    **COUNT 2:** Between on or about January 1, 2012 and on or about November 14, 2012, at Anderson, Indiana in the Southern District of Indiana, **GARDNER** knowingly possessed visual depictions of minors engaged in sexually explicit conduct, in violation of Title 18, United States Code, Section 2252(a)(4)(B).

16

70.     Accordingly, I respectfully request this Court to issue an Arrest Warrant and

Criminal Complaint charging **GARDNER** with one count of receipt and one count of possession

of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(a)(4)(B).

Michael Johnson
Special Agent
Department of Homeland Security
U.S. Homeland Security Investigations

Subscribed and sworn before me this _20_ day of June, 2013.

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

17

Case 1:13-cr-00251-TWP-MJD   Document 624   Filed 12/17/13   Page 1 of 38 PageID #: 6278

FILED
U.S. DISTRICT COURT
INDIANAPOLIS DIVISION

2013 DEC 17  PM 2: 43

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

UNITED STATES OF AMERICA,     )
       )
     Plaintiff,        )
       )
     v.        )    No. 1:13-cr-
       )
RICHARD ZACHARY GARDNER,     )
       )
     Defendant.        )

**1 : 13 -cr- 0 2 5 1 TWP -MJD**

## PLEA AGREEMENT

The United States of America, by counsel, Joseph H. Hogsett, United States Attorney for

the Southern District of Indiana, and MaryAnn T. Mindrum, Assistant United States Attorney, and

the defendant, RICHARD ZACHARY GARDNER, in person and by counsel, Bill Dazey, hereby

inform the Court that a Plea Agreement has been reached in this cause pursuant to Federal Rule of

Criminal Procedure 11(c)(1)(C).  *The following are its terms and conditions:*

     1.     **Plea of Guilty to the Information:**  The defendant agrees to waive indictment by

a federal grand jury and plead guilty to Count 1 of the Information, which charges that the

defendant knowingly received child pornography, in violation of 18 U.S.C. § 2252(a)(2).

     **A. Potential Penalties:** Count 1 may be punished by a term of imprisonment of

between five (5) and twenty (20) years, a fine of up to $250,000, and a term of supervised release

following any term of imprisonment for five (5) years up to the life of the defendant.

     **B. Elements of Count 1:**  To sustain the offense charged in Count 1 of the

Information, the government must prove the following propositions beyond a reasonable doubt:

FIRST:       the defendant knowingly received material containing one or more visual
               depictions;

SECOND:    the visual depiction had been (a) mailed; (b) shipped or transported using

1

any means or facility of interstate or foreign commerce; (c) shipped or transported in or affecting interstate or foreign commerce, or (d) produced using materials that had been mailed, or so shipped or transported;

THIRD:       the visual depiction was of a minor engaged in sexually explicit conduct; and

FOURTH:      the defendant knew that at least one of the persons in such visual depiction was a minor and knew that the visual depiction was of such minor engaged in sexually explicit conduct.

## GENERAL PROVISIONS

2.     **Rule 11(c)(1)(C):**  The defendant understands that this Plea Agreement is governed by Federal Rule of Criminal Procedure 11(c)(1)(C) and that the parties have agreed upon the specific sentencing range set forth in this Plea Agreement.   The parties understand that the Court must accept or reject the sentencing range specified in this Plea Agreement.   If the Court rejects this Plea Agreement, then either party may withdraw from this Plea Agreement.

3.     **Plea Agreement Based on Information Presently Known:**   The defendant recognizes and understands that this Plea Agreement is based upon the information presently known to the United States Attorney for the Southern District of Indiana.

## SPECIFIC PROVISIONS

4.     **Counts of Conviction:**   The defendant will enter a plea of guilty to Count 1 of the Information.

5.     **Sentencing Recommendation Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C):**

A. **Imprisonment:**  At the time of sentencing, the defendant understands that the Court should sentence the defendant to a term of imprisonment between seventy (70) and eighty-seven (87) months.

2

    B. **Lifetime Supervised Release:**   Both parties reserve the right to present evidence and argument on the issue of the term of supervised release following the term of imprisonment.

6.    **Special Conditions of Supervised Release:**   The parties agree that the Court should impose the Special Conditions of supervised release listed below, in addition to any other Standard and Special Conditions which the Court deems appropriate in this case.   The parties also recognize that the Court has the authority to modify terms of supervised release as provided in 18 U.S.C. § 3583.

    A. **Pornography Prohibition:**   The defendant shall not possess any obscenity, pornography, erotica, or nude images.   Any such material found in the defendant's possession shall be considered contraband and may be confiscated by the probation officer.

    B. **Sexual Disorders Treatment:**   The defendant shall participate in a program of treatment for sexual disorders, including periodic polygraph examinations, as directed by the probation officer.   The Court authorizes the release of the presentence report and available psychological evaluations to the mental health provider, as approved by the probation officer.

    C. **No Unsupervised Contact with Minors:**   The defendant shall not have any unsupervised contact with any minor child, unless the contact has been disclosed to and approved by the probation officer.   In determining whether to approve such contacts involving members of the defendant's family, the probation officer shall determine if the defendant has notified the persons having custody of any such minors about defendant's conviction in this case and the fact that the defendant is under supervision.   If this notification has been made, and if the person having

custody consents to the contact, then this condition is not intended to prevent approval of the contact.

**D. Sex Offender Registration:**  The defendant shall register as a sex offender with the appropriate authorities of any state in which he resides, is employed, or attends school as required by both federal and state law, including the Sex Offender Registration and Notification Act (SORNA) at 42 U.S.C. §16901, et seq.

**E. Consent to Searches:**  The defendant shall submit to the search by the probation officer of defendant's person, vehicle, office/business, residence, and property, including any computer systems and its peripheral devices with the assistance of other law enforcement as necessary.  The defendant shall submit to the seizure of contraband found by the probation officer.  The defendant shall warn other occupants the premises may be subject to searches.

**F. DNA Sample:**  The defendant shall provide a DNA sample as directed by the probation officer.

**G. Computer Monitoring:**  The defendant shall consent, at the direction of the probation officer, to having installed on defendant's computer(s) and any hardware or software, systems to monitor the defendant's computer use.  Monitoring will occur on a random and/or regular basis.  The defendant will warn other occupants of the existence of the monitoring software placed on defendant's computer(s).

7.    **Fine:**  Both parties reserve the right to present evidence and arguments concerning whether the Court should impose a fine in this case and the amount of any such fine.  The defendant understands that the amount and payment terms of any fine will be determined by the Court.

4

8.    **Restitution:**   The parties understand that federal law requires mandatory restitution for the offenses charged in the Information pursuant to Title 18, United States Code Section 3663A.   The parties reserve the right to present evidence and arguments concerning the amount and payment terms of any potential restitution to the victims in the child pornography.   In addition, the defendant agrees to pay restitution as follows:

A.  The defendant will pay $5,000 to each and every other identified victim in the child pornography involved in Count 1 of the Information, if any such victim can be identified and they make a claim for such restitution based upon their prior damages relating to these offenses and any future counseling expenses or other damages.

B.  The parties understand that the government has not yet determined through its investigation whether any other victims can be identified or will seek such restitution.

C.  To make restitution payments, the defendant agrees to remit to the Court at the time of sentencing, or as directed by the Court, a check or money order in the amount of the restitution.   This check or money order should be made payable to the Clerk of the United States District Court.

D.  The government agrees to consider the amount of any restitution ordered in making its fine recommendation.   However, the government retains the right to determine what effect, if any, the amount of restitution may have in its recommendation.

9.    **Mandatory Special Assessment:**   The defendant agrees to remit to the Court at the time of sentencing or as directed by the Court a certified check or money order in the amount of $100, payable to Clerk, United States District Court, which amount represents the mandatory special assessment that must be imposed by the Court and paid by all federal defendants pursuant

5

to Title 18, United States Code, Section 3013. If the defendant is unable to pay this amount as specified, then he agrees to make payment as ordered by the Court.

10.    **Forfeiture:** The defendant hereby admits that the personal property taken from the defendant or defendant's residence(s) during the searches by law enforcement officers in this case and obtained by law enforcement officers was used to facilitate and was used or was intended to be used in the commission of the offense to which the defendant is pleading guilty, and that the property is therefore subject to forfeiture pursuant to Title 18, United States Code, Sections 2253 and/or 2254. Therefore, the defendant hereby abandons all right, title and interest in all such personal property, including, but not necessarily limited to, computer equipment, computer storage media, monitors, and computer files, so that proper disposition, including destruction, may be made thereof by federal, state, or local law enforcement agencies involved in the investigation of the defendant's criminal activity. The defendant further agrees not to contest any forfeiture action brought against any of the seized personal property, whether any such forfeiture action is administrative or judicial, civil or criminal, and agrees not to contest any use or destruction of any of the seized personal property by any federal, state or local law enforcement agency.

11.    **Obligation to Pay Financial Component of Sentence:** If the defendant is unable to pay any financial component of the sentence on the date of sentencing, then he agrees that the payment of the financial component should be a condition of his supervised release as well as an ordered payment through the Inmate Financial Responsibility Program of the U.S. Bureau of Prisons. The defendant would have a continuing obligation to pay the financial component of his sentence. The defendant further agrees that as of the date of filing this plea agreement he will provide all requested financial information to the Financial Litigation Unit of the United States Attorney's Office for the Southern District of Indiana for use in the collection of any fines and restitution imposed by the Court and authorizes the Financial Litigation Unit to obtain credit

6

**App. 119**

reports relating to the defendant for use in the collection of any fines and restitution imposed by the Court.

12.    **Potential Civil Commitment:**   The defendant has been advised, and understands, that pursuant to 18 U.S.C. § 4248, the defendant faces potential civil commitment as a sexually dangerous person following the expiration of the defendant's term of imprisonment.   The defendant understands that any potential civil commitment would be the subject of a separate civil proceeding.   The defendant further understands that no one, including the defendant's attorney or the Court, can predict with certainty the effect of the defendant's conviction on such a civil commitment determination or the likelihood that civil commitment would be imposed.   The defendant understands that civil commitment can be imposed for an indefinite period of time. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any potential civil commitment consequences that the defendant's plea may entail.

13.    **Background Information:**   The defendant acknowledges and understands that no limitation shall be placed upon the Court's consideration of information concerning the background, character, and conduct of the defendant for the purpose of imposing an appropriate sentence.   The defendant acknowledges and understands that the United States is not prohibited from providing information concerning background, character, and conduct of the defendant for the purpose of recommending or advocating an appropriate guideline calculation and sentence.

14.    **Compliance with Federal and State Laws:**   The defendant understands that the obligations of the Government in this Plea Agreement are expressly contingent upon the defendant abiding by federal and state laws.

15.    **No Protection from Prosecution for Unknown or Subsequent Offense:** The defendant acknowledges and agrees that nothing in this Plea Agreement shall protect the defendant in any way from prosecution for any offense not specifically covered by this agreement,

or not known the Government at this time.   The defendant further acknowledges and agrees that nothing in this agreement shall protect the defendant in any way from prosecution for any offense committed after the date of this agreement.

16.    **No Further Charges:**  The United States Attorney for the Southern District of Indiana agrees not to file any further charges against the defendant for advertising, distributing, receiving, transporting and possessing child pornography arising from his presently known criminal conduct in the Southern District of Indiana, provided that the Court accepts this Plea Agreement and sentences the defendant as described above.  **Excluded Offenses:**  The defendant has denied producing any child pornography or engaging in any unlawful sexual contact with a minor or adult, or attempting or conspiring to do so (hereinafter the "Excluded Offenses"). The defendant understands that this limitation on the bringing of new charges does not restrict in any way the government's right to pursue criminal charges for the Excluded Offenses, if such charges are discovered at any point before, during or after the conclusion of the above-entitled action.   In addition, this provision does not restrict the right of the United States Attorney to bring any other charges against the defendant for any undisclosed or unknown criminal offenses, any other crime of violence or any sex offense, if the defendant has committed any such offenses prior to this Plea Agreement or commits such offenses in the future.   Finally, if the Court rejects this Plea Agreement, then the United States Attorney will not be bound by this Plea Agreement in any way and may seek to bring additional charges.

17.    **Good Behavior Requirement:**  The defendant agrees to commit any new federal, state or local offenses and to fully comply with all conditions release while this case is pending. Violation of this condition will relieve the government of its obligations under this agreement.

18.    **Waiver of Appeal:**    The defendant understands that the defendant has a statutory right to appeal the conviction and sentence imposed and the manner in which the sentence was

8

determined.   Acknowledging this right, and in exchange for the concessions made by the Government in this Plea Agreement, the defendant agrees that in the event the Court accepts this Plea Agreement under Rule 11(c)(1)(C) and sentences the defendant to a term of imprisonment between seventy (70) and eighty-seven (87) months, regardless of how the sentence is calculated by the Court, then the defendant expressly waives the right to appeal the conviction and sentence imposed in this case on any ground, including the right to appeal conferred by 18 U.S.C. § 3742. Additionally, the defendant expressly agrees not to contest the conviction or sentence or the manner in which it was determined in any collateral attack, including, but not limited to, an action brought 28 U.S.C. § 2255.  This waiver of appeal specifically includes all provisions of the sentence imposed in this case, including the terms of the supervised release and the amount of any restitution, fine or forfeiture.  This Section 2255 waiver does not encompass claims that the defendant received ineffective assistance of counsel in the negotiation of the plea or Plea Agreement.

### SENTENCING GUIDELINES STIPULATIONS

19.    Pursuant to § 6B1.4 of the Sentencing Guidelines, the parties agree to the Stipulations below.   The parties understand and agree that these Stipulations are binding on the parties, but are only a recommendation to the Court and that the Court will determine the sentencing guidelines applicable in this case.   The parties agree that no stipulation regarding any factors in Chapter 4, Criminal History Category, of the Sentencing Guidelines has been made, and that such determination will be made by the Court.

A. **Base Offense Level:**   The base offense level for the offense charged is level twenty (20).   U.S.S.G. §§ 2G2.2(a)(2) & (b)(1).

9

B. **Age of Victims:**   U.S.S.G. § 2G2.2(b)(2) applies to this offense because the material involved prepubescent minors or minors who had not attained the age of 12 years.   This results in a further two (2) level increase in the offense level.

C. **Sadistic or Masochistic Conduct:**   U.S.S.G. § 2G2.2(b)(4) applies to this offense because the child pornography included material that portrayed sadistic or masochistic conduct or other depictions of violence.   This results in a four (4) level increase in the offense level.

D. **Use of Computer:**   U.S.S.G. § 2G2.2(b)(6) applies to this offense because the defendant used a computer to distribute, receive and possess the material.   This results in a further two (2) level increase in the offense level.

E. **Number of Images:**   U.S.S.G. § 2G2.2(b)(7)(A) applies to this offense because the offense involved at least 10 but fewer than 150 images of child pornography.   This results in a further two (2) level increase in the offense level.

F. **Total Offense Level for the Information:** In total, the offense in Count 1 of the Information carries a combined offense level of thirty (30), pursuant to Chapters Two and Three of the U.S. Sentencing Guidelines.

