Iɴ ᴛʜᴇ

# United States Court of Appeals
## Fᴏʀ ᴛʜᴇ Sᴇᴠᴇɴᴛʜ Cɪʀᴄᴜɪᴛ

_____

*No. 15-3770*

_____

UNITED STATES OF AMERICA,
Plaintiff-Appellee

v.

JARED S. FOGLE,
Defendant-Appellant

On Appeal From the Judgment in A Criminal Case
in the United States District Court,
Southern District of Indiana, Indianapolis Division
The Honorable Tanya Walton Pratt, Judge
District Court Action No. 1:15-cr-00159-TWP-MJD-1

**BRIEF AND REQUIRED SHORT APPENDIX
OF DEFENDANT-APPELLANT JARED S. FOGLE**

Ronald E. Elberger, #6675-49
 [*Counsel of Record*]
Bᴏsᴇ McKɪɴɴᴇʏ & Eᴠᴀɴs LLP
111 Monument Circle, Suite 2700
Indianapolis, IN  46204
(317) 684-5195
(317) 223-0195 (FAX)
relberger@boselaw.com


***Attorneys for Defendant-Appellant
Jared S. Fogle***

# CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No:  15-3770
Short Caption:  U.S.A. v. Jared S. Fogle

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

> Jared S. Fogle

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

> Bose McKinney & Evans LLP
> Loeb & Loeb, LLP (District Court only)

(3) If the party or amicus is a corporation:

> (i) Identify all its parent corporations, if any:
>
> > N/A

> (ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:
>
> > N/A

Attorney's Signature:  *s/Ronald E. Elberger*          Date:  January 13, 2016

Attorney's Printed Name:    Ronald E. Elberger

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes X  No ___**

Address:  111 Monument Circle, Suite 2700, Indianapolis, Indiana 46204
Phone Number:  317-684-5195          Fax Number:  317-223-0195
E-Mail Address:  relberger@boselaw.com

# TABLE OF CONTENTS

**Page**

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT ................................................... ii

TABLE OF AUTHORITIES ................................................................................ v

JURISDICTIONAL STATEMENT ..................................................................... 1

STATEMENT OF THE ISSUE ........................................................................... 1

STATEMENT OF THE CASE ............................................................................. 1

    Proceedings Below .................................................................................. 1

    Facts ......................................................................................................... 2

    Count I: Facts ......................................................................................... 3

    Count II: Facts ....................................................................................... 5

    The Sentencing Hearing ....................................................................... 7

    Count I: Additional Facts ...................................................................... 7

    Count II: Additional Facts .................................................................... 8

    History and characteristics of Fogle ................................................... 9

    Medical diagnosis and treatment ...................................................... 10

    Positive impact and commitment to others' well-being ................... 11

    Fogle's role as a father and family member ...................................... 12

    The need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense ................................. 12

    The need to afford adequate deterrence to criminal conduct ........... 12

    The need to protect the public from further crimes of the defendant .............. 13

    The payment of restitution to all victims identified ......................... 14

    The sentence imposed by the District Court ...................................... 14

SUMMARY OF THE ARGUMENT ................................................................... 15

ARGUMENT .................................................................................................... 16

I.    The District Court's Above-Guidelines Sentence Is Procedurally Flawed in That It is Based on Erroneous Facts .................................................. 16

    A.    The standards of review ...................................................... 17

    B.    The District Court's sentence is based on facts that would not form the basis for any criminal charge in this case .......................................... 18

(1)   Fogle did not plead guilty to the production of child pornography, and the District Court did not adequately explain that Fogle was not sentenced for it ...................................................... 19

(2)   The District Court's sentence is erroneously grounded in acts that Fogle "didn't do" and in Fogle's "fantasies," neither of which should form the bases for any criminal sentence, let alone an above-Guidelines sentence that also exceeds the Government's agreed sentence ................................. 21

(3)   The District Court's sentence is erroneously based on Fogle collecting and viewing pornography of children as young as six years old ................................. 23

II.   The District Court's Above-Guidelines Sentence Is Substantively Unreasonable ........................................... 25

   A.   The same reasoning that demonstrates procedural error by the District Court also demonstrates the substantive unreasonableness of the sentence ........................................... 26

   B.   The District Court abused its discretion in sentencing Fogle for a period that exceeds the Guidelines, as well as one that exceeds the Government's agreed sentence................................. 27

      (1)   Fogle's history and characteristics do not warrant an above-Guidelines sentence and, in fact, support a deviation in the opposite direction ........................................... 27

      (2)   The District Court erroneously relied upon facts already underlying the sentence to also justify an above-Guidelines sentence ........................................... 28

      (3)   The remainder of the District Court's reasoning for giving Fogle an above-Guidelines sentence does not establish an adequate statement of its reasons for imposing such a sentence ................... 30

CONCLUSION................................................... 32

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(A)(7) ..................... 35

CERTIFICATE OF SERVICE ................................................... 36

# TABLE OF AUTHORITIES

**Page**

## CASES

Blakely v. Washington,
542 U.S. 296 (2004) ...................................................................... 19, 23

Stanley v. Georgia,
394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969) ............................................. 23

United States v. Biddle,
2014 U.S. Dist. LEXIS 143733 (N.D. Ind. Oct. 9, 2014) ...................................... 30

United States v. Bradley,
675 F.3d 1021 (7th Cir. 2012) ................................................. 22, 25, 28, 29, 30, 32

United States v. Carter,
538 F.3d 784 (7th Cir.2008) ............................................................................ 17, 25

United States v. Castro–Juarez,
425 F.3d 430 (7th Cir.2005) ................................................................................... 25

United States v. Corner,
598 F.3d 411 (7th Cir.2010) (en banc) ................................................................... 26

United States v. Edwards,
115 F.3d 1322 (7th Cir. 1997) ................................................................................. 17

United States v. Higdon,
531 F.3d 561 (7th Cir. 2008) ................................................................................... 26

United States v. McIntyre,
531 F.3d 481 (7th Cir.2008) .................................................................................... 25

United States v. Omole,
523 F.3d 691 (7th Cir.2008) .............................................................................. 18, 32

United States v. Roberson,
474 F.3d 432 (7th Cir.2007) .............................................................................. 28, 32

United States v. Scott,
555 F.3d 605 (7th Cir. 2009) ......................................... 17, 18, 21, 23, 24, 25, 26, 30

United States v. Valle,
807 F.3d 508 (2d Cir. 2015) .............................................................................. 23, 29

United States v. Wachowiak,
496 F.3d 744 (7th Cir.2007) .................................................................................... 17

## STATUTES

18 U.S.C. §2252(a)(2) ........................................................................................ 1, 2, 29

18 U.S.C. §2423(b) ............................................................ 1, 2, 22, 29

18 U.S.C. §2423(c) ........................................................................ 2

18 U.S.C. §2423(e) ........................................................................ 1

18 U.S.C. §3231 ............................................................................ 1

18 U.S.C. §3553(a) ............................................ 17, 21, 25, 27, 28, 30, 32

18 U.S.C. §3742(a) ........................................................................ 1

18 U.S.C. §3742(c) ........................................................................ 1

Ind. Code §3542-4-3 ...................................................................... 9

