CIRCUIT RULE 30(d) STATEMENT
THAT ALL REQUIRED MATERIALS ARE IN SHORT APPENDIX

Pursuant to Seventh Circuit Rule 30(d), undersigned counsel for Defendant-Appellant, Jared S. Fogle, certifies that all the materials required by Seventh Circuit Rule 30(a) and Seventh Circuit Rule 30(b) are included in this Appendix. Such Appendix consists of:

| Document Title | Docket Entry (DE) # | Short Appendix (SA) Page |
|---|---|---|
| Judgment in a Criminal Case (December 1, 2015) | DE 78 | SA 001 – 006 |
| Excerpt from Transcript of Hearing on Change of Plea and Sentencing held November 19, 2015 [Tr. 151 – 155] | DE 76 | SA 007 – 014 |
| Excerpt from Transcript of Hearing on Change of Plea and Sentencing held November 19, 2015 [Tr. 172 – 195] | DE 76 | SA 015 – 039 |

s/ Ronald E. Elberger
Ronald E. Elberger

BOSE MCKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
(317) 684-5195 / Fax: (317) 223-0195
relberger@boselaw.com

2921453

AO 245B    (Rev. 09/13) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

Southern    District of    Indiana

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>JARED S. FOGLE | **JUDGMENT IN A CRIMINAL CASE**<br><br>Case Number:    1:15CR00159-001<br><br>USM Number:  12919-028<br>Jeremy Margolis, Andrew R. DeVooght, and<br>Ronald E. Elberger<br>Defendant's Attorney |

## THE DEFENDANT:

☒ pleaded guilty to count(s)  1 and 2

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☐ was found guilty on count(s)
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 2252(a)(2) | Conspiracy to Distribute/Receive Child Pornography and Distribution/Receipt of Child Pornography | 4/29/2015 | 1 |
| 18 U.S.C. §§ 2423(b) and (e) | Traveling and Attempting to Travel in Interstate Commerce to Engage in Illicit Sexual Conduct with a Minor | 1/11/2013 | 2 |

The defendant is sentenced as provided in pages 2 through ___5___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

11/19/2015
Date of Imposition of Judgment

*[signature]*

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

12/1/2015
Date

A CERTIFIED TRUE COPY
Laura A. Briggs, Clerk
U.S. District Court
Southern District of Indiana
By _____
Deputy Clerk

SA 001

AO 245B    (Rev. 09/13) Judgment in Criminal Case
Sheet 2 — Imprisonment

| | Judgment — Page __2__ of __5__ |
|---|---|

DEFENDANT:     JARED S. FOGLE
CASE NUMBER:    1:15CR00159-001

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:      188 months
188 mos. on each of Cts. 1 and 2, to be served concurrently

☒ The court makes the following recommendations to the Bureau of Prisons:
The Court strongly recommends that the defendant be designated to a facility in Littleton, Colorado, where he can participate in sex offender treatment, as well as RDAP to address alcohol abuse.

☒ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____   ☐ a.m.   ☐ p.m.   on _____ .

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on _____ .

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____   to _____

at _____ , with a certified copy of this judgment.

UNITED STATES MARSHAL

By _____

DEPUTY UNITED STATES MARSHAL

**SA 002**

AO 245B    (Rev. 09/13) Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page    3    of    5

DEFENDANT:        JARED S. FOGLE
CASE NUMBER:    1:15CR00159-001

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of : Life
        Life on each of Cts. 1 and 2, to be served concurrently

        The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter.

☒ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. *(Check, if applicable.)*

☒ The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check, if applicable.)*

☒ The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check, if applicable.)*

☒ The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16913, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. *(Check, if applicable.)*

☐ The defendant shall participate in an approved program for domestic violence. *(Check, if applicable.)*

        If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

        The defendant must comply with the conditions listed below:

## CONDITIONS OF SUPERVISION

1.        The defendant must report to the probation office In the district to which he is released within 72 hours of release from the custody of the Bureau of Prisons.

2.        The defendant shall not leave the judicial district without the permission of the court or probation officer.

3.        The defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer.

4.        The defendant shall answer all inquiries by the probation officer and follow the instructions of the probation officer.

5.        The defendant shall notify the probation officer prior to any change in residence or employer.

6.        The defendant shall permit a probation officer to visit him at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer.

7.        The defendant shall not meet, communicate, or otherwise interact with a person whom the defendant knows to be engaged, or planning to be engaged, in criminal activity, or whom the defendant knows to have been convicted of a felony, unless granted permission to do so by the probation officer.

8.        The defendant shall notify the probation officer within 72 hours of being arrested or having any official law enforcement contact.

9.        As directed by the probation officer, the defendant shall notify third parties of the nature of the defendant's offense conduct and conviction and shall permit the probation officer to make such notifications and confirm the defendant's compliance with such notification.

SA 003

AO 245B    (Rev. 09/13) Judgment in a Criminal Case
        Sheet 4 — Supervised Release

Judgment—Page ___3.01___ of ___5___

DEFENDANT:    JARED S. FOGLE
CASE NUMBER:    1:15CR00159-001

10.    The defendant shall submit to the search of his person, vehicle, office/business, residence and property, including computer systems and Internet-enabled devices, whenever the probation officer has a reasonable suspicion that a violation of a condition of supervision or other unlawful conduct may have occurred or be underway involving the defendant. Other law enforcement may assist as necessary. The defendant shall submit to the seizure of any contraband that is found, and should forewarn other occupants or users that the property may be subject to being searched.

11.    The defendant shall consent, at the direction of the probation officer, to having installed on his computer(s), telephones, electronic devices, and any hardware or software, systems to monitor his use of these items. Monitoring will occur on a random and/or regular basis. The defendant will warn other occupants of the existence of the monitoring hardware or software placed on his computer(s), phones and electronic devices. To promote the effectiveness of this monitoring, the defendant shall disclose in advance of its use all cellular phones, electronic devices, computers, and any hardware to the probation officer and may not access or use any undisclosed equipment. The defendant is responsible for the costs associated with the monitoring program.

