NO.  15-3770

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

JARED S. FOGLE,
Defendant-Appellant.

Appeal from the United States District Court
For the Southern District of Indiana, Indianapolis Division,
Case No. 1:15-cr-00159-TWP-MJD
The Honorable Judge Tanya Walton Pratt

BRIEF OF THE UNITED STATES

JOSH J. MINKLER
United States Attorney

Bob Wood
Assistant United States Attorney

Steven D. DeBrota
Assistant United States Attorney

Attorneys for the Plaintiff-Appellee
United States of America

Office of the United States Attorney
10 West Market Street, Suite 2100
Indianapolis, Indiana 46204-3048
Telephone: (317) 226-6333

# TABLE OF CONTENTS

**Page No**.

JURISDICTIONAL STATEMENT ................................................... 1

STATEMENT OF THE ISSUES ........................................................1

STATEMENT OF THE CASE ...................................................... 2

SUMMARY OF THE ARGUMENT ............................................... 14

ARGUMENT ...................................................................... 15

I.  The District Court Made No Material Error in Its Assessment
    of the Facts, And Fogle's Sentence Was in All Respects Procedurally
    Sound…………………………………………………………………....15

    A.  Standard of Review……………………………………………………15

    B.  The District Court's Reliance on Certain Facts and Considerations
        Fogle Has Identified in Fashioning His Sentence Was Uniformly
        Appropriate……………………………………………………….…15

        1.  The District Court's Decision to Exceed the Sentence the
            Government Recommended Was Permissible and Reasonable……..…16

        2.  The District Court Permissibly and Reasonably Accounted for
            Fogle's Uncharged Conduct in Choosing a Sentence…………………17

        3.  The District Court Did Not Sentence Fogle for Producing Child
            Pornography and Did Not Sentence Him for Anyone Else's
            Conduct, Only His Own……………………………….…………………19

        4.  The District Court Did Not Sentence Fogle for His Thoughts or
            Fantasies but Properly Considered His Many Concrete Attempts
            to Commit Additional Child Prostitution Crimes……………………23

        5.  The District Court's Consideration of the Fact that Fogle Received
            and Distributed Pornography Depicting a Six Year Old Was
            Reasonable…………………………………………………………25

II. Fogle's Sentence Was Substantively Reasonable.................................28

   A. Standard of Review.......................................................................28

   B. The District Court Provided a Comprehensive Explanation for
      Its Reasonable Decision to Sentence Fogle above the Advisory
      Guidelines Range....................................................................…......28

CONCLUSION.................................................................................. 34

STATEMENT CONCERNING ORAL ARGUMENT.................................35

CERTIFICATE OF COMPLIANCE IN ACCORDANCE WITH
FED. R. APP. P. 32(a)(7)(C)...............................................................36

CERTIFICATE OF SERVICE...............................................................37

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page No.**

*United States v. Baker*, 755 F.3d 515 (7th Cir. 2014) ..................................... 15

*United States v. Borders*, 243 F. App'x 182 (7th Cir. 2007)............................ 17

*United States v. Bradley*, 675 F.3d 1021 (7th Cir. 2012) ................................ 32

*United States v. Castaldi*, 743 F.3d 589 (7th Cir. 2014)............... 17, 27, 28, 32

*United States v. Cheek*, 740 F.3d 440 (7th Cir. 2014) ................................... 17

*United States v. Gary*, 613 F.3d 706 (7th Cir. 2010)...................................... 28

*United States v. Jones*, 635 F.3d 909 (7th Cir. 2011)..................................... 19

*United States v. Marty*, 450 F.3d 687 (7th Cir. 2006).............................. 15, 17

*United States v. Molton*, 743 F.3d 479 (7th Cir. 2014) .................................. 28

*United States v. Nance*, 611 F.3d 409 (7th Cir. 2010).................................... 19

*United States v. Scott*, 555 F.3d 605 (7th Cir. 2009)...................................... 15

*United States v. Tockes*, 530 F.3d 628 (7th Cir. 2008) ................................... 18

*United States v. Vizcarra*, 668 F.3d 516 (7th Cir. 2012) ................................ 27

*United States v. Vitrano,* 495 F.3d 387 (7th Cir.2007) ....................... 18, 19, 27

**Statutes**

18 U.S.C. § 2252(a)(2) .................................................................................... 1, 6

18 U.S.C. § 3553(a) ......................................................... 18, 19, 21, 24, 25, 29

18 U.S.C. § 3661................................................................................................ 18

18 U.S.C. § 3742 ........................................................................... 1, 6

18 U.S.C. §§ 2423(b) .................................................................... 1, 6

28 U.S.C. § 1291 ............................................................................... 1

## Rules

Federal Rule of Appellate Procedure 32(a)(7) ................................. 35

Federal Rule of Criminal Procedure 11(c)(1)(B) ............................... 6

## Other Authorities

U.S.S.G. § 1B1.3(a) ........................................................................ 18

U.S.S.G. § 2G2.2(a)(2) ................................................................... 20

## JURISDICTIONAL STATEMENT

The jurisdictional statement of the Appellant appears to be complete and correct. The District Court possessed jurisdiction pursuant to 18 U.S.C. § 3231. Fogle was convicted of violating 18 U.S.C. §§ 2252(a)(2), 2423(b). The court entered final judgment in this case on December 1, 2015. (R. 78.) A timely Notice of Appeal was filed on December 14, 2015. (R. 82.) This Court possesses jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## STATEMENT OF THE ISSUES

1. Whether the district court properly considered the unusual nature and circumstances of Fogle's child pornography crimes, including his close relationship with the producer and social interactions with certain victims, as part of its Section 3553(a) assessment in determining his sentence on Count One.

2. Whether the district court properly considered Fogle's many unsuccessful attempts to engage in additional acts of commercial sex with minors as part of its Section 3553(a) assessment as to Count Two.