G. **Acceptance of Responsibility:** To date, the defendant has demonstrated a recognition and affirmative acceptance of personal responsibility for the criminal conduct set forth in the Information.   Based upon defendant's willingness to accept a plea agreement and enter a plea of guilty to the criminal conduct noted in this agreement, the Government agrees that the defendant should receive a two (2) level reduction *provided* the defendant satisfies the criteria set forth in Guideline § 3E1.1(a) & (b) up to and including the time of sentencing.   The defendant timely notified the Government of defendant's intention to enter a plea of guilty, thereby permitting the Government and the Court to allocate their resources efficiently.   After the defendant enters a plea of guilty, the government intends to file a motion pursuant to U.S.S.G. §

3E1.1(b) requesting that the Court decrease the offense level by one (1) additional level.   The

parties reserve the right to present evidence and arguments concerning defendant's acceptance of

responsibility at the time of sentencing.

    H.   **Final Offense Level:**   Based upon all of these stipulations, then the defendant

faces a final offense level of twenty-seven (27).

## FINAL PROVISION

**23.    Complete Agreement:**   The defendant acknowledges that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this document, to induce the defendant to plead guilty.   This document is the complete and only plea agreement between the defendant and the United States Attorney for the Southern District of Indiana, and is binding only on the parties to this agreement, supersedes all prior understandings, if any, whether written or oral, and cannot be modified except in writing, signed by all parties and filed with the Court, or on the record in open court.

Respectfully submitted,

JOSEPH H. HOGSETT
United States Attorney

12/13/13
DATE

MaryAnn T. Mindrum
Assistant U.S. Attorney

12.13.13
DATE

Joe H. Vaughn
Chief, Criminal Division

12 72-13
DATE

RICHARD ZACHARY GARDNER
Defendant

12-13-13
DATE

William H. Dazey, Jr.
Attorney for Defendant

**App. 125**

### STATEMENT OF THE DEFENDANT

I have read the entire Plea Agreement and discussed it with my attorney.

I understand all the terms of the Plea Agreement and those terms correctly reflect the results of plea negotiations.

I am fully satisfied with my attorney's representation during all phases of this case.

I am freely and voluntarily pleading guilty in this case.

I am pleading guilty as set forth in this Plea Agreement because I am guilty of the crime(s) to which I am entering my plea(s).

My attorney has informed me, and I understand, that I have the right to appeal any conviction and sentence that I receive, unless I have waived my right to appeal as part of this Plea Agreement.  If I have not waived my right to appeal, I understand that I must file a Notice of Appeal within 14 days of the entry of the judgment in this case; I further understand that the Clerk of the Court will prepare and file a Notice of Appeal on my behalf if I ask that to be done.  I also understand that the United States has the right to appeal any sentence that I receive under this Plea Agreement.

Finally, my attorney has informed me, and I understand, that if I provide or cause to be provided materially false information to a judge, magistrate-judge, or probation officer, then the Court may increase my sentence.


_____                    _____
DATE                                        RICHARD ZACHARY GARDNER
                                            Defendant

℀AO 245B　　(Rev. 09/11) Judgment in a Criminal Case
　　　　　　　Sheet 1

# UNITED STATES DISTRICT COURT

|  |  |
|---|---|
| **SOUTHERN** | District of |
| | **INDIANA** |

UNITED STATES OF AMERICA

v.

RICHARD ZACHERY GARDNER

**JUDGMENT IN A CRIMINAL CASE**

| | |
|---|---|
| Case Number: | 1:13CR00251-001 |
| USM Number: | 11514-028 |

William H. Dazey, Jr.
Defendant's Attorney

## THE DEFENDANT:

**X** pleaded guilty to count(s)　　1

**G** pleaded nolo contendere to count(s)
　　which was accepted by the court.

**G** was found guilty on count(s)
　　after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count(s) |
|---|---|---|---|
| 18 U.S.C. § 2252(a)(2) | Receipt of Child Pornography | 9/19/12 | 1 |

The defendant is sentenced as provided in pages 2 through ___5___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

**G** The defendant has been found not guilty on count(s)

**G** Count(s) _____ **G** is **G** are  dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

3/11/2014
Date of Imposition of Judgment

*[signature]*

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

03/17/2014
Date

**A CERTIFIED TRUE COPY**
Laura A. Briggs, Clerk
U.S. District Court
Southern District of Indiana

By *[signature]*
　　　　Deputy Clerk

App. 127

Case: 1:13-cr-00251-WWW-JDD Document 585B  Filed: 03/17/15    age 34 of 638 age ID: 4292

AO 245B    (Rev. 09/11) Judgment in Criminal Case
Sheet 2 — Imprisonment

| | Judgment — Page __2__ of __5__ |

DEFENDANT:        RICHARD ZACHERY GARDNER
CASE NUMBER:      1:13CR00251-001

## IMPRISONMENT

      The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:     70 months

**X**  The court makes the following recommendations to the Bureau of Prisons:
    That the defendant be designated to a facility in Elkton, Ohio, or any institution maintaining a sex offender management program, at the lowest security designation possible.

**G**  The defendant is remanded to the custody of the United States Marshal.

**X**  The defendant shall surrender to the United States Marshal for this district:

    **X**  at      2:48      **G** a.m.  **X** p.m.  on      March 11, 2014     .

    **G**  as notified by the United States Marshal.

**G**  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    **G**  before 2 p.m. on                

    **G**  as notified by the United States Marshal.

    **G**  as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on                         to                            

a                      , with a certified copy of this judgment.

                                    
                                UNITED STATES MARSHAL

         By                                       
                                  DEPUTY UNITED STATES MARSHAL

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
Sheet 3 --- Supervised Release

Judgment—Page ___3___ of ___5___

DEFENDANT:    RICHARD ZACHERY GARDNER
CASE NUMBER:    1:13CR00251-001

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :    10 years

    The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter.

G   The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse.  (Check, if applicable.)

X   The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

X   The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

G   The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. (Check, if applicable.)

G   The defendant shall participate in an approved program for domestic violence.  (Check, if applicable.)

    If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

    The defendant shall comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal  activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
Sheet 3C — Supervised Release

| | Judgment—Page 3.01 of 5 |

DEFENDANT:    RICHARD ZACHERY GARDNER
CASE NUMBER:    1:13CR00251-001

## SPECIAL CONDITIONS OF SUPERVISION

1. The defendant shall pay any fine that is imposed by this judgment and that remains unpaid at the commencement of the term of supervised release.

2. The defendant shall provide the probation officer access to any requested financial information.

3. The defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer.

4. The defendant shall participate in a substance abuse treatment program at the direction of the probation officer, which may include no more than eight drug tests per month. The defendant shall abstain from the use of all intoxicants, including alcohol, while participating in a substance abuse treatment program. The defendant is responsible for paying a portion of the fees of substance abuse testing and/or treatment.

5. The defendant shall submit to the search (with the assistance of other law enforcement as necessary) of his person, vehicle, office/business, residence and property, including computer systems and peripheral devices. The defendant shall submit to the seizure of contraband found. The defendant shall warn other occupants the premises may be subject to searches.

6. The defendant shall not possess/use a computer unless he agrees to comply with the Computer Restriction and Monitoring Program at the direction of the probation officer. Monitoring will occur on a random or regular basis. The defendant shall advise the probation office of all computers available to him for use. Any computer or Internet-enabled device the defendant is found to have used and has not disclosed shall be considered contraband and may be confiscated by the probation officer. The defendant shall warn other occupants of the existence of the monitoring software placed on his computer.

7. The defendant shall not possess any pornography, erotica or nude images. Any such material found in the defendant's possession shall be considered contraband and may be confiscated by the probation officer.

8. The defendant shall participate in a program of treatment for sexual disorders, including periodic polygraph examinations, as directed by the probation officer. The Court authorizes the release of the presentence report and available psychological evaluations to the mental health provider, as approved by the probation officer.

9. The defendant shall not have any unsupervised contact with any minor child, unless the contact has been disclosed to and approved by the probation officer. In determining whether to approve such contacts involving members of the defendant's family, the probation officer shall determine if the defendant has notified the persons having custody of any such minors about his conviction in this case and the fact that he is under supervision. If this notification has been made, and if the person having custody consents to the contact then this condition is not intended to prevent approval of the contact.

10. The defendant shall register as a sex offender with the appropriate authorities of any state in which he resides, is employed, or attends school.

11. The defendant shall pay any outstanding location monitoring fees that were accrued while on pretrial supervision.

12. The defendant shall have no contact with Leer erty or any individuals who inadvertently bring him into contact with Leer erty

Upon a finding of a violation of probation or supervised release, I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

(Signed)

_____    _____
Defendant                            Date

_____    _____
U.S. Probation Officer/Designated Witness    Date

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

| | |
|---|---|
| | Judgment — Page  4  of  5 |
| DEFENDANT:    RICHARD ZACHERY GARDNER | |
| CASE NUMBER:    1:13CR00251-001 | |

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| TOTALS | $  100.00 | $ | $  30,000.00 |

**G**    The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

**X**    The defendant shall make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Victim of "Cindy Series" | $5,000.00 | $5,000.00 | |
| John Doe 1 of "8 Kids Series" | $5,000.00 | $5,000.00 | |
| John Doe 2 of "8 Kids Series" | $5,000.00 | $5,000.00 | |
| John Doe 3 of "8 Kids Series" | $5,000.00 | $5,000.00 | |
| John Doe 4 of "8 Kids Series" | $5,000.00 | $5,000.00 | |
| John Doe 5 of "8 Kids Series" | $5,000.00 | $5,000.00 | |
| **TOTALS** | $        30,000.00 | $        30,000.00 | |

**G**    Restitution amount ordered pursuant to plea agreement    $ _____

The defendant shall pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

**X**    The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    **X**    the interest requirement is waived for the    **G**  fine    **X**  restitution.

    **G**    the interest requirement for the    **G**  fine    **G**  restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

**App. 131**

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
           Sheet 6 — Schedule of Payments

Judgment — Page ___5___ of ___5___

DEFENDANT:    RICHARD ZACHERY GARDNER
CASE NUMBER:    1:13CR00251-001

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A    ☐    Lump sum payment of $ _____ due immediately, balance due

    ☐ not later than _____ , or
    ☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ G below; or

B    ☒    Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☒ G below); or

C    ☐    Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
    _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D    ☐    Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
    _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
    term of supervision; or

E    ☐    Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
    imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F    ☐    If this case involves other defendants, each may be held jointly and severally liable for payment of all or part of the restitution
    ordered herein and the Court may order such payment in the future.

G    ☒    Special instructions regarding the payment of criminal monetary penalties:

    Any unpaid restitution balance during the term of supervision shall be paid at a rate of not less than 10% of the defendant's gross
    monthly income.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐    Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount,
    and corresponding payee, if appropriate.

| Defendant Name | Case Number | Joint & Several Amount |
|---|---|---|

☐    The defendant shall pay the cost of prosecution.

☐    The defendant shall pay the following court cost(s):

☒    The defendant shall forfeit the defendant's interest in the following property to the United States:
Any materials or property used or intended to be used in the offense, including all child pornography and erotica, a Hewlett Packard laptop, and a SanDisk 8GB thumb drive seized by the government on July 7 and November 26, 2012.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

**App. 132**

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:13-cr-0124-TWP-TAB |
| | ) | |
| WILLIAM DONALD HORNER, | ) | |
| | ) | |
| Defendant. | ) | |

## PLEA AGREEMENT

The United States of America, by counsel, Joseph H. Hogsett, United States Attorney for

the Southern District of Indiana, and MaryAnn T. Mindrum, Assistant United States Attorney, and

the defendant, WILLIAM DONALD HORNER, in person and by counsel, Monica Foster, Chief

Indiana Federal Community Defender, hereby inform the Court that a Plea Agreement has been

reached in this cause pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).   The following

are its terms and conditions:

1.      **Plea of Guilty to the Information:**   The defendant agrees to waive indictment by

a federal grand jury and plead guilty to Count 1 of the Information, which charges that the

defendant knowingly possessed child pornography in violation of 18 U.S.C. § 2252(a)(4)(B).

A.   **Potential Penalties:** Count 1 may be punished by a term of imprisonment of up to

ten (10) years, a fine of up to $250,000, and a term of supervised release following any term of

imprisonment for five (5) years up to the life of the defendant.

B.   **Elements of Count 1:**   To sustain the offense charged in Count 1, a violation of 18

U.S.C. § 2252(a)(4)(B) (possession), the government must prove the following propositions

beyond a reasonable doubt:

FIRST:        the defendant knowingly possessed material containing one or more visual

1

depictions;

SECOND:    the visual depiction had been (a) mailed; (b) shipped or transported using any means or facility of interstate or foreign commerce; (c) shipped or transported in or affecting interstate or foreign commerce, or (d) produced using materials that had been mailed, or so shipped or transported;

THIRD:     the visual depiction was of a minor engaged in sexually explicit conduct; and

FOURTH:    the defendant knew that at least one of the performers in such visual depiction was a minor and knew that the visual depiction was of such minor engaged in sexually explicit conduct.

## GENERAL PROVISIONS

2.     **Sentencing Court Not Bound by Guidelines or Recommendations:**   The defendant acknowledges that this Plea Agreement is governed by Federal Rule of Criminal Procedure 11(c)(1)(B) and that the determination of his sentence is within the discretion of the Court.   The defendant understands that if the Court decides to impose a sentence higher or lower than any recommendation of either party, or determines a different advisory sentencing guideline range applies in this case, or decides to depart from the otherwise applicable advisory sentencing guideline range for any reason, then the defendant will not be permitted to withdraw defendant's plea of guilty for that reason and will be bound by defendant's plea of guilty.

3.     **Sentencing Court's Discretion Within the Statutory Range:**   The defendant agrees and understands that the Court will use its discretion to fashion a sentence within the statutory range set forth in Paragraph 1.   The defendant agrees and understands that the Court will consider the factors set forth in 18 U.S.C. § 3553(a) in determining the appropriate sentence within the statutory range.   The defendant agrees and understands that the Court will also consult and take into account the United States Sentencing Guidelines ("Sentencing Guidelines" or "U.S.S.G.") in determining the appropriate sentence within the statutory range.   The defendant agrees and understands that the Sentencing Guidelines are not mandatory or binding on the Court,

but are advisory in nature.   The defendant agrees and understands that the final determination of

the sentence, including the applicable advisory guideline calculation, criminal history category,

and advisory sentencing guideline range will be made by the Court.

4.        **Plea Agreement Based on Information Presently Known:**   The defendant

recognizes and understands that this Plea Agreement is based upon the information presently

known to the United States Attorney for the Southern District of Indiana.

### SPECIFIC PROVISIONS

5.        **Counts of Conviction:**   The defendant will enter a plea of guilty to Count 1 of the

Information.

6.        **Sentencing Recommendation Pursuant to Federal Rule of Criminal**

**Procedure 11(c)(1)(B):**   At the time of sentencing, the defendant understands that the

Government will recommend a sentence within the advisory Sentencing Guidelines range

consistent with the stipulations stated herein. The Government reserves the right to present

evidence and argument on the issue of sentence.   The defendant is free to request whatever

sentence the defendant deems appropriate, including one below the advisory guidelines range, and

reserves the right to present evidence and argument in such regard.

7.        **Lifetime Supervised Release:**   The parties will recommend that the Court impose

a term of supervised release following the term of imprisonment to last for the remainder of the

defendant's life.

8.        **Special Conditions of Supervised Release:**   The parties jointly recommend that

the Court should impose the Special Conditions of supervised release listed below, in addition to

any other Standard and Special Conditions which the Court deems appropriate in this case.   The

parties understand and agree that these recommended Special Conditions are **not binding** upon the

Court if it accepts this Guilty Plea Agreement, and that the Court may determine which Standard

and Special Conditions to apply in this case.   The parties also recognize that the Court has the authority to modify terms of supervised release as provided in 18 U.S.C. § 3583.