N.Y. PENAL Law §130.05(3)(a)
(Consol. 2015) ........................................................................ 9

## Rules

Fed. R. App. P. 32(a)(7)............................................................ 35

## Constitutional Provisions

United States Constitution,
Fifth Amendment ................................................................ 17

United States Constitution,
Sixth Amendment................................................................ 17, 19

## JURISDICTIONAL STATEMENT

Jurisdiction in the United States Court of Appeals for the Seventh Circuit is based on 18 U.S.C. §3742(a) and (c).  This is an appeal from the 188-month above-Guidelines sentence imposed by the Judgment in A Criminal Case entered on December 1, 2015 (SA at p. 2; Dkt. 78, pp.728-729), by the United States District Court for the Southern District of Indiana, Indianapolis Division, following Fogle's plea and adjudication of guilty to 18 U.S.C. §2252(a)(2) Conspiracy to Distribute/Receive Child Pornography and Distribution/Receipt of Child Pornography, and to 18 U.S.C. §§ 2423(b) and (e) Traveling and Attempting to Travel in interstate Commerce to Engage in Illicit Sexual Conduct with a Minor.  A timely Notice of Appeal was filed on December 14, 2015 (Dkt. #82).  The District Court's jurisdiction was based on 18 U.S.C. §3231.

## STATEMENT OF THE ISSUE

I.    Whether the District Court's above-Guidelines 188-month sentence imposed on Fogle – a sentence greater by three years than that which the Government agreed to accept – is procedurally flawed in that it is based on erroneous facts?

II.    Whether Fogle's above-Guidelines 188-month sentence is substantively flawed in that it does not adequately justify or explain the sentence?

## STATEMENT OF THE CASE

### Proceedings Below

On August 19, 2015, the United States filed its Information in the United States District Court for the Southern District of Indiana, Indianapolis Division.

(App. 9-20.)  On the same date the parties filed their Petition to Enter Plea of Guilty and Plea Agreement, (App. 21-47), at which time a Waiver of Indictment was filed. (App. 48.)

On October 8, 2015, the confidential sealed Presentence Investigation Report (Dkt. #36) was filed.

On November 12, 2015, the United States filed its Government's Sentencing Memorandum (App. 49-69) and Fogle filed his Sentencing Memorandum. (App. 70-169.)  Thereafter on November 13, 2015, Fogle filed his Sentencing Letters.  (App. 170-187.)  On November 17, 2015, Fogle filed his Supplement to Defendant's Sentencing Memorandum. (App. 188-200.)  On October 23, 2015, the Probation Officer, Stephanie J. Ivie, filed her confidential sealed Supplemental Addendum to the Presentence Investigation Report. (Dkt. #41 at pp. 23-25.)

On November 19, 2015, the District Court held a Sentencing Hearing (Tr. 1-195) and issued its Entry for November 19, 2015. (App. 201-203.)  On December 1, 2015, the Judgment in a Criminal Case was entered. (SA 1-6; App. 204-209.)

## Facts

Fogle pled guilty to one count of conspiracy to distribute/receive child pornography and distribution/receipt of child pornography in violation of 18 U.S.C. §2252(a)(2), and a second count of traveling in interstate commerce to engage in illicit sexual conduct with minors in violation of 18 U.S.C. §§2423(b) and (c).  (App. 21-23.) As part of Fogle's plea agreement, the parties stipulated and agreed to certain facts that established the basis for Fogle's guilty plea. (App. 33-37.) In light of

these facts, the parties stipulated that the Government would not ask for a sentence greater than 151 months of imprisonment, while Fogle would not seek a sentence below 60 months of imprisonment. (App. 26.)

## Count I: Facts

As to Count I, conspiracy to distribute/receive child pornography, on multiple occasions between in or about 2011 and in or about April 2015, Fogle received visual depictions of numerous minors engaging in sexually explicit conduct from an individual named Russell Taylor. (App. 33.) Fogle knew that the minors depicted in these images or videos were under the age of 18 years; knew Taylor's familial relationship or association with such minors, including in many instances, their actual names; and in some cases, Fogle had met the minors during social events in Indiana. (App. 34)

Fogle and Taylor discussed among themselves the fact that Taylor between March 2011 and January 30, 2015, was secretly producing sexually explicit images and videos of minors in Taylor's then current and former residence. Fogle chose to benefit from such production by obtaining access to a significant amount of such material over the relevant time period. If Fogle had promptly reported to authorities what he knew of these activities, then the sexually explicit material involving later victims would not have been produced. However, Fogle did not obtain access to all of the material Taylor produced. (App. 34 at ¶ 33)

None of the minors in the images or videos were aware that they were being filmed. _Id._ Rather, the images or videos were produced by Taylor using multiple hid-

den cameras set up in Taylor's residences. Taylor also obtained and provided Fogle with child pornography obtained through Internet sources which may be classified as commercial material produced by other persons. The unidentified victims in these images and videos were as young as approximately six years of age. During the investigation, the child pornography was recovered during a search of Taylor's Indianapolis residence, where it was found in Taylor's computer equipment, storage devices, cameras and other media analyzed by the Cybercrime Section of the Indiana State Police. (App. 34)

The images and videos found in a search of Taylor's residences included a lascivious exhibition of the genitals or pubic area of the relevant minor, while some material also included other sexually explicit conduct depending upon the minor involved. (App. 35 at ¶ 35) Fogle's one isolated distribution and his receipt of images or videos was accomplished using a means or facility of interstate or foreign commerce, and in or affecting interstate or foreign commerce, by any means including by computer. (App. 35 at ¶ 36)  On one occasion, Fogle displayed the child pornography to another adult person who was his girlfriend, while they were alone in a hotel room. Fogle did not distribute the material online (Dkt. #41 at p. 5 at ¶11). On multiple occasions, Fogle obtained access to the images or videos by viewing them on a computer provided by Taylor. He also received some images and videos through text messages and one time, through a thumb drive. The visual depictions were produced by Taylor using camera equipment, computers, cell phones, and storage media. Taylor's production of the visual depictions involved the use of a minor engaging in sex-

ually explicit conduct and the visual depictions were of a minor engaged in sexually explicit conduct. Fogle knew that at least one of the minors in such visual depiction was a minor and knew that the visual depiction was of such minor engaged in sexually explicit conduct. (App. 35).

## Count II: Facts

As for Count 2, traveling in interstate commerce to engage in illicit sexual conduct with minors, the parties agreed that between in or about 2010 and in or about February 2013, Fogle traveled from Indiana to New York City in order to engage in commercial sexual activity with minors under the age of 18 years, including Minor Victims 13 and 14. Fogle repeatedly asked Minor Victim 13 and several other persons to provide him with access to minors as young as 14 years-old for purposes of commercial sex acts with him. (App. 35-36).

Fogle engaged in sexual intercourse with Minor Victim 13 in exchange for money. This occurred at the Plaza Hotel in New York City on or about November 4, 2012 when she was then 17 years of age. In or about January 2013, Fogle engaged in sexual intercourse with Minor Victim 13 in exchange for money. This occurred at the Ritz Carlton Hotel in New York City when she was then 17 years of age. In an interview with the investigating agents, Minor Victim 13 reported that, before November 2012, Fogle had engaged in commercial sex acts with her on three occasions in New York City when she was approximately 16 years of age. (App. 36).