12.    The defendant shall participate in a program of treatment for sexual disorders, including periodic polygraph examinations, as directed by the probation officer. The Court authorizes the release of the presentence report and available psychological records to the treatment provider, as approved by the probation officer. The defendant shall pay a portion of the costs in accordance with his ability to pay.

13.    The defendant shall not possess any obscene material, child pornography, child erotica or nude images of minors. Any such material found in the defendant's possession shall be considered contraband and may be confiscated by the probation officer.

14.    The defendant shall not have any unsupervised meetings, non-incidental communications, activities, or visits with any minor child, unless approved by the Court or person having custody of the minor child. Supervised contact with a minor child must be approved in advance by the probation officer. In determining whether to approve such activities involving members of the defendant's family, the probation officer shall determine if the defendant has notified the persons having custody of any such minors about his conviction in this case and the fact that he is under supervision. If this notification has been made, and if the person having custody consents to these activities, then this condition is not intended to prevent approval of the activity. This condition excludes his biological children, if contact is agreed to by their mother.

15.    The defendant shall not be employed in any position or participate as a volunteer in any activity that involves unsupervised meetings, non-incidental communications, activities, or visits with minors except as disclosed to the probation officer and approved by the Court.

16.    The defendant shall pay any outstanding location monitoring fees that were accrued while on pretrial supervision.

Upon a finding of a violation of probation or supervised release, I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the condition of supervision.

These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

(Signed)

_____    _____
Defendant                                  Date

_____    _____
U.S. Probation Officer/Designated Witness    Date

**SA 004**

AO 245B    (Rev. 09/13) Judgment in a Criminal Case
          Sheet 5 — Criminal Monetary Penalties

| | Judgment — Page | 4 | of | 5 |

DEFENDANT:        JARED S. FOGLE
CASE NUMBER:      1:15CR00159-001

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 200.00 | $ 175,000.00 | $ 1,400,000.00 |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☒ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| Victim 1 | | $100,000.00 | |
| Victim 2 | | $100,000.00 | |
| Victim 3 | | $100,000.00 | |
| Victim 4 | | $100,000.00 | |
| Victim 5 | | $100,000.00 | |
| Victim 6 | | $100,000.00 | |
| Victim 7 | | $100,000.00 | |
| Victim 8 | | $100,000.00 | |
| Victim 9 | | $100,000.00 | |
| Victim 10 | | $100,000.00 | |
| Victim 11 | | $100,000.00 | |
| Victim 12 | | $100,000.00 | |
| Victim 13 | | $100,000.00 | |
| Victim 14 | | $100,000.00 | |

| **TOTALS** | $ _____ | $ 1,400,000.00 | |

☒ Restitution amount ordered pursuant to plea agreement  $ 1,400,000.00

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☒ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☒ the interest requirement is waived for the   ☒ fine   ☒ restitution.

☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B    (Rev. 09/13) Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page    5    of    5

DEFENDANT:       JARED S. FOGLE
CASE NUMBER:     1:15CR00159-001

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A ☐ Lump sum payment of _____ due immediately, balance due

     ☐ not later than _____ , or
     ☐ in accordance ☐ C , ☐ D , ☐ E, or ☐ G below; or

B ☒ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☒ G below); or

C ☐ Payment in equal_____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
     _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D ☐ Payment in equal_____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
     _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
     term of supervision; or

E ☐ Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
     imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F ☐ If this case involves other defendants, each may be held jointly and severally liable for payment of all or part of the
     restitution ordered herein and the Court may order such payment in the future. The victims' recovery is limited to the
     amount of loss, and the defendant's liability for restitution ceases if and when the victims receive full restitution.

G ☒ Special instructions regarding the payment of criminal monetary penalties:

     Restitution has been paid in full to the government, $1,200,000.00 has been distributed to 12 victims. The remaining
     $200,000.00 has been put on deposit with the Clerk of Court who is awaiting further information from the US Attorney's
     Office.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is
due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons'
Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

     Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount,
     and corresponding payee, if appropriate.

| Defendant Name | Case Number | Joint & Several Amount |
|---|---|---|
| | | |

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s): _____

☒ The defendant shall forfeit the defendant's interest in the following property to the United States:
$50,000.00 (in lieu of forfeiture of personal property)

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal,
(5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

**SA 006**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

UNITED STATES OF AMERICA,    )
                            ) Cause No.
       Plaintiff,        ) 1:15-CR-0159-TWP-MJD
                            ) Indianapolis, Indiana
   vs.                  ) **November 19, 2015**
                            ) 9:01 a.m.
JARED S. FOGLE (01),      )
                            )
       Defendant.        )

**Before the Honorable**
**TANYA WALTON PRATT**

OFFICIAL REPORTER'S TRANSCRIPT OF
CHANGE OF PLEA AND SENTENCING

**For Plaintiff:**                  Steven D. DeBrota, Esq.
                                   Assistant U.S. Attorney
                                   United States Attorney's Office
                                   Suite 2100
                                   10 West Market Street
                                   Indianapolis, IN  46204

**For Defendant:**                Jeremy Margolis, Esq.
                                   Andrew Richard DeVooght, Esq.
                                   Loeb & Loeb, LLP
                                   Suite 2300
                                   321 North Clark Street
                                   Chicago, IL  60654

                                   Ronald E. Elberger, Esq.
                                   Bose, McKinney & Evans, LLP
                                   Suite 2700
                                   111 Monument Circle
                                   Indianapolis, IN  46204

Court Reporter:              David W. Moxley, RMR, CRR, CMRS
                                   United States District Court
                                   46 East Ohio Street, Room 340
                                   Indianapolis, Indiana  46204

PROCEEDINGS TAKEN BY MACHINE SHORTHAND
TRANSCRIPT CREATED BY COMPUTER-AIDED TRANSCRIPTION

## I N D E X

**DEFENDANT'S WITNESSES:**                    **PAGE**

JOHN M.W. BRADFORD, M.D.