3. Whether the district court's assessment of the facts was clearly erroneous.

4. Whether the above-guidelines sentence, which the district court thoroughly explained as stemming from several unusual aggravating aspects of Fogle's crimes, was substantively reasonable.

1

## STATEMENT OF THE CASE

This is a direct appeal of the convictions of Jared Scott Fogle following

a guilty plea and sentencing.[1]

### *The Two-Stage Child Pornography Investigation*

The investigation in this case began not with Subway pitchman Jared

Fogle but with his close friend and business associate, Russell Taylor.  In

2015, the Indiana State Police Cybercrime Section received a tip that Taylor

had sent text messages discussing his sexual interest in children.  (R. 57, at

5.)

Based on that tip and related information, law enforcement obtained a

search warrant for Taylor's home and electronic devices, where they found

child pornography.  (S. 33; R. 57, at 5.)  They soon discovered that, from

March 2011 through April 2015, Taylor secretly produced homemade child

pornography using secret cameras he had set up at his residences.  (S. 32-33,

167.)  All of the videos were lascivious, and some of the material included

sexually explicit conduct.  (S. 180-81.)

The Taylor investigation then expanded further, to include potential

associates.  One such individual was Fogle.  Taylor worked for Fogle's

---

[1] Throughout this brief, the government will make the following references:
(PSR = Presentence Investigation Report); (S. = Sentencing Hearing
Transcript); (R. = District Court Docket Number); (A. Br. = Appellant's Brief).

charitable foundation, and the two met and traveled together frequently.  (S. 46, 119.)

Law enforcement initially found relevant activity tied to Fogle through text messages recovered from Taylor's cell phones.  (S. 181.)   It became clear fairly quickly that Fogle knew about Taylor's child pornography production activities and knew personal information about children depicted in the homemade pornography.  (PSR ¶ 8; S. 32, 120, 165, 180-81.)  Fogle also knew that Taylor had personal relationships with the victims and their families.  (PSR ¶ 8; S. 32, 165, 180-81.)  Indeed, in some cases, Fogle met the children during social events with Taylor and his family.  (PSR ¶¶ 8-9; S. 120, 165, 180-81.)

Communications between Fogle and Taylor revealed enough for law enforcement to obtain a warrant to search Fogle's home and devices.  While executing that warrant, law enforcement found two images of child pornography on Fogle's phone that he had received from Taylor.  (S. 181.)

The search of Taylor's and Fogle's homes produced large amounts of data.  (PSR ¶ 10.)  Taken from varied computers, phones, and hard drives, the relevant data took the form of text messages, emails, images, and videos.  (R. 57, at 6-7.)  Agents and analysts spent several weeks after the search reviewing the data.

Their analysis uncovered more details of Fogle's and Taylor's receipt and distribution conspiracy. On their trips together, Taylor often gave Fogle his laptop so that Fogle could view the child pornography saved on the computer. (S. 119.) Taylor also gave Fogle a thumb drive containing child pornography. (S. 119.)

Fogle had received images and videos from Taylor's homemade collection and from Taylor's broader collection of commercial child pornography. (S. 119, 33, 119, 166, 181; PSR ¶ 10.) The unidentified victims in the latter set of images and videos were as young as six years old. (S. 80, 157-58.)

Law enforcement confirmed that Fogle had intimate knowledge about Taylor's production activities, and that Fogle had validated Taylor's continued exploitation of children. (S. 166, 180-81.) Time passed, and Taylor exploited more children; but Fogle never report Taylor, instead choosing to wait for more material as Taylor produced and collected it. Had Fogle contacted law enforcement, Taylor would not have been able to continue victimizing children. (S. 180-81.)

### *The Resulting Child Prostitution Investigation*

The investigation also connected Fogle to two victims of child prostitution. In short, Fogle had engaged in commercial sex acts with two

minors (ages 16 and 17), paying them to have sex with him in hotel rooms in Manhattan.  (S. 110-11, 116, 182-83.)

Searches of Fogle's cell phones produced the key leads in the child prostitution side of the case.  (S. 36, 104-15.)  As repeated text messages and emails showed, Fogle had a pattern: he found adult escorts through the Internet, developed relationships with them, and offered them finder's fees to provide him with access to minors for commercial sex.  (S. 105-115.)  He did this in several places, including Richmond, Virginia; Kansas City, Missouri; and Las Vegas, Nevada.  (S. 105-09.)

The following are snippets from a sampling of relevant text-message conversations Fogle had with adult escorts:

> "It's Jay again.  It was good seeing you at Harrah's.  I'm horny again.  Is your Asian friend available?"
> "Are you going to pay me, too, or can I come back?" [smiley wink].
> "I can pay you a little finder's fee.  I'll pay you big for a 14- or 15-year-old."
> ***
> "I just landed in Vegas."
> "How was your flight, honey?"
> "It was good.  Did you find me some young girls or boys?"
> "No.  I've been looking, too!"
> "Can you find me some?
> "How much will you give me for doing it?"
> "Depends, on, if they can prove their age.  If they can and you get me 16 or below, I'll give you 400 at least."
> ***
> "So, I have a proposition for you.  And it's something I would pay you very well if you were able to help."
> "Okay.  What is it?  Let me know."
> "Do you have any access to any young girls?  Like 15 or 16?"

"Why, baby?"
"Cause it's what I crave!" . . . "I would hook you up nicely if you did."
"How much?  Because I have a cousin who is 15."
"What does she look like?  If she's good looking I would give you 300 and her the same."

(S. 106, 107-08, 109.)

In two such cases—the New York victims—Fogle's efforts to have commercial sex with minors were successful.  (*E.g.*, S. 111.)  Those instances underlie Count Two.  In most cases, notwithstanding his dogged efforts, and his openness to young boys or girls, (S. 114), Fogle was thwarted, either because the adult escorts refused to help him or because they could not locate any underage associates.  (*E.g.*, S. 108, 112.).