    **A.  Pornography Prohibition:**   The defendant shall not possess any obscenity, pornography, erotica, or nude images.   Any such material found in the defendant's possession shall be considered contraband and may be confiscated by the probation officer.

    **B.  Sexual Disorders Treatment:**   The defendant shall participate in a program of treatment for sexual disorders, including periodic polygraph examinations, as directed by the probation officer.   The Court authorizes the release of the presentence report and available psychological evaluations to the mental health provider, as approved by the probation officer.

    **C.  No Unsupervised Contact with Minors:**   The defendant shall not have any unsupervised contact with any minor child, unless the contact has been disclosed to and approved by the probation officer.   In determining whether to approve such contacts involving members of the defendant's family, the probation officer shall determine if the defendant has notified the persons having custody of any such minors about defendant's conviction in this case and the fact that the defendant is under supervision.   If this notification has been made, and if the person having custody consents to the contact, then this condition is not intended to prevent approval of the contact.

    **D.  Sex Offender Registration:**   The defendant shall register as a sex offender with the appropriate authorities of any state in which he resides, is employed, or attends school as required by both federal and state law, including the Sex Offender Registration and Notification Act (SORNA) at 42 U.S.C. §16901, et seq.

    **E.  Consent to Searches:**   The defendant shall submit to the search by the probation officer of defendant's person, vehicle, office/business, residence, and property, including any computer systems and its peripheral devices with the assistance of other law enforcement as

4

necessary.   The defendant shall submit to the seizure of contraband found by the probation officer.   The defendant shall warn other occupants the premises may be subject to searches.

      **F. DNA Sample:**   The defendant shall provide a DNA sample as directed by the probation officer.

      **G. Computer Monitoring:**   The defendant shall consent, at the direction of the probation officer, to having installed on defendant's computer(s) and any hardware or software, systems to monitor the defendant's computer use.   Monitoring will occur on a random and/or regular basis.   The defendant will warn other occupants of the existence of the monitoring software placed on defendant's computer(s).

    9.    **Fine:**   Both parties reserve the right to present evidence and arguments concerning whether the Court should impose a fine in this case and the amount of any such fine.

    10.    **Restitution:**   The parties understand that federal law requires mandatory restitution for the offenses charged in the Information pursuant to Title 18, United States Code Section 3663A.   The parties reserve the right to present evidence and arguments concerning the amount and payment terms of any potential restitution to the victims in the child pornography.   In addition, the defendant agrees to pay restitution as follows:

      A. The defendant will pay $2,500 to each and every other identified victim in the child pornography involved in Count 1 of the Information, if any such victim can be identified and they make a claim for such restitution based upon their prior damages relating to these offenses and any future counseling expenses or other damages.

      B. The parties understand that the government has not yet determined through its investigation whether any other victims can be identified or will seek such restitution.

5

C.  To make restitution payments, the defendant agrees to remit to the Court at the time

of sentencing, or as directed by the Court, a check or money order in the amount of

the restitution.   This check or money order should be made payable to the Clerk of

the United States District Court.

D.  The government agrees to consider the amount of any restitution ordered in making

its fine recommendation.   However, the government retains the right to determine

what effect, if any, the amount of restitution may have in its recommendation.

11.     **Mandatory Special Assessment:**   The defendant agrees to remit to the Court at

the time of sentencing or as directed by the Court a certified check or money order in the amount of

$100, payable to Clerk, United States District Court, which amount represents the mandatory

special assessment that must be imposed by the Court and paid by all federal defendants pursuant

to Title 18, United States Code, Section 3013 for Count 1 of the Information.

12.     **Financial Information:**   The defendant agrees that as of the date of filing this

plea agreement, the defendant will provide all requested financial information to the Financial

Litigation Unit of the United States Attorney's Office for the Southern District of Indiana for use

in the collection of any fines and/or restitution imposed by the Court and authorizes the Financial

Litigation Unit to obtain credit reports relating to the defendant for use in the collection of any

fines and/or restitution imposed by the Court.

13.     **Forfeiture:** The defendant hereby admits that the property taken from the

defendant or defendant's residence(s) during the searches by law enforcement officers in this case

and obtained by law enforcement officers was used to facilitate and was used or was intended to be

used in the commission of the offense to which the defendant is pleading guilty, and that the

property is therefore subject to forfeiture pursuant to Title 18, United States Code, Sections 2253

and/or 2254.   Therefore, the defendant hereby abandons all right, title and interest in all such

6

personal property, including, but not necessarily limited to, computer equipment, computer

storage media, monitors, and computer files, so that proper disposition, including destruction, may

be made thereof by federal, state, or local law enforcement agencies involved in the investigation

of the defendant's criminal activity.   The defendant further agrees not to contest any forfeiture

action brought against any of the seized personal property, whether any such forfeiture action is

administrative or judicial, civil or criminal, and agrees not to contest any use or destruction of any

of the seized personal property by any federal, state or local law enforcement agency.

14.     **Obligation to Pay Financial Component of Sentence:**   If the defendant is unable

to pay any financial component of the sentence on the date of sentencing, then the defendant agrees

that there is a continuing obligation to pay the financial component of the sentence.

15.     **Potential Civil Commitment:**   The defendant has been advised, and understands,

that pursuant to 18 U.S.C. § 4248, the defendant faces potential civil commitment as a sexually

dangerous person following the expiration of the defendant's term of imprisonment.   The

defendant understands that any potential civil commitment would be the subject of a separate civil

proceeding.   The defendant further understands that no one, including the defendant's attorney or

the Court, can predict with certainty the effect of the defendant's conviction on such a civil

commitment determination or the likelihood that civil commitment would be imposed.   The

defendant understands that civil commitment can be imposed for an indefinite period of time.

The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any

potential civil commitment consequences that the defendant's plea may entail.

16.     **Background Information:**   The defendant acknowledges and understands that no

limitation shall be placed upon the Court's consideration of information concerning the

background, character, and conduct of the defendant for the purpose of imposing an appropriate

sentence.   The defendant acknowledges and understands that the United States is not prohibited

from providing information concerning background, character, and conduct of the defendant for the purpose of recommending or advocating an appropriate guideline calculation and sentence.

17.    **Compliance with Federal and State Laws:**   The defendant understands that the obligations of the Government in this Plea Agreement are expressly contingent upon the defendant abiding by federal and state laws.

18.    **No Protection from Prosecution for Unknown or Subsequent Offense:** The defendant acknowledges and agrees that nothing in this Plea Agreement shall protect the defendant in any way from prosecution for any offense not specifically covered by this agreement, or not known the Government at this time.   The defendant further acknowledges and agrees that nothing in this agreement shall protect the defendant in any way from prosecution for any offense committed after the date of this agreement.

19.    **No Further Charges:**   The United States Attorney for the Southern District of Indiana agrees not to file any further charges against the defendant for advertising, distributing, receiving, transporting and possessing child pornography arising from his presently known criminal conduct in the Southern District of Indiana, provided that the Court accepts this Plea Agreement.   **Excluded Offenses:**   The defendant has denied producing any child pornography or engaging in any unlawful sexual contact with a minor or adult, or attempting or conspiring to do so (hereinafter the "Excluded Offenses").   The defendant understands that this limitation on the bringing of new charges does not restrict in any way the government's right to pursue criminal charges for the Excluded Offenses, if such charges are discovered at any point before, during or after the conclusion of the above-entitled action.   In addition, this provision does not restrict the right of the United States Attorney to bring any other charges against the defendant for any undisclosed or unknown criminal offenses, any other crime of violence or any sex offense, if the defendant has committed any such offenses prior to this Plea Agreement or commits such offenses

8

in the future.   Finally, if the Court rejects this Plea Agreement, then the United States Attorney

will not be bound by this Plea Agreement in any way and may seek to bring additional charges.

20.    **Good Behavior Requirement:**   The defendant agrees to commit any new federal,

state or local offenses and to fully comply with all conditions release while this case is pending.

Violation of this condition will relieve the government of its obligations under this agreement.

## SENTENCING GUIDELINES STIPULATIONS

21.    Pursuant to § 6B1.4 of the Sentencing Guidelines, the parties agree to the

Stipulations below.   The parties understand and agree that these Stipulations are binding on the

parties, but are only a recommendation to the Court and that the Court will determine the

sentencing guidelines applicable in this case.   The parties agree that no stipulation regarding any

factors in Chapter 4, Criminal History Category, of the Sentencing Guidelines has been made, and

that such determination will be made by the Court.

A. **Base Offense Level:**   The base offense level for the offense charged is level

eighteen (18).   U.S.S.G. § 2G2.2(a)(1).

B. **Age of Victims:**   U.S.S.G. § 2G2.2(b)(2) applies to this offense because the

material involved prepubescent minors or minors who had not attained the age of 12 years.   This

results in a further two (2) level increase in the offense level.

C. **Sadistic or Masochistic Conduct:**   U.S.S.G. § 2G2.2(b)(4) applies to this offense

because the child pornography included material that portrayed sadistic or masochistic conduct or

other depictions of violence.   This results in a four (4) level increase in the offense level.

D. **Use of Computer:**   U.S.S.G. § 2G2.2(b)(6) applies to this offense because the

defendant used a computer to distribute, receive and possess the material.   This results in a further

two (2) level increase in the offense level.

9

E. **Number of Images:** U.S.S.G. § 2G2.2(b)(7)(D) applies to this offense because the offense involved more than 600 files of child pornography. This results in a further five (5) level increase in the offense level.

F. **Total Offense Level for the Information:** In total, the offense in Count 1 of the Information carries a combined offense level of thirty-one (31), pursuant to Chapters Two and Three of the U.S. Sentencing Guidelines.

G. **Acceptance of Responsibility:** To date, the defendant has demonstrated a recognition and affirmative acceptance of personal responsibility for the criminal conduct set forth in the Information. Based upon defendant's willingness to accept a plea agreement and enter a plea of guilty to the criminal conduct noted in this agreement, the Government agrees that the defendant should receive a two (2) level reduction *provided* the defendant satisfies the criteria set forth in Guideline § 3E1.1(a) up to and including the time of sentencing. The defendant timely notified the Government of defendant's intention to enter a plea of guilty, thereby permitting the Government and the Court to allocate their resources efficiently. After the Defendant enters a plea of guilty, the government intends to file a motion pursuant to U.S.S.G. § 3E1.1(b) requesting that the Court decrease the offense level by one (1) additional level. The parties reserve the right to present evidence and arguments concerning defendant's acceptance of responsibility at the time of sentencing.

H. **Final Offense Level:** Based upon all of these stipulations, then the defendant faces a final offense level of twenty-eight (28).

## WAIVER OF RIGHT TO APPEAL

22. The defendant understands that the defendant has a statutory right to appeal the conviction and sentence imposed and the manner in which the sentence was determined. Acknowledging this right, and in exchange for the concessions made by the Government in this

Plea Agreement, the defendant expressly waives the right to appeal the conviction imposed in this

case on any ground, including the right to appeal conferred by 18 U.S.C. § 3742.   The defendant

further agrees that in the event the Court sentences the defendant to a term of imprisonment within,

or less than, the advisory sentencing guidelines range **for a total offense level of 28**, regardless of

how the sentence is calculated by the Court, then the defendant expressly waives the right to appeal

the conviction and sentence imposed in this case on any ground, including the right to appeal

conferred by 18 U.S.C. § 3742.   Additionally, the defendant expressly agrees not to contest the

conviction or sentence or the manner in which it was determined in any collateral attack, including,

but not limited to, an action brought under Title 28, United States Code, Section 2255.   This

waiver of appeal specifically includes all provisions of the sentence imposed in this case, including

the terms of the supervised release and the amount of any restitution, fine or forfeiture.

//

//

//

//

//

//

//

//

//

//

//

//

//

11

App. 144

## FINAL PROVISION

23.    **Complete Agreement:**    The defendant acknowledges that no threats, promises, or

representations have been made, nor agreements reached, other than those set forth in this

document, to induce the defendant to plead guilty.    This document is the complete and only plea

agreement between the defendant and the United States Attorney for the Southern District of

Indiana, and is binding only on the parties to this agreement, supersedes all prior understandings, if

any, whether written or oral, and cannot be modified except in writing, signed by all parties and

filed with the Court, or on the record in open court.

Respectfully submitted,

JOSEPH H. HOGSETT
United States Attorney

6/7/13
DATE

_____
Mary Ann T. Mindrum
Assistant U.S. Attorney

6/7/2013
DATE

_____
Joe H. Vaughn                              for
Chief, Criminal Division

6/6/2013
DATE

_____
WILLIAM DONALD HORNER
Defendant

6/6/2013
DATE

_____
Monica Foster
Attorney for Defendant

12

### STATEMENT OF THE DEFENDANT

I have read the entire Plea Agreement and discussed it with my attorney.

I understand all the terms of the Plea Agreement and those terms correctly reflect the results of plea negotiations.

I am fully satisfied with my attorney's representation during all phases of this case.

I am freely and voluntarily pleading guilty in this case.

I am pleading guilty as set forth in this Plea Agreement because I am guilty of the crime(s) to which I am entering my plea(s).

My attorney has informed me, and I understand, that I have the right to appeal any conviction and sentence that I receive, unless I have waived my right to appeal as part of this Plea Agreement.   If I have not waived my right to appeal, I understand that I must file a Notice of Appeal within 14 days of the entry of the judgment in this case; I further understand that the Clerk of the Court will prepare and file a Notice of Appeal on my behalf if I ask that to be done.   I also understand that the United States has the right to appeal any sentence that I receive under this Plea Agreement.

Finally, my attorney has informed me, and I understand, that if I provide or cause to be provided materially false information to a judge, magistrate-judge, or probation officer, then the Court may increase my sentence.

6/6/2013
DATE

WILLIAM DONALD HORNER
Defendant

13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:13-cr-00124-TWP-TAB |
| | ) | |
| WILLIAM DONALD HORNER, | ) | |
| | ) | |
| Defendant. | ) | |

## **GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by counsel, Joseph H. Hogsett, United States Attorney for

the Southern District of Indiana, and MaryAnn T. Mindrum, Assistant United States Attorney,

hereby submits its sentencing memorandum in this matter. The Defendant is scheduled to be

sentenced on February 27, 2014 for his possession of a large collection of child pornography

acquired through the Internet. This memorandum will address the relevant sentencing factors to

be considered pursuant to 18 U.S.C. § 3553(a). For the reasons listed below, a sentence within

the advisory sentencing guidelines of 78 to 97 months of imprisonment is appropriate, followed

by the jointly requested life term of supervised release. The Defendant has not provided any

legitimate basis for the court to impose a sentence lower than the advisory guidelines given the

gravity of his criminal behavior and the serious nature of child pornography offenses.

1

## I.     THE DEFENDANT'S CRIMINAL CONDUCT

On September 2, 2012, a computer tower was located in Indianapolis, Indiana ("Residence 1"). The tower was abandoned property by a former occupant, which Defendant later admitted was his previous residence. A maintenance worker for the address located the tower and intended to use it for personal use. Upon plugging the computer in and attaching a monitor, the maintenance worker was immediately confronted with images of a prepubescent female performing oral intercourse on an adult male penis. The maintenance worker immediately took the computer to the Indianapolis Metropolitan Police Department ("IMPD"), where the computer was taken into the IMPD property room. Defendant also later admitted that this computer was his.