The meetings between Fogle and Minor Victim 13 were arranged through text messages and Internet communications which provided explicit details in each in-

stance. Records of these activities were found in text messages, travel records, images, and hotel records obtained through the investigation, including the search of Fogle's residence. (App. 36).

During the investigation, Minor Victim 13 identified Fogle as being the person engaging in the activities during an interview by the investigation agents. Her cellular phone was also found to contain Fogle's contact information and relevant communications. She indicated that she had discussed her true age with Fogle during their meetings and that he then knew that she was a minor. In addition, at various times, Fogle asked her to provide him with access to other underage minors for purposes of commercial sexual activity. However, such referrals that led to other commercial sexual activity never occurred. (App. 36-37).

In an interview with the investigating agents, Minor Victim 13 stated that Fogle had also engaged in sexual intercourse with Minor Victim 14 in exchange for an amount of U.S. Currency. This occurred at a hotel in New York City when Minor Victim 14 was then approximately 16 years of age. (App 37 at ¶ 47).

During the investigation, the Government obtained information and audio recordings from witnesses in Florida, Georgia, and Washington State showing that Fogle had repeatedly discussed with them his interest in engaging in commercial sex acts with minors or stated that he has done so in the past. (App. 37 at ¶ 48). The recordings were produced beginning in or about 2007 and continuing thereafter. (Id.) During the investigation, the Government obtained information from text messages and other documents in Fogle's cellular phones that he repeatedly discussed

with numerous prostitutes in other places, including Richmond, Virginia; Kansas City, Missouri; and Las Vegas, Nevada, his interest in paying them a finder's fee to provide him with access to minors for commercial sex acts. (App. 37 at ¶ 49). He did this only after engaging in commercial sex acts with these prostitutes, knowing that they were not police officers. (Id.) No such referrals to minors for commercial sex acts occurred as a result of those inquiries.

## The Sentencing Hearing

In the Presentence Investigation Report ("PSR"), [Dkt.#41], as well as in briefing prior to, (App. 49-169), and in statements made during the sentencing hearing itself held on November 19, 2015, (Tr. 1-195), the District Court Judge was presented with additional facts that ultimately formed the basis for her sentence. Fogle is not aware of any factual dispute with the Government regarding those facts which were presented to the District Court in written or spoken form.

## Count I: Additional Facts

Fogle never engaged in any sexual conduct whatsoever with any of the minor victims whom Taylor recorded. (App. 80). Fogle also played no role in producing any of the images or videos Taylor recorded. Moreover, other than briefly showing certain of these images and videos on one isolated occasion to an adult woman with whom Fogle was then involved in a personal, romantic relationship, in the privacy of a locked hotel room, Fogle never shared any of these images or videos with anyone else. (App. 80). Indeed, Fogle discarded the thumb drive Taylor gave him that

contained these images and videos shortly after Fogle displayed them on the one occasion. (App. 80); (PSR, [Dkt.#41] at 8).

Additionally, while Taylor secretly recorded twelve victims, Fogle did not obtain access to all of the material that Taylor produced. (App. 80). Specifically, Fogle did not receive images or videos of at least four of these twelve Minor Victims. Further, Fogle does not recall receiving and does not believe that he ever received images or videos of two additional Minor Victims that Taylor recorded. (App. 80). Fogle only recalls receiving one video Taylor produced in which a Minor Victim was engaged in any other form of "sexually explicit conduct" as originally defined in the Information. (App. 81).

Fogle also received child pornography from Taylor that Taylor obtained through Internet sources, which is classified as commercial material produced by other persons. (App. 81). Unlike the material Taylor produced, this material included unidentified victims as young as six years old engaged in sexually explicit conduct. (App. 81). However, Fogle never requested material of this kind from Taylor. (App. 81). Moreover, like the images and videos Taylor produced, Fogle only briefly shared certain of these images and videos on the single isolated occasion described above, and destroyed them shortly thereafter. (App. 81).

## Count II: Additional Facts

Fogle traveled in interstate commerce to engage in sex acts with minors for money; (App. 81), having arranged these encounters after seeing commercial advertisements on the internet related to Victim 13 offering sex acts for money. (App.

82). Fogle did not find these individuals by trolling chat rooms, or by lying about both his age and intentions. (App. 82). Additionally, although the individuals with whom Fogle engaged in sexual intercourse for money were minors, these individuals were sixteen and seventeen years old.[1] (App. 82). And while Fogle did ask Victim 13, as well as several other people, to provide him with access to minors as young as 14 years old for purposes of commercial sex acts with him, (App. 35-36, 81), Fogle did not actually engage in any sex acts of any kind, commercial or otherwise, with anyone below the age of sixteen. (App. 82).

The Government obtained information and audio recordings from witnesses in several states showing that Fogle repeatedly discussed with them his interest in engaging in commercial sex acts with minors, or stated that he has done so in the past. (App. 37 ¶48); (App. 82.) However, these conversations occurred between Fogle and individuals with whom Fogle was, at the time the conversations took place, involved in personal, sexual relationships, which he believed were consensual, intimate conversations. (App. 82-83). The "past" sex acts Fogle described during these conversations never took place. (App. 83). Instead, Fogle made these comments during the course of what he thought were consensual, "fantasy" discussions between Fogle and these adult sexual partners. (App. 83).

<u>History and Characteristics of Fogle</u>

---

[1] These individuals were within the age of consent in New York both where the acts occurred, <u>see</u>, N.Y. PENAL Law §130.05(3)(a) (Consol. 2015) (17 yrs old), and in Fogle's home State of Indiana.  <u>See</u> Ind. Code §3542-4-3 (16 yrs old).

In addition to reviewing stipulated facts supporting his guilty plea, the District Court Judge also read and heard about additional evidence of Fogle's history and characteristics, including his medical diagnosis and treatment, to add context to his conduct before deciding Fogle's sentence. (App. 83-88).

### Medical Diagnosis and Treatment

In addition to taking responsibility for his conduct, (App. 84); (Tr. 151-155), Fogle knew he had a problem and needed help. (App. 84). He sought the assistance of Dr. John Bradford, an internationally renowned forensic psychiatrist. (App. 84, 188-195); (Tr. 51-87). Dr. Bradford spent two days with Fogle, subjecting him to a number of tests and examinations to assess Fogle's mental condition and chart out an appropriate treatment plan for any condition from which Dr. Bradford concluded Fogle is suffering. (App. 84). Dr. Bradford also sent Fogle to Dr. Robert P. Granacher, a forensic psychiatrist and neuropsychiatric expert, to perform a neuropsychiatric evaluation. (App. 84).

As Dr. Bradford discussed at Fogle's sentencing hearing, Fogle suffers from hypersexuality and alcohol abuse/dependence. (PSR, [Dkt.#41] at 23-24); (Tr. 67); (App. 84). Dr. Bradford also identified weak evidence of erotic preference of a heterosexual pedophilia/hebephilia. (PSR, [Dkt.#41] at 23-24); (Tr. 67); (App. 84). According to Dr. Bradford, Fogle's conditions, if addressed properly, are very treatable. (PSR, [Dkt.#41] at 24).