Direct Examination by Mr. DeVooght ............51
Cross-examination by Mr. DeBrota ..............72

RICK L. MAY, Psy.D.

Direct Examination by Mr. Margolis ............88
Cross-examination by Mr. DeBrota .............100

**GOVERNMENT'S WITNESS:**                     **PAGE**

DARIN ODIER

Direct Examination by Mr. DeBrota ............103

## I N D E X   O F   E X H I B I T S

**GOVERNMENT'S EXHIBITS:**                    **PAGE**

1 ...........................................103
2 ...........................................103
3 ...........................................103
4 ...........................................103

\* \* \*

151

1   order as best he can.

2          He will never -- he will never, ever be able to

3   fully make amends and turn this around.  We know that.  But he

4   will go to prison and he will try to get well, and he will do

5   his level best for the rest of his life to continue to make

6   those amends.  And for that, Your Honor, I ask you to give him

7   the due and appropriate consideration and fashion a sentence

8   that is just, that allows him to get well as quickly as he

9   can.  Thank you, Your Honor.

10         THE COURT:  Thank you, Counsel.

11         Are you okay, David?

12         Mr. DeBrota -- oh, I'm sorry.  Mr. Fogle, did you

13  want to make a statement?

14         THE DEFENDANT:  Yes, ma'am.

15         THE COURT:  Come on up to the lecturn.

16         THE DEFENDANT:  Where do I even try to begin, Your

17  Honor?  For most of my adult life, I have been in the

18  spotlight, trying to be a positive role model for others, that

19  they, too, could become healthier and live a better and more

20  rewarding life.  Most people think that that all changed

21  upside down after my home was raided by law enforcement, and

22  even more so when I pleaded guilty to these charges related to

23  my horrible conduct that I sit here in front of you to answer

24  to.

25         But I feel this actually changed much longer ago.

1  Somewhere along the line, I went from being raised with good

2  solid morals and values to living the life of deception, lies,

3  and complete self-centeredness.  My life had completely

4  spiraled out of control on so many levels.  I had become

5  dependent on alcohol, pornography, and prostitutes.  The

6  victims that I have harmed as a result of my decisions will

7  carry a huge burden for them the rest of their lives.

8          At the time, I truly did not think through what I

9  was doing, nor did I understand the consequences of my

10  actions.  In the past month, during my treatment with Dr. Rick

11  May, I have learned much about my horrible actions and also

12  inactions.  Every time an underage minor is viewed, they

13  continue to get re-victimized.  This can lead to depression,

14  anxiety, inability to trust others, and potentially even lead

15  to suicidal thoughts.

16          I have also learned so much about the underage

17  minors with whom I have paid to have sex with.  At the time, I

18  felt that, because I was paying them, that it was somehow

19  okay.  Well, it wasn't okay whatsoever.  Not only is it

20  illegal, of course, but these minors are engaging in

21  activities for specific reasons.  Many come from broken

22  families, were victims of abuse or worse, were forced into the

23  sex trade by pimps.  These thoughts never crossed my mind when

24  I engaged with them.

25          My actions allowed them to be further victimized,

SA 011

1  and for that I will be forever remorseful.  Not a day will go

2  by that I don't think about them and what I did to take away

3  and impact their lives.  I truly hope that the restitution can

4  positively play -- can positively play some role in changing

5  the course of their lives, although I am painfully aware that

6  I have taken things from them that can never be fully

7  remedied.

8          The members of my family are also victims of my

9  reprehensible acts.  I absolutely devastated my wife.  She has

10 and will have to continue to endure what I did for years to

11 come, long after our divorce is final.  She is now going to be

12 forced to be a single mother, which is something that I truly

13 never intended to happen.  My young son and daughter, although

14 too young to understand what I have done, will have to live

15 with this terrible burden of my actions.

16          THE COURT:  You gave your wife almost $7 million,

17 though, so she will be okay.  You may continue.

18          THE DEFENDANT:  All of this because I chose to act

19 in a completely inappropriate and irresponsible manner.  I

20 love my children so very much, and not being able to see them

21 grow up makes my heart absolutely sink.  I will someday -- I

22 will someday have to explain to them what I did, and that will

23 be one of the hardest conversations of my life.  They didn't

24 deserve to be brought into any of this.

25          I owe a huge apology to the people who supported me

154

1   and my positive messages these past 15 years.  You believed

2   me -- you believed in me and what I stood for.  I truly regret

3   that I've hurt you, that I've hurt so many of you.  It gave me

4   such a wonderful feeling to be a positive role model for

5   healthy eating and lifestyle change in my former life.

6           I want to get myself healthy and still try to help

7   others, although I realize that I can never change my

8   deplorable past choices.  I so regret that I let so many of

9   you down.  And that is my intent, to learn from this

10  experience so that I never, ever do these things again.

11          Your Honor, I wish that I had been able to realize

12  these problems that I had years ago, I truly do.  I could have

13  addressed them in a positive, appropriate way before I

14  violated these victims.  I take full and absolute

15  responsibility for what I have done and, more importantly, the

16  harm that I have caused the victims and their families.

17          My intent, both during incarceration and upon

18  release from prison, is somehow to continue to help people in

19  a productive way, whether it's helping inmates further their

20  education or helping other sex offenders change their lives

21  for the better, or even educating mental health workers about

22  deviant sexual behavior, I want to make a positive impact.

23  Your Honor, I want to redeem my life, I want to become a good,

24  decent person, and even better father, and to truly help

25  others.  Thank you.

155

1              THE COURT:   Thank you, Mr. Fogle.

2              All right.   Mr. DeBrota, the court reporter is okay.

3              They're asking for -- to get to 60 months, I would

4    have to go down eight levels on the guidelines.   What do you

5    think, Mr. DeBrota?

6              MR. DeBROTA:   To get to 60 months, you would have to

7    be at a total offense level of -- you would have to be at

8    least 25, down from 31.

9              MR. DeVOOGHT:   33.

10             THE COURT:   33.

11             MR. DeBROTA:   So, mathematically, I think that's

12   correct, mathematically.