### *Arrest, Plea, and Sentencing*

On August 19, 2015, law enforcement arrested Fogle at his home.  (PSR ¶ 1.)  An information that issued the same day charged that Fogle had (1) distributed and received, as well as conspired to distribute and receive, child pornography, in violation of 18 U.S.C. § 2252(a)(2), and (2) traveled and attempted to travel to engage in illicit sexual conduct with a minor, in violation of 18 U.S.C. §§ 2423(b) and (e).  (*Id.*; R. 1.)

The same day, Fogle filed a petition to enter a plea of guilty, and the parties filed a plea agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).  (PSR ¶ 3.)  Fogle agreed to waive indictment by a

6

grand jury and plead guilty to Counts One and Two of the Information.  In exchange, the government agreed not to recommend a sentence greater than 151 months in prison.  (*Id.*)

The district court sentenced Fogle on November 19, 2015.  (S. 1.)  At the hearing, Fogle called two witnesses: Dr. John Bradford, M.D., who offered his opinions regarding Fogle's sexual interests based on his evaluation, (S. 55); and Dr. Rick May, Psy. D., who testified regarding psychotherapy sessions he had held with Fogle prior to the hearing, (S. 91).  The government called FBI Task Force Officer Darin Odier to substantiate certain facts officers had uncovered during the investigation.  (S. 103.)

Fogle's counsel then presented thorough argumentation, consistent with his sentencing memorandum.  (R. 58; S. 121.)  Fogle did not dispute the advisory guideline range of 135 to 168 months.  (R. 58, at 2.)  However, he mounted a facial attack on certain guidelines provisions.  (R. 58, at 3-4; S. 122.)  Within this broader challenge, he argued against the application of various guidelines' enhancements, including the "Use of a Computer" Enhancement, the "Number of Images" Enhancement, and the "Age of Children" Enhancement.  He also presented various arguments regarding the application of the § 3553(a) factors.

Relevant here, Fogle confronted his unsuccessful attempts to locate minors for commercial sex.  (S. 136.)  Although he admitted that he tried to

7

make those encounters happen, he contended that, unlike the successful attempts, the unsuccessful ones were "not a part of his criminal conduct." (S. 136.) He also emphasized that he never participated in the production of any child pornography. (S. 129, 133.) Finally, he stressed that he did not "affirmatively request" any of Taylor's collection of commercial child pornography involving the very youngest victims. (S. 129, 135.)

Fogle himself also addressed the court, expressing remorse. (S. 151.) Ultimately, he requested a sentence of 60 months in prison. (S. 138, 141-42, 155.)

The government also presented various arguments. (S. 155.) In addition to responding to Fogle's attack on the guidelines, the government described the child pornography that Taylor gave Fogle as part of their conspiracy in Count One. (S. 157-58.) The electronic files and thumb drive Fogle received included commercial material depicting children as young as six. (S. 158.) The homemade material Fogle willingly received included children as young as twelve (Taylor produced material involving children younger than twelve, but Fogle did not receive that subset of material). (S. 158.) The government highlighted the "Zeroday" distribution that occurred here: although Fogle was not involved in the production directly, he knew where the production took place, knew that it was going to happen, and did nothing, instead waiting for his chance to receive the material. (S. 165.)

8

The government also stressed the unusually close and direct nature of the harm to Fogle's victims.  (S. 166.)  Whereas a typical recipient of child pornography is distant in various ways from the victim, Fogle had intimate knowledge of the victims and of the entire process by which their victimization occurred.  (S. 166.)

The government acknowledged crucial differences between Taylor and Fogle, stating that it would later ask for a much higher sentence for Taylor.  (S. 166.)  By rationalizing Taylor's conduct and encouraging it, however, Fogle had substantially contributed to the acute harm Taylor caused from 2011 through 2015.  (S. 166.)  Finally, the government argued that Fogle's "fantasies" were grounded in reality, in that he fantasized about and sought actively to repeat what he had already done, *i.e.*, pay minors for sex.  (S. 167.)

The government recommended a 151-month sentence, arguing that a sentence of 60 months would not fairly reflect the harm to Fogle's victims.  (S. 171.)  Only a higher sentence than the one Fogle requested "accounts for the criminality we can actually prove."  (S. 171.)  The government acknowledged that certain victims in the case would have wanted a sentence higher than 151 months, (S. 170-71), but added its assurances that the investigation was thorough and that a sentence far higher than the one Fogle requested was fair.

The district court sentenced Fogle to 188 months on both counts, to be served concurrently. (S. 172.) The court explained its upward variance in great detail, as follows:

The court stated that "this case warrants an above-guideline sentence" because of Fogle's twin "obsess[ions]" with "child pornography" and "having sex with minors." (S. 178.) The court noted that Fogle "fantasized about it" in several conversations; he also "frequently expressed his desire to have sexual relations with children." (S. 178.)

In discussing the latter fact, the court emphasized its concern that Fogle "acted on" his desires "when he sought out and traveled to have sex with minors." (S. 178.) The court later reiterated that it was sentencing Fogle for his conduct, not his thoughts: "Child pornographers often argue that they are only curious or they were [fantasizing] and would never actually harm a minor child." (S. 182.) Fogle, by contrast, "acted on his attraction to children," "travel[ing] . . . for the purpose of engaging in commercial sexual activity with minor children." (S. 182.)

This conduct was critical to the court's sentencing decision: "He went to great lengths to engage in commercial sex acts with underage minors. He bought and offered plane tickets. He reserved and paid for the hotel rooms, made arrangements for the commercial sex acts." (S. 182.) He did all of this in addition to actually having sex with two different prostituted minors for

money. (S. 182.) He "sought to use" his existing contacts with prostitutes "to find other children with whom he could have sexual contact," specifying "the younger the better." (S. 182-83.)