On October 24, 2012, IMPD Detectives retrieved the computer from the IMPD property room and conducted forensic analysis on the computer. Along with numerous thumbnail images of child pornography, a self-taken video was discovered featuring the Defendant masturbating in the video. Further forensics produced full size images of child pornography and over 3,000 possible images of child pornography in the recycle bin of the computer.

On October 24, 2012, Detective Spivey sought and was granted a state search warrant for the residence located in Avon, Indiana ("Residence 2"). During the execution of the search warrant, two computers were located inside Residence 2. One computer was in an office, surrounded by correspondence and personal effects of Defendant's fiancé. The second computer was in a bedroom space, which had been converted into an office, which Defendant later admitted was his personal computer.

2

App. 148

The computer utilized by Defendant contained over 600 images and videos of child

pornography, including the following files:

- The file named "real lolicon 1(195).jpg" depicts a nude prepubescent boy, who is lying on his back with his legs apart. The image shows his uncovered genitals, which has ejaculate on them.

- The file named "real lolicon 1(313).jpg" depicts a nude prepubescent female, who is lying on her stomach on a bed. A nude adult male with an erect penis is putting his hand on her buttocks and spreading it apart. An adult female is also shown in the image with her hand on the genital area of the minor as well.

- The file named "6yo sandy – fuck with dad.avi" is a video depiction of an adult male engaging in sexual intercourse with a prepubescent female.

- The file named "kitty1.mpg" is a video depiction of a very young prepubescent girl engaging in oral intercourse with an adult male.

Many of the images were located under the user name "Donnie" in a folder in the

Documents folder called "New Folder."

On October 24, 2012, IMPD interviewed Defendant at Residence 2. Defendant waived

his Miranda Rights and agreed to speak with law enforcement. The following is a summary of

the recorded interview but does not contain every statement: During the interview, the

Defendant admitted to having a problem with child pornography. He also admitted to owning

the original computer at Residence, as well as the computer located at Residence 2.

Defendant admitted to knowingly and intentionally searching for and downloading over

the Internet the images of child pornography located on both computers. He admitted to having

a problem with child pornography which included storing, managing and viewing both

collections for the purpose of sexual gratification. He also admitted to masturbating to those

images. He then further added that he had stolen young girls' underwear from laundry-mats and

masturbated into the garments.

3

The Defendant admitted that he has been searching and looking at child pornography on the Internet since 1998. He stated that he would search for child pornography on the computer using terms such as "lolita," "underage," "10 yo," "11yo", and "pedo."

On November 1, 2012, law enforcement conducted another interview with Defendant. The following represents a summary of the recorded interview but does not contain every statement: During the interview, the Defendant again admitted to having a problem with child pornography. The Defendant admitted downloading numerous images of child pornography. The Defendant was shown images of child pornography that were found on his computer and identified them as images contained in his collection. These images include sadistic and masochistic conduct and bestiality, including but not limited to the following images:

- real lolicon 1 (433).jpg: This image depicts a naked prepubescent minor girl under the age of 12 who is bound and gagged with ropes. The girl's arms and legs are tied down and spread out, and depicts the girl's genital and/or pubic region.

- real lolicon 1 (4).jpg: This image depicts a naked prepubescent minor girl in black knee-high tights. The girl is bound by ropes, where her arms are tied behind her head and her legs are tied together and spread apart. The image depicts the girl's genital and/or pubic region.

The Defendant also stated he had owned the computer that was subsequently found at Residence 1, but forgot that it was left behind. He also admitted to downloading more images depicting child pornography to his new computer at Residence 2, although he claimed that he would go through bouts of "guilt" where he would delete everything from his hard drive. After only a few weeks after the file deletion, the Defendant would begin to re-amass images of child pornography.

The Defendant also admitted that he would drive around in specific neighborhoods and watch people undressing from his car. In addition, he stated that he would try to look at girls

4

with their legs spread open at shopping malls and that he cannot help himself from doing so. He stated that when he gets hugs from girls, he feels their breast up against his chest and this bothers him to a certain extent. He also stated that he made a video of himself masturbating during sometime in the year 2000.

In addition, the Defendant admitted that he has the following fetishes:

- He wears women's dirty underwear and masturbates in them. He said that he finds underwear in public Laundromats, friends' houses who have teenage girls, and has bought them from a department store.

- He likes to look at pictures of girls peeing.

- He watches video cameras of women in the bathroom.

- He watches videos of Asian women on a train that are drunk, get taken advantage of and, defecate in their underwear.

## II.   THE SENTENCING FACTORS ENUMERATED IN 18 U.S.C. § 3553(a) DEMONSTRATE THAT THE DEFENDANT SHOULD BE SENTENCED TO A TERM OF IMPRISONMENT WITHIN THE ADVISORY SENTENCING GUIDELINES RANGE OF 78-97 MONTHS

In determining a just sentence, the Court is directed by statute to consider a number of factors, including the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to provide just punishment for the offense, promote respect for the laws, and reflect the seriousness of the offense, and to afford adequate deterrence and protect the public. 18 U.S.C. § 3553(a).

### A. Nature and Circumstances of the Offense

The Defendant is charged with knowingly possessing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). Based upon the parties' responses to the Presentence Investigation Report (PSR) and the Plea Agreement, there does not appear to be a real dispute about the nature and circumstances of this offense, including the advisory sentencing guideline computation. The

5

PSR correctly provides enhancements for child pornography involving very young children, material involving sadistic or masochistic abuse or other depiction of minors, the use of a computer in the commission of the offense to receive and possess the material, and the possession of well more than 600 images. The resulting advisory range is 78 to 97 months of imprisonment.

The Defendant collected child pornography using his home computers and related media. He accumulated his collection by searching for it through the Internet using terms such as "lolita," "underage," "10 yo," "11yo", and "pedo," all terms consistent with child pornography. The names of the files and the keywords associated with the files that Defendant searched for and downloaded tell the collector that they are likely to be child pornography. Child pornography collectors tend to use terms showing the age, sexual activity, name of the victim and other keywords, such as PTHC, in the titles of the files they collect. (See above file names). This type of collecting of child pornography is ordinarily done for personal reasons, not financial profit. However, collecting child pornography from others on the Internet allows collectors to fuel their sexual fantasies, collect child pornography, and rationalize that their behavior is not wrong or harmful to children, while perceiving that their behavior is anonymous behind a computer screen. Searching for and collecting child pornography propagates and re-propagates a terrible enduring record of the sexual victimization and abuse of countless young children. Collectors necessarily sustain and support other criminals in their offender behavior. The harm to the victims is massive and unending.

A forensic review of the Defendant's computers and storage media recovered well over 600 images and videos of child pornography. Even a cursory review of some of these filenames

6

makes clear that Defendant was interested in images of prepubescent children engaged in hardcore sex acts, including sadistic and masochistic conduct, among other files.

The Defendant's collection includes more material that will likely be known to the National Center for Missing and Exploited Children (NCMEC). However, the government is still awaiting the results of the submission of this material to NCMEC for such victim identification. During the negotiation of the plea agreement in these matters, the Defendant agreed to pay $2,500 in restitution to each identified victim.

### B. History and Characteristics of the Defendant

Defendant's history and characteristics include a long standing and persistent sexual attraction to minors, which manifested itself through child pornography collecting. He has been seeking out and collecting child pornography for at least 14 years, from 1998 through 2012. He amassed a computer full of child pornography in his first residence, when he lived alone. When he moved in with his fiancé and at the time of the search warrant, Defendant had amassed an entirely new collection of child pornography on a second computer.

There are also other troubling behaviors in Defendant's personal history, including his personal fetishes. Specifically, the Defendant's admissions regarding driving around watching people undressing from his car, watching girls with their legs spread open at shopping malls, wearing girls' dirty underwear that he stole from Laundromats and friends' houses, and watching videos and pictures of girls peeing and defecating are particularly disturbing.

While it is also true that the Defendant has no criminal record – however, simply put, that he managed to avoid being caught during his long period of continual criminal activity, thereby avoiding such a record, should count him little credit.

7

App. 153

### C. *Seriousness of the Offense, Promotion of Respect for the Law, and Provide Just Punishment*

The sentence ultimately imposed on the Defendant must also reflect the seriousness of his offenses, promote respect for the law, and provide a just punishment for the offense. 18 U.S.C. § 3553(a)(2)(A).

The Supreme Court has recognized the unique and enduring perniciousness of child pornography offenses. See, e.g., *New York v. Ferber*, 458 U.S. 747, 759 n.10 (1982) ("pornography poses an even greater threat to the child victim than does sexual abuse or prostitution" (internal quotations omitted)). Child pornography is the memorialization of physical sexual abuse. It is used for the personal sexual gratification of men like the Defendant. It is used to entice and coerce other children into acts of sexual abuse. It is used as an item of barter between likeminded child sex offenders. It is used to encourage other child sex offenders to physically abuse other children for the purpose of producing more child pornography. And once released onto the internet, it lives on forever. It haunts the children depicted in it, who live daily with the knowledge that countless men like the Defendant use videos and images of their worst experiences in life for the reasons noted above.

For these reasons, Congress has recognized that child pornography "is a form of sexual abuse which can result in physical or psychological harm, or both, to the children involved," because it creates a permanent record of the child's abuse and allows for the continued victimization of that child. Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, Div. A, Title I, §§ 121(1) & (2), 110 Stat. 3009-26 (1996) (codified at 18 U.S.C. § 2251 Congressional Findings).

Congress also found that the mere existence of these types of depictions of children, as

8

well as their production and distribution, "creates the potential for many types of harm in the community and presents a clear and present danger to all children; and it inflames the desires of child molesters, pedophiles, and child pornographers who prey on children." *Id.* § 121(10)(A) & (B); *United States v. MacEwan*, 445 F.3d 237, 249-50 (3d Cir. 2006) ("Congress found little distinction between the harm caused by a pedophile, be he a distributor or mere consumer of child pornography").

In addition to the danger that they present to all children, child pornography offenders perpetuate the abuse suffered by the children depicted in the images that they collect. As the Fifth Circuit has stated, "[T]he 'victimization' of the children involved does not end when the camera is put away." *United States v. Norris*, 159 F.3d 926, 929 (5th Cir. 1998); *Ferber*, 458 U.S. at 759 n.10 ("Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulated within the mass distribution system for child pornography.") (internal quotations omitted). It is against this backdrop of irreparable harm to children, combined with the exponential increase in the commission of these Internet-fueled offenses, that Congress has sought to impose increasingly longer prison sentences against child pornography offenders.

The Defendant's seeking out and collecting of child pornography images for at least 14 years is a horrific re-victimization of the children depicted.

### D. Afford Adequate Deterrence and Protect the Public

The sentence imposed on the Defendant must also afford adequate deterrence to criminal conduct of this nature, and protect the public from further crimes of the Defendant. 18 U.S.C. § 3553(a)(2)(B) and (C). It is clear from the nature and circumstances of the Defendant's offense,

9

his admissions, and his Psychosexual Evaluation, that he was obsessively focused on fueling his sexual fantasies by seeking out and collecting child pornography. There is no reason to believe that the Defendant would suddenly abandon this conduct that he has been doing continuously for fourteen years. He was only stopped upon his arrest.

It is also critically important to note that the Defendant had substantial social resources and connections that would have served to deter many individuals, or to provide counseling and support that could have assisted the Defendant in overcoming whatever it is that drove his long standing and persistent sexual attraction to minors. These resources included a supportive fiancé, father, siblings, and children. The fact that he committed this offense with such people in his life indicates that he is not easily deterred.

The public can only be protected from like-minded individuals (and those individuals adequately deterred from acting on such an all-consuming obsession) with an appropriate sentence, such as one within the advisory guidelines range, that demonstrates the Court's willingness to deliver an appropriate punishment.

## III.    THERE IS NO BASIS FOR THE COURT TO DEPART OR VARY FROM THE ADVISORY SENTENCING GUIDELINES

To the extent Defendant argues that the Court should depart from or disregard the sentencing guidelines because of his mental health issues and personal history, as discussed in Dr. Johnson's Psychosexual Evaluation and the PSR, the Government respectfully submits that based on existing law there is no reasonable basis to justify departing or varying from the advisory guideline range of 78 to 97 months. The government likens this argument to one of diminished capacity.

10

The Seventh Circuit, in numerous opinions cited below, has applied a presumption of reasonableness to a within-guideline sentence on appeal. Furthermore, Congress has made clear its intention that downward departures and deviations be exceedingly rare in child exploitation cases. For example, in 18 U.S.C. § 3553(b)(2), Congress enacted sentencing parameters for child exploitation offenses that were separate from those that applied in all other cases. In 18 U.S.C. § 3553(b)(2), Congress articulated its intention that all sentences in child exploitation cases fall within the Sentencing Guidelines unless that court found that there existed a mitigating circumstance of a kind and to a degree, that had been affirmatively and specifically identified as a permissible ground of downward departure in the sentencing guidelines or policy statements. 18 U.S.C. § 3553(b)(2)(A)(ii). The Sentencing Commission adopted this limitation by enacting USSG § 5K2.0(b). There, the Commission expressly limited departures in child exploitation cases to those grounds enumerated in USSG § 5K2.0. These include coercion, voluntary disclosure, and post-sentencing rehabilitative efforts, none of which apply here. The Commission also amended certain of the departure provisions in U.S.S.G. § 5K2.0(b) to explicitly bar most departures in child exploitation cases, including diminished mental capacity.

The Government recognizes that USSG § 3553(b)(2) and USSG § 5K2.0(b) are no longer mandatory in light of *United States v. Booker*, 543 U.S. 220 (2005). However, the Government asks the Court to nevertheless give significant weight to these statutory and sentencing policy statements that departures be extremely rare in child exploitation cases for reasons of diminished capacity.

Child pornography offenders with diminished capacity present courts with difficult sentencing options because of the reduced potential for these defendants to conform their behavior to legal norms. In *United States v Garthus*, 652 F.3d 715, 720-21 (2011), the Seventh

11

Circuit stated "The gravity of the defendant's [child pornography] offense should not be denigrated. *See also United States v. Goldberg*, 491 F.3d 668, 669, 672 (7th Cir.2007) (recognizing that young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded—both consumed himself and disseminated to others).

In *Goldberg*, the Seventh Circuit considered a case in which a defendant downloaded hundreds of pornographic photographic images, some depicting children as young as 2 or 3 being vaginally penetrated by adult males. He then offered these images to other subscribers to the web site to induce them to send similar images in return. The Seventh Circuit stated that the greater the customer demand for child pornography, the more that will be produced. *Goldberg*, 491 F.3d 668 at 671-72. The logic of deterrence suggested that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced. *Id.*

In *United States v Stinefast*, 724 F.3d 925, 931-32 (2013), the Seventh Circuit upheld a district court's rejection of a lower sentence for diminished capacity in a child pornography case based upon the defendant's sustained serious psychological trauma as the victim of sexual abuse because there was no evidence at all linking his condition to his offense conduct. The psychiatric evaluation Stinefast submitted contained diagnoses for post-traumatic stress disorder, depression, and anxiety resulting from his sexual abuse. *Id.* But the report did not connect these mental health issues with Stinefast's sexual fascination with children generally or to the specific instance of child pornography distribution that led to his conviction. Indeed, the report noted an absence of evidence that Stinefast was sexually attracted to children. The lack of evidence establishing a link between Stinefast's psychological disorders and the offense of conviction

12

rendered his diminished capacity argument immaterial. *Id* at 931-32; *see also United States v. Portman*, 599 F.3d 633, 639 (7th Cir.2010) ("[A] legal diminished capacity finding also requires a causal link between the mental capacity and the crime"); *United States v. Beier*, 490 F.3d 572, 574 (7th Cir.2007) (affirming sentence when defendant did not "present any evidence suggesting that a low-normal IQ, or learning disabilities, break down a person's resistance to becoming ... a producer of child pornography"). Although Stinefast's attorney argued that this connection existed in that case, these unsupported assertions are not evidence and could not take the place of expert reports or other scientific evidence needed to establish such a link. *See United States v. Chapman*, 694 F.3d 908, 914–15 (7th Cir. 2012)(citing above language).