Fogle acknowledged that he has serious medical issues that need to be addressed and he has been and will continue to be focused on getting healthy. (App.

84); (Tr. 151-155.) Indeed, while Fogle waited for feedback from Dr. Bradford, he voluntarily began the process of trying to get healthy. (App. 85); Specifically, he attended weekly individual counseling sessions with Dr. Camille Sexton-Villalta, and weekly addiction counseling with Christopher Countryman, a licensed clinical social worker. (App. 85). In addition, Fogle attended Sex Addicts Anonymous meetings twice per week in Indianapolis. (App. 85). As a letter from Mr. Countryman establishes, Fogle took this treatment very seriously. (App. 173).

Additionally, shortly after Dr. Bradford evaluated Fogle, with the District Court's permission, Dr. Bradford helped arrange for Fogle to voluntarily undergo an intensive four-week outpatient-treatment program to address his medical issues under the care of Dr. Rick May. (App. 85, 188, 198-200); (PSR, [Dkt.#41] at 24). As Dr. May explained at Fogle's sentencing hearing, (Tr. 71), Fogle demonstrated his commitment to the program and showed that he was responsive to treatment. (App. 85).

### Positive impact and commitment to others' well-being

Fogle asked the District Court to consider the positive impact he has had on many lives and his demonstrated commitment to others' well-being. (App. 85-86). After suffering the physical, mental, and emotional distress that can come with being morbidly obese, Fogle spent countless hours over the last eighteen years speaking with people around the world about his struggles to get healthy. (App. 85).  Fogle sought to use his status as a public figure to inspire others and motivate them to take control of their health. (App. 85). As of result of these efforts, Fogle received feedback from literally thousands of people from all parts of

the world thanking him for helping them focus on their health and well-being. (App. 85-86); (Tr. 179, 188).

### Fogle's role as a father and family member

Along with getting healthy, a top priority for Fogle was and is trying to earn back the trust of his family. (App. 86); (Tr. 153-154). Although his family members are understandably upset with Fogle, they all, including, as the PSR notes, Fogle's wife, believe Fogle has been a good father to his children. (PSR, [Dkt.#41] at 12). Fogle wants nothing more than to continue to be a positive influence in the lives of his children and he is willing to do whatever it takes to do so. (App. 86); (Tr. 153-154).

### The need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense

In formulating a sentence that reflected the seriousness of the offense, promotes respect for the law, and one constituting "just punishment," Fogle asked the District Court to consider the PSR's observation regarding the uniquely severe consequences that Fogle has already faced and will continue to face for the rest of his life:

> The defendant has suffered collateral consequences greater than that of a "typical" defendant facing sentencing for similar offenses. In addition to the loss of his income and marriage, he has lost his community reputation and anonymity of the details of the offense. He is a public figure known worldwide. Regardless of the Bureau of Prisons facility to which he is designated, he will be recognized, and the details of his offenses will be known. Thus, the time served in prison may be more stressful than that of other inmates whose identities and offenses details are not known to others.

(PSR, [Dkt. # 41] at 22).

### The need to afford adequate deterrence to criminal conduct

12

Fogle acknowledged an awareness and responsibility for the harm he has caused and that he will be painfully aware of it for the rest of his life. (App. 87, 172-187). Fogle also reinforced his focus on getting healthy and trying to repair the damage he has done. (App. 87); (Tr. 151-155). As Fogle contended, in terms of general deterrence, the country, indeed the world, has witnessed Fogle's very public humiliation, so that anyone with a television or access to the internet has witnessed and will continue to witness Fogle lose everything he has worked for over the last eighteen years and become a convicted felon and inmate in federal prison. (App. 87). Thus, anyone considering engaging in similar conduct, who otherwise has the medical and mental wherewithal to resist such behavior, will clearly be deterred from doing so by seeing that Fogle has destroyed his own life, subjecting himself to public humiliation. (App. 87).

### The need to protect the public from further crimes of the defendant

As Fogle explained to the District Court, he is experiencing and fully appreciates the painful consequences of his conduct. (App. 88). And he will continue to do so. These experiences will serve as more than enough motivation for Fogle to never commit such crimes again. (App. 88). More importantly, Fogle is committed to doing everything he can to ensure that he never commits such crimes in the future. As demonstrated to the District Court, Fogle has been pursuing the appropriate medical treatment to put himself in a position to succeed. (App. 88); (Tr.  71); (PSR, [Dkt.#41] at 23-24). And as the District Court also heard at the sentencing hearing, Fogle is a prime candidate for successful

treatment which he has been pursuing with total commitment demonstrating that he is, in fact, treatable. (Tr. 69-71; 151-155); (App. 88).

### The payment of restitution to all victims identified

Fogle voluntarily provided each of the fourteen victims noted in the Information and Plea Agreement with restitution of $100,000, totaling $1,400,000. (App. 92, 208). Fogle provided financial assistance to all fourteen victims despite the fact that he did not receive images of at least four and he believes as many as six of the twelve victims Taylor secretly recorded. (App. 92). In doing so, Fogle hoped that this financial assistance demonstrated both his genuine remorse, as well as his sincere commitment to helping these victims work through this difficult time and move forward to live happy and productive lives. (App. 92). Fogle also hoped that these voluntary steps would be taken into account when determining his sentence, which he asked to be set at 60 months. (App. 92).

### The sentence imposed by the District Court

The District Court ordered Fogle imprisoned for a total of 188 months or about 15-and-a-half years, (App. 205), which is an above-Guidelines sentence (135 to 160 months, see Tr. 49), and also one greater than the 151-month maximum sentence agreed to by the Government. (App. 26.)  In addition to his 188-month sentence, Fogle was ordered to pay $1,400,000.00 in restitution, as well as a $175,000.00 fine, plus Fogle paid $50,000.00 "in lieu of forfeiture of personal property and $200 assessment." (App. 208-209.) Fogle is currently incarcerated at FCI Englewood pursuant to this order. (App. 205.)

## SUMMARY OF THE ARGUMENT

This Court should reverse and remand for resentencing for both procedural and substantive errors, finding that the District Court's sentence is procedurally flawed in three (3) respects. First, Fogle did not plead guilty to the production of child pornography, and the District Court did not adequately explain that Fogle was not sentenced for it in the context of a record that aptly demonstrates she was influenced by the relationship between Fogle and Taylor, the producer of the child pornography at issue in this case.  Second, the District Court's enhanced sentence is erroneously grounded in acts that Fogle "didn't do" and in Fogle's "fantasies," neither of which should have formed the bases for this above-Guidelines sentence that also exceeds the Government's agreed sentence. And third, the District Court's enhanced sentence is erroneously based on Fogle collecting and viewing pornography of children as young as six years old.

As for substantive error, this Court should reverse and remand for resentencing because the District Court did not provide an adequate explanation of its above-Guidelines sentence. Specifically, the District Court's discussion of Fogle's history and characteristics is puzzling in that it supports a downward deviation, not an upward deviation.  Further, the District's recitation of the fact that Fogle committed a "sex act" as a basis to issue an above-Guidelines sentence is flawed because this fact was already used as an initial basis for a 2-level sentencing enhancement on Count II. Another factor noted by the District Court was that the "distribution" element of Count I is based upon a *single* act of distributing child pornography.