13             THE COURT:   About eight levels?

14             MR. DeBROTA:   Yeah, that's eight levels.

15             May it please the Court, two things first.   We filed

16   a sentencing memo that very carefully laid out a detailed

17   factual chronology of what we think Mr. Fogle did for well

18   over a five-year period of time, accounting for the

19   information from persons 1, 2, 3, and 4, and you've also heard

20   today information relating to 5, 6, and 7, and then more

21   elaboration of what happened with Minor Victim 13.   I know

22   the Court likes to see pleadings like this ahead of time.   The

23   defense filed an extensive one, as well, so I'm not going to

24   belabor what I've already argued carefully in writing.

25             But we described how these are fundamentally two

**SA 014**

\* \* \*

172

1  This is half the story, but just the first half of the story,

2  Your Honor.  Thank you.

3          THE COURT:  Okay.  Thank you.

4          All right.  My court reporter needs five minutes.

5  We'll take a five-minute break and then the Court will

6  pronounce its sentence.

7          THE COURTROOM DEPUTY:  All rise.

8          (Recess at 12:58, until 1:09.)

9          THE COURT:  We are back on the record.

10          And, Mr. Fogle, would you and your counsel come up

11  to the lecturn?

12          (Counsel and defendant approach the podium.)

13          THE COURT:  And did you have any rebuttal, very

14  brief rebuttal?

15          MR. MARGOLIS:  No.  No, Your Honor.

16          THE COURT:  Okay.  All right.  The Court is prepared

17  to state what the sentence in this case will be.  And,

18  Counsel, you will each have a final opportunity to state any

19  legal objections before sentence is finally imposed.

20          Pursuant to the Sentencing Reform Act of 1984, it is

21  the judgment of the Court that the defendant, Jared S. Fogle,

22  is hereby committed to the custody of the Bureau of Prisons,

23  to be imprisoned for a term of 188 months on each of Counts 1

24  and 2, to be served concurrently.  This sentence is a variance

25  based on the history and characteristics of the defendant, as

173

1  well as the nature and circumstances of the offense.

2         The defendant shall immediately pay restitution, if

3  he has not already, in the amount of $100,000 to each victim,

4  1 through 14, for a total of $1,400,000.

5         The defendant shall pay to the United States a fine

6  of $175,000.  The Court finds that the defendant does not have

7  the ability to pay interest and waives the interest

8  requirement.  The defendant shall notify his probation officer

9  of any material change in economic circumstances that might

10 affect his ability to pay the fine.

11        In lieu of forfeiture of property, the defendant

12 shall pay to the United States $50,000.

13        Supervised release is required by statute.  Based on

14 the serious nature of the offense and to assist the

15 defendant's reintegration into society upon release from

16 imprisonment, the Court is imposing a lifetime of supervised

17 release for each of Counts 1 and 2 to be served concurrently.

18        While on supervised release, the defendant shall not

19 commit another federal, state, or local crime; shall not

20 possess a firearm, ammunition, destructive device, or any

21 other dangerous weapon; shall cooperate with the collection of

22 a DNA sample; shall refrain from any unlawful use of a

23 controlled substance; and shall comply with the requirements

24 of the Sex Offender Registration and Notification Act as

25 directed by his probation officer.

174

1          The defendant is suspended from drug testing

2     mandated by the Crime Control Act of 1994 based on the Court's

3     determination that the defendant poses no risk of future

4     substance abuse.

5          Further, the defendant shall comply with the

6     conditions of supervised release.  And I'll go ahead and read

7     them into the record.  The defendant must report to his

8     probation officer in the district to which he is released

9     within 72 hours of release from the custody of the Bureau of

10    Prisons.  This condition is imposed as an administrative

11    requirement of supervision.

12         He shall not leave the judicial district without the

13    permission of the Court or his probation officer.  And he

14    shall report to his probation officer in a manner and

15    frequency directed by the Court or probation officer.  He

16    shall answer all inquiries by the probation officer and follow

17    the instructions of the probation officer.  All of these

18    conditions are imposed as administrative requirements of

19    supervision.

20         The defendant shall notify his probation officer of

21    any change of residence or employer.  This condition is to

22    assist the probation officer in monitoring the defendant and

23    for protection of the community.

24         The defendant shall permit his probation officer to

25    visit him at home or elsewhere based upon -- and shall permit

1   confiscation of any contraband observed in plain view.  This
2   condition is to assist his probation officer in the protection
3   of the community.

4          The defendant shall not meet or communicate or
5   otherwise interact with a person to whom the defendant knows
6   to be engaged or planning to be engaged in criminal activity
7   or whom the defendant knows to have been convicted of a felony
8   unless granted permission to do so by the probation officer.
9   This does not include family members.  The Court is imposing
10  this condition to reduce the risk of recidivism and provide
11  for the public safety.

12         The defendant shall notify his probation officer
13  within 72 hours of being arrested or having any official law
14  enforcement contact.  This condition is imposed to assist his
15  probation officer in monitoring the defendant and protection
16  of the community.

17         As directed by the probation officer and as
18  contained in his plea agreement, the defendant shall notify
19  third parties of the nature of his conviction and confirm his
20  compliance with the notification requirements.  He shall
21  submit to the search of his person, vehicle, office/business,
22  and residence, including computer systems and Internet-enabled
23  devices whenever the probation officer has a reasonable
24  suspicion that a violation of the conditions of supervision or
25  other unlawful conduct may have occurred or be underway

176

1    involving the defendant.  Other law enforcement may assist as
2    necessary.

3         The defendant shall submit to the seizure of any
4    contraband that is found and should forewarn other occupants
5    or users that the property may be subject to search.  The
6    Court is imposing these conditions due to the nature of the
7    instant offense, and this will allow the probation officer to
8    monitor the defendant's compliance with his supervised
9    release.

10         The defendant shall consent, at the direction of his
11    probation officer, to having installed on his computer the
12    hardware and software monitoring as stated in the plea
13    agreement.  He shall participate in a program of treatment for
14    sexual disorders, including periodic polygraph examinations as
15    directed by his probation officer and as stated in the plea
16    agreement.