With respect to Fogle's child pornography conviction, the court drew a distinction between Fogle and the mine-run of defendants: Fogle's own employee and friend had produced much of the pornography at the heart of Fogle's crimes. (S. 180.) "Most alarming" about this aspect of the case to the district court was that "Fogle knew many of these children, he knew their names," and "he accepted the opportunity to associate with these children during social events." (S. 180-81.)

The court emphasized that "Fogle knew that his friend and associate was secretly producing child pornography" but that he "failed to report it." (S. 181.) "Instead, over a period of four years, he chose to benefit from the production by obtaining and accessing a significant amount of the material." (S. 181.) Indeed, "if Mr. Fogle had promptly reported what he knew of Taylor's activities, Taylor would have been caught." (S. 181.) Particularly troubling to the court, this would have meant that "[t]he child pornography involving later victims, including the nine-year-old, would not have been produced." (S. 181.)

The court also believed that Fogle's history weighed in favor of a high sentence. Fogle was "unlike many offenders" in that his childhood and recent

life had been relatively easy and successful.  His history was free of the "abuse and neglect" common to such defendants, and he had significant monetary and other resources, as well as a close family.  (S. 179.)

Despite a nurturing upbringing and objectively stable background, Fogle "was living a double life," for many years "engag[ing] in a web of deception and depravity."  (S. 179.)  "The seriousness of these crimes," the court explained, "cannot be overstated."  (S. 179-80.)

The court did not substantially credit the medical and psychological opinions of Fogle's witnesses, believing those opinions were not based on adequate or accurate information.  (S. 184.)  The court found "admirable" that Fogle had sought treatment but admonished him for failing to do so before being caught.  (S. 184-85.)

Addressing the need to avoid unwarranted sentencing disparities, the court explained why the nature and circumstances of cases Fogle had cited were factually distinct.  (S. 185-86.)  Turning to the need to protect the public, she reiterated her concerns regarding Fogle's many attempts to reach out to others in several states in search of subjects for additional acts of child prostitution.  (S. 186.)  The court again stressed his repeated offers of "finder's fees" for child prostitutes, (S. 186), and his admission to paying for adult prostitutes "on hundreds of occasions," many of which were illegal, (S. 187).

The court's comments were not entirely negative. In addition to commending his treatment efforts, the court "recognize[d] Mr. Fogle's remorse," and noted his acceptance of responsibility. (S. 187.) The court also gave Fogle "credit for the positive impact he may have had on others when speaking regarding diet and exercise and healthy lifestyle." (S. 188.) On this note, however, the court explained that his "celebrity cuts both ways." (S. 188.)

In closing, the court reiterated a central aggravating factor as to Count One, "that this defendant actually knew the children in the homemade pornography." (S. 189.) She also discussed the impact on a specific victim and stated that the "length of time that this went on" was not, in her view, sufficiently captured by the guidelines. (S. 190.)

The court restated the sentence and then asked defense counsel if they had "any objection to the conditions of supervised release." (S. 191.) Defense counsel said, "No." (S. 191.) Both parties then "waive[d] any further elaboration" of the supervised release conditions. (*Id.*)[2] Finally, the court asked if Fogle had any reasons the sentence should not be imposed as stated. Fogle's counsel said "No." (*Id.*)

This timely appeal followed.

---

[2] Fogle also waived objections to the supervised release conditions in his plea agreement.

## SUMMARY OF THE ARGUMENT

The district court's sentencing decision was procedurally proper.  The court thoroughly and appropriately explored the unusual nature and circumstances of Fogle's offenses and his history and characteristics.  In doing so, the court made no procedural error, factual or otherwise.

Indeed, Fogle has not actually identified any material factual errors in the court's decision.  More broadly, his argument fails to appreciate the sorts of facts a judge may consider under 18 U.S.C. § 3553(a).  A fair review of the record shows that the district court clearly sentenced Fogle only for his own concrete conduct, which was very serious.

Fogle's sentence was also substantively reasonable.  His argument to the contrary depends on a struthious avoidance of both his serious crimes and the district judge's thoughtful and detailed assessment of the aggravating circumstances surrounding those crimes.  The judge gave many compelling reasons supporting her view that Fogle's offenses warranted an above-guidelines sentence.

# ARGUMENT

## I.    The District Court Made No Material Error in Its Assessment of the Facts, And Fogle's Sentence Was in All Respects Procedurally Sound

### A.    Standard of Review

In general, this Court reviews the procedural reasonableness of a sentence *de novo*. *See United States v. Baker*, 755 F.3d 515, 522 (7th Cir. 2014). On the particular question Fogle poses in this regard, however, this Court will reverse only if the district court's assessment of the facts was "clearly erroneous." *United States v. Scott*, 555 F.3d 605, 608 (7th Cir. 2009); *United States v. Marty*, 450 F.3d 687, 689 (7th Cir. 2006).

### B.    The District Court's Reliance on Certain Facts and Considerations Fogle Has Identified in Fashioning His Sentence Was Uniformly Appropriate

Fogle contends that the district court made three sorts of "factual" errors: (1) the court was unduly influenced by Russell Taylor's conduct, which Fogle says the court unfairly applied to him; (2) the court based its sentence on "fantasies," *i.e.*, what Fogle thought rather than what he did; and (3) the court erroneously concluded that Fogle received pornography involving a six-year-old victim. (A. Br. 15.) Although Fogle calls these factual errors, his primary complaint is that the judge considered facts he believes were out-of-bounds. Contrary to Fogle's argument, the facts the judge considered were

15

accurate and appropriate, and the judge's explanation of its sentence was more than adequate.

Before turning to the specific errors Fogle posits, two points of housekeeping are in order to clear away misconceptions underlying his arguments.