The Seventh Circuit has recognized the impact of lengthy sentences in attempting to eliminate the market for child by imposing lengthy sentences on those who fuel the market. The overarching goal of the sentencing guideline enhancements is to weaken the market for child pornography that "keeps the producers and distributors of this filth in business." (citing *United States v. Ellison*, 113 F.3d 77, 81 (7th Cir. 1997). *See also United States v. Richardson*, 238 F.3d 837, 839 (7th Cir. 2001); *United States v. Turchen*, 187 F.3d 735, 737 n. 2 (7th Cir. 1999)). The greater the customer demand for child pornography, the more that will be produced. *See Osborne v. Ohio*, 495 U.S. 103, 109-11 (1990); *United States v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006); *United States v. Richardson*, 238 F.3d 837, 839 (7th Cir. 2001); *United States v. Angle*, 234 F.3d 326, 337-38 (7th Cir. 2000). Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor.

### A. U.S.S.G. §§ 5H1.3 and 5K2.0

The Sentencing Guidelines provide that mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in

13

combination with other offender characteristics, are present to an usual degree and distinguish the case for the typical cases covered by the guidelines. U.S.S.G. § 5H1.3. However, this provision should be read together with U.S.S.G. § 5K2.13, which concerns downward departures for diminished capacity. For some non-child pornography offenses, a defendant may receive a downward departure if 1) they committed an offense while suffering from a significantly reduced mental capacity; and 2) the significantly reduced mental capacity contributed substantially to the commission of the offense. *See* U.S.S.G. 5K2.13. However, the diminished capacity guideline specifically excludes such departures in child pornography cases like this one. *See* 5K2.13 ("the court may not depart below the applicable guideline range if . . . . (4) the defendant has been convicted of an offense under chapter . . . 110 of the United States Code (which includes 18 U.S.C. § 2252)).

The government believes that the Defendant's mental health should be given substantial weight only if they contributed to his commission of the child pornography offense. Yet if so, then the advisory guidelines reject such a diminished capacity argument in USSG § USSG 5K2.13 because of the nature of the offense.

More broadly, a carefully examination of Defendant's Psychosexual Evaluation and the information contained in the PSR shows that there is no evidence that any of Defendant's mental health problems would cause him to become sexually attracted to minors or to collect child pornography. This is no factual or logical basis to conclude that his conditions significantly contributed to his commission of the criminal offense. Rather, Defendant's diagnosis accurately reflect his sexual attraction to minors and violence – i.e. Paraphilia NOS (Sexual Arousal to Children/Minors and Rape). (Psychosexual Evaluation, at 9.)

Finally, as discussed above, the Defendant enjoys the support of his fiancé and family.

14

This will help him when he is no longer under a criminal justice sentence or under supervision.
However, this factor cannot be significant enough to justify a substantial sentencing reduction
without risking substantial disparities among offenders.   Defendant is sexually attracted to
minors, has low impulse control, and has not been able to control his criminal behavior.  He has
admitted to experiencing continued thoughts of suicide on a daily basis.  (PSIR ¶ 58;
Psychosexual Evaluation, at 1.)  His mental health issues make him more difficult to treat and
increase the need to protect the public from him.  For all these reasons, he would normally have a
higher risk of reoffending, not a lower one.  Hopefully, his family ties will help prevent this, but
we cannot expect his friends and family to prevent him from re-offending to such an
extraordinary degree that such ties should greatly control the sentencing analysis when balanced
against the other factors in 18 U.S.C. § 3553.  Despite an undoubtedly positive relationship with
him in the past, they did not know about his criminal activities and could not prevent them, even
though they occurred over fourteen years.

## IV.    CONCLUSION

After calculating the guidelines range, the Court must consider the factors described in 18
U.S.C. § 3553(a) to reach a reasonable sentence.  *See United States v. Booker*, 543 U.S. 220, 226
(2005).  Defendant's guideline range of 78 to 97 months of imprisonment reflects both the nature
and circumstances of his conduct and the seriousness with which Congress and the Sentencing
Commission view the sexual exploitation of minors.  Based upon the conduct listed above, the
government intends to argue for a sentence within the advisory sentencing guidelines range as
necessary to account for the factors that the Court must consider under 18 U.S.C. § 3553(a).

15

Accordingly, the government respectfully requests the Court sentence the Defendant within the advisory guidelines range of 78 to 97 months, which is appropriate considering all of the facts and circumstances of this case, and the sentences imposed on other offenders committing similar crimes involving children.

Respectfully submitted,

JOSEPH H. HOGSETT
United States Attorney


　s/ MaryAnn T. Mindrum
MaryAnn T. Mindrum
Assistant United States Attorney

16

### CERTIFICATE OF SERVICE

I hereby certify a copy of the foregoing Sentencing Memorandum was filed electronically on February 21, 2014.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Monica Foster, Chief Defender
Federal Community Defenders

By:     s/MaryAnn T. Mindrum
                MaryAnn T. Mindrum
                Assistant United States Attorney
                Office of the United States Attorney
                10 W. Market Street, Suite 2100
                Indianapolis, IN 46204-3048
                Telephone: (317) 226-6333
                Fax:  (317) 226-6125
                Email:  MaryAnn.Mindrum@usdoj.gov

17

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
      Sheet 1

# UNITED STATES DISTRICT COURT

| SOUTHERN | District of | INDIANA |
|---|---|---|

| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
|---|---|
| v. | |
| WILLIAM DONALD HORNER | |

|  | |
|---|---|
| Case Number: | 1:13CR00124-001 |
| USM Number: | 11165-028 |
| Monica Foster | |
| Defendant's Attorney | |

**THE DEFENDANT:**

X pleaded guilty to count(s)     1

G pleaded nolo contendere to count(s) _____
   which was accepted by the court.

G was found guilty on count(s) _____
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count(s) |
|---|---|---|---|
| 18 U.S.C. § 2252(a)(4)(B) | Possession of Child Pornography | 10/24/12 | 1 |

    The defendant is sentenced as provided in pages 2 through     5     of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

G The defendant has been found not guilty on count(s) _____

G Count(s) _____ G is    G are    dismissed on the motion of the United States.

    It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

2/27/2014
Date of Imposition of Judgment

**A CERTIFIED TRUE COPY**
Laura A. Briggs, Clerk
U.S. District Court
Southern District of Indiana

By _____
       Deputy Clerk

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

03/10/2014
Date

AO 245B    (Rev. 09/11) Judgment in Criminal Case
           Sheet 2 — Imprisonment

| | |
|---|---|
| DEFENDANT:          WILLIAM DONALD HORNER | Judgment — Page ___2___ of ___5___ |
| CASE NUMBER:     1:13CR00124-001 | |

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:      70 months

**G**   The court makes the following recommendations to the Bureau of Prisons:

**X**   The defendant is remanded to the custody of the United States Marshal.

**G**   The defendant shall surrender to the United States Marshal for this district:

    **G**   at _____ **G** a.m.  **G** p.m.   on _____.

    **G**   as notified by the United States Marshal.

**G**   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    **G**   before 2 p.m. on _____.

    **G**   as notified by the United States Marshal.

    **G**   as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a_____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

**App. 165**

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
Sheet 3 — Supervised Release

|  |  | Judgment—Page | 3 | of | 5 |

DEFENDANT:    WILLIAM DONALD HORNER
CASE NUMBER:    1:13CR00124-001

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :    Life

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter.

G    The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

X    The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

X    The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

X    The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. (Check, if applicable.)

G    The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)    the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)    the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3)    the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)    the defendant shall support his or her dependents and meet other family responsibilities;

5)    the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)    the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)    the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)    the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)    the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)    the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)    the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)    the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)    as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
            Sheet 3C — Supervised Release

|  |  |  | Judgment—Page | 3.01 | of | 5 |

DEFENDANT:         WILLIAM DONALD HORNER
CASE NUMBER:     1:13CR00124-001

## SPECIAL CONDITIONS OF SUPERVISION

1.  The defendant shall pay any fine that is imposed by this judgment and that remains unpaid at the commencement of the term of supervised release.

2.  The defendant shall provide the probation officer access to any requested financial information.

3.  The defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer.

4.  The defendant shall submit to the search (with the assistance of other law enforcement as necessary) of his person, vehicle, office/business, residence and property, including computer systems and peripheral devices. The defendant shall submit to the seizure of contraband found. The defendant shall warn other occupants the premises may be subject to searches.

5.  The defendant shall not possess/use a computer unless he agrees to comply with the Computer Restriction and Monitoring Program at the direction of the probation officer. Monitoring will occur on a random or regular basis. The defendant shall advise the probation office of all computers available to him for use. Any computer or Internet-enabled device the defendant is found to have used and has not disclosed shall be considered contraband and may be confiscated by the probation officer. The defendant shall warn other occupants of the existence of the monitoring software placed on his computer.

6.  The defendant shall not possess any pornography, erotica or nude images. Any such material found in the defendant's possession shall be considered contraband and may be confiscated by the probation officer.

7.  The defendant shall participate in a program of treatment for sexual disorders, including periodic polygraph examinations, as directed by the probation officer. The Court authorizes the release of the presentence report and available psychological evaluations to the mental health provider, as approved by the probation officer.

8.  The defendant shall not have any unsupervised contact with any minor child, unless the contact has been disclosed to and approved by the probation officer. In determining whether to approve such contacts involving members of the defendant's family, the probation officer shall determine if the defendant has notified the persons having custody of any such minors about his conviction in this case and the fact that he is under supervision. If this notification has been made, and if the person having custody consents to the contact then this condition is not intended to prevent approval of the contact.

9.  The defendant shall register as a sex offender with the appropriate authorities of any state in which he resides, is employed, or attends school.

10.  The defendant shall pay any outstanding location monitoring fees that were accrued while on pretrial supervision.

Upon a finding of a violation of probation or supervised release, I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

(Signed)

_____         _____
Defendant                                                    Date

_____         _____
U.S. Probation Officer/Designated Witness          Date

**App. 167**

AO 245B     (Rev. 09/11) Judgment in a Criminal Case
            Sheet 5 — Criminal Monetary Penalties

| | | Judgment — Page | 4 | of | 5 |

DEFENDANT:       WILLIAM DONALD HORNER
CASE NUMBER:     1:13CR00124-001

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| **TOTALS** | $ 100.00 | $ 2,500.00 | $ |

G   The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

G   The defendant shall make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

| **TOTALS** | $ 0.00 | $ 0.00 | |

G   Restitution amount ordered pursuant to plea agreement   $ _____

The defendant shall pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

X   The court determined that the defendant does not have the ability to pay interest and it is ordered that:

X   the interest requirement is waived for the   X   fine   G   restitution.

G   the interest requirement for the   G   fine   G   restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
        Sheet 6 — Schedule of Payments

| | |
|---|---|
| DEFENDANT: WILLIAM DONALD HORNER | Judgment — Page  5  of  5 |
| CASE NUMBER: 1:13CR00124-001 | |

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A    G   Lump sum payment of $ _____ due immediately, balance due

         G   not later than _____ , or
         G   in accordance with   G C,    G D,    G   E, or    G G below; or

B    X   Payment to begin immediately (may be combined with    G C,     G D, or    G G below); or

C    G   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
         _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D    G   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
         _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
         term of supervision; or

E    G   Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
         imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F    G   If this case involves other defendants, each may be held jointly and severally liable for payment of all or part of the restitution
         ordered herein and the Court may order such payment in the future.

G    G   Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

G    Joint and Several

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

| Defendant Name | Case Number | Joint & Several Amount |
|---|---|---|

G    The defendant shall pay the cost of prosecution.

G    The defendant shall pay the following court cost(s):

X    The defendant shall forfeit the defendant's interest in the following property to the United States:
         all property seized by authorities during the searches of his residence.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:15-CR-00159-TWP-MJD |
| | ) | |
| v. | ) | |
| | ) | Judge Tanya Walton Pratt |
| JARED FOGLE, | ) | |
| | ) | |
| Defendant. | ) | |

### SENTENCING LETTERS

DEFENDANT JARED FOGLE, by and through his attorneys, JEREMY MARGOLIS

and ANDREW DEVOOGHT, respectfully submits to the Court the attached sentencing letters.


Dated:   November 13, 2015          By:   /s/ Andrew DeVooght

                                       Jeremy Margolis
                                       Andrew DeVooght
                                       LOEB & LOEB LLP
                                       321 N. Clark Street, Suite 2300
                                       Chicago, IL  60647
                                       Telephone: 312.464.3100
                                       Facsimile: 312.464.3111
                                       Attorneys for Defendant

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on this 13th day of November.


November 13, 2015                           By:   /s/ Andrew DeVooght
                                                  Andrew DeVooght


2



# Congregation Beth-El Zedeck

600 West 70ᵗʰ Street • Indianapolis, Indiana 46260 • (317) 253-3441
Fax (317) 259-6849 • www.bez613.org • bez613@bez613.org

November 9, 2015

**SENIOR RABBINIC CHAIR**
*endowed by*
**MELVIN AND BREN SIMON**

**DR. DENNIS C. SASSO**
*Senior Rabbi*

**HAL B. SCHEVITZ**
*Assistant Rabbi*

**DR. SANDY EISENBERG SASSO**
*Senior Rabbi Emerita*

**MELISSA COHEN**
*Cantor*

**ROBERT ZALKIN**
*Cantor Emeritus*

**SHARI LIPP-LEVINE**
*Executive Director*

**GEORGE KELLEY**
*Education Director*

**JOANIE WALDMAN**
*Early Childhood Director*

The Honorable Tanya Walton Pratt
46 East Ohio Street
Room 330
Indianapolis, IN 46204

Dear Judge Walton Pratt,

I write this letter as a character reference for Jared Fogle who is to
appear before your court for sentencing this month.

My wife Sandy and I have known Jared from the time of his birth.
He was one of the very first babies I named and blessed upon assuming my
position at Beth-El Zedeck in 1977. Jared's parents and extended family
have been dear friends and active members of the congregation. His father,
Norman, is a respected physician in the community, and his mother,
Adrienne (Ado) is a beloved teacher in our school program.

When Jared was thirteen, the family traveled with us to Israel for
the celebration of his Bar Mitzvah. I have maintained close contact with
the family through various life cycle events, including Jared's college years,
his discipline in losing weight and his fateful transition to celebrity status.

The revelations surrounding Jared's offenses came to us as a
surprise. My association with Jared during his adult years revealed a
caring, responsible and engaged parent and member of the community.
Whatever circumstances and choices led him to his present predicament
are not within my purview to explain, but I can state with confidence that
he is contrite, embarrassed and pained by the hurt he has caused others
and his family, and is eager to return to a better path. I have visited
pastorally with Jared several times over the past months. He has assumed
responsibility for his behaviors, sought therapy and is prepared to do
whatever is necessary to rebuild his life and return to righteous and
productive living.