Again, this supports a downward deviation from the Guidelines, not an upward deviation. (Tr. 180.) Another factor the District Court relied upon to enhance Fogle's sentence was the Government's position as it concerned the expert witnesses who testified at the sentencing hearing concerning Fogle's diagnosis of hypersexuality and pedophilia, and whether Fogle would respond well to medication and treatment. But the Government's *plea agreement* was based upon a consideration of the opinions of these expert witnesses, so it could not support a sentence that *added* over three years to that *agreed* sentence. The District Court also seemingly punished Fogle for seeking treatment following his arrest, but this makes no sense. Finally, the District Court rejected the probation officer's recommendation for a downward variance based upon Fogle's notoriety and the additional stress that he will endure based upon that notoriety, likening Fogle to Jerry Sandusky, a convicted serial child molester. This does not promote the perception of fair sentencing. This Court should find that the District Court abused its discretion in imposing an above-Guidelines unreasonable sentence on Fogle.

## ARGUMENT

### I.    The District Court's Above-Guidelines Sentence Is Procedurally Flawed in That It is Based on Erroneous Facts

This is an appeal of an unreasonable criminal sentence that suffers from both procedural and substantive infirmities: one which exceeds not only the range established by the Sentencing Guidelines but one that also inexplicably exceeds the maximum sentence agreed to by the United States Attorney and his senior litigation

counsel. This Court should reverse the District Court's judgment, remand for resentencing, and reestablish trust and notions of fairness in the plea bargaining system.

## A.    The standards of review

The procedural rights of a defendant under the Fifth and Sixth Amendments of the Constitution are reviewed de novo by this Court. See <u>United States v. Edwards</u>, 115 F.3d 1322, 1325 (7th Cir. 1997) (questions of law are reviewed de novo).

This Court reviews sentences imposed for federal crimes in two parts. <u>See</u> <u>United States v. Scott</u>, 555 F.3d 605, 608 (7th Cir. 2009). First, the sentence is evaluated for procedural error. <u>Id.</u> This includes "failing to consider the [section] 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." <u>Id.</u> The sentence is then examined for substantive reasonableness under an abuse of discretion standard. <u>Id.</u>

If this Court determines that the district court's sentencing decision is "procedurally sound," <u>United States v. Carter</u>, 538 F.3d 784, 789 (7th Cir.2008), this Court turns to the second step in the analysis: "consider[ing] the substantive reasonableness of the sentence," <u>id.</u>, which (again) is reviewed under an abuse of discretion standard. <u>See</u> <u>Scott</u>, 555 F.3d 608.

Although this Court's "task on reasonableness review is limited." <u>United States v. Wachowiak</u>, 496 F.3d 744, 754 (7th Cir.2007), it still must consider the sentencing court's explanation of its reasons for imposing a particular sentence. <u>See</u>

Scott, 555 F.3d at 608. While that explanation need not be exhaustive, it must be adequate "to allow for meaningful appellate review and to promote the perception of fair sentencing." United States v. Omole, 523 F.3d 691, 697 (7th Cir.2008) (internal quotations omitted). If the sentence imposed is outside the Guidelines range, "the district court must provide a justification that explains and supports the magnitude of the variance." Scott, 555 F.3d at 608.

### B.    The District Court's sentence is based on facts that would not form the basis for any criminal charge in this case

During the sentencing hearing, the District Court determined and announced a recommended sentencing range for Fogle pursuant to the United States Sentencing Guidelines ("Guidelines") that was from "135 to 160 months' imprisonment for Counts 1 and 2 of the information." (Tr. 49.) Later during the hearing, the Government explained its reasoning to the District Court for its recommended sentence:

> What we're recommending here is 151 months and lifetime supervised release. The reason why is straightforward. That's right in the middle of the advisory range. We think this range was correctly calculated. We think it accounts for the criminality we can *actually prove*. It's not holding him accountable for things we *think he didn't do or fantasies*, but it is a fair resolution to two serious crimes brought together in the sentencing of one individual. And that's the best we can do for those victims.

(Tr. 171) (emphases added).

The rationale offered by the Government for its recommended sentence was moored in two important principles. First, the Government understood that it was limited by what it could "actually prove." Id. Second, and relatedly, Fogle could not

be held accountable for things "he didn't do" or for "fantasies" he may have had. Id. This reasoning is consistent with core constitutional protections afforded to Fogle.

A judge may punish only the specific offense that has been established. See Blakely v. Washington, 542 U.S. 296, 302-303 (2004) (sentencing court could not punish a greater crime of acting with deliberate cruelty based on judicial findings alone). When a sentencing court breaches the confines of the specific established offense, the court violates the Sixth Amendment. See id.

### (1) Fogle did not plead guilty to the production of child pornography, and the District Court did not adequately explain that Fogle was not sentenced for it

During the sentencing hearing, there were various discussions, some initiated by the District Court judge, which centered on Fogle's relationship with Russell Taylor, (Tr. 86, 123-125, 128-129, 132), who alone was responsible for producing some of the child pornography at issue in this case. (Tr. 132). For example, at one point, the District Court judge asked Dr. Bradford, who was discussing recidivism studies, if he had "done any studies … with people who conspire with the producer to obtain" the child pornography?" (Tr. 86.) Dr. Bradford responded that he had not done any such studies, but that it is not necessarily a "rare thing" for this type of activity to occur and that it does happen. (Tr. 86-87.) Later during the hearing – in the context of a discussion about nationwide judicial criticism of the Guidelines as they concern child pornography dealing with non-production offenses – the District Court judge asked this question of Fogle's attorney: "What about when there's a conspiracy … with the producer?" (Tr. 123.) Fogle's attorney responded and clari-

fied that "this is not a conspiracy to produce" case, there was no assertion by the Government that Fogle had "any active role whatsoever in the production" and "they haven't charged him with production." (Tr. 124.) Discussion about "production" continued later on in the hearing, (Tr. 128-129), with Fogle's attorneys noting that any "passivity" Fogle may have demonstrated towards Taylor's production of child pornography was very "different than [an] active role and production," which was not the case with Fogle. (Tr. 132.)

Notwithstanding these pointed discussions that occurred during the sentencing hearing, there is no explanation or clarification given by the judge that Fogle's above-Guidelines, above-Government-agreed sentence was not somehow moored in a production-based offense. (Tr. 172-195.) This is especially troubling given the District Court's stated unfamiliarity with how to address the Fogle-Taylor relationship, (Tr. 86, ll. 21-22), and the Government's position that its agreed sentencing range was intended to hold Fogle accountable "for the criminality we can actually prove." (Tr. 171.)

Furthermore, the District Court judge acknowledged that she was essentially holding Fogle accountable for Taylor's production-based offenses, reasoning that "Mr. Fogle knew that his friend and associate was secretly producing child pornography in his current and former residences in Indianapolis, and he failed to report Mr. Taylor's conduct to authorities." According to the District Court, "if Mr. Fogle had promptly reported what he knew of Taylor's activities, Taylor would have been caught and the child pornography involving later victims, including the nine-year-

old, would not have been produced." (Tr. 181.) The District Court even discounted

Fogle's $1.4 Million in restitution payments based on an apparent belief that Fogle

had conspired to distribute pornography with Taylor. (Tr. 188: "The Court recogniz-

es that he has paid $1.4 million in restitution, even for victims who he says he did

not view pornography of, but I'm sure he made that agreement because of the con-

spiracy.").[2] Accordingly, this amounts to reversible procedural error for selecting a

sentence based on clearly erroneous facts of a production-related offense and also

failing to adequately explain the chosen sentence was not based on the same facts.