17         He shall not possess any obscene material, child
18    pornography, or erotica, or nude images of minors as stated in
19    his plea agreement; and shall not have any unsupervised
20    nonincidental communication, activities, or visits with any
21    minor children unless approved by the Court or approved by the
22    person having custody of that child, as stated in the plea
23    agreement.  And the Court noted for the record earlier that
24    this would not include the defendant's biological children.

25         The defendant shall not be employed in any position

**SA 020**

1   or participate as a volunteer in any activity that involves

2   unsupervised meetings, nonincidental communication,

3   activities, or visits with minors except as disclosed to his

4   probation officer.  The Court is imposing this condition to

5   ensure the safety of the community given the nature of these

6   offenses.

7           And if there are any outstanding location monitoring

8   fees that were accrued while on pretrial supervision, the

9   defendant is to pay those fees.  The Court is imposing this

10  condition to ensure that all outstanding fees are paid.

11          The Court is -- the defendant is further ordered to

12  pay the special assessment of $200.  Payment of the fine and

13  special assessment are due immediately and are to be made

14  directly to the Clerk, United States District Court for the

15  Southern District of Indiana.

16          The sentence that the Court intends to impose is a

17  one-level upward variance from the applicable guideline range

18  based on the 3553(a) factors.  In particular, the Court has

19  considered the perverse nature and circumstances of the

20  offenses.  The Court has considered the defendant's lack of

21  criminal convictions, his characteristics, the need for the

22  sentence to reflect the very seriousness of this offense, to

23  promote respect for the law, to provide just punishment, and

24  to provide adequate deterrence to criminal conduct of this

25  nature by others who might try to do similar things, as well

1  as provide the defendant with time for adequate treatment.

2      Jared Fogle is a 38-year-old gentleman before the

3  Court for sentencing for conspiring with his business

4  associate, Russell Taylor, to distribute and receive child

5  pornography and for traveling in interstate commerce to engage

6  in illicit sexual conduct with minors.

7      To begin, the Court is mindful that a sentence

8  should be sufficient, but not greater than necessary, to

9  accomplish the goals of sentencing.  Federal judges do not

10 sentence based on emotions or public sentiment or the judge's

11 personal beliefs or philosophies.  Instead, the Court must

12 impose a sentence viewed in the context of the policy goals

13 and empirical data of the United States Sentencing Commission

14 as determined by the advisory sentencing guidelines.  The

15 Court, however, is not bound by the guidelines, because they

16 are advisory in nature.

17      Upon consideration of the 3553(a) factors, the Court

18 has determined that the guideline range does not sufficiently

19 account for the scope of the defendant's criminal conduct, and

20 this case warrants an above-guideline sentence.

21      This defendant was obsessed with child pornography

22 and having sex with minors.  He fantasized about it in

23 telephone conversations.  He frequently expressed his desire

24 to have sexual relations with children.  He acted on it when

25 he sought out and traveled to have sex with minors.

1        The Court is to consider the history and
2   characteristics of the defendant.  Mr. Fogle seemingly had it
3   all.  Unlike many offenders, Mr. Fogle never experienced any
4   form of abuse or neglect, and he himself was never a victim of
5   child molest.  Rather, he was very privileged.  His father was
6   a prominent and is a prominent physician; his mother a
7   teacher, who later stayed at home to raise her children.  His
8   parents instilled appropriate morals and values in all of
9   their children, including this defendant.

10       The defendant had the determination and willpower to
11  overcome a weight problem.  As a junior in college, he lost an
12  incredible amount of weight while eating at a Subway
13  restaurant.  And when the restaurant became aware of his
14  story, it reached out to him and he became their spokesman.
15  What a gift to have such a professional windfall fall into
16  your lap.

17       During the times when he committed these crimes,
18  Defendant had a wife, he had two children, he had countless
19  opportunities to travel the world, and a net worth in the
20  millions of dollars.  According to letters from the
21  defendant's family and friends, he appeared to be loving,
22  caring, and generous.  He frequently spoke to school children
23  to encourage healthy diet and exercise.  But Mr. Fogle was
24  living a double life and, for many of those years, engaged in
25  a web of deception and depravity.  The seriousness of these

180

1  offenses cannot be overstated.

2           With respect to the distribution and receipt of

3  child pornography, the conspiracy, these offenses are not

4  victimless crimes inasmuch as the images involve sexual abuse

5  of real children.  The receipt and distribution of this

6  material perpetrates a great deal of harm to the victims who

7  are forever haunted with the fact that their images have been

8  visualized and sometimes traded over the Internet and through

9  the two people in this conspiracy.

10          Again, unlike many child pornographers, Mr. Fogle

11 admits that Victims 1 through 12 were boys and girls who were

12 secretly videotaped by his employee, Mr. Taylor.  This

13 defendant conspired with Mr. Taylor to receive and, on one

14 occasion, distribute the homemade child pornography.

15          Some of the depictions the two shared were of

16 children exposing their genitals and others were of these

17 children engaging in sexually explicit conduct.  This

18 victimization occurred for nearly four years, from March 2011

19 until January 2015.  On multiple occasions over this time

20 period, Mr. Fogle received the child pornography of these

21 children.

22          And what is most alarming to the Court is that

23 Mr. Fogle knew many of these children, he knew their names, he

24 knew that some were relatives of Mr. Taylor.  And he accepted

25 the opportunity to associate with these children during social

181

1   events.

2        The use of computer storage media in this case was

3   significant.  Mr. Fogle knew that his friend and associate was

4   secretly producing child pornography in his current and former

5   residences in Indianapolis, and he failed to report

6   Mr. Taylor's conduct to authorities.  Instead, over a period

7   of four years, he chose to benefit from the production by

8   obtaining and accessing a significant amount of the material.

9        As the government has argued, if Mr. Fogle had

10  promptly reported what he knew of Taylor's activities, Taylor

11  would have been caught and the child pornography involving

12  later victims, including the nine-year-old, would not have

13  been produced.