## 1.    The District Court's Decision to Exceed the Sentence the Government Recommended Was Permissible and Reasonable

Fogle makes much throughout his brief of the fact that the sentence he received "exceeds the maximum sentence agreed to" by the government. (A. Br. 14, 15, 16, 20, 21, 25, 27, 33.) Of course, the government did not agree to any specific sentence but only to place a limit on the sentence it would recommend to the court. This was not a binding Rule 11(c)(1)(C) plea.

In fact, the terms of the parties' plea agreement clearly contemplated the potential for an above-guidelines sentence: For example, the agreement outlined the possibility for a sentence as high as 240 months on Count 1 and 360 months on Count 2 for a total of 600 months, far higher than what Fogle received. (Plea Agreement at 2-3.) And in a section entitled "Sentencing Court Not Bound by Guidelines or Recommendations," Fogle acknowledged that the court could "impose a sentence higher or lower than any recommendation of either party."    (Plea Agreement at 3-4.)

This Court "has clearly established that a district court is not required to follow the government's sentencing recommendations." *Marty*, 450 F.3d at 691; *see also United States v. Cheek*, 740 F.3d 440, 455 (7th Cir. 2014). In other words, a district court may impose a sentence above the government's recommendation, even if that takes the sentence above the guidelines range altogether. *See Marty*, 450 F.3d at 691; *see also United States v. Castaldi*, 743 F.3d 589, 592 (7th Cir. 2014); *United States v. Borders*, 243 F. App'x 182, 183-84 (7th Cir. 2007).

Fogle's starting premise is therefore incorrect. As in every sentencing appeal, the guiding principle is reasonableness. *Castaldi*, 743 F.3d at 600.

**2.     The District Court Permissibly and Reasonably Accounted for Fogle's Uncharged Conduct in Choosing a Sentence**

Also baked into Fogle's argument is a belief that the district court was not permitted to consider uncharged conduct. (*E.g.*, A. Br. 21, 23.) Fogle says his sentence went beyond what the government could "actually prove" and relied on things "he didn't do." (A. Br. 19-20.)[3]   He also complains at several

---

[3] The quoted phrases are cherry-picked and out-of-context glosses on comments the government made at sentencing. Acknowledging that certain victims in the case would want a higher sentence than its recommendation of 151 months, (S. 170-71), the government was assuring the court and victims that the investigation into Fogle's activities was as thorough as possible. The government's remarks were not, as Fogle suggests, about limitations on the district court's assessment. Certainly, these remarks had nothing to do with an admission that Fogle's conduct was not intertwined with Taylor's.

points that the court explained its high sentence with reference to conduct that "never ultimately culminated in *any* chargeable activity."  (A. Br. 23.)

Contrary to the thrust of Fogle's argument, many of the facts he says the district court should not have considered were plainly relevant to the § 3553(a) inquiry.  Section 3553(a) directs a district court to consider the "history and characteristics" of the defendant, the "nature and circumstances" and "seriousness" of the offense, the need "to protect the public from further crimes of the defendant," and other factors that necessarily require looking beyond the narrow confines of the crimes charged. *See also, e.g., United States v. Tockes*, 530 F.3d 628, 633 (7th Cir. 2008).

In line with this directive, the court may "appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information [it] may consider, or the source from which it might come.'" *United States v. Vitrano,* 495 F.3d 387, 390 (7th Cir.2007).  As this Court has emphasized, 18 U.S.C. § 3661 states, "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  *Id.* at 390.  The inquiry the district court undertakes "has long been understood to include reliable evidence of wrongdoing for which the defendant has not been charged or

convicted." *Id.* (quotation omitted).[4] Here, as explained in more detail below, the facts the district court considered were fully in line with its obligations and discretion under § 3553(a).

### 3. The District Court Did Not Sentence Fogle for Producing Child Pornography and Did Not Sentence Him for Anyone Else's Conduct, Only His Own

Fogle's first contention focuses on Count One, his child pornography conviction. He says the district court "essentially" held him accountable for "Taylor's production-based offenses," rather than his own conduct. (A. Br. 20.) According to Fogle, the district court "stated" that she was "unfamiliar" with how to address his relationship with Taylor. (A. Br. 20.) This, coupled with certain remarks concerning Fogle's "conspiracy with the producer," (S. 123), leads Fogle to the conclusion that the district court was unable to extricate him from Taylor's separate crime of production for purposes of sentencing. (A. Br. 20.) The judge's capable handling of the sentencing demonstrates otherwise.

---

[4] Beyond § 3553(a), U.S.S.G. § 1B1.3(a) instructs district courts to consider uncharged "relevant conduct" in determining "the base offense level and the specific offense characteristics and adjustments identified in Chapters Two and Three." *United States v. Jones*, 635 F.3d 909, 917 (7th Cir. 2011). In the "relevant conduct" inquiry, a district judge may consider "uncharged conduct [that] bears some relation to the offense of conviction." *United States v. Nance*, 611 F.3d 409, 416 (7th Cir. 2010). Many of the facts the court considered here could also arguably fit within this rubric, even though the court instead relied on them as part of its broader § 3553(a) analysis.

19

At a basic level, Fogle's claim is rebutted by the several times the judge made her understanding of Fogle's conspiracy clear. She repeatedly stated that his conspiracy charge concerned "distribut[ing] and receiv[ing] child pornography," not producing it. (S. 178, 180, 186.)

Indeed, if the district court had treated Fogle as a producer, he would have faced far harsher consequences. Fogle's base offense level was 22. (PSR ¶ 34; *see* U.S.S.G. § 2G2.2(a)(2).) The base offense level for production (which applied to Taylor, for example) is 32, a starting point that would have resulted in a far higher sentence than the one Fogle received. *See* U.S.S.G. § 2G2.1.

Furthermore, Fogle's argument depends on misinterpretations of what the judge said at various points during the hearing. To the extent the judge discussed production, it was to indicate her view of the unusual circumstances of Fogle's conspiracy to receive and distribute from and with Taylor, not to loop him into a production charge.