We trust that your Honor will issue a fair punishment that might
not become a long-term hardship upon an already chastened person. You
can be assured that following the completion of his sentence, Jared's family
and I will continue to be there to offer him guidance, encouragement and
support.

Sincerely,

Dennis C. Sasso
Senior Rabbi

*Affiliated with the United Synagogue of Conservative Judaism and the Jewish Reconstructionist Federation*

NOV-09-2015 06:53 PM                                                                P.02

**DirectAction**
C O U N S E L I N G

Honorable Tanya Walton Pratt
46 East Ohio Street, Room 330
Indianapolis, IN 46204

November 10, 2015

Dear Judge Pratt,

This letter is written concerning Jared S. Fogle (DOB 8/23/77) and is sent to
you under a HIPPA-compliant release signed by him. His attorney, Andrew
DeVooght asked me to write to you.

Mr. Fogle was my client from September 4 to October 9, 2015. During that
time, he attended six counseling sessions and demonstrated a high level of
commitment to his therapeutic work: he completed all between-session
assignments, attended Sex Addicts Anonymous meetings as directed (once his
probation officer gave approval), and was painfully honest about his attitudes
and behaviors. He was highly cooperative and appeared to desire recovery.

So that you may know of my qualifications to present the services rendered,
my credentials include the following: I am a Licensed Clinical Social Worker
(Indiana license number 34004533A), Certified Alcohol and Drug Addiction
Counselor II (Indiana addictions credential) and Master Addiction Counselor
(highest national addictions credential).

Sincerely,

*Chris Countryman LCSW, MAC*

Chris Countryman LCSW, MAC
Counseling Office  5886 Central Avenue  Indianapolis, Indiana 46220
Business & Correspondence  4342 North Park Avenue  Indianapolis, Indiana 46205
317.414.1296    directactioncounseling.com

Stephen I Calderon
1131 Pimbury Court
Indianapolis, Indiana 46260

October 28, 2015

The Honorable Tanya Walton Pratt
46 East Ohio St.
Room 330
Indianapolis, Indiana 46204

Dear Judge Pratt,

My name is Stephen I Calderon, and I am an uncle of Jared Fogle. My
wife Marlene is Jared's mother's sister. I am from Indianapolis and have
lived here all of my adult life. I am retired now, but was involved in our
family business Calderon Brothers Vending Machines for over thirty-
five years and served as President for fifteen years until our sale in
2008. We have four adult children who are directly and indirectly
involved in secondary and post secondary education.

As Jared's uncle and as a parent I was very distressed to learn of what
Jared had done. This was so contrary to the person we know and love.
When I began my relationship with my wife in 1982, I met Jared. He was
a good kid and served as our ring bearer for our wedding in 1983.

Over the years I watched Jared grow up, and he was always a pleasure
to be around. I know that despite having great parents, his adolescent
years were very difficult for him because of his weight issues. I know it
was tough for him, but he never complained. When I read his book
"Winning through Losing" I gained more insight into all of the emotional
trauma he went through during this period.

When Jared lost his excess weight we were so happy for him. Probably
the best thing was that his health was no longer in danger.  We were
also proud of the fact that  after he lost his weight, through fortuitous
events, he was able to channel his efforts into an inspiration for others
on how they could turn their lives around. Even my brother's son, who

App. 174

had dealt with weight issues, was inspired by the "Subway type" diet and lost weight through it. I know that Jared was passionate about helping people lose weight.

As Jared's fame grew I was impressed by how he remained "down to earth."

I truly believe that Jared is a good person who did some unacceptable things. I understand, as Jared does, that there have to be consequences for his actions. Jared has taken the first steps by recognizing that he has a problem and seeking treatment for it. He has also accepted responsibility for it.

I pray that you show some leniency in your sentencing for Jared so that when he re-enters society he can be a father to his children and an asset to society.


Sincerely,

Stephen I Calderon

Marlene Zendell Calderon
1131 Pimbury Court
Indianapolis, Indiana 46260
317-846-1237

October 28, 2015

The Honorable Tanya Walton Pratt
46 E. Ohio Street
Room 330
Indianapolis, Indiana 46204

Dear Judge Pratt,

I am a retired lawyer who served as a clerk for the Honorable Patrick D. Sullivan, Second District, Indiana Court of Appeals and later as a corporate lawyer at Stokely-Van Camp and then Inland Container Corporation. I am also Jared Fogle's aunt and watched him grow up. During his adolescence, his obesity made his life difficult. Much of his time was spent watching T.V. and playing video games. He didn't seem to enjoy socializing even at family events, was lonely and had few friends.

Once he lost his excess weight in college, his personality emerged. As his career as a spokesman for Subway began, he gained confidence and became warm, outgoing, and funny. We were all so proud of him and the fact that his new- found fame did not change him. As his celebrity status grew, he continued to be the same down- to- earth, regular guy. He was quite generous --- quick to supply an autograph with a smile and always eager to take family members along when he was shooting a commercial or attending an event to promote Subway.

Once he married and had children, I saw him become a good and attentive parent. He made sure to carve out family time. Still, family dinners hosted at his house were never fancy affairs. They often consisted of Chinese take out served on paper plates. Grateful for his new life, he created a foundation to address childhood obesity. He spoke free of charge to countless schools throughout the country hoping to encourage kids to eat healthier and be more active. He was truly an inspiration to others.

After the allegations of illegal activities surfaced this summer, Jared asked my husband and I to come to his parents' house. There he candidly confessed that he had made some very bad choices. He admitted to his interactions with a 16 year old prostitute and his receipt of pornography, some of which included photos of minors. He said he hoped we could forgive him, he recognized that his actions were illegal and wrong, and he was taking responsibility for his actions. His words were heartfelt and he was truly remorseful. He told us he would be setting up funds to help the victims and hoped to move forward to become a productive citizen again. He assured us he was seeing a psychiatrist as well as a therapist, would be attending

Sexual Addiction Anonymous meetings and hoped to go to a treatment facility to
begin to understand his addiction and change his behavior.

I was shocked to hear of his behavior and in no way condone it, but I see Jared as
someone who has a serious addiction, admits it, and sincerely wants to be a better
person. He has taken responsibility for his actions and has been courageous in the
face of relentless media scrutiny. When I expressed concern for his mental health
and asked if he had suicidal thoughts, he told me that was the easy way out and he
would not take it. He said he has two small children to live for. His reputation,
marriage and career have all been ruined by his actions but I believe he still has
much to offer. I do not think society will benefit from his extended incarceration. He
is an articulate spokesperson who wants to make a positive contribution to society. I
hope that will be a factor in your sentencing decision.

Thank you.

Sincerely,

Marlene Zendell Calderon

November 10, 2015

The Honorable Tanya Walton Pratt

46 East Ohio Street

Room 330

Indianapolis, IN 46204

Dear Judge Pratt,

My name is Adam Fogle. I am writing this letter to ask for your lenience in the sentencing of my older brother Jared Fogle. For weeks I have struggled with internal conflict in determining the content of this letter. I have not always had a close relationship with Jared. I am deeply ashamed and disappointed with his actions that will lead to his imprisonment.

It is however my duty as a close knit immediate family to offer a few of my thoughts. He is my brother, I love him. Jared has lost almost everything. He has endured a greater amount of public humiliation, denigration, and financial loss than most any normal criminal facing similar charges.

I have seen him transform from a selfish, arrogant, entitled, pseudo-celebrity spokesperson of a sandwich chain with everything that a normal person could have wanted to a shell of a human being and his former self. He has appeared contrite to me and I am likely his toughest critic. He is a disturbed individual who's formative years were spent in isolation and had a lasting effect on his social irresponsibility and reckless behavior I ask you to take careful consideration in your sentencing on November 19th.

Jared's parents and his children will undoubtedly face the biggest loss. They are all tremendous people that need their son and father in their lives. I realize that Jared deserves punishment for the crimes he has committed, but only time will tell if he can repair those relationships that he has destroyed. I only request that you consider the immense fall from grace that he has endured in the months following the raid of his home.

Respectfully,

Adam S. Fogle

November 9, 2015

The Honorable Tanya Walton Pratt
46 East Ohio Street, Room 330
Indianapolis, IN 46204

I am Jared Fogle's Great Uncle and I felt compelled to write to you upon learning many people were sending letters to your chambers asking you to impose the maximum sentence allowed under the law. While this is a right centered within your authority, I would ask of you to consider the following. I have known Jared since he was born and have followed his climb to fame with great pride. His time spent in high school as well as the last three and a half years of college were filled with ridicule because of his heavy weight. His climb to fame began the latter part of his last year of college. He gained attention his last year of college after his enormous weight loss, and the entire family was so happy for Jared.

While I certainly do not condone any of the conduct admitted by Jared, I find the admission and conduct deplorable.

I do want to point out that Jared has done much good, speaking to youth groups and other public speaking pro-bono regarding the benefit of healthy living and the consequences of obesity. There was a time when I even had the opportunity to watch him help the parents of an obese child. Additionally, I witnessed his time spent as a father to his two children giving of himself, correcting and loving them as the situation dictated – being a positive role model.

Last and most important observation I would like to make is that there is no sentence you can impose that will be as harsh as the one he will serve when he is finally released.

Upon his eventual release there will be no place for him to hide from the community. Jared will be lonely and forever will be remembered for his actions - he will most likely never be employable and will most likely lose whatever wealth he has left to his soon to be ex-wife and the victims, as well as losing his children.

There are never any winners! But only victims! You have the power to turn the tide and prevent future harm. If Jared is given the maximum sentence, his children will grow up without the guidance only a father can provide.

There is no sentence you can impose that will be harsher than what he will endure for the rest of his life. I ask for the sake of his two young children. The maximum sentence will only hurt them all. I would also like to recommend that Jared receive some medical counseling for his actions - those actions I have never witnessed.

Thank you Your Honor, for reading this letter and for your possible consideration.

Sincerely,

Marvin Zuckerberg
Great Uncle to Jared

App. 179

November 3, 2015

The Honorable Tanya Walton Pratt
U.S. District Court for the Southern District of Indiana
46 East Ohio Street, Room 300
Indianapolis, Indiana 46204

RE: Jared Fogle

Dear Judge Pratt:

I am Jared Fogle's aunt, his father's sister. I understand Jared must be held accountable for his actions. His highly publicized, deviant conduct is just a small part of the whole man. I want to share my perspective on the other sides of Jared.

Jared was the first grandchild on both sides of his family. Growing up, he was always a positive role model for his younger siblings and cousins with his love of family, academic achievements, and sense of humor. We celebrated many holidays and birthdays together with Jared and his family.

Jared began to gain weight in grade school. He played tennis for several years, but eventually gave it up as the pounds added up. Like many overweight children, Jared felt isolated because he was different from his peers. He had one or two close friends during middle school, high school and into college, and he did not date until he lost weight in college.

By living in a building with a Subway restaurant and by sheer determination and will power, Jared lost 245 pounds in college. Life changed for him, as he finally fit in with his peers. Through his Subway journey, he chose to keep his home in Indianapolis and remain close with our family. I remember the famous Subway Guy driving his grandmother to the beauty shop when she was unable to drive herself. The same down to earth Jared was at family dinners, only now he was sharing his exciting experiences as a famous spokesperson. He was generous in giving family members tickets to sporting events or by taking them with him to games or on trips for different work engagements.

As the Subway spokesperson, Jared was featured at many American Heart Association walks and community gatherings in Indianapolis, nationally and globally. Between personal appearances and television commercials, it is impossible to count the number of people affected by Jared choosing to share his weight loss story. Individuals gained the courage to start and maintain their own weight loss journeys. He helped millions of people improve their lives through a healthy diet and exercise.

I have known the loving family-minded Jared for 38 years and the inspiring, professional Jared for 15 years. This man is still at the heart and core of Jared Fogle.

Sincerely,

*Marilyn Bercovitz*

Marilyn Bercovitz
9064 Dewberry Court
Indianapolis, Indiana 46260

App. 180

The Honorable Tanya Walton Pratt

U.S. District Court, 7th District of Indiana

46 E. Ohio St. Room 300

Indianapolis, Indiana 46204

Your Honor:

As Jared's mother, I would like to tell you about Jared's remarkable ability to motivate and inspire.

Over the years, Jared has invited me to accompany him on a few of his speaking engagements, when he was invited to talk to school aged children. As a part of his long tenure with Subway, Jared visited many schools , during which he educated the students about the importance of healthy eating and exercise. Jared truly connected with these children. As he told his own personal story about growing up as an obese child and teen, the students sat in rapt attention. He so wished to make a difference in the quality of their lives. He spoke from the heart and was always well received. Over the years, Jared has been sent many personal letters of thanks from those who were inspired to change their lifestyles and eating habits.

In February of 2014, The Indianapolis Star featured an article about Eric Ekis, a teen from Franklin, Indiana who was struggling to lose weight. He weighed 510 lbs. Jared heard about this young man's struggles, and took it upon himself to personally contact Eric to offer his encouragement and to relay his own struggles with obesity.

Jared's ability to speak and to motivate and inspire is truly a gift. Despite all that has transpired these past few months, I am still proud of all he has accomplished in his journey to help children lead a healthy lifestyle.

Respectfully,

Adrienne Fogle

**App. 181**

Jessica R. Fogle, LCSW, LCAC

13888 Silver Stream Drive
Carmel, IN 46032
317-258-6982
jessie.fogle@gmail.com

November 4, 2015

The Honorable Tanya Walton Pratt
46 East Ohio Street, room 330
Indianapolis, IN 46204

Dear Judge Pratt:

I am writing this letter in regard to my brother-in-law, Jared S. Fogle. I have been married to Jared's brother, Adam, for nearly 8 years and have known Jared for over 10 years. I know Jared as a brother-in-law, a brother, a son, a father, an uncle, and a friend. He is not "Subway Jared" to me. He is "Yafart" (as my husband calls him...a play on his Hebrew name, which was given to him as an infant) or "Uncle Jared" (as my kids call him).

I have celebrated holidays with Jared. My family and I have traveled with Jared. I was there for the birth of his children...his children who are more like siblings than cousins to my 6 year old daughter and 2 year old son. Jared volunteered his time to speak at the school where I was formerly employed to work with at-risk youth.

I am a mental health therapist. Upon Jared pleading guilty to the charges brought against him, he and I had very candid conversations about his behavior and mental health. Jared shared with me that he respects my opinion as a clinical social worker and addictions counselor and would welcome my feedback and referrals for mental health treatment. I gave him a referral to a therapist, and Jared promptly followed-through with starting services.

I respectfully request that you take Jared the brother-in-law, the brother, the son, the father, the uncle, the friend...the human being into account when sentencing him. Jared is a human being who broke the law, and I firmly believe that he deserves consequences for his actions. Jared, in accepting a plea agreement, also firmly believes he deserves consequences for his actions. These consequences far-exceed the courtroom and prison. Socially and interpersonally, Jared has lost almost everything. Both he and I completely understand that this loss is due to his actions. And please know that his consequences do not stop upon release from prison. For the rest of his life, he will have to rebuild the trust that he has violated. America hates my brother-in-law. He knows that and will face the social consequences of this hatred for the rest of his life. As a result of Jared's past decisions, my husband and I struggle to trust him. Quite honestly, we don't trust him. But, we want Jared to have the opportunity to regain our trust. If your mercy allows him the opportunity to re-join our family, we will support and encourage him to be a trustworthy individual both within our family and society. He has the capacity to be a trustworthy individual. Please allow him this opportunity.