See Scott, 555 F.3d at 608.

> (2)     **The District Court's sentence is erroneously grounded in acts that Fogle "didn't do" and in Fogle's "fantasies," neither of which should form the bases for any criminal sentence, let alone an above-Guidelines sentence that also exceeds the Government's agreed sentence**

Another issue recognized and accounted for by the Government in its negoti-

ated plea agreement with Fogle's attorneys was that it could not hold Fogle ac-

countable for things "he didn't do" or for "fantasies" he may have had. (Tr. 171.) But

that appears to be precisely what the District Court did in fashioning Fogle's sen-

tence. (Tr. 178-183.)

Immediately after announcing that "[u]pon consideration of the 3553(a) fac-

tors, the Court has determined that the guideline range does not sufficiently ac-

count for the scope of the defendant's criminal conduct," (Tr. 178), the District Court

---

[2] Practically speaking, Fogle could not have conspired to "distribute and re-
ceive" child pornography that he did not view and thus did not know about, (Tr.
133), so it would only make sense for the sentencing judge to be discussing restitu-
tion payments for what she believed to be a general "conspiracy" to *produce* child
pornography between Taylor and Fogle.

judge explained: "This defendant is obsessed with child pornography and having sex with minors. He fantasized about in it telephone conversations. He frequently expressed his desire to have sexual relations with children. He acted on it when he sought out and traveled to have sex with minors.[3]" (Tr. 178.)    Later, the District Court judge also noted that Fogle "repeatedly asked Victim Number 13 to arrange for him to participate in commercial sex acts with children as young as 14 years old." (Tr. 182.) The District Court judge continued,

> [Fogle] sought to use these prostituted minors [that he paid for sex] to find other children with whom he could have sexual contact and continually communicated with the prostituted minors in his attempts to find even younger children for sex. He specified that he wanted children ages 14 and 15. In exhibits 1, 2, 3, and 4, that were admitted into evidence at this hearing, in explicit language, the defendant repeatedly sought out boys and girls and indicated, "The younger the better."

(Tr. 182-183.)    Additionally, in support of her stated belief that the "level of perversion and lawlessness exhibited by Mr. Fogle is extreme," (Tr. 186), the District Court repeatedly focused on Fogle's discussions with third parties about his interest and sexual attraction to minors, (Tr. 186-187), including those "as young as eight years old." (Tr. 187.)

Notwithstanding any fantasies Fogle may have had, or his discussions with third parties concerning possible sexual contact with children younger than the

---

[3] He did seek out and travel to have sex with minors, but that is the basis for charging, and Fogle pleading guilty to, Count II. That is **not** a basis for reasoning that "the guideline range does not sufficiently account for the scope of the defendant's criminal conduct." (Tr. 178, ll. 18-19.)   As this Court noted in reversing a sentence for the same type of conduct, "The problem with this rationale is that it provides little more than what is implicit in the instant offense. 18 U.S.C. §2423(b) proscribes interstate travel with intent to engage in sexual conduct with a minor." United States v. Bradley, 675 F.3d 1021, 1025 (7th Cir. 2012).

prostituted minors, these events never ultimately culminated in *any* chargeable criminal activity. As the Second Circuit recently recognized,

> We are loath to give the government the power to punish us for our thoughts and not our actions. Stanley v. Georgia, 394 U.S. 557, 565, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). That includes the power to criminalize an individual's expression of sexual fantasies, no matter how perverse or disturbing. Fantasizing about committing a crime, even a crime of violence against a real person whom you know, is not a crime.

United States v. Valle, 807 F.3d 508, 511 (2d Cir. 2015).

Accordingly, the District Court' sentence amounts to reversible procedural error in that it is based on clearly erroneous facts of Fogle's fantasies and requests to third parties which were ultimately never acted upon by Fogle. See Scott, 555 F.3d at 608; accord (Tr. 178, 182-183.)  In fashioning its plea agreement with Fogle's attorneys, the Government understood that Fogle could not be held accountable for things "he didn't do" or for "fantasies" he may have had. (Tr. 171.) Notwithstanding this explanation by the Government, the District Court's sentence is undeniably moored in conduct for which Fogle was not (and could not) be charged and which should not have formed any basis for any criminal sentence, see Blakely, 542 U.S. at 302-303 (sentencing court can only properly punish the specific offense established), let alone a sentence that exceeds the Guideline range and the Government's plea agreement.

### (3)    The District Court's sentence is erroneously based on Fogle collecting and viewing pornography of children as young as six years old

In explaining her above-Guidelines sentence, the District Judge was persuaded by the fact Fogle viewed not only Taylor's "homemade child pornography"

but that Fogle also "collected child pornography through the internet," some of it including "unidentified victims … as young as six years old." (Tr. 181.)  This is factually incorrect and it mattered a great deal to the District Court's sentencing decision because it was an initial basis for a 2-level sentencing enhancement, (Tr. 47), and then the Court also used it to justify an above-Guidelines sentence.

The judge is referencing a thumb drive that Taylor gave to Fogle, which contained images of children as young as six-years-old but which Fogle did not affirmatively "collect" by himself from the internet nor solicit from Taylor. The Government generally contended that Fogle viewed the thumb drive and "distributed" it in an isolated private showing to <u>one</u> person, (Tr. 157-158), but that does not amount to a contention that Fogle actively sought, collected, and distributed images of six-year-olds. (Tr. 129-130.) Additionally, one of Taylor's victims was a nine-year-old, but the Government acknowledged that Fogle "didn't know" about that victim. (Tr. 158.) So while the Government might have been making its case for the initial 2-level enhancement, (Tr. 47, 157-158), it certainly was not contending – in fact, could not contend (<u>see</u> <u>supra</u> n.3) – that Fogle should be punished above the Guidelines for seeking and viewing child pornography containing "unidentified victims … as young as six years old." (Tr. 181.)  The District Court's finding in this regard is factually incorrect and amounts to reversible procedural error. <u>See</u> <u>Scott</u>, 555 F.3d at 608.

In sum, this Court should find that the District Court's sentence is procedurally flawed in three (3) respects. First, Fogle did not plead guilty to the production of child pornography, and the District Court did not adequately explain that Fogle

was not sentenced for it in the context of a record that aptly demonstrates she was influenced by the relationship between Fogle and Taylor, the producer of the child pornography at issue in this case. Second, the District Court's enhanced sentence is erroneously grounded in acts that Fogle "didn't do" and in Fogle's "fantasies," neither of which should have formed the bases for this above-Guidelines sentence that also exceeds the Government's agreed sentence. And third, the District Court's enhanced sentence is erroneously based on Fogle collecting and viewing pornography of children as young as six years old. This Court should reverse and remand for re-sentencing based on these procedural errors.