14       In addition to the homemade child pornography,

15  Mr. Fogle also collected child pornography through the

16  Internet.  The unidentified victims depicted in this

17  pornography were as young as six years old.  This pornography

18  was found on Mr. Fogle's computers, his storage devices, thumb

19  drives, cameras.  And at least two images of child pornography

20  were in text messages from Taylor, were found on Mr. Fogle's

21  cell phone.  The defendant's collection of material included

22  hundreds of videos and photographs, which account for over 600

23  images.

24       Child pornographers often argue that they are only

25  curious or they were fanaticizing and would never actually

182

1  harm a minor or a child, and that is not true here.  Fogle

2  acted on his attraction to children.  He engaged in Internet

3  social networking, such as Craigslist, and traveled in

4  interstate commerce for the purpose of engaging in commercial

5  sexual activity with minor children.

6          Between 2010 and 2013, he traveled from Indiana to

7  New York City to have sex with minors, including Victims

8  Number 13 and Number 14.  The defendant repeatedly asked

9  Victim Number 13 to arrange for him to participate in

10  commercial sex acts with children as young as 14 years old.

11  Mr. Fogle used his wealth and fame to entice and impress these

12  victims.

13          We heard today that he spent over $12,000 a year on

14  prostitutes.  He took Victim Number 13 to the Plaza Hotel in

15  New York City for sex acts, and on at least three occasions

16  when she was 16 years old; and engaged in illicit sex acts

17  with Victim Number 14 when she was 16 years old.

18          He went to great lengths to engage in commercial sex

19  acts with underage minors.  He bought and offered plane

20  tickets.  He reserved and paid for the hotel rooms, made

21  arrangements for the commercial sex acts, and engaged in

22  commercial sex acts with minors, and solicited a digital image

23  of a minor engaged in sexually explicit conduct from one of

24  the prostituted minors.

25          He sought to use these prostituted minors to find

183

1    other children with whom he could have sexual contact and

2    continually communicated with the prostituted minors in his

3    attempts to find even younger children for sex.  He specified

4    that he wanted children ages 14 and 15.  In Exhibits 1, 2, 3,

5    and 4, that were admitted into evidence at this hearing, in

6    explicit language, the defendant repeatedly sought out boys

7    and girls and indicated, "The younger the better."

8            While Mr. Fogle did not introduce these girls to

9    prostitution, he continued their victimization in this

10   underground world.  We learned today from the government that

11   these children were victims of a violent sex trafficking pimp.

12   Children involved in prostitution is a form of commercial

13   sexual exploitation, and these children are often victims of

14   sex trafficking, and that's exactly what occurred in this

15   case.

16           Under the federal law, the prostitution of children

17   is considered a form of human trafficking.  Sex trafficking is

18   a lucrative industry where criminals traffic children just as

19   they would traffic drugs and other illegal substances.  That

20   Mr. Fogle fostered this form of abuse for several years with

21   minor children is a serious crime, and that Mr. Fogle states

22   that he did not even realize the implications of his actions

23   is very alarming.

24           Child sex crimes are among the most egregious and

25   despicable of societal and criminal offenses, and Congress has

184

1  called for serious punishment for persons who knowingly

2  victimize children.  The Court finds no reason to depart or

3  vary downward from the guidelines as Defendant's counsel have

4  requested.

5        The Court has heard testimony from the defendant

6  that he has a diagnosis of hypersexuality and mild pedophilia,

7  and the experts hired by defendants have stated that he

8  will -- they believe he will respond well, and he has been

9  responding well, to medication and treatment, and they don't

10 believe he's likely to reoffend.

11       But I agree with the government.  The doctor based

12 his opinion on Mr. Fogle saying that his interest was with

13 children 16 and 17 years old.  Mr. Fogle did not tell -- or

14 maybe the doctor didn't listen to the tapes to realize that

15 the defendant has stated that the younger, the better.  He

16 repeatedly sought out these 14- and 15-year-old girls.  He

17 admits, the doctor does, that the visual stimulation tests

18 show that the defendant was more attracted to younger children

19 than to the teenagers.  And, importantly, in this country,

20 there's no such thing as mild -- being a mild pedophile.

21 That's not a diagnosis accepted in the DSM.

22       It is admirable that Mr. Fogle sought treatment

23 following his arrest, and, to his credit, he's taking

24 medication to reduce his sexual urges.  But the Court notes

25 that this defendant had the means to obtain treatment since

1    the onset of his deviant sexual behaviors, and he did not seek

2    treatment until after he was arrested.  And he did not seek

3    treatment years ago, he did not seek treatment following the

4    arrest of his co-conspirator, Mr. Taylor, in April of 2015.

5    Rather, he first sought treatment upon advice of counsel

6    following his arrest in September of 2015.  Dr. May indicated

7    that this defendant, as most sex offenders, needs treatment

8    for up to ten years, and the Court agrees.

9         One of the goals of sentencing is to provide an

10   offender with correctional training through treatment and to

11   assist him in abstaining from new criminal behavior.  Due to

12   the nature of the offense and this defendant's acts relating

13   to child pornography and traveling to engage in sex with

14   minors, it is necessary that he participate in sex offender

15   treatment while in prison to assist in the development of

16   internal controls to his deviant sexual impulses, thoughts,

17   and behaviors.  The Court, as counsel have requested, will

18   recommend that the Bureau of Prisons designate a facility

19   where Mr. Fogle can continue treatment.

20        The Court considers the 3553(a) factors to avoid

21   unwarranted sentencing disparities.  With respect to the

22   alleged disparity and the sentences of defendants in Exhibits

23   A and B, the circumstances of those defendants is very

24   different.  This is A and B that you had in your sentencing

25   memorandum.

1        Defendant A, I think that might have been
2  Mr. Horner, was a binding plea agreement, which the Court
3  accepted, in part, because this defendant had been raised by a
4  mentally ill mother, a physically abusive father.  He had been
5  molested beginning when he was seven years old.  He was
6  charged only with the possession, and his collection was less
7  than 100 images.