For example, in response to Fogle's argument that the guidelines applicable to receipt and possession of child pornography were too harsh, the judge asked whether that argument had equal force given that he had engaged in a receipt-and-distribution conspiracy not with a faceless entity but with the producer himself. (S. 123-24.) Earlier in the hearing, the court similarly inquired whether Dr. Bradford's knowledge or conclusions

20

regarding recipients of child pornography applied neatly to a recipient like Fogle who had conspired closely and directly with the producer to obtain the material. (S. 86-87.)

In both instances, the judge was probing how the nature and circumstances of Fogle's actions related to his friendship and conspiracy with Taylor. None of this reveals a district court bewildered by confusing facts or determined to punish Fogle for production.

Likewise, when the court referred to Fogle's "conspiracy" as his motivation to offer large restitution payments, that was not a reference to a nonexistent "production conspiracy," (A. Br. 21 & n.2), but to Fogle's conspiracy (with Taylor) to receive and distribute the entire set of files, (S. 188). Fogle's argument to the contrary ignores the fact that he could reasonably have anticipated (and been motivated by) being on the hook for Taylor's distribution conduct, given that Fogle had pleaded guilty to a distribution conspiracy with Taylor. That is the "conspiracy" the judge discussed, not a nonexistent production conspiracy.

More broadly, Fogle's argument fails to appreciate the judge's duty to consider the "nature and circumstances" of the offense. 18 U.S.C. § 3553(a); *see supra* Part I.B.2. The district court's discussion of matters related to Taylor constituted a permissible examination of the "nature and circumstances" of Fogle's crimes. 18 U.S.C. § 3553(a).

21

Many defendants conspire to receive and distribute child pornography, but few do so with a close friend and confidant who produces the material while the defendant waits to receive it: "Mr. Fogle knew that his friend and associate was secretly producing child pornography in his current and former residences in Indianapolis, and he failed to report Mr. Taylor's conduct to authorities." (S. 181; *see* S. 164.)  This was not about Taylor but about Fogle's own receipt: "Instead, over a period of four years, he chose to benefit from the production by obtaining and accessing a significant amount of the material." (S. 181.)

As the judge also correctly described, Fogle's own conduct had grave consequences for specific children. "[I]f Mr. Fogle had promptly reported what he knew of Taylor's activities, Taylor would have been caught and the child pornography involving later victims, including the nine-year-old, would not have been produced." (S. 181.)  For the court, the critically "aggravating" factor here was an unusual and troubling aspect of Fogle's enthusiastic receipt of pornography from Taylor: that Fogle "actually knew the children in the homemade pornography" and chose to socialize with them. (S. 189.)

The district judge made clear throughout her explanation that she viewed Fogle's case not as a child pornography production case but as a particularly egregious example of a conspiracy to receive and distribute child

22

pornography.  She grasped the facts firmly and made no procedural error in exploring and explaining her view of Fogle's conduct.

**4.    The District Court Did Not Sentence Fogle for His Thoughts or Fantasies but Properly Considered His Many Concrete Attempts to Commit Additional Child Prostitution Crimes**

Fogle next turns his attention to the district court's factual conclusions relating to Count Two.  He says the judge sentenced him for his "fantasies" and "thoughts," rather than his actual conduct.  (A. Br. 21.)  On the contrary, the record shows that the judge sentenced Fogle for his crimes, his characteristics, and his concrete, repeated efforts to engage in further wrongdoing.

As an initial matter, Fogle lumps two sets of facts together, which makes his argument seem stronger than it actually is. To avoid confusion about how the district court reviewed the record, it is important to keep the categories separate.

The first category concerns "telephone conversations" Fogle had, during which he "fantasized about" his general interest in having sex with children. (S. 178; *see* S. 65, 77, 186.)  In these instances, Fogle was not attempting to arrange a sexual encounter with a specific child on a specific occasion but was discussing his sexual interests more generally.  The district court did not discuss those facts "repeatedly" as Fogle asserts, (A. Br. 22), or at length. Rather, she couched them primarily in her concerns "to protect the public

23

from further crimes," *see* 18 U.S.C. § 3553(a)(2)(c), and to "afford adequate deterrence to others," *id.* § 3553(a)(2)(d), indicating that Fogle's tendencies were "extreme" and longstanding. (S. 186.) The judge's use of that information for those purposes was appropriate.

The second category concerns occasions on which Fogle attempted—indeed, tried persistently—to have sex with minors in exchange for money. He did not merely discuss his interest on those occasions. Rather, he built relationships with prostitutes, who he later contacted during his travels to offer finder's fees in exchange for helping him to locate minors he could sleep with for money. (S. 109-14, 182-83, 186-87.) This he did on more than one occasion, with more than one prostitute. (*Id.*)

These were not mere "thoughts" or "fantasies," but detailed negotiations aimed at having sex with minors for money on specific dates. For example, Fogle contacted one "finder" as soon as his plane landed in Las Vegas and immediately began attempting to arrange for a child prostitute. (S. 107-08.) To the extent Fogle is calling this category of conduct "fantasies," he inadequately appreciates the nature of what he did and what the district court said.

That Fogle "never acted upon" this second category of activities does not make them "fantasies." (A. Br. 23.) The only reason Fogle did not complete these additional crimes is that the women he enlisted to help him

24

did not ultimately provide the children he asked for on those occasions.  He deserves no leniency for being thwarted in his attempts to exploit more children than he already had.

The manner in which the district court discussed these facts plainly shows their relevance to the nature and circumstances of Fogle's offense, as well as his history and characteristics.   The court's inclusion of Fogle's efforts to engage in additional commercial sex acts with children in its § 3553(a) analysis was appropriate, as was the court's view that these facts supported a high sentence.