Respectfully,

Jessica R. Fogle, LCSW, LCAC

Jessica F. Yates

10311 Randall Drive

Carmel, IN 46033

812-369-1559

jessicafyates@gmail.com

November 6, 2015

The Honorable Tanya Walton Pratt

46 East Ohio Street, room 330

Dear Judge Pratt:

The past few months have been some of the most difficult months of my life. I am saddened, horrified, and appalled at my brother's actions. The Jared who has been spotlighted in the media during recent days is quite different from the Jared I have always known. As Jared's sister, I'm writing this letter to shed some light on my older brother and the Jared I know and love.

The Jared I know is kind, loving, and generous.  As a seven year old, he took me to the pet store to get my first pet, a bunny rabbit named Butterscotch. The Jared I know is my favorite travel companion. We have spent many summers flying together to visit family on the east coast. The Jared I know would comfort me when I was scared and let me sleep in his room when I woke up from a nightmare and couldn't get back to sleep.

I have always admired Jared's intelligence and have consulted with him regularly on a wide variety of topics and there is no one I would rather talk to about the details of a vacation or dining experience. Even as we both entered adulthood, got married, and had children of our own, our closeness never wavered. We continued to get together regularly with our growing families to travel, enjoy meals together, watch our favorite sports teams, and go to movies. Jared wasn't just there for me through the good times, either. When we had a family crisis involving our mom, Jared was comforting and supportive to me and even took me on a trip to decompress and recharge my spirit.

In closing, I appreciate you taking into account the Jared I know: the kind, generous, loving, thoughtful, intelligent, knowledgeable, supportive older brother. It's clear that he is sick and needs mental health treatment, but I do believe he deserves to be punished for his actions. I have no doubt that the Jared I know will emerge from his sentence and successfully re-enter society as a better, healthier person with his family by his side.

Thoughtfully,

Jessica Yates

**App. 183**

November 4, 2015

Dear Honorable Tanya Walton Pratt

Re: Character Reference for Jared Fogle

I've known Jared Fogle for over 10 years. I met him at a Subway Conference in San Antonio, Texas. We quickly developed a friendship through our mutual interests in Sports and Travel.

I'm providing this reference in full knowledge of Jared's charges. Jared told me, when he was searched and eventually charged with his actions, We've discussed it regularly the past several weeks and he's expressed to me his shame and remorse for pain he's caused.

The nature of the offences are very surprising as I've always found Jared to be loving and caring person. By way of example, during the first couple of years getting to know each other and on a trip to Indianapolis, I received news of my Aunt in the hospital on life support. At that time without Jared knowing the severity of the situation, the first word out of his mouth were "What can I do to help you David". I told him It wasn't

(1)

me who needed the help, it was my dad. Jared took it upon himself to work with my dad and fly him out to California to see his sister. Because of quick actions my dad was able to be with his sister in the hospital, holding her hand when she passed. His actions to help my family in the blink of an eye made him a friend for life.

The above example is just one of dozens he's done for family and friends throughout the years without blinking an eye. In all the years we've been friends he's respected me and my opinion, cared for me and loved me as friends should.

I share in Jareds embarrassment of the offences his commited and am confident he takes responsibility for his actions and move on to continue with any and all rehabilitation for his illness

Your honour...... I am confident he will not reoffend!!

With my Warmest Sincerity,

David J Lambo

(2)

Doreen Gray
911 West Point Drive
Indianapolis, Indiana 46268


Dear Judge Pratt,

I am happy to be given the opportunity to tell you about the Jared Fogle I have known since he began his Jewish Education at Congregation Beth-El Zedeck.

I have been involved in education close to forty years, retiring two years ago. I ended my career teaching four year olds at the synagogue. Prior to that, I was the Education Director at Beth-El Zedeck for many years. In my position I served as the Principal of the Religious School and oversaw other Educational Activities at the synagogue.

Jared began his Jewish Education in Kindergarten and attended through tenth grade. He had his Bar Mitzvah at age 13 and was confirmed at age 16. Jared was an excellent student and always appeared happy to be there. For the remainder of his high school years he assisted his mother on Sunday mornings who was teaching first grade in our religious school. He was kind and gentle, always volunteered if I needed help. As a matter of fact Jared received a service award at confirmation for all his volunteering.

It appeared to me that Jared came into his own in college when he lost two hundred and fifty pounds. He was so proud of himself when he came to my office to show me his accomplishment. A new outgoing young man appeared. It was quite a feat at that age on campus where most everyone gains weight. His self-esteem soared. He became The Subway spokesman and was revered wherever he went. We, his family and friends were so proud of his achievements.

I cannot talk about Jared without letting you know about his parents, brother, sister and their families. They are all wonderful people devoted to each other. Jared often included each of them in places he traveled. They are all highly educated people who are well respected in our congregation. His mom is a teacher and his father a physician. They are very generous in their giving to the synagogue and community and have taught their children by example. Both of Jared's parents taught in our Religious School for a number of years.

I have been friends with the family for many years sharing good family times together. I care a great deal about Jared. Family and friends are trying to cope with what has transpired.

I realize he is sick and will need extensive therapy. He is not a monster! My hope and prayer for him is that he will receive the necessary treatment. I, of course, realize he will have to serve a sentence but please take into account that he needs help. Thank you so much.

The Honorable Tanya Walton Pratt
US District Court
7th District
46 East Ohio Street Room 300
Indianapolis, Indiana, 46204

Dear Judge Pratt,

Thank you for the opportunity to write to you before the sentencing of my son Jared Fogle. I am a practicing family physician in Indianapolis.

Everyone, including me, must open such a letter with the statement "The last four months have been the most difficult time I have ever spent in dealing with Jared's FBI investigation, his plea agreement, and his house arrest at my home." I want to give you some insight into my son that will let you know him as I and our family have known him throughout his life.

Prior to this disappointing and embarrassing chapter of his life, Jared was a stellar citizen. He was never in in any trouble growing up and had no legal issues.

As an obese child, starting at age nine, which then progressed to a malignant stage by college, he somehow developed an inner strength to deal with the snide remarks and innuendos made by complete strangers and classmates. He also had the strength to deal with the isolation and frank loneliness of someone with limited friends, limited social life, and most likely limited prospects of success in the future.

The solace and control he found was through eating, which gave him control over something in his life as he maxed out at 420 pounds. Through all this he never complained, and never seemed to feel sorry for himself, always suffering in silence. He bravely dealt with the humiliation of needing to find special seating in crowded college lecture halls, and searching for parking spots with enough space for him to get in and out of his car. He repeatedly broke swivel chairs at home and captain seats in the family car.

He always had time for his little sister and the few friends he had who would accept him for the nice, thoughtful person he was.

I know the current struggle he is going through has been the worst time of his life, but he has shown courage and remorse in dealing with the public humiliation, which I guess goes along with his being somewhat of a public figure. Again, he has accepted his fate the same way he accepted his life as an obese teenager and young adult.

I appreciate the chance to give you another side of my son, which I hope will aid you in deciding his ultimate fate.

Sincerely,

Norman L. Fogle

App. 187

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:15-CR-00159-TWP-MJD |
| | ) | |
| v. | ) | |
| | ) | Judge Tanya Walton Pratt |
| JARED FOGLE, | ) | |
| | ) | |
| Defendant. | ) | |

## SUPPLEMENT TO DEFENDANT'S SENTENCING MEMORANDUM

Defendant, JARED FOGLE, by and through his attorneys, JEREMY MARGOLIS and ANDREW DEVOOGHT, respectfully submits this supplement to the Sentencing Memorandum for this Court's consideration.

As the Court is aware, the defense will call Dr. John Bradford and Dr. Rick May to testify at Mr. Fogle's upcoming sentencing hearing on Thursday, November 19. In order to expedite the in-court examination of these witnesses, Defendant now submits for the Court's reference copies of Dr. Bradford (Exhibits A and B) and Dr. May's (Exhibit C) CVs.

Mr. Fogle's attorneys have consulted with the U.S. Attorney's Office and it has no objection to submitting these CVs in advance of the hearing in order to expedite the in-court examination of these witnesses.

WHEREFORE, Defendant JARED FOGLE respectfully submits the attached CVs to the Court.

Dated:   November 17, 2015         By:      /s/ Andrew DeVooght

                                            Jeremy Margolis

**App. 188**

Andrew DeVooght
LOEB & LOEB LLP
321 N. Clark Street, Suite 2300
Chicago, IL 60647
Telephone: 312.464.3100
Facsimile: 312.464.3111

Attorneys for Defendant

2

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on this 17th day of November.

November 17, 2015                    By:   /s/ Andrew DeVooght
                                           Andrew DeVooght

3

App. 190

# EXHIBIT A

### Brief Biography: Dr. John Bradford



Dr. Bradford is a Professor in the Division of Forensic Psychiatry, Faculty of Medicine, University of Ottawa. He has a cross appointment as Professor in the Department of Criminology, University of Ottawa. He is also a Professor in the Department of Psychiatry, Queen's University and Adjunct Professor of Psychiatry at the University of Alberta and previously at the University of Saskatchewan

Dr. Bradford is a graduate in medicine and received a diploma of psychological medicine, both from the University of Capetown, South Africa. He holds specialist degrees in Psychiatry from South Africa, the UK, USA and Canada; he also has an added qualification in Forensic Psychiatry from the American Board of Psychiatry and Neurology. He is a Founder of Forensic Psychiatry granted by the Royal College of Physicians and Surgeons of Canada. He is also the Chair of the Examination Board for the subspecialty of Forensic Psychiatry under the Royal College of Physicians and Surgeons of Canada.

Dr. Bradford's research interests focus on the assessment and treatment of the paraphilias, as well as other aspects of forensic psychiatry. He has published over 130 peer-reviewed papers; more than 40 chapters in academic books, including textbooks; presented at over 300 peer-reviewed international and national conferences, co-authored 4 books.

Dr. Bradford's expertise in the field of forensic psychiatry is well recognized, not only from his peers, media and judiciary but from many levels of government as well. He has sat on task forces, expert panels, served as expert witness and provided special consultation to national and international working groups.

Most recently, his work has been recognized by the American Academy of Psychiatry and the Law, having received the Seymour Pollock award in 2007. He was the recipient of the Isaac Ray Award in 2009 an international award for outstanding contributions in jurisprudence and mental health granted by the American Psychiatric Association. He was also the 1st person to receive the Bruno Cormier award granted by the Canadian Academy of Psychiatry and the Law.

He is also a recipient of the Silver Apple and Red Apple awards from the American Academy of Psychiatry and the Law. He also received the Inaugural Career Achievement Award from the Canadian Psychological Association for the applied science of psychopharmacology. He was on DSM IV work groups and was a scientific advisor to Sexual Disorders work group DSM V. He co-chaired the task force report of the World Federation of Societies of Biological Psychiatry on the biological treatment of the paraphilias. He is co-chairing a 2nd task force of the World Federation of Societies of Biological Psychiatry on adolescent sexual offenders. He was also the Chair of Research of the American Academy of Psychiatry and the Law Education and Research Institute from 2002 until 2015.

Dr Bradford has received a number of honorary appointments, including being made a Fellow of the Royal College of Psychiatrists (UK), a Distinguished Life Fellow of the American Psychiatric Association, a Fellow of the American College of Psychiatrists, a Distinguished Fellow of the Canadian Psychiatric Association. In addition he received the Order of Canada in 2011 and the Queen Elizabeth II Jubilee Medal in 2012.

# EXHIBIT B

# CURRICULUM VITAE

## John McDonald Wilson **BRADFORD**

MBChB, DPM, FFPsych, MRCPsych,
DABPN, DABNFP, FRCPC, CM.

Founder Forensic Psychiatry

Royal College of Physicians and Surgeons of Canada

Professor, Division of Forensic Psychiatry, University of Ottawa

Professor, School of Criminology, University of Ottawa

Professor of Psychiatry, Queen's University

Adjunct Professor of Psychiatry, University of Saskatchewan

Adjunct Professor of Psychiatry, University of Alberta

Honorary Titles/Degrees:

Fellow of the Royal College of Psychiatrists (UK)

Distinguished Life Fellow of the American Psychiatric
Association (USA)

Fellow of the American College of Psychiatrists (USA)

Distinguished Fellow of the Canadian Psychiatric Association (Canada)

Recipient of the Queen Elizabeth II Jubilee Medal

Member Order of Canada

July 2015

*Bradford, JMW*
*Page 1 of 99*

**Exhibit B List of Articles Intentionally Omitted.**

# EXHIBIT C

## TREATMENT AND EVALUATION SERVICES
13693 EAST ILIFF AVENUE, SUITE 220
AURORA, COLORADO 80014
303-369-4200 Fax 303-369-5072

Rick L. May, Psy.D., CACIII
Pam Hiner, Psy.D., CAC III
Victor Cordero, Psy.D.

Jessica Micono, Psy.D., CAC III
Brenna Tindall, Psy.D., CAC III
Jessica Bartels, Psy.D.

CURRICULUM VITAE

# RICK L. MAY, PSY.D., CAC III
Licensed Psychologist

## EDUCATION

### Doctor of Psychology (Psy.D.)

| | |
|---|---|
| 1992 | University of Northern Colorado, Greeley, CO |
| 1989-1990 | Clinical Internship, Denver Police Department, Psychological Services |
| | Dissertation: "Personality Patterns and Experiential History of Male Adolescent Sexual Perpetrators" |

### Master of Arts (M.A.)

| | |
|---|---|
| 1975 | University of Northern Colorado, Greeley, CO – Department of Psychology Counseling and Guidance |

### Bachelor of Arts (B.A.)

| | |
|---|---|
| 1973 | University of Northern Colorado, Greeley, CO – Double Major: Psychology and Sociology |

## LICENSES, CERTIFICATIONS AND SPECIAL TRAINING

- State of Colorado, Licensed Psychologist
- Colorado Sex Offender Management Board, Full Operating Level, registered to provide treatment and evaluations to individuals charged with sexual offenses
- Certified Addiction Counselor III
- Child and Family Investigator, court appointed investigations into complex domestic cases
- Competency to Stand Trial
- Abel Assessment Trainer

App. 198

## PROFESSIONAL AFFILIATIONS

- American Psychological Association
- Association for the Treatment of Sexual Abusers
- Colorado Association for the Treatment of Sexual Abusers, Executive Board Member
- Colorado Sex Offender Management Board, Child and Adolescent Committee

## WORK EXPERIENCE

### Private Practice

Dr. May began private practice in 1981 treating adults and adolescents in individual, couples and family therapy. He wrote his dissertation on issues of sexual offending and since then has specialized in treating this and related populations. He developed a treatment and evaluation program specifically for individuals who have been accused of crossing sexual boundaries. The **Treatment and Evaluation Services** program currently treats approximately 120 individuals weekly who have been referred for inappropriate and/or victimizing sexual behaviors. Dr. May and his professional staff, also do evaluations (including psychological evaluations and sex offense specific mental health evaluations) for the court system, private attorneys, social service agencies, and various private and public institutions. In addition, Dr. May provides individual, family and couples therapy to individuals with addiction problems, including substance abuse and sexual addictions. Dr. May often testifies in court regarding sexual offending issues. He also does training regarding this population to professional and community groups. Dr. May has worked extensively with dual diagnosis and substance abuse treatment and conducted substance abuse evaluations. Dr. May is the director of Axis One – Center for Drug and Alcohol Treatment.