## II.    The District Court's Above-Guidelines Sentence Is Substantively Unreasonable

As stated above, if this Court determines that the district court's sentencing decision is "procedurally sound," Carter, 538 F.3d at 789, this Court turns to the second step in the analysis: "consider[ing] the substantive reasonableness of the sentence," id., which is reviewed under an abuse of discretion standard. See Scott, 555 F.3d 608.

This Court "will uphold an above-guidelines sentence so long as the district court offered an adequate statement of its reasons, consistent with 18 U.S.C. §3553(a), for imposing such a sentence." United States v. Bradley, 675 F.3d 1021, 1024-25 (7th Cir. 2012) (citing United States v. McIntyre, 531 F.3d 481, 483 (7th Cir.2008) in turn citing United States v. Castro–Juarez, 425 F.3d 430, 436 (7th Cir.2005)). This Court has recognized that "district judges are at liberty to reject any Guideline on policy grounds," but we have stressed that "they must act reason-

ably when using that power." <u>United States v. Corner</u>, 598 F.3d 411, 415 (7th Cir.2010) (en banc) (emphasis in original). In acting reasonably, "[a]s a matter of prudence, ... in recognition of the Commission's knowledge, experience, and staff resources, an individual judge should think long and hard before substituting his personal penal philosophy for that of the Commission." <u>Higdon</u>, 531 F.3d at 562. A sentencing judge must give "respectful consideration to the judgment embodied in the guidelines range that he computes." <u>Id.</u>

**A.    The same reasoning that demonstrates procedural error by the District Court also demonstrates the substantive unreasonableness of the sentence**

As stated above in Part I., the District Court's sentence is procedurally flawed in three (3) respects as it concerns an above-Guidelines sentence based on **(i)** Fogle's supposed role in the production of child pornography, **(ii)** his supposed wrongdoing based on acts he never committed and fantasies he confessed to having, and **(iii)** a faulty belief that Fogle actively collected and viewed pornography of children under the age of 12, and as young as six years old.  See <u>Scott</u>, 555 F.3d at 608. To the extent that this Court considers those to be substantive errors (as opposed to procedural errors), Fogle restates and incorporates those arguments as bases for establishing the District Court's abuse of discretion in its substantive sentencing. That said, there are additional bases for setting aside the District Court's above-Guidelines sentence for having abused her discretion.

**B.**   **The District Court abused its discretion in sentencing Fogle for a period that exceeds the Guidelines, as well as one that exceeds the Government's agreed sentence**

**(1)**   **Fogle's history and characteristics do not warrant an above-Guidelines sentence and, in fact, support a deviation in the opposite direction**

In explaining its above-Guidelines sentence in light of the Section 3553(a) factors, the District Court began by discussing Fogle's history and characteristics, (Tr. 179-180), noting that he was raised well by his parents and that he also "had the determination and willpower to overcome a weight problem." (Tr. 179.) Of course, this is what led to Fogle's well-known role as Subway's national spokesman. (Id.); (PSR, [Dkt.#41] at 11-12). As a result, he achieved fame and fortune and during this period he was outwardly "loving, caring and generous" to others as demonstrated by letters submitted by his family and friends, (App. 172, 176, 179, 183-185), at a time when he was also encouraging school children to follow a "healthy diet" and to "exercise." (Tr. 179, App. 180-181.) The District Court recognized all of this, while also knowing that Fogle had no history of criminal activity. (Tr. 49, l. 5.) Yet, the District Court seemingly punished Fogle on account of his upbringing and the good things he did during his period as Subway's spokesman.[4]

According to the District Court, during this same period Fogle "was living a double life and, for many of those years, engaged in a web of deception and depravi-

---

[4] Later in her sentencing statement, the District Court judge stated that she was giving Fogle "credit for the positive impact he may have had on others when speaking regarding diet and exercise and healthy lifestyle." (Tr. 188, ll.11-13.) At no point does she explain how this "credit" figured into her above-Guidelines sentence.

ty." (Tr. 179.) The District Court then abruptly announced, "The seriousness of these offenses cannot be overstated." (Tr. 179-180.) Later, the District Court also implied that Fogle's proper upbringing was a factor in her finding that Fogle's case was not similar to one presented by Fogle for a comparative sentence. (Tr. 186.) In other words, Fogle's proper upbringing, combined with years of doing good deeds, while also being "loving, caring and generous" to others, was viewed by the District Court as a basis to enhance Fogle's sentence above the Guidelines and ignore his comparative sentence argument. (Tr. 179-180, 186.) The District Court's discussion of Fogle's "history and characteristics" is "puzzling" and not the type of "aggravating individualized findings" that adequately explain or justify an above-Guidelines sentence. Bradley, 675 F.3d at 1028; cf. United States v. Roberson, 474 F.3d 432, 435-36 (7th Cir. 2007) (finding below-guidelines sentence unreasonable where, among other errors, discussion of the §3553(a) factors were more likely to push the defendant's sentence upward as opposed to downward).

> **(2)    The District Court erroneously relied upon facts already underlying the sentence to also justify an above-Guidelines sentence**

As noted above in Section I.B(2), the District Court reasoned in fashioning Fogle's sentence that "[u]pon consideration of the 3553(a) factors, the Court has determined that the guideline range does not sufficiently account for the scope of the defendant's criminal conduct." (Tr. 178.) According to the District Court, "This defendant is obsessed with child pornography and having sex with minors. He fantasized about it in telephone conversations. He frequently expressed his desire to have sexual relations with children. He acted on it when he sought out and traveled to

have sex with minors." (Tr. 178.)  Notwithstanding the fact that Fogle's fantasies and expressions of desire cannot support an above-Guidelines sentence, see Valle, 807 F.3d at 511, neither can the fact that Fogle acted on those desires and "sought out and traveled to have sex with minors." (Tr. 178.)

Again, see supra fn. 3, Fogle admitted to seeking out and traveling to have sex with minors, which was the basis for pleading guilty to Count II. (App. 23, 35-38.) Accordingly, that cannot also reasonably serve as a basis for holding "the guideline range does not sufficiently account for the scope of the defendant's criminal conduct." (Tr. 178, ll, 18-19.)  As this Court noted in reversing a sentence for the same type of conduct, "The problem with this rationale is that it provides little more than what is implicit in the instant offense. 18 U.S.C. §2423(b) proscribes interstate travel with intent to engage in sexual conduct with a minor." Bradley, 675 F.3d at 1025. Similar to what occurred in Bradley, the District Court here had also increased Fogle's base offense level by two points for the commission of a "sex act," (Tr. 47, 48), so "what the court seemed to rely upon for the sentence it imposed was already factored into the properly calculated guidelines range." Bradley, 675 F.3d at 1026.  But there is more.