8        The defendant in Exhibit B was also sentenced solely
9  and charged only with possession.  He did not distribute or
10 receive or conspire to distribute and receive child
11 pornography.  He did not travel in interstate commerce to
12 engage in elicit sexual conduct with minors.  And, notably,
13 neither Biddle nor Dittiway traveled in interstate commerce or
14 socialized with their victims of their child pornography.

15       The Court next considers the need to protect the
16 public from further crimes of the defendant and to afford
17 adequate deterrence to others who might commit these same
18 types of offenses.  The level of perversion and lawlessness
19 exhibited by Mr. Fogle is extreme.  As early as 2007,
20 witnesses from Florida, Georgia, and Washington state have
21 proffered that Fogle repeatedly discussed his interest in
22 engaging in commercial sex acts with minors.  This was four
23 years before he began receiving pornography from Mr. Taylor.
24       He discussed with adult prostitutes in Virginia,
25 Missouri, and Nevada his interest in paying them a finder's

187

1 fee to provide him with access to minors for commercial sex

2 acts.  He stated that he was sexually attracted to children as

3 young as eight years old, and he did this only after engaging

4 in illegal commercial sex acts with these women to ensure that

5 they were not police officers, because, other than the

6 prostitutes in Las Vegas, Nevada, prostitution is still

7 illegal in this country.  The defendant admits to paying for

8 commercial sex with adults on hundreds of occasions.

9          The conduct that Mr. Fogle has engaged in has been

10 taken very seriously by Congress.  And the Court believes it

11 should impose a substantial term of imprisonment, not only to

12 provide just punishment, but to adequately deter others from

13 committing similar acts.

14          The Court has considered the relevant factors

15 presented by the defendant and given them appropriate weight.

16 The Court rejects Defendant's arguments that the guideline

17 range for distribution or receipt of child pornography is

18 overstated when viewed in the context of this case and the

19 policy goals of the Sentencing Commission.

20          The Court recognizes Mr. Fogle's remorse and

21 believes that it's genuine.  And the defendant's offense level

22 was reduced by three levels for his acceptance of

23 responsibility and saving the victims from having to testify

24 at a trial.

25          The defendant appears to be sincere in his quest for

1  treatment.  And I agree and believe that he is painfully

2  aware -- he is now painfully aware of the harm that he's

3  caused his victims.  The Court recognizes that he has paid

4  $1.4 million in restitution, even for victims who he says he

5  did not view pornography of, but I'm sure he made that

6  agreement because of the conspiracy.  But this restitution is

7  the appropriate thing to do, especially considering the fact

8  that Mr. Fogle, at the time he committed these offenses, was a

9  multimillionaire, and he clearly has the means to easily pay

10  restitution to his victims.

11        The Court also gives Defendant credit for the

12  positive impact he may have had on others when speaking

13  regarding diet and exercise and healthy lifestyle.

14        With all due respect to the probation officer, the

15  Court rejects that it should vary downward because he is

16  famous and his notoriety may make it extra stressful when he

17  is in prison.  This defendant's celebrity cuts both ways.  He

18  will likely get special protection when he goes to the Bureau

19  of Prisons.  It is because of his fame and notoriety that he

20  was able to perpetrate some aspects of these crimes.

21  Additionally, other celebrity criminals in this district were

22  not awarded downward variances for this reason, and other sex

23  offenders.  One that comes to mind is Jerry Sandusky, who was

24  never awarded a mitigated sentence for the extra hardships

25  that surround their celebrity.

1    The Court considers the defense argument regarding

2    the character of the child pornography that this defendant

3    possessed contemporaneously with his conviction.  Some of it

4    was of nude children exposing their genitals, and not all of

5    it involved lascivious sex acts.  However, what aggravates the

6    character of the pornography is that this defendant actually

7    knew the children in the homemade pornography.  The youngest

8    victim -- even though he didn't view this.  But because he

9    didn't report Mr. Taylor, a nine-year-old was -- produced

10   homemade pornography.  The oldest was about 16.  Mr. Fogle

11   knew their names, he actually socialized with them at

12   charitable events -- I'm sorry, at social events, and had the

13   opportunity to engage in a more explicit form of fantasy.

14         The guidelines do not account for the number of

15   victims, they do not account for the effect on the victims.

16   One of the victims sent a letter to the Court, and the Court

17   is going to keep this very neutral.  This is from this

18   victim's mother.  "My daughter has been impacted so hard

19   throughout all of this.  She can hardly function and live

20   normally as of late, and it is only getting worse.  The stress

21   and mental state finally took its toll on her and she was

22   contemplating suicide.  She now lives on sleep medication,

23   anxiety medication, and depression medication at the age of

24   now 16.  None of the victims or their families will ever be

25   the same.  This has changed their lives forever.  I could have

190

1  lost my daughter a couple of weeks ago if she would have went

2  forward with her suicide thoughts and put it in action from

3  the personal turmoil that she now lives daily."

4        The length of time that this went on is also not

5  accounted for in the guidelines. As the Court stated earlier,

6  Mr. Fogle's perversion began in 2007, way before he met

7  Mr. Taylor in 2011, and went on until 2015, the time that he

8  was arrested and his home was raided.

9        The advisory guideline calls for a sentence of

10 between 135 and 168 months. The government has agreed to

11 recommend a sentence no greater than 151 months. Considering

12 the 3553(a) factors set forth in this hearing, a one-level

13 upward variance sentence in the range of 154 to 188 months is

14 appropriate, and a sentence of 188 months, which is only 20

15 months above the advisory guideline range, the Court finds to

16 be reasonable in this case.

17        A fine of $175,000, which is within the advisory

18 guideline range, is ordered. While Mr. Fogle has agreed to

19 pay restitution to the identified victims of this offense,

20 there are still unidentified victims in the images of

21 commercial child pornography that he received from Mr. Taylor.