**5.    The District Court's Consideration of the Fact that Fogle Received and Distributed Pornography Depicting a Six Year Old Was Reasonable**

Returning to Count One, Fogle correctly asserts that the judge noted that some of the victims of the commercial child pornography he received and distributed depicted victims "as young as six years old."  (S. 181.)  He is wrong, however, that this observation was "factually incorrect."  (A. Br. 24.)

The purported factual error at the center of this argument is difficult to pin down.  Fogle apparently wants to define his conspiracy and other conduct as covering only material depicting older victims, but that is not an accurate reflection of the facts he has admitted.

Fogle did not dispute below that he received and conspired to distribute material depicting victims as young as six.  (S. 75, 76, 80, 129, 157-58.)  He

also admitted that he looked at the material and distributed it to another friend.  (S. 129-30, 132.)  He shades his admissions by claiming that he did not affirmatively ask for that particular material.  But he cannot escape the undisputed fact that he willingly took, looked at, and then distributed the whole set of material at issue, which "contained some of the worst images of six-year-olds."  (S. 129 (Fogle's counsel); S. 33, 76; PSR ¶ 10.)

Fogle also seems to take issue with the judge's reference to the "Internet" and to his purported "collection" of the pornography involving a six year old.  Fogle is correct that his receipt of this pornography was not technically through the "Internet," but rather through computer hardware Taylor had provided.  The judge made clear, immediately after the statement Fogle quotes, that she understood that the pornography at issue came from hardware.  (S. 181.)  As for "collect," it appears that the judge was simply referring, as she did a few lines later, to his "collection of material," which "included hundreds of videos and photographs."  (S. 181.)  That is not a material factual error but is rather an established fact.  In the end, the facts show that Fogle willingly received this specific child pornography, which is what matters.

Fogle has one more issue with the judge's comments regarding this part of his child pornography collection.  He dislikes the court's reliance on the age of this victim both as "an initial basis for a 2-level sentencing enhancement,"

26

and "to justify an above-Guidelines sentence." (A. Br. 24.)  This argument suffers from two flaws.

First, as a general matter, a judge may "consider the specific details of the individual case" where she deems an adjustment proper but inadequate to a full assessment of what the sentence should be. *Castaldi*, 743 F.3d at 598.  Fogle's argument does not rise to the level of impermissible double counting. *See generally United States v. Vizcarra*, 668 F.3d 516, 519-26 (7th Cir. 2012).  And, if he were correct, guidelines adjustments would result in limitations to a district court's § 3553(a) discretion that are not recognized in the law. *E.g.*, *Vitrano,* 495 F.3d at 390.  The district court was therefore free to add this fact into her § 3553(a) analysis even though it also contributed to a guidelines enhancement.

Second, Fogle's suggestion that the judge relied significantly on this particular fact "to justify an above-Guidelines sentence" is misleading.  The age of this victim was not a critical consideration for the judge but one small piece of a much larger puzzle.  The judge considered it material to the seriousness of Fogle's crime, but her brief remark does not reveal that she based his above-guidelines sentence in significant part on that fact.  The district court offered many reasons to justify a sentence above the guidelines.

In short, Fogle admitted that his receipt and distribution activities encompassed victims as young as six, an admission that undercuts his

27

argument in its entirety. And his contention that this fact played a major part in the court's ultimate sentencing decision finds no support in the record. Accordingly, like his other procedural arguments, this complaint is meritless.

## II.    Fogle's Sentence Was Substantively Reasonable

## A.    Standard of Review

This Court reviews the substantive reasonableness of a sentence "for an abuse of discretion, irrespective of whether the sentence is above, below, or within the advisory guidelines range." *United States v. Molton*, 743 F.3d 479, 484 (7th Cir. 2014). While a judge must explain the sentence she chooses, "[d]istrict judges need not belabor the obvious." *United States v. Gary*, 613 F.3d 706, 709 (7th Cir. 2010).

## B.    The District Court Provided a Comprehensive Explanation for Its Reasonable Decision to Sentence Fogle above the Advisory Guidelines Range

The district court did not abuse her discretion in choosing to sentence Fogle above the applicable guidelines range. The judge "knew [s]he was imposing a non-guideline sentence that required an explanation, and [s]he provided it." *Castaldi*, 743 F.3d at 596. The record makes abundantly clear why, in the district judge's view, the guidelines range did not reflect the seriousness of Fogle's crimes and why a 188-month sentence was reasonable in this case.

28

The judge hewed closely to the 3553(a) factors and provided many reasons for her decision to sentence Fogle above the guidelines range. To begin, as explained in detail above, *see supra* Part I, the judge made several points regarding her belief that the nature and circumstances of Fogle's conviction for receipt and distribution of child pornography (and conspiracy to do the same) warranted a very high sentence. For example:

- "[U]nlike many child pornographers, Mr. Fogle admits that Victims 1 through 12 were boys and girls who were secretly videotaped by his employee," (S. 180);

- "This victimization occurred for nearly four years," (S. 180);

- "In addition to the homemade child pornography," commercial pornography Fogle received and distributed involved "victims . . . as young as six years old," (S. 181);

- "This material perpetrates a great deal of harm to the victims," (S. 180, 189);

- "The defendant's collection of material included hundreds of videos and photographs," (S. 181);

- "Child pornographers often argue that they are only curious or they were fanaticizing and would never actually harm a minor or a child, and that is not true here. Fogle acted on his attraction to children." (S. 181-82);

29

- Fogle "actually knew the children in the homemade pornography," (S. 189);

- Fogle "accepted the opportunity to associate with these children during social events," (S. 180-81, 189);

- Fogle "failed to report Mr. Taylor's conduct to authorities," which enabled further exploitation of even younger children, (S. 181); and

- Fogle's case warranted a higher sentence than cases he had cited, (S. 186).