Dr. May is the primary trainer for the Abel Assessment and travels nationally training mental health professionals on administration and interpretation of the Abel Assessment. Dr. May has often been the keynote speaker and presenter at various professional conferences.

Dr. May and several of his staff have been trained as child and family investigators and to conduct competency to stand trial evaluations. This team approach will allow professionals from Dr. May's staff with diverse expertise to work together to investigate, report and make independent and informed recommendations to the court following a court appointment.

### Denver Police Department Psychological Services

Dr. May did his doctoral internship with the Denver Police Department. He conducted individual, couples and family therapy with police officers and their families. He trained cadets at the police academy regarding issues of sexual assault and domestic violence. He was involved in training new police chaplains to do short-term and crisis intervention counseling with the officers on the street.

### Bethesda Community Mental Health Center

During his time at Bethesda Community Mental Health Center, Dr. May worked on the adult out-patient team providing group and individual therapy. He also was on the off-hour crisis team providing emergency treatment and psychological assessments at local emergency rooms and hospitals. Dr. May was also the team leader for the Adult Partial Care Program for his last year at Bethesda.

### Lichen Lodge

Dr. May worked with adolescents at Lichen Lodge in Steamboat Springs, Colorado as director of therapy at this residential child care facility.

### Arapahoe Country District Attorney's Juvenile Diversion Program

Dr. May's responsibilities in this program included providing individual and family therapy for adolescents as a treatment alternative to adjudication.

## OTHER ACCOMPLISHMENTS

**University of Denver**
Dr. May has created a training site for doctoral psychology students and masters level students in Forensic Psychology. He has been a group supervisor for the University of Denver Psy.D. Program and has taught college level courses.

For several years, Dr. May worked with the University of Denver Graduate School of Professional Psychology to aid his treatment program and several other agencies to become American Psychological Association Approved Internship Training Sites.

**Association for the Treatment of Sexual Abusers**
Dr. May helped create the Colorado chapter of the Association for the Treatment of Sexual Abusers and currently serves as the treasurer for that organization.

**Specialty Training and Programs**
In addition to consulting with other programs regarding deviant sexuality and boundary violations, Dr. May trains other professionals in group therapy techniques and group dynamics with forensic populations.

Dr. May and his staff have also developed a program called The John School for individuals accused of soliciting prostitution. This program is a one day educational program to help individuals learn the perils of soliciting prostitutes.

Dr. May is currently working on a variety of new projects to educate businesses regarding sexual harassment and hostility in the workplace. He is also developing programs to be presented to primary and secondary school educators to help them understand normal versus deviant sexual development in children and adolescents.

For ten years, Dr. May has been a clinical consultant for the sex abuse team of a local Social Service agency.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:15-cr-00159-TWP-MJD |
| | ) | |
| JARED S FOGLE (01), | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY FOR NOVEMBER 19, 2015
## THE HONORABLE TANYA WALTON PRATT

The Government appeared by Steven D. DeBrota, Assistant United States Attorney. The Defendant appeared in person and by retained counsel Andrew Richard DeVooght, Jeremy Margolis, and Ronald E. Elberger. Stephanie Ivie appeared on behalf of the United States Probation Office. Chris Cecil, Darin O'Dier, and Andrew Willmann attended as agents for the Government. David Moxley was the Court Reporter. Parties appeared for hearing on Defendant's Petition to Enter a Plea of Guilty and Sentencing at the Indianapolis Courthouse.

The Defendant was sworn. The Court advised Defendant of his rights. A stipulated factual basis was contained in the plea agreement at Dkt. 4. Defendant entered a plea of guilty. The Court found a factual basis for the plea and that the plea was voluntarily and knowingly made. Defendant's Plea Agreement was accepted by the Court, and Defendant was adjudged guilty of Count 1, Conspiracy to Distribute/Receive Child Pornography and Distribution/Receipt of Child Pornography and Count 2, Traveling and Attempting to Travel in Interstate Commerce to Engage in Illicit Sexual Conduct with a Minor, as charged in the Information.

Counsel for Defendant presented testimony from witnesses Dr. John Bradford and Dr. May.

AUSA DeBrota presented testimony from witness Detective Darin O'Dier. Government exhibits 1 through 4 were admitted into evidence without objection.

Defense Counsel DeVooght and Defense Counsel Margolis presented argument on behalf of Defendant.

The Defendant presented allocution.

AUSA DeBrota presented argument on behalf of the Government.

Sentence was imposed as stated on the record.

The Defendant was advised of his right to appeal.

The Defendant was remanded to the custody of the United States Marshal.

The Judgment is forthcoming.

Date: 11/19/2015

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Ronald E. Elberger
BOSE MCKINNEY & EVANS, LLP
relberger@boselaw.com

Andrew Richard DeVooght
LOEB & LOEB LLP
adevooght@loeb.com

Jeremy Margolis
Loeb & Loeb LLP
jmargolis@loeb.com

Steven D. DeBrota
UNITED STATES ATTORNEY'S OFFICE

steve.debrota@usdoj.gov

Electronic Distribution to United States Probation Office

AO 245B    (Rev. 09/13) Judgment in a Criminal Case
          Sheet 1

# UNITED STATES DISTRICT COURT

__Southern__    District of    __Indiana__

| | |
|---|---|
| UNITED STATES OF AMERICA<br>**v.**<br><br>JARED S. FOGLE | **JUDGMENT IN A CRIMINAL CASE**<br><br>Case Number:   1:15CR00159-001<br>USM Number:   12919-028<br>Jeremy Margolis, Andrew R. DeVooght, and<br>Ronald E. Elberger<br><u>Defendant's Attorney</u> |

**THE DEFENDANT:**

☒ pleaded guilty to count(s)   1 and 2

☐ pleaded nolo contendere to count(s)
   which was accepted by the court.

☐ was found guilty on count(s) _____
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 2252(a)(2) | Conspiracy to Distribute/Receive Child Pornography and Distribution/Receipt of Child Pornography | 4/29/2015 | 1 |
| 18 U.S.C. §§ 2423(b) and (e) | Traveling and Attempting to Travel in Interstate Commerce to Engage in Illicit Sexual Conduct with a Minor | 1/11/2013 | 2 |

     The defendant is sentenced as provided in pages 2 through    5    of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ ☐ is ☐ are   dismissed on the motion of the United States.

     It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

                                      11/19/2015
                                      Date of Imposition of Judgment

A CERTIFIED TRUE COPY
Laura A. Briggs, Clerk
U.S. District Court
Southern District of Indiana

By _____
          Deputy Clerk

                        Hon. Tanya Walton Pratt, Judge
                        United States District Court
                        Southern District of Indiana

                        12/1/2015
                        Date

AO 245B   (Rev. 09/13) Judgment in Criminal Case
Sheet 2 — Imprisonment

| | | Judgment — Page __2__ of __5__ |
|---|---|---|

DEFENDANT:      JARED S. FOGLE
CASE NUMBER:    1:15CR00159-001

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:      188 months
188 mos. on each of Cts. 1 and 2, to be served concurrently

☒ The court makes the following recommendations to the Bureau of Prisons:
The Court strongly recommends that the defendant be designated to a facility in Littleton, Colorado, where he can participate in sex offender treatment, as well as RDAP to address alcohol abuse.

☒ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

☐ at _____ ☐ a.m. ☐ p.m.   on _____ .

☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐ before 2 p.m. on _____ .

☐ as notified by the United States Marshal.

☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

Case 1:15-cr-00159-TW...AJD   Document 78   Filed 12/01/15 · age 3 of 6 PageID #: 730

AO 245B    (Rev. 09/13) Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page ___3___ of ___5___

DEFENDANT:       JARED S. FOGLE
CASE NUMBER:       1:15CR00159-001

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of : Life
    Life on each of Cts. 1 and 2, to be served concurrently

    The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter.

☒ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. *(Check, if applicable.)*

☒ The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check, if applicable.)*

☒ The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check, if applicable.)*

☒ The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16913, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. *(Check, if applicable.)*

☐ The defendant shall participate in an approved program for domestic violence. *(Check, if applicable.)*

    If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

    The defendant must comply with the conditions listed below:

## CONDITIONS OF SUPERVISION

1.    The defendant must report to the probation office in the district to which he is released within 72 hours of release from the custody of the Bureau of Prisons.

2.    The defendant shall not leave the judicial district without the permission of the court or probation officer.

3.    The defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer.

4.    The defendant shall answer all inquiries by the probation officer and follow the instructions of the probation officer.

5.    The defendant shall notify the probation officer prior to any change in residence or employer.

6.    The defendant shall permit a probation officer to visit him at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer.

7.    The defendant shall not meet, communicate, or otherwise interact with a person whom the defendant knows to be engaged, or planning to be engaged, in criminal activity, or whom the defendant knows to have been convicted of a felony, unless granted permission to do so by the probation officer.

8.    The defendant shall notify the probation officer within 72 hours of being arrested or having any official law enforcement contact.

9.    As directed by the probation officer, the defendant shall notify third parties of the nature of the defendant's offense conduct and conviction and shall permit the probation officer to make such notifications and confirm the defendant's compliance with such notification.

Case 1:15-cr-00159-TW  AJD   Document 78   Filed 12/01/15   ge 4 of 6 PageID #: 731

AO 245B    (Rev. 09/13) Judgment in a Criminal Case
           Sheet 4 — Supervised Release

Judgment—Page __3.01__ of __5__

DEFENDANT:       JARED S. FOGLE
CASE NUMBER:     1:15CR00159-001

10.     The defendant shall submit to the search of his person, vehicle, office/business, residence and property, including computer systems and Internet-enabled devices, whenever the probation officer has a reasonable suspicion that a violation of a condition of supervision or other unlawful conduct may have occurred or be underway involving the defendant. Other law enforcement may assist as necessary. The defendant shall submit to the seizure of any contraband that is found, and should forewarn other occupants or users that the property may be subject to being searched.

11.     The defendant shall consent, at the direction of the probation officer, to having installed on his computer(s), telephones, electronic devices, and any hardware or software, systems to monitor his use of these items. Monitoring will occur on a random and/or regular basis. The defendant will warn other occupants of the existence of the monitoring hardware or software placed on his computer(s), phones and electronic devices. To promote the effectiveness of this monitoring, the defendant shall disclose in advance of its use all cellular phones, electronic devices, computers, and any hardware to the probation officer and may not access or use any undisclosed equipment. The defendant is responsible for the costs associated with the monitoring program.

12.     The defendant shall participate in a program of treatment for sexual disorders, including periodic polygraph examinations, as directed by the probation officer. The Court authorizes the release of the presentence report and available psychological records to the treatment provider, as approved by the probation officer. The defendant shall pay a portion of the costs in accordance with his ability to pay.

13.     The defendant shall not possess any obscene material, child pornography, child erotica or nude images of minors. Any such material found in the defendant's possession shall be considered contraband and may be confiscated by the probation officer.

14.     The defendant shall not have any unsupervised meetings, non-incidental communications, activities, or visits with any minor child, unless approved by the Court or person having custody of the minor child. Supervised contact with a minor child must be approved in advance by the probation officer. In determining whether to approve such activities involving members of the defendant's family, the probation officer shall determine if the defendant has notified the persons having custody of any such minors about his conviction in this case and the fact that he is under supervision. If this notification has been made, and if the person having custody consents to these activities, then this condition is not intended to prevent approval of the activity. This condition excludes his biological children, if contact is agreed to by their mother.

15.     The defendant shall not be employed in any position or participate as a volunteer in any activity that involves unsupervised meetings, non-incidental communications, activities, or visits with minors except as disclosed to the probation officer and approved by the Court.

16.     The defendant shall pay any outstanding location monitoring fees that were accrued while on pretrial supervision.

Upon a finding of a violation of probation or supervised release, I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the condition of supervision.

These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

(Signed)

_____        _____
Defendant                                Date

_____        _____
U.S. Probation Officer/Designated Witness    Date

App. 207

AO 245B    (Rev. 09/13) Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

| | Judgment — Page | 4 | of | 5 |

DEFENDANT:       JARED S. FOGLE
CASE NUMBER:       1:15CR00159-001

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| **TOTALS** | $ 200.00 | $ 175,000.00 | $ 1,400,000.00 |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☒ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Victim 1 | | $100,000.00 | |
| Victim 2 | | $100,000.00 | |
| Victim 3 | | $100,000.00 | |
| Victim 4 | | $100,000.00 | |
| Victim 5 | | $100,000.00 | |
| Victim 6 | | $100,000.00 | |
| Victim 7 | | $100,000.00 | |
| Victim 8 | | $100,000.00 | |
| Victim 9 | | $100,000.00 | |
| Victim 10 | | $100,000.00 | |
| Victim 11 | | $100,000.00 | |
| Victim 12 | | $100,000.00 | |
| Victim 13 | | $100,000.00 | |
| Victim 14 | | $100,000.00 | |

| TOTALS | $ _____ | $ 1,400,000.00 | |

☒ Restitution amount ordered pursuant to plea agreement  $ 1,400,000.00

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☒ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☒ the interest requirement is waived for the    ☒ fine  ☒ restitution.

☐ the interest requirement for the    ☐ fine   ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B    (Rev. 09/13) Judgment in a Criminal Case
     Sheet 6 — Schedule of Payments

|  |  |
|---|---|
| DEFENDANT:    JARED S. FOGLE | Judgment — Page ___5___ of ___5___ |
| CASE NUMBER:    1:15CR00159-001 |  |

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A   ☐   Lump sum payment of _____ due immediately, balance due

        ☐   not later than _____ , or
        ☐   in accordance   ☐ C   ☐ D   ☐ E, or   ☐ G below; or

B   ☒   Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☒ G below); or

C   ☐   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
        _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D   ☐   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
        _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
        term of supervision; or

E   ☐   Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
        imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F   ☐   If this case involves other defendants, each may be held jointly and severally liable for payment of all or part of the
        restitution ordered herein and the Court may order such payment in the future. The victims' recovery is limited to the
        amount of loss, and the defendant's liability for restitution ceases if and when the victims receive full restitution.

G   ☒   Special instructions regarding the payment of criminal monetary penalties:

        Restitution has been paid in full to the government, $1,200,000.00 has been distributed to 12 victims. The remaining
        $200,000.00 has been put on deposit with the Clerk of Court who is awaiting further information from the US Attorney's
        Office.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is
due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons'
Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

     Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount,
     and corresponding payee, if appropriate.

| Defendant Name | Case Number | Joint & Several Amount |
|---|---|---|
|  |  |  |

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s): _____

☒   The defendant shall forfeit the defendant's interest in the following property to the United States:
     $50,000.00 (in lieu of forfeiture of personal property)

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal,
(5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

CIRCUIT RULE 30(d) STATEMENT
THAT ALL REQUIRED MATERIALS ARE IN APPENDIX


Pursuant to Seventh Circuit Rule 30(d), undersigned counsel for Defendant-Appellant, Jared S. Fogle, certifies that all the materials required by Seventh Circuit Rule 30(a) and Seventh Circuit Rule 30(b) are included in this Appendix.



s/ Ronald E. Elberger
Ronald E. Elberger

BOSE MCKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
(317) 684-5195 / Fax: (317) 223-0195
relberger@boselaw.com



2924081

**App.210**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed electronically on February 19, 2016. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system:

Steven D. DeBrota
Steve.debrota@usdoj.gov

*s/ Ronald E. Elberger*
Ronald E. Elberger

BOSE MCKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
(317) 684-5195 / Fax: (317) 223-0195
relberger@boselaw.com