The two-level enhancement Fogle received for the use of a computer was also already factored into the definition of the Count I crime, 18 U.S.C. §2252(a)(2), and the number assigned to it as a base offense level of 22.  (Tr. 15, 47 lines 1-10; App. 14-15; Dkt. #41 at p.9)  As such, the District Court should not have used it as a basis to justify her above-Guidelines sentence. (Tr. 17, lines 12-21; pp. 34, 47 lines 1-

10) Moreover, Fogle's use of his cellular telephone and a laptop computer like a slide projector to view the material he received from Taylor lies in stark contrast with computer use that serves to proliferate or profit from child pornography. Fogle did not commercially distribute child pornography, traffic child pornography, or participate in online child pornography communities. Yet his advisory guidelines range received the same increase as those individuals "who most exploit the technology and increase the market for child pornography." <u>United States v. Biddle</u>, 2014 U.S. Dist. LEXIS 143733 at *19-20 (N.D. Ind. Oct. 9, 2014). Fogle should have been differentiated from such individuals. This is another example of the District Court not providing "a justification that explains and supports" an above-Guidelines sentence. <u>Scott</u>, 555 F.3d at 608.

### (3)  The remainder of the District Court's reasoning for giving Fogle an above-Guidelines sentence does not establish an adequate statement of its reasons for imposing such a sentence

As previously stated, this Court "will uphold an above-guidelines sentence so long as the district court offered an adequate statement of its reasons, consistent with 18 U.S.C. § 3553(a), for imposing such a sentence." <u>Bradley</u>, 675 F.3d at 1021. Here, the District Court's statement falls short of this standard.

So far, this brief addressed the District Court's puzzling discussion of Fogle's history and characteristics – as well as its recitation of the base charging facts for both counts – as both being inadequate bases to justify an above-Guidelines sentence. There are additional problems with the District Court's reasoning.

As noted by the District Court, the "distribution" element of Count I is based upon a single act of distributing child pornography. (Tr. 180.) One single act. And that one instance technically supported a "distribution" charge because Fogle did show it to someone, but that was one individual with whom Fogle was then involved with romantically and it occurred in the confines of a locked hotel room. (Tr. 132-133.) As Fogle's counsel noted, "There's distribution and then there's distribution." (Tr. 133, ll. 9-10.) That is not a fact that would reasonably support an enhanced sentence.

Another factor relied upon to enhance Fogle's sentence was the position of the "government" as it concerned the expert witnesses who testified at the sentencing hearing concerning Fogle's diagnosis of hypersexuality and pedophilia, and whether Fogle would respond well to medication and treatment, (Tr. 184), so as to be not "likely to reoffend." (Id.) But the Government's plea agreement – for a 151-month maximum sentence – was based upon a consideration of the opinions of these expert witnesses. For the District Court to "agree with the Government" is not a reasonable basis to impose an above-Guidelines sentence of 188 months, (Tr. 184, l.11), especially when the District Court stated her belief that Fogle would need treatment "for up to ten years," (Tr. 185, l.8), which is only 120 months.

As for Fogle seeking treatment following his arrest, and the fact that he is currently taking medication to reduce his sexual urges, the District Court initially applauded these acts (Tr. 184, ll.22-23), but then seemingly punished Fogle for not doing them earlier. (Tr. 184-185.) As was the case with the District Court's discus-

sion of Fogle's "history and characteristics," this type of rationalization is "puzzling" and not the type of "aggravating individualized findings" that adequately explain or justify an above-Guidelines sentence. <u>Bradley</u>, 675 F.3d at 1028; cf. <u>Roberson</u>, 474 F.3d at 435-36 Cir.2007) (finding below-guidelines sentence unreasonable where, among other errors, discussion of the §3553(a) factors were more likely to push the defendant's sentence upward as opposed to downward).

Finally, the District Court judge rejected the probation officer's recommendation for a downward variance based upon Fogle's notoriety and the additional stress that he will endure based upon that notoriety, (Tr. 188), noting the curious case of Jerry Sandusky. (<u>Id.</u>) Fogle is not aware of any meaningful correlation between his case, involving a renowned national spokesperson who pleaded guilty to the charges at issue in this case, and an assistant college football coach, who was convicted by a jury as a serial child abuser and molester. This is a prototypical example of a sentencing explanation that does not adequately "allow for meaningful appellate review" and which also does not "promote the perception of fair sentencing." <u>Omole</u>, 523 F.3d at 697.

In sum, this Court should find that the District Court abused its discretion in imposing an unreasonable above-Guidelines sentence on Fogle.

## <u>CONCLUSION</u>

Fogle acknowledges that he has committed inexcusable acts for which he takes full responsibility and is genuinely remorseful. (Tr. 151-155); (App. 92). Moreover, no one can seriously doubt his commitment to getting well and never

again committing these same types of acts. Even in the District Court's view, Fogle will not likely reoffend after receiving treatment for 120 months. The question is then: why sentence him to more than five years beyond that?

Prior to the sentencing hearing, the Government knew everything the District Court knew and still agreed to a below-Guidelines sentence that adequately reflected the severity of the crimes to which Fogle pleaded and one which also accounted for what the Government could "actually prove." (Tr. 171.) The Government also understood that Fogle could not be held accountable for things "he didn't do" or for "fantasies" he may have had. (Id.)  The Government knew that Fogle had not molested or abused any small children, and while the ages of the sexual prostitutes were "minors" under the federal sentencing statute, these individuals were not young children but individuals near the age of majority under the laws of both New York and Indiana.

The Government knew all of this and struck a deal with Fogle to enter into a plea agreement – and agree to a sentence that would adequately punish him for the crimes he committed – while also giving him adequate time to get well, so that he could try to put his life back together and work towards reestablishing a relationship with his two small children. And by all accounts, Fogle has been a good father to his children and wants nothing more than to be a positive influence in their lives. Notwithstanding the deal struck by Fogle and the Government, Fogle will now spend three more years away from his children than the Government thought appropriate on this record. This result is procedurally and substantively flawed and unreasona-

ble. The District Court's ruling also undermines the notions of trust and fairness that undergird our delicate system of plea bargaining. This Court should reverse and remand for resentencing with appropriate instructions to the District Court.

Respectfully submitted,

*s/Ronald E. Elberger*

Ronald E. Elberger, #6675-49
 [*Counsel of Record*]
BOSE MCKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN  46204
(317) 684-5195
(317) 223-0195 (FAX)
relberger@boselaw.com


***Attorneys for Defendant-Appellant
Jared S. Fogle***

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(A)(7)

The undersigned furnishes the following in compliance with Fed. R. App. P. 32(a)(7):

I hereby certify that this Brief conforms to the rules contained in Fed. R. App. P. 32(a)(7) for a brief produced with a proportionally spaced font, specifically in this case, Century style font in 12 point type. The length of this Brief is 9,282 words. This word count was calculated by Microsoft® Office Word 2010 and according to the Fed. App. P. 32(a)(7) does not include the Cover, Table of Contents, Table of Authorities, Signature Block, Certificate of Service and this Certificate of Compliance with Fed. App. P. 32(a)(7). This word count does include any headings, footings, and quotations but does not include embedded images.

I affirm under the penalties for perjury that the foregoing statements are true and correct as calculated by the word count of the word processor used to prepare this petition.

Dated: February 19, 2016

*s/Ronald E. Elberger*
Ronald E. Elberger

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed electronically on February 19, 2016.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system:

> Steven D. DeBrota
> Steve.debrota@usdoj.gov

*s/Ronald E. Elberger*
_____
Ronald E. Elberger

BOSE McKINNEY& EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
317/684-5195
317/223-0195 fax
relberger@boselaw.com

2921914.v3.dt1

36