22 Criminal fine payments are deposited in a fund which aids

23 crime victims throughout the United States, including victims

24 of sexual offenses. This fine is ordered to benefit victims

25 of current and future crimes. Additionally, the imposition of

1  this fine may allow the defendant to participate in prison

2  industries.

3          Supervised release is required by statute.  Based on

4  the serious nature of the offense and to assist this

5  defendant's reentry into society, the Court is going -- has

6  ordered the lifetime supervision.

7          In addition to the mandatory conditions required by

8  statute, the Court has indicated the other conditions of

9  supervision.  And, defense counsel, do you have any objection

10 to any of the conditions of supervised release?

11         MR. MARGOLIS:  No, Your Honor.

12         THE COURT:  Do you, Mr. DeBrota?

13         MR. DeBROTA:  No.  And we would waive any further

14 elaboration of that into the record.  I think you've

15 adequately supplied a basis as part of the overall comments.

16         THE COURT:  Do you agree?

17         MR. MARGOLIS:  Yes, Your Honor.

18         THE COURT:  Thank you.  All right.  Counsel, those

19 are the reasons the Court intends to impose the stated

20 sentence.  Government, do you know of any reason, other than

21 those already argued, why sentence should not be imposed as

22 stated?

23         MR. DeBROTA:  I do not, Your Honor.

24         THE COURT:  And, defense, do you know of any

25 reasons, other than those already stated --

192

1          MR. MARGOLIS:  No, Your Honor.

2          THE COURT:  -- other than you're disappointed, that

3     sentence should not be imposed as stated?

4          MR. MARGOLIS:  No, Your Honor.

5          THE COURT:  The Court now orders the sentence

6     imposed on the defendant, Jared Fogle, as stated.

7          Mr. Fogle, you have a right to appeal your

8     conviction if you believe your guilty plea was somehow

9     unlawful or involuntary or if there's some other fundamental

10    defect in the proceedings that was not waived by your guilty

11    plea.  You also have a right to appeal your sentence if you

12    believe it is contrary to law.

13         With few exceptions, any notice of appeal must be

14    filed within 14 days after written judgment is entered in your

15    case.  If you cannot afford the filing fee or cannot afford to

16    pay a lawyer to appeal for you, a lawyer would be appointed to

17    represent you in the appeal.

18         Now, you can either -- if you intend to appeal, you

19    can either tell me now, and the clerk of court will prepare a

20    notice of appeal for you immediately; or you can tell your

21    lawyers within the next 14 days, and they will make sure they

22    get the appropriate paperwork filed.  Do you understand your

23    appellate rights?

24         THE DEFENDANT:  Yes, ma'am.

25         THE COURT:  And do you want to discuss that with

193

1    your lawyers before you make a notice?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Okay.  And for the record, he said,

4    "Yes."

5              Are there any other matters to take up for the

6    government?

7              MR. DeBROTA:  No, Your Honor.

8              THE COURT:  Any other matters for the defense?

9              MR. MARGOLIS:  Yes, Your Honor, if I might.  I know

10   the Court said it's going to recommend that Mr. Fogle receive

11   sex offender treatment during his prison time, and we thank

12   you for that.  We would ask you, also, to recommend that he

13   receive -- get into the RDAP program, because we think that's

14   appropriate, as well, not for drugs, but obviously for alcohol

15   abuse.

16             And we very much request, and I hope you will abide

17   by this, to recommend the institution of Littleton, Colorado,

18   because we have been told by people who know that that has the

19   best sex offender program in the system.  And I'm told by some

20   folks if you put in the words, "strongly recommend," that

21   might have an additional impact with the designating folks

22   over at the BOP.

23             THE COURT:  All right.  You have no objection to

24   either of those recommendations, do you, Mr. DeBrota?

25             MR. DeBROTA:  No, Your Honor.  We do want him

194

1  remanded in custody, but where the BOP puts him in their

2  recommendations, I would defer to that combination on that

3  point.

4           THE COURT:  All right.  The Court is going to make a

5  recommendation that the Bureau of Prisons designate -- will

6  strongly recommend, if you put that in there, that the Bureau

7  of Prisons designate the facility at Littleton, Colorado; that

8  the defendant be allowed to participate in the RDAP alcohol

9  program and receive sex offender treatment.

10          All right.  The final issue is remand.  The

11 government is asking for remand?

12          MR. DeBROTA:  We are, Your Honor.

13          THE COURT:  Do you want to respond?

14          MR. MARGOLIS:  We spoke of this before, Your Honor.

15 Mr. Fogle has demonstrated, I think quite strongly, that he is

16 not a flight risk.  I would ask that he be allowed to have

17 another, whatever the time period is within which the Bureau

18 of Prisons will designate, hopefully Littleton, to continue

19 his intensive treatment with Dr. May.  And that would be our

20 request.

21          THE COURT:  Okay.  All right.  I'm going to grant

22 the government's request.  I think for the safety of the

23 defendant, as well as the community and those victims, this

24 one little girl is suicidal, that the appropriate thing in

25 this case would be to remand the defendant to the custody of

195

1    the United States Marshal.

2            Are there any other matters for the government?

3            MR. DeBROTA:  No, Your Honor.

4            THE COURT:  Anything else, Defendant?

5            MR. MARGOLIS:  No, Your Honor.

6            THE COURT:  And, defense counsel, you did an

7    excellent job, you were very thorough, but this was a tough

8    one.

9            MR. MARGOLIS:  Thank you, Your Honor.

10           THE COURT:  Okay.  The defendant is remanded to the

11   custody of the marshals, and we are adjourned.

12           THE COURTROOM DEPUTY:  All rise.

13           (Proceedings adjourned at 1:43 p.m.)

14

15                CERTIFICATE OF COURT REPORTER

16      I, David W. Moxley, hereby certify that the

17   foregoing is a true and correct transcript from

18   reported proceedings in the above-entitled matter.

19

20

21

22   /S/ David W. Moxley_____    November 30, 2015
     DAVID W. MOXLEY, RMR/CRR/CMRS
23   Official Court Reporter
     Southern District of Indiana
24   Indianapolis Division

25