The district judge also explained her view that Fogle's history and characteristics warranted a higher than normal sentence. For example, she described his obsession with having sex with minors. (S. 178-79). She also discussed the lack of a difficult background capable of offering a mitigating explanation for Fogle's crimes. (S. 179.) She also touched on his celebrity, which she found both positive and negative.

While the court's discussion of Fogle's two sets of crimes overlapped, she also provided independent reasons justifying a very high sentence in connection with Fogle's conviction for commercial sex with minors. (S. 182-84.) For example, the judge observed that:

- Fogle "went to great lengths to engage in commercial sex acts with underage minors," in addition to the times he succeeded in completing the commission of that crime, (S. 182-83, 186-87);

- He "sought to use prostituted minors to find other children with whom he could have sexual contact," (S. 183);

- Fogle "continued their victimization" in the "underground world" of "sex trafficking," "foster[ing] this form of abuse for several years," (S. 183);

- His patterns of expressing his obsessions to others over the phone and then seeking to make those obsessions a reality by paying "a finder's fee to provide him with access to minors for commercial sex," (S. 187); and

- The "need to protect the public" from Fogle's "extreme" "perversion and lawlessness," (S. 186).

Fogle ignores most of the court's voluminous explanation. Instead, he picks at isolated moments in the proceeding, but his arguments do nothing to detract from the reasonableness of the sentence or the justification the judge offered.

First, he says the court "seemingly punished" him "on account of his upbringing and the good things he did." (A. Br. 27.) This misses the point of the judge's consideration of Fogle's background. Far from praising him, she stated that his past made him more culpable, not less. She acknowledged certain positive things but emphasized that Fogle's history did not involve the common risk factors—abuse and neglect, for example—that usually lie

behind child exploitation crimes.  Accordingly, Fogle had little to blame other than his own propensity for wrongdoing.  (S. 179.)

Next, Fogle says the court should not have relied on considerations that independently increased his offense level.  (A. Br. 29-30.)  Of course, a judge may consider the details of a case in her § 3553(a) assessment, even if those details separately relate to an offense level increase, where the judge deems the adjustment inadequate to account for the defendant's conduct.  *See, e.g.*, *Castaldi*, 743 F.3d at 598.  Moreover, the considerations Fogle isolates were not crucial to the court's decision to give him a high sentence.  For example, he discusses the court's comment regarding his "use of a computer" at length, but that was far less important than the judge's concerns about his attempts to have sex with minors, his promotion of sex trafficking, his relationship with the producer, his personal knowledge of his victims, and his background.

As part of this argument, Fogle analogizes his case to *United States v. Bradley*, 675 F.3d 1021 (7th Cir. 2012), claiming that the court's rationale here "provides little more than what is implicit" in his offenses.  (A. Br. 29 (quoting *Bradley*, 675 F.3d at 1025).)  But he can make that analogy only by ignoring almost the entire record of the sentencing hearing.  As discussed above, the district court went to great lengths to explain why the particular details of Fogle's case, both the conduct and the various circumstances

surrounding it, warranted a sentence above the range attributable to the
basic criminal conduct.

Indeed, with this argument, Fogle contradicts himself. Earlier, he
argued that the judge considered matters that were out-of-bounds in that
they went beyond "chargeable activity." (A. Br. 23.) Now, he says an above-
guidelines sentence *requires* a judge to consider such things. The Court
should let Fogle neither have his cake nor eat it.

The remainder of Fogle's arguments require little treatment. He (1)
mischaracterizes the role his admitted distribution of child pornography
played in his sentence; (2) nitpicks the court's wise decision not to credit his
expert witnesses because their diagnoses were not recognized in the
Diagnostic and Statistical Manual and were based on inaccurate information;
(3) distorts the judge's brief positive comments; and (4) claims incredulity at
the judge's analogy to Jerry Sandusky as a "celebrity" case. (A. Br. 31-32.)
With these arguments, Fogle plays up matters that were not central to the
court's decision and ignores the judge's clear and thorough explanation as to
why she gave him an above-guidelines sentence.

In the end, Fogle cannot escape the judge's decision, which she
explained in great detail, that his conduct warranted a sentence above and
beyond what the guidelines contemplated. The judge exercised her discretion
well; she did not abuse it. The Court should reject his challenge.

## CONCLUSION

For the reasons stated above, this Court should affirm.

Respectfully submitted,

JOSH J. MINKLER
United States Attorney


By:    s/ Bob Wood_____
       Bob Wood
       Assistant United States Attorney


By:    s/ Steven D. DeBrota_____
       Steven D. DeBrota
       Assistant United States Attorney

34

## STATEMENT CONCERNING ORAL ARGUMENT

The plaintiff-appellee believes that oral argument is necessary or would be useful in this appeal.


s/ Bob Wood                                    ___
Bob Wood
Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE IN ACCORDANCE WITH
## FED. R. APP. P. 32(a)(7)(C)

The foregoing BRIEF OF THE UNITED STATES complies with the

type volume limitations required under Fed. R. App. P. 32(a)(7)(B)(i) in that

there are not more than 14,000 words or 1,300 lines of text using monospaced

type in the brief, that there are 8,110 words typed in Microsoft Word word-

processing this 18th day of April, 2016.


 s/ Bob Wood                                
Bob Wood
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that on April 18, 2016 , I electronically filed the foregoing with

the Clerk of the Court for the United States Court of Appeals for the Seventh

Circuit by using the CM/ECF system.  I certify that all participants in this

case are registered CM/ECF users and that service will be accomplished by

the CM/ECF system to the following:

Ronald E. Elberger
BOSE McKINNEY & EVANS, LLP
relberger@boselaw.com

s/ Bob Wood
Bob Wood
Assistant United States Attorney
Office of the United States Attorney
10 West Market Street, Suite 2100
Indianapolis, Indiana 46204-3048
Telephone: (317) 226-6333
Bob.Wood@usdoj